No. 25-761

# In the United States Court of Appeals for the Ninth Circuit

NICHOLAS ROLOVICH,
Plaintiff-Appellant,

v.

WASHINGTON STATE UNIVERSITY, ET AL.,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Washington
Honorable Thomas O. Rice
(2:22-cv-319-TOR)

## EXCERPTS OF RECORD
## VOLUME 2 OF 8

ERIC N. KNIFFIN
KNIFFIN LAW, PLLC
102 S. Tejon St., Suite 1100
Colorado Springs, CO 80903

ERIC J. SEESE
FROST BROWN TODD LLP
1801 California St., Ste. 2700
Denver, CO 80202

JOSEPH C. DAVIS
   *Counsel of Record*
LUKE W. GOODRICH
ANGELA WU HOWARD
REED M. BARTLEY
THE BECKET FUND FOR
 RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW, Ste. 400
Washington, DC 20006
(202) 955-0095
*jdavis@becketfund.org*

*Counsel for Plaintiff-Appellant*

1    ROBERT W. FERGUSON
      Attorney General

2

3    SPENCER W. COATES, WSBA #49683
      Assistant Attorney General
      800 Fifth Avenue, Suite 2000
4    Seattle, WA  98104-3188
      (206) 464-7744

5

6    ZACHARY J. PEKELIS, WSBA #44557
      Special Assistant Attorney General
      PACIFICA LAW GROUP LLP
7    1191 2nd Avenue, Suite 2000
      Seattle, WA  98101-3404
8    (206) 245-1700

9

10

11                 UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON

12

13   NICHOLAS ROLOVICH,              NO. 2:22-cv-00319-TOR

                        Plaintiff,    DEFENDANT'S REPLY
14                                     STATEMENT OF MATERIAL
                                       FACTS NOT IN DISPUTE
      v.
15

16   WASHINGTON STATE
      UNIVERSITY,
17
                        Defendant.

18

19

20

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION AND GENERAL OBJECTIONS ....................... 1

3    II.   WSU'S REPLY STATEMENT OF UNDISPUTED MATERIAL
4          FACTS...................................................................................... 4

5          A.   The Responsibilities of the Head Football Coach at WSU........... 4

6          B.   The Hiring of Nick Rolovich as WSU's Head Football Coach.. 11

7          C.   The COVID-19 Pandemic and Washington's Response ............ 13

8          D.   WSU's Response to the COVID-19 Pandemic........................... 16

9          E.   The Pandemic's Impact on the WSU Athletics Department ...... 19

10         F.   The COVID-19 Vaccines........................................................... 26

11         G.   WSU's Vaccination Policies...................................................... 27

12         H.   Rolovich Expresses Concerns about the COVID-19 Vaccines .. 30

13         I.    Rolovich's Meeting with Dr. Guy Palmer .................................. 35

14         J.    Rolovich Reiterates His Concerns About Vaccination to Chun . 38

15         K.   Rolovich Publicly Announces Decision Not to Be Vaccinated.. 42

16         L.    The Delta Surge........................................................................ 48

17         M.   Proclamation 21-14 ................................................................. 51

18         N.   WSU's Implementation of the Proclamation............................. 53

19         O.   Rolovich's Noncompliance with COVID-19 Safety Protocols .. 59

20         P.    Rolovich's Request for a Religious Accommodation................. 72

21         Q.   WSU Determines It Cannot Accommodate Rolovich ............... 87

22         R.   Rolovich's Separation from WSU ............................................ 104

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - i
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**ER0043**

S.  The Unrebutted Conclusions of WSU's Scientific Experts ...... 109

T.  Fiscal Impacts of Accommodating Rolovich's Request ........... 114

U.  Additional Rolovich Communications Post-Separation ........... 126

V.  Rolovich's Post-Separation Job Prospects ................................. 128

III.  WSU'S RESPONSES TO PLAINTIFF'S ADDITIONAL
FACTS .......................................................................................... 129

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - ii
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0044

(5 of 293), Page 5 of 293    Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 5 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4763    Page 4
of 155

## I.  INTRODUCTION AND GENERAL OBJECTIONS

Pursuant to LCR 56(c)(1)(C), Defendant Washington State University (WSU or the University) submits this Reply Statement of Material Facts Not in Dispute. In Plaintiff Nicholas Rolovich's Statement of Additional and Disputed Material Facts (Response), many of Rolovich's purported factual responses fail to comply with the Federal Rules of Civil Procedure and Local Civil Rules. WSU therefore offers the following General Objections to Rolovich's Response:

1.    Rolovich repeatedly fails to cite specific evidence in the record demonstrating disputed issues of fact. *See* Fed. R. Civ. P. 56(c)(1); LCR 56(c)(1)(b) ("As to each disputed fact, the statement shall cite the specific page or paragraph of the record where the disputed fact is found"); *see also Revelry Vintners, LLC v. Mackay Rest. Mgmt. Grp., Inc*., No. 4:21-CV-5110-TOR, 2024 WL 3261187, at *3 (E.D. Wash. July 1, 2024) ("The Court may take a fact as undisputed or admitted if a party fails to follow the requirements of Local Rule 56(c)."). For example, Rolovich frequently states that he "objects" to or disputes WSU's "characterization" of a particular fact, but without disputing its accuracy by citing specific evidence in the record. For each issue of fact where Rolovich has failed to comply with the Local Rules in this manner, the fact should be deemed undisputed. *Id.*

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 1
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1      2.      Rolovich repeatedly fails to address WSU's actual asserted fact, and

2   instead responds to a different fact never asserted by WSU. Accordingly, each

3   such fact asserted by WSU should be deemed undisputed.

4      3.      Rolovich also frequently states that the evidence "speaks for itself."

5   This is not a record citation, nor does he provide record citations that support an

6   interpretation of any evidence different that that given by WSU in WSU's

7   statement of facts. Accordingly, each such fact should be deemed undisputed.

8      4.      Rolovich repeatedly attempts to create a genuine fact dispute by

9   referring to actions that he alleges that WSU should have taken. These statements

10  are not responsive to the record citations WSU offers, and, in the absence of any

11  rebuttal evidence or record citations of his own, these statements should not be

12  viewed as creating a genuine dispute of fact. LCR 56(c)(1)(C). Accordingly, each

13  such fact asserted by WSU should be deemed undisputed.

14     5.      Rolovich repeatedly states that he is "without sufficient

15  information" to agree or disagree with a fact. This does not comply with the

16  Federal or Local Rules, and these facts asserted by WSU should be deemed

17  undisputed. LCR 56(c)(1)(C).

18     6.      Rolovich repeatedly attempts to create a dispute of fact by relying

19  solely on terse statements in his conclusory, self-serving declaration. This is

20  insufficient. *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th

21  Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 2
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    supporting evidence, is insufficient to create a genuine issue of material fact.");

2    *Algaier v. Bank of Am., N.A.*, No. 2:13-CV-0380-TOR, 2015 WL 5944177, at

3    *12 (E.D. Wash. Oct. 13, 2015), *aff'd*, 691 F. App'x 497 (9th Cir. 2017)

4    (declining to find genuine dispute of material fact when plaintiff's only evidence

5    was "[plaintiff's] self-serving declaration and the allegations within the Amended

6    Complaint"). For each such fact where Rolovich offers only his self-serving

7    declaration and no other record citations, that fact asserted by WSU should be

8    deemed undisputed.

9        7.    Finally, Rolovich offers many "additional facts" of his own, not in

10    response to WSU's undisputed facts, and not explaining how any of these facts

11    create a dispute of material fact that precludes summary judgment. This is

12    improper. *See Rockness v. Rockness*, No. 2:21-CV-00153-MKD, 2023 WL

13    2705839, at *1 n.1 (E.D. Wash. Mar. 29, 2023) ("Pursuant to LCivR 56(c)(1)(B),

14    [plaintiff] was to specify disputed facts precluding summary judgment with

15    reference to [defendant]'s asserted undisputed facts by number. [Plaintiff] instead

16    offered a list of her own facts."). It is WSU's position that these "additional facts"

17    should be stricken and not considered by the Court. However, WSU has also

18    provided responses to these "additional facts," including explanations of why

19    they are unsupported by the record, where appropriate. WSU's responses to these

20    "additional facts" are gathered at the end of these Reply Facts.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 3
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## II. WSU'S REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS

WSU's replies to Rolovich's specific Responses follows below. For ease of reference, WSU reproduces each original asserted fact from its Statement of Material Facts Not in Dispute, ECF No. 94, followed by Rolovich's Response to that fact, ECF No. 118, followed by WSU's reply.

**A.    The Responsibilities of the Head Football Coach at WSU**

1.  <u>WSU's Fact, ECF No. 94 ¶ 1</u>: The football program is an integral part of WSU. Declaration of Kirk Schulz in Support of Defendant's Cross-MSJ (Schulz Decl.) ¶ 7.

<u>Rolovich's Response, ECF No. 118 ¶ 1</u>: Rolovich objects to the ambiguous and undefined term, "integral part". Subject to that objection, Rolovich does not dispute that the football program is important at WSU.

**WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). *See also* General Objections 1 and 2.

2.  <u>WSU's Fact, ECF No. 94 ¶ 2</u>: WSU's football program generates significantly more revenue than any other sport at the University, and those revenues support all other sports programs at WSU. *See* Declaration of David Bones in Support of Defendant's Cross-MSJ, Ex. A (Bones Rep.) at 5–6.

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 4
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0048

(9 of 293), Page 9 of 293     Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 9 of 293
Case 2:22-cv-00319-TOR     ECF No. 127     filed 11/18/24     PageID.4767     Page 8
of 155

1    Rolovich's Response, ECF No. 118 ¶ 2: The revenue generated by WSU's

2    football program, as well as the other sports programs at WSU and the

3    contributions made to the Athletics Department, speaks for itself. *See* ECF

4    No. 96, at Attachment C, pp. 64-65.

5    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

6    any "specific page or paragraph of the record where the disputed fact is

7    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

8    The document cited by Rolovich—the report of WSU expert David Bones

9    (Bones Report)—does not dispute the facts stated in WSU's Paragraph 2.

10   Additionally, Rolovich has failed to provide expert testimony to rebut the

11   Bones Report, so there is no dispute of fact regarding the conclusions in

12   the report. *See* General Objections 1, 2, and 3.

13   3.    WSU's Fact, ECF No. 94 ¶ 3: The role of the head football coach at

14   WSU is critical to both the Athletics Department and WSU generally. Schulz

15   Decl. ¶ 9; Declaration of Patrick Chun in Support of Defendant's Cross-MSJ

16   (Chun Decl.) ¶ 8; Declaration of Anne McCoy in Support of Defendant's Cross-

17   MSJ (McCoy Decl.) ¶ 11.

18   Rolovich's Response, ECF No. 118 ¶ 3: Rolovich objects to the ambiguous

19   and undefined term, "critical". Additionally, Rolovich disputes that all

20   football coaches can be lumped into one category. Rolovich Decl. at ¶ 2-

21   3. Some may be more "critical" than others. *Id.*

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 5
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(10 of 293), Page 10 of 293   Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 10 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4768    Page 9
of 155

1    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's objection

2    to terms does not cite any "specific page or paragraph of the record where

3    the disputed fact is found" and, therefore, does not create a dispute of fact.

4    LCR   56(c)(1)(C).   Additionally,   Rolovich's   response   reflects   a

5    misunderstanding of the statement in WSU's Paragraph 3, which relates to

6    the "role of head football coach" and not "all football coaches." Further,

7    Rolovich's response fails to provide record citations to dispute the facts

8    stated in WSU's Paragraph 3 beyond a self-serving declaration, which is

9    insufficient to create a dispute of fact. *See* General Objections 1, 2, and 6.

10       4.    <u>WSU's Fact, ECF No. 94 ¶ 4</u>: The head football coach leads a team of

11    approximately 120 student-athletes, approximately 30 coaches, and support staff,

12    leading them in practices, 12 regular-season games, and (usually in the past

13    decade) a bowl game. Declaration of Jacob Dickert in Support of Defendant's

14    Cross-MSJ (Dickert Decl.) ¶¶ 9, 10. The head coach attends games and practices,

15    staying in the same hotel as the team for home and away games, eating some

16    meals with the team, and generally traveling with the team (by charter plane

17    and/or charter bus). *Id.* ¶¶ 10–12; Chun Decl. ¶ 18–20; Declaration of Spencer

18    Coates in Support of Defendant's Cross-MSJ (Coates Decl.), Ex. A, at 42:4–10;

19    45:8–11. During games, the head football coach must speak frequently, often at

20    loud volumes, in close proximity to other people. Dickert Decl. ¶ 35; McCoy

21    Decl. ¶ 14; Coates Decl., Ex A at 147:19–148:7.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 6
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**ER0050**

(11 of 293), Page 11 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 11 of 293
Case 2:22-cv-00319-TOR     ECF No. 127     filed 11/18/24     PageID.4769     Page 10
of 155

1   <u>Rolovich's Response, ECF No. 118 ¶ 4</u>: Rolovich disputes that there is a

2   one-size fits all to coaching a football team. Rolovich Decl. at ¶ 4. Further,

3   the Declaration of Jacob Dickert provides for the day of a head coach post-

4   pandemic, not what Rolovich experienced as head coach of WSU under

5   COVID-19 restrictions. *Id.*. Additionally, Rolovich disputes that WSU

6   could not have offered him a reasonable accommodation relating to his

7   travel and meals. *Id.* at ¶ 5. Significantly, there were at least 14 football

8   players (out of 15 who sought exemptions) who were unvaccinated and it

9   would not have placed any additional burden on WSU to allow Rolovich

10  to eat with or travel with those unvaccinated players, to the extent that

11  WSU deviated from its normal travel and meals for those unvaccinated

12  players.; *Id.*; Seese Decl., at ¶ 1, Exh. A. Following the implementation of

13  the vaccine mandate, WSU did not require or provide separate travel or

14  lodging accommodations for any unvaccinated players. Liam Ryan Decl.,

15  ¶ 6; Konner Gomness Decl., ¶ 5. These unvaccinated players traveled with

16  and in the same manner as the rest of the team. *Id.*

17  **<u>WSU's Reply</u>:** No genuine dispute of material fact. Rolovich's response

18  consists entirely of argument that is not responsive to WSU's asserted fact

19  and is therefore insufficient and does not create a dispute of fact regarding

20  the facts stated in WSU's Paragraph 4. Further, Rolovich's response fails

21  to provide record citations to dispute facts stated in WSU's Paragraph 4

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 7
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1      beyond a self-serving declaration, which is insufficient to create a dispute

2      of fact. *See* General Objections 2 and 6.

3        5.    <u>WSU's Fact, ECF No. 94 ¶ 5</u>: Effective recruiting of high school and

4 junior college athletes is critical to the football program's long-term success.

5 Dickert Decl. ¶ 17; Chun Decl. ¶ 17. Effective recruiting requires the head

6 football coach to meet with recruits (both in Pullman and in their hometowns

7 around the country), their families, and their current coaches. Dickert Decl.

8 ¶¶ 18–19; McCoy Decl. ¶ 16; Chun Decl. ¶ 17.

9      <u>Rolovich's Response, ECF No. 118 ¶ 5</u>: Rolovich disputes that effective

10      recruiting requires a head football coach to meet with recruits in-person.

11      Rolovich Decl. at ¶ 6. During the relevant time period, students were taking

12      classes via zoom. *Id*. Additionally, many families were not allowing

13      "outsiders" into their homes. *Id*. Rolovich was successfully recruiting high

14      school football players without meeting them or their families in person.

15      *Id*. For the 2022 season, 7 of the 27 enrollees committed while Rolovich

16      was head coach. *Id.*

17      **<u>WSU's Reply</u>:** No genuine dispute of material fact. Rolovich's response

18      consists of statements that are not responsive to WSU's asserted facts and

19      are therefore insufficient and do not create a dispute of fact. Further,

20      Rolovich's response fails to provide citations to the record to dispute the

21      facts stated in WSU's Paragraph 5 beyond a self-serving declaration,

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 8
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(13 of 293), Page 13 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 13 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4771    Page 12
of 155

1    which is insufficient to create a dispute of fact. See General Objections 1,

2    2, and 6. Additionally, Jake Dickert, Rolovich's successor as head football

3    coach at WSU, stated that Rolovich's predominantly virtual recruiting

4    efforts in 2020 and 2021 were insufficient to construct a viable recruiting

5    class for the following season. Dickert Dec. ¶ 45.

6        6.   <u>WSU's Fact, ECF No. 94 ¶ 6</u>: The head football coach's duties also

7    include fundraising and cultivating donors to the University. Dickert Decl. ¶ 22;

8    Chun Decl. ¶ 23; McCoy Decl. ¶ 19.

9        <u>Rolovich's Response, ECF No. 118 ¶ 6</u>: Rolovich disputes that fundraising

10    or cultivating donors was an official duty of a head football coach, or that

11    it had to be in-person. Rolovich Decl. ¶¶ 6, 11.

12    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

13    fails to provide record citations to dispute the facts stated in WSU's

14    Paragraph 6 beyond a self-serving declaration, which is insufficient to

15    create a dispute of fact. Additionally, the paragraphs cited in Rolovich's

16    declaration are unrelated to whether fundraising and cultivating donors is

17    one duty of a head football coach and, therefore, create no dispute of fact.

18    *See* General Objections 2 and 6.

19        7.   <u>WSU's Fact, ECF No. 94 ¶ 7</u>: The WSU head football coach's duties

20    also include media engagements, such as interviews and participating in a weekly

21    radio show. Dickert Decl. ¶¶ 21, 32; McCoy Decl. ¶ 20; Chun Decl. ¶ 22.

22

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Rolovich's Response, ECF No. 118 ¶ 7: Rolovich disputes that media

2    engagements was an official duty of a head football coach or that it had to

3    be in-person. *Id.*

4    **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

5    fails to provide record citations to dispute the facts stated in WSU's

6    Paragraph 7 beyond a self-serving declaration, which is insufficient to

7    create a dispute of fact. Additionally, the paragraphs cited in Rolovich's

8    declaration are unrelated to whether attending media engagements is one

9    duty of a head football coach and, therefore, do not create a dispute of fact.

10   *See* General Objections 2 and 6.

11   8.    WSU's Fact, ECF No. 94 ¶ 8: Given the above job duties, the head

12   football coach position at WSU involves frequent in-person contacts and

13   interactions with a wide range of individuals—including student-athletes,

14   assistant coaches, other Athletics Department personnel, donors and boosters,

15   and members of the media. McCoy Decl. ¶ 21; Chun Decl. ¶ 21; Dickert Decl.

16   ¶ 26.

17   Rolovich's Response, ECF No. 118 ¶ 8: Rolovich disputes that his position

18   as head football coach required frequent in-person contacts and

19   interactions with a wide range of individuals. Rolovich Decl. at ¶ 11.

20   Additionally, Rolovich asserts that to the extent that these additional duties

21   were requested of him, he could have satisfactorily accomplished them

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 10
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(15 of 293), Page 15 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 15 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4773    Page 14
of 155

1   with a reasonable accommodation from WSU. *Id*. Further, WSU did not

2   approach Rolovich with alternative options for accommodation for these

3   in-person events. *Id*.

4   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

5   fails to provide record citations to dispute the facts stated in WSU's

6   Paragraph 8 beyond a self-serving declaration, which is insufficient to

7   create a dispute of fact. Additionally, Rolovich's response consists of

8   argument that is not responsive to WSU's asserted facts and is therefore

9   insufficient and does not create a dispute of fact. *See* General Objections 2

10  and 6.

11  **B.     The Hiring of Nick Rolovich as WSU's Head Football Coach**

12  9.     <u>WSU's Fact, ECF No. 94 ¶ 9</u>: After executing a Memorandum of

13  Understanding with WSU, Plaintiff Nicholas Rolovich was announced as the

14  head football coach on January 14, 2020. Chun Decl. ¶ 11; McCoy Decl. ¶ 24.

15  <u>Rolovich's Response, ECF No. 118 ¶ 9</u>: Rolovich does not dispute that he

16  was announced as the head football coach on January 14, 2020.

17  **<u>WSU's Reply:</u>** No genuine dispute of material fact.

18  10.    <u>WSU's Fact, ECF No. 94 ¶ 10</u>: Rolovich and WSU then executed a full

19  employment contract in April 2020. McCoy Decl. ¶ 24, Ex. A.

20  <u>Rolovich's Response, ECF No. 118 ¶ 10</u>: Rolovich's employment

21  agreement speaks for itself.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 11
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1   **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

2   any "specific page or paragraph of the record where the disputed fact is

3   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

4   *See also* General Objections 1 and 3.

5       11.   WSU's Fact, ECF No. 94 ¶ 11: Rolovich was considered a "player's

6   coach" and prided himself on his ability to build a "deeper connection" with

7   players. McCoy Decl. ¶ 23; Coates Decl., Ex. A at 27:21–28:6, 30:1–13. In his

8   deposition, Rolovich testified that his general "approach" was, whenever

9   encountering players or staff, to "not pass them in person without engaging

10  them." *Id.* at 28:7–29:25, 30:14–31:17.

11      Rolovich's Response, ECF No. 118 ¶ 11: Rolovich disputes that he was

12  solely a "player's coach". Rolovich Decl. at ¶ 12. Additionally, had WSU

13  imposed some type of restriction as part of an accommodation, Rolovich

14  would have modified his "approach". *Id.* Further, Rolovich did modify his

15  approach during the 2020 and 2021 seasons due to social distancing

16  requirements. *Id.*

17  **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

18  reflects a misunderstanding of the statement in WSU's Paragraph 11,

19  which does not state that Rolovich was "solely" "a player's coach."

20  Further, Rolovich's response fails to provide record citations to dispute the

21  facts stated in WSU's Paragraph 11 beyond a self-serving declaration,

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 12
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**ER0056**

(17 of 293), Page 17 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 17 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4775    Page 16
of 155

1    which is insufficient to create a dispute of fact. Additionally, Rolovich's

2    response consists of argument that is not responsive to WSU's asserted

3    facts and is therefore insufficient and does not create a dispute of fact. *See*

4    General Objections 2 and 6.

5    **C.**    **The COVID-19 Pandemic and Washington's Response**

6        12.   WSU's Fact, ECF No. 94 ¶ 12: COVID-19 is a disease that can cause

7    serious illness or death. Declaration of Dr. John Lynch, Ex. A (Lynch Rep.) ¶ 7.

8        Rolovich's Response, ECF No. 118 ¶ 12: For purposes of this Motion

9    alone, Rolovich does not dispute this statement.

10        **<u>WSU's Reply</u>:** No genuine dispute of material fact.

11        13.   WSU's Fact, ECF No. 94 ¶ 13: It is caused by the SARS-CoV-2 virus,

12    a coronavirus that was first identified in humans in December 2019, and which

13    spreads easily from person to person. *Id.*

14        Rolovich's Response, ECF No. 118 ¶ 13: For purposes of this Motion

15    alone, Rolovich does not dispute this statement.

16        **<u>WSU's Reply</u>:** No genuine dispute of material fact.

17        14.   WSU's Fact, ECF No. 94 ¶14: On January 20, 2020, the U.S. Centers

18    for Disease Control (CDC) announced what was then the first confirmed case of

19    COVID-19 in the United States in Snohomish County, Washington. *Id.* ¶ 9.

20        Rolovich's Response, ECF No. 118 ¶ 14: For purposes of this Motion

21    alone, Rolovich does not dispute this statement.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 13
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0057

1    **WSU's Reply:** No genuine dispute of material fact.

2    15.    <u>WSU's Fact, ECF No. 94 ¶ 15</u>: COVID-19 has several notable

3    characteristics as a disease. It is airborne and highly contagious. *Id.* ¶ 8. Infected

4    individuals can spread the virus before experiencing symptoms. *Id.* While some

5    cases are mild, some are severe and require hospitalization and intensive care

6    treatment. *Id.* A subset of those experiencing severe cases will die. *Id.* Even with

7    "milder" cases, some COVID-19 survivors experience "long COVID," where

8    they develop chronic symptoms, including debilitating fatigue, as well as

9    abnormalities in their brain, heart, lungs, and other body systems. *Id.*

10        <u>Rolovich's Response, ECF No. 118 ¶ 15</u>: For purposes of this Motion

11        alone, Rolovich does not dispute this statement.

12        **WSU's Reply:** No genuine dispute of material fact.

13    16.    <u>WSU's Fact, ECF No. 94 ¶ 16</u>: Although the virus has continued to

14    evolve into different "variants," the above characteristics have been consistent

15    since it was first detected in humans through today. *Id.*

16        <u>Rolovich's Response, ECF No. 118 ¶ 16</u>: For purposes of this Motion

17        alone, Rolovich does not dispute this statement.

18        **WSU's Reply:** No genuine dispute of material fact.

19    17.    <u>WSU's Fact, ECF No. 94 ¶ 17</u>: COVID-19 has caused almost 1.2 million

20    deaths in the United States. *Id.* ¶ 81.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 14
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(19 of 293), Page 19 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 19 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4777    Page 18
of 155

1   <u>Rolovich's Response, ECF No. 118 ¶ 17</u>: For purposes of this Motion

2   alone, Rolovich does not dispute this statement.

3   **<u>WSU's Reply</u>:** No genuine dispute of material fact.

4   18.   <u>WSU's Fact, ECF No. 94 ¶ 18</u>: The U.S. Secretary of Health and Human

5   Services declared a public health emergency on January 31, 2020. *Id.* ¶ 10.

6   <u>Rolovich's Response, ECF No. 118 ¶ 18</u>: For purposes of this Motion

7   alone, Rolovich does not dispute this statement.

8   **<u>WSU's Reply</u>:** No genuine dispute of material fact.

9   19.   <u>WSU's Fact, ECF No. 94 ¶ 19</u>: Washington Governor Jay Inslee

10  proclaimed a state of emergency as a result of the COVID-19 pandemic on

11  February 29, 2020. *Id.* ¶ 12.

12  <u>Rolovich's Response, ECF No. 118 ¶ 19</u>: For purposes of this Motion

13  alone, Rolovich does not dispute this statement.

14  **<u>WSU's Reply</u>:** No genuine dispute of material fact.

15  20.   <u>WSU's Fact, ECF No. 94 ¶ 20</u>: On March 23, 2020, Governor Inslee

16  issued a "stay home" proclamation requiring people to "cease leaving their

17  home" except for (1) "essential activities" or (2) "employment in essential

18  business services." *Id.* ¶ 13, n.7.

19  <u>Rolovich's Response, ECF No. 118 ¶ 20</u>: For purposes of this Motion

20  alone, Rolovich does not dispute this statement.

21  **<u>WSU's Reply</u>:** No genuine dispute of material fact.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 15
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(20 of 293), Page 20 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 20 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4778    Page 19
of 155

**D.    WSU's Response to the COVID-19 Pandemic**

21.    <u>WSU's Fact, ECF No. 94 ¶ 21</u>: In March of 2020, WSU shifted operations so that almost all work and instruction were being done remotely. Schulz Decl. ¶ 12; Declaration of Dr. Guy Palmer in Support of Defendant's Cross-MSJ (Palmer Decl.) ¶ 6.

<u>Rolovich's Response, ECF No. 94 ¶ 21</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

22.    <u>WSU's Fact, ECF No. 94 ¶ 22</u>: On July 23, 2020, WSU announced that the fall semester of 2020 would use a "distance delivery model," and WSU asked all students at the Pullman campus to live at their permanent residences. Palmer Decl. ¶ 8.

<u>Rolovich's Response, ECF No. 118 ¶ 22</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

23.    <u>WSU's Fact, ECF No. 94 ¶ 23</u>: WSU limited all gatherings to comply with State and County public health guidelines. *Id.* ¶ 9.

<u>Rolovich's Response, ECF No. 118 ¶ 23</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 16
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0060

(21 of 293), Page 21 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 21 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4779    Page 20
of 155

1   24.   <u>WSU's Fact, ECF No. 94 ¶ 24</u>: For any in-person interactions that did

2   occur, WSU also had testing, social distancing, and masking requirements. *Id.* ¶

3   9.

4       <u>Rolovich's Response, ECF No. 118 ¶ 24</u>: For purposes of this Motion

5       alone, Rolovich does not dispute this statement. This testing continued on

6       a weekly basis up until Rolovich was terminated. Rolovich Decl., ¶ 25.

7       **<u>WSU's Reply</u>:** No genuine dispute of material fact. Rolovich's additional

8       statement regarding the duration of testing policies is not responsive to

9       WSU's asserted fact and is therefore insufficient and does not create a

10      dispute of fact. *See* General Objections 2 and 7.

11  25.   <u>WSU's Fact, ECF No. 94 ¶ 25</u>: The disruption caused by the COVID-

12  19 pandemic and complying with these necessary and important public health

13  guidelines was challenging for WSU, both logistically and financially. Schulz

14  Decl. ¶ 13, Ex. A.

15      <u>Rolovich's Response, ECF No. 118 ¶ 25</u>: Rolovich objects to the

16      ambiguous and undefined term, "challenging". Subject to that objection,

17      Rolovich does not dispute that the pandemic was a challenging time for

18      everyone.

19      **<u>WSU Reply</u>:** No genuine dispute of material fact. Rolovich's objection

20      does not cite any "specific page or paragraph of the record where the

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 17
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(22 of 293), Page 22 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 22 of 293
Case 2:22-cv-00319-TOR   ECF No. 127   filed 11/18/24   PageID.4780   Page 21
of 155

1    disputed fact is found" and, therefore, does not create a dispute of fact.

2    LCR 56(c)(1)(C). *See also* General Objection 1.

3    26.   <u>WSU's Fact, ECF No. 94 ¶ 26</u>: The University froze the salaries of

4    leadership and froze all non-mission-critical hiring. *Id.*

5    <u>Rolovich's Response, ECF No. 118 ¶ 26</u>: Rolovich is without sufficient

6    information to agree or dispute with this statement.

7    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of

8    information is insufficient to create a dispute of fact and indicates that there

9    is no "specific page or paragraph of the record where the disputed fact is

10   found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C). *See also*

11   General Objection 5.

12   27.   <u>WSU's Fact, ECF No. 94 ¶ 27</u>: All employees were directed to

13   implement measures to reduce expenditures that were not related to supporting

14   remote teaching and employees working from home. *Id.*

15   <u>Rolovich's Response, ECF No. 118 ¶ 27</u>: Rolovich is without sufficient

16   information to agree or dispute with this statement.

17   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of

18   information is insufficient to create a dispute of fact and indicates that there

19   is no "specific page or paragraph of the record where the disputed fact is

20   found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C). *See also*

21   General Objection 5.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 18
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(23 of 293), Page 23 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 23 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4781    Page 22
of 155

1    28.    <u>WSU's Fact, ECF No. 94 ¶ 28</u>: WSU President Kirk Schulz took a 10%

2    pay cut and declined his retention bonus and other contractual benefits, to support

3    the University. *Id.* ¶ 14.

4        <u>Rolovich's Response, ECF No. 118 ¶ 28</u>: Rolovich is without sufficient

5        information to agree or dispute with this statement. Rolovich also took a

6        15% pay cut for the period of April 16, 2020 through June 30, 2021.

7        Rolovich Decl. at ¶ 22.

8        **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of

9        information is insufficient to create a dispute of fact and indicates that there

10       is no "specific page or paragraph of the record where the disputed fact is

11       found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C). Further,

12       that Rolovich took a 15% pay cut does not address the fact stated by WSU

13       and creates no dispute of fact. *See* General Objections 2, 5, and 7.

14    **E.    The Pandemic's Impact on the WSU Athletics Department**

15    29.    <u>WSU's Fact, ECF No. 94 ¶ 29</u>: Due to the COVID-19 pandemic, in 2020

16    WSU's Athletics Department lost significant revenue from ticket sales, parking

17    and concessions, and participating in tournaments because many sporting events

18    and activities were canceled, and those that continued did so without spectators.

19    Chun Decl. ¶ 26; Bones Rep. at 17–18.

20       <u>Rolovich's Response, ECF No. 118 ¶ 29</u>: Rolovich objects to the

21       ambiguous and undefined term, "significant". Subject to that objection,

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 19
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(24 of 293), Page 24 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 24 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4782    Page 23
of 155

1 | Rolovich disputes that any football games were cancelled during the 2021

2 | season. Rolovich Decl. at ¶ 13.

3 | **WSU's Reply:** No genuine dispute of material fact. Rolovich's objection

4 | to terms does not cite any "specific page or paragraph of the record where

5 | the disputed fact is found" and, therefore, does not create a dispute of fact.

6 | LCR 56(c)(1)(C). Further, Rolovich's dispute regarding game

7 | cancellations during the 2021 season is not responsive to the facts stated

8 | in WSU's Paragraph 29 and does not address whether sporting events were

9 | canceled during the 2020 season or whether WSU lost significant revenue.

10 | Additionally, Rolovich has failed to provide expert testimony to rebut the

11 | Expert Report of David Bones (Bones Rep.), so there is no dispute of fact

12 | regarding the conclusions in the report. *See* General Objections 1, 2, and

13 | 7.

14 | 30. <u>WSU's Fact, ECF No. 94 ¶ 30</u>: Many events had to be canceled—the

15 | football season was shortened to seven games, but WSU only played four games

16 | due to COVID-19 outbreaks among players. Chun Decl. ¶ 31.

17 | <u>Rolovich's Response, ECF No. 118 ¶ 30</u>: Rolovich objects to the

18 | ambiguous and undefined term, "many" and whether the "outbreaks" were

19 | WSU players or football players from other schools. Subject to that

20 | objection, Rolovich disputes that any football games were cancelled during

21 | the 2021 season and the 2020 football schedule speaks for itself. *Id.*

22 |

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 20
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(25 of 293), Page 25 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 25 of 293
Case 2:22-cv-00319-TOR   ECF No. 127   filed 11/18/24   PageID.4783   Page 24
of 155

1   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's objection

2   to terms does not cite any "specific page or paragraph of the record where

3   the disputed fact is found" and, therefore, does not create a dispute of fact.

4   LCR   56(c)(1)(C).   Further,   Rolovich's   dispute   regarding   game

5   cancellations during the 2021 season is not responsive to the facts stated

6   in WSU's Paragraph 30 and does not address whether football games were

7   canceled during the 2020 season. *See* General Objections 1, 2, and 7.

8       31.   <u>WSU's Fact, ECF No. 94 ¶ 31</u>: A COVID-19 outbreak among WSU

9   football players led to the cancellation of WSU's game against Stanford

10   (scheduled for November 20, 2020),  as well as the Apple Cup rivalry game

11   against the University of Washington (scheduled for November 27, 2020), which

12   is perhaps the most anticipated and viewed college sporting event in Washington

13   State. *Id.* ¶ 32.

14       <u>Rolovich's Response, ECF No. 118 ¶ 31</u>: Rolovich admits that the above

15   two referenced games were cancelled due to WSU not having the

16   minimum number of scholarship players available for the game as a result

17   of a number of positive football student-athlete COVID-19 cases and

18   resulting isolation of additional football student-athletes under contact

19   tracing protocols.

20   **<u>WSU's Reply:</u>** No genuine dispute of material fact.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 21
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(26 of 293), Page 26 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 26 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4784    Page 25
of 155

32. <u>WSU's Fact, ECF No. 94 ¶ 32</u>: Revenue from the Athletics Department plummeted by 46.4% from 2020 to 2021, and the annual deficit increased 884% over the same period.  Bones Rep. at 17.

<u>Rolovich's Response, ECF No. 118 ¶ 32</u>: Rolovich is without sufficient information to agree or dispute with this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of information is insufficient to create a dispute of fact and indicates that there is no "specific page or paragraph of the record where the disputed fact is found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C). Additionally, Rolovich has failed to provide expert testimony to rebut the Bones Report, so there is no dispute of fact regarding the conclusions in the report. *See* General Objections 1 and 5.

33. <u>WSU's Fact, ECF No. 94 ¶ 33</u>: WSU had to take out $35.6 million in external financing in the form of general university bonds to help cover revenue losses related to the COVID-19 pandemic. Bones Rep. at 16.

<u>Rolovich's Response, ECF No. 118 ¶ 33</u>: Rolovich is without sufficient information to agree or dispute with this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of information is insufficient to create a dispute of fact and indicates that there is no "specific page or paragraph of the record where the disputed fact is found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C).

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 22
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0066

(27 of 293), Page 27 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 27 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4785    Page 26
of 155

1    Additionally, Rolovich has failed to provide expert testimony to rebut the

2    Bones Report, so there is no dispute of fact regarding the conclusions in

3    the report. *See* General Objections 1 and 5.

4    34.    <u>WSU's Fact, ECF No. 94 ¶ 34</u>: Despite transitioning to distance

5    learning, an unexpected number of students—including student-athletes—

6    returned to Pullman during WSU's 2020 fall semester and COVID-19 cases

7    remained persistent. Schulz Decl. ¶ 16. There were several outbreaks over the

8    course of the 2020–21 school year, and WSU was a major driver of the high

9    COVID-19 case counts for Whitman County. Palmer Decl., Ex. A (Palmer Rep.)

10    ¶ 27.

11    <u>Rolovich's Response, ECF No. 118 ¶ 34</u>: Rolovich is without sufficient

12    information to agree or dispute with this statement.

13    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of

14    information is insufficient to create a dispute of fact and indicates that there

15    is no "specific page or paragraph of the record where the disputed fact is

16    found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C).

17    Additionally, Rolovich has failed to provide expert testimony to rebut the

18    Expert Report of Guy H. Palmer, DVM, PhD (Palmer Report) so there is

19    no dispute of fact regarding the conclusions in the report. *See* General

20    Objections 1 and 5.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 23
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    35.  <u>WSU's Fact, ECF No. 94 ¶ 35</u>: The Athletics Department, and the

2    football team in particular, was a driver of COVID-19 case increases and was

3    connected to a major outbreak in March 2021. *Id.* ¶ 32.

4         <u>Rolovich's Response, ECF No. 118 ¶ 35</u>: Rolovich objects to the

5         ambiguous and undefined term, "driver" and how exactly the football team

6         was "connected" and what WSU considers a "major outbreak".

7    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's objection

8    does not cite any "specific page or paragraph of the record where the

9    disputed fact is found" and, therefore, does not create a dispute of fact.

10   LCR 56(c)(1)(C). Additionally, Rolovich has failed to provide expert

11   testimony to rebut the Palmer Report so there is no dispute of fact

12   regarding the conclusions in the report. *See* General Objections 1 and 5.

13    36.  <u>WSU's Fact, ECF No. 94 ¶ 36</u>: The outbreak contributed to a sharp

14   increase in the number of COVID-19 cases in Whitman County. *Id.* ¶ 33, Ex. B.

15        <u>Rolovich's Response, ECF No. 118 ¶ 36</u>: Rolovich is without sufficient

16        information to agree or dispute with this statement. Additionally, it is not

17        clear from this statement whether these cases were WSU students and/or

18        WSU football players.

19   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of

20   information is insufficient to create a dispute of fact and indicates that there

21   is no "specific page or paragraph of the record where the disputed fact is

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 24
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(29 of 293), Page 29 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 29 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4787    Page 28
of 155

1    found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C).

2    Additionally, Rolovich has failed to provide expert testimony to rebut the

3    Palmer Report so there is no dispute of fact regarding the conclusions in

4    the report. Further, Paragraph 32 of the Palmer Report clearly states that

5    the March 2021 outbreak was traced to student-athletes on the football

6    team. *See* General Objections 1, 2, and 5.

7    37.   <u>WSU's Fact, ECF No. 94 ¶ 37</u>: Just a few weeks later, Whitman County

8    was one of only three counties in the entire state that was forced to revert back

9    one phase in the State's reopening plan, requiring it to abide by more stringent

10    public health requirements due to elevated COVID-19 disease activity. *Id.* ¶ 34.

11    <u>Rolovich's Response, ECF No. 118 ¶ 37</u>:  Rolovich is without sufficient

12    information to agree or dispute with this statement.

13    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of

14    information is insufficient to create a dispute of fact and indicates that there

15    is no "specific page or paragraph of the record where the disputed fact is

16    found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C).

17    Additionally, Rolovich has failed to provide expert testimony to rebut the

18    Palmer Report so there is no dispute of fact regarding the conclusions in

19    the report. *See* General Objections 1 and 5.

20

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 25
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(30 of 293), Page 30 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 30 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4788    Page 29
of 155

38. <u>WSU's Fact, ECF No. 94 ¶ 38</u>: WSU faced criticism from the public and government officials, including Whitman County Public Health, for its role in driving cases in Whitman County. Schulz Decl. ¶ 17.

<u>Rolovich's Response, ECF No. 118 ¶ 38</u>: Rolovich is without sufficient information to agree or dispute with this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's lack of information is insufficient to create a dispute of fact and indicates that there is no "specific page or paragraph of the record where the disputed fact is found" and, therefore, no dispute of fact exists. LCR 56(c)(1)(C). *See also* General Objections 1 and 5.

**F.    The COVID-19 Vaccines**

39. <u>WSU's Fact, ECF No. 94 ¶ 39</u>: Between December 2020 and February 2021, the FDA issued Emergency Use Authorizations (EUAs) for three COVID-19 vaccines developed by Pfizer, Moderna, and Johnson & Johnson. Lynch Rep. ¶¶ 29–31.

<u>Rolovich's Response, ECF No. 118 ¶ 40</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

40. <u>WSU's Fact, ECF No. 94 ¶ 40</u>: The CDC considers the Pfizer and Moderna vaccines to be medically contraindicated only for persons "acutely allergic to their ingredients—specifically polyethylene glycol or polysorbate—

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 26
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    which is estimated to occur in only 2.5 to 11.1 cases per 1 million doses." *Id.*

2    ¶ 39.

3        <u>Rolovich's Response, ECF No. 118 ¶ 40</u>: For purposes of this Motion

4    alone, Rolovich does not dispute this statement.

5    **<u>WSU's Reply:</u>** No genuine dispute of material fact.

6        41.  <u>WSU's Fact, ECF No. 94 ¶ 41</u>: In 2021, the CDC found that the Pfizer

7    and Moderna vaccines provide greater protection—at a significantly lower risk—

8    than the "natural immunity" that can occur from being infected with COVID-19.

9    *Id.* ¶¶ 45–47.

10        <u>Rolovich's Response, ECF No. 118 ¶ 41</u>: For purposes of this Motion

11    alone, Rolovich does not dispute this statement.

12    **<u>WSU's Reply:</u>** No genuine dispute of material fact.

13        42.  <u>WSU's Fact, ECF No. 94 ¶ 42</u>: Researchers at the Yale School of Public

14    Health have estimated that, by the end of 2022, the COVID-19 vaccines

15    prevented over 3 million deaths and 18 million hospitalizations. *Id.* ¶ 60.

16        <u>Rolovich's Response, ECF No. 118 ¶ 42</u>: For purposes of this Motion

17    alone, Rolovich does not dispute this statement.

18    **<u>WSU's Reply:</u>** No genuine dispute of material fact.

19    **G.    WSU's Vaccination Policies**

20        43.  <u>WSU's Fact, ECF No. 94 ¶ 43</u>: On April 28, 2021, WSU announced that

21    it would require proof of vaccination for all employees and all students engaging

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 27
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    in activities at WSU campuses for the 2020–21 school year, as it prepared for a

2    robust in-person learning experience for the fall 2021 semester. Schulz Decl. ¶¶

3    19, 21, Exs. B–C.

4         Rolovich's Response, ECF No. 118 ¶ 43: For purposes of this Motion

5         alone, Rolovich does not dispute this statement.

6         **WSU's Reply:** No genuine dispute of material fact.

7    44.   WSU's Fact, ECF No. 94 ¶ 44: On May 21, 2021, Governor Inslee

8    issued Proclamation 20-25.13, which allowed fully vaccinated people to no

9    longer wear a face covering or socially distance in most public settings.

10   Declaration of Teddi Phares in Support of Defendant's Cross-MSJ (Phares Decl.)

11   ¶ 7.

12        Rolovich's Response, ECF No. 118 ¶ 44: For purposes of this Motion

13        alone, Rolovich does not dispute this statement.

14        **WSU's Reply:** No genuine dispute of material fact.

15   45.   WSU's Fact, ECF No. 94 ¶ 45: On May 26, 2021, WSU announced that

16   fully vaccinated students, employees, and visitors were no longer required to

17   wear a face covering or socially distance on WSU campuses. *Id.* ¶ 8.

18        Rolovich's Response, ECF No. 118 ¶ 45: For purposes of this Motion

19        alone, Rolovich does not dispute this statement.

20        **WSU's Reply:** No genuine dispute of material fact.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 28
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

46.   <u>WSU's Fact, ECF No. 94 ¶ 46</u>: On June 30, 2021, Governor Inslee issued Proclamation 20-12.3, which imposed certain restrictions on institutions of higher education (i.e., colleges and universities) offering in-person instruction unless they implemented a policy to create a "fully vaccinated campus." *Id.* ¶ 9. To qualify as a "fully vaccinated campus," an institution of higher education had to have a policy requiring students, staff, and faculty to be fully vaccinated against COVID-19, subject to medical, religious, or philosophical exemptions. *Id.*

<u>Rolovich's Response, ECF No. 118 ¶ 46</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

47.   <u>WSU's Fact, ECF No. 94 ¶ 47</u>: On August 2, 2021, WSU announced that all WSU employees who engaged in activities on a WSU worksite were required to either declare themselves fully vaccinated or request an exemption by August 23. *Id.* ¶ 10.

<u>Rolovich's Response, ECF No. 118 ¶ 47</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

48.   <u>WSU's Fact, ECF No. 94 ¶ 48</u>: To identify themselves as fully vaccinated, WSU employees attested through Workday, a cloud-based software platform used by WSU to manage human resources. *Id.*

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 29
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0073

1    Rolovich's Response, ECF No. 118 ¶ 48: For purposes of this Motion

2    alone, Rolovich does not dispute this statement.

3    **WSU's Reply:** No genuine dispute of material fact.

4    49.    WSU's Fact, ECF No. 94 ¶ 49: WSU employees could claim an

5    exemption to the vaccination requirement by asserting that they had a medical

6    reason or personal/religious reason precluding vaccination. *Id*. ¶ 11.

7    Rolovich's Response, ECF No. 118 ¶ 49: For purposes of this Motion

8    alone, Rolovich does not dispute this statement.

9    **WSU's Reply:** No genuine dispute of material fact.

10   **H.    Rolovich Expresses Concerns about the COVID-19 Vaccines**

11   50.    WSU's Fact, ECF No. 94 ¶ 50: Rolovich does not recall ever receiving

12   a vaccine of any kind as an adult. Coates Decl., Ex. A at 165:2–166:10. His

13   reasons for declining vaccinations included a belief in "natural immunity,"

14   concerns about "injecting something into" his body, and a tendency "to be much

15   more holistic and natural in any type of healing element." *Id*. at 166:11–168:8. In

16   Rolovich's deposition, he testified that he is "not a big fan of vaccines." *Id*. at

17   171:23.

18   Rolovich's Response, ECF No. 118 ¶ 50: Rolovich disputes WSU's

19   characterization of his reasons for declining vaccinations. Rolovich has

20   declined vaccinations over the years for many reasons. Rolovich Decl.. at

21   ¶ 15. In his deposition, Rolovich testified that he could not remember the

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 30
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**ER0074**

1    specific reason for declining the flu vaccine, and he possibly had multiple

2    reasons for doing so. Seese Decl. at ¶ 38, Exh. JJ.

3    **<u>WSU's Reply:</u>** No genuine dispute of material fact. WSU cites Rolovich's

4    deposition testimony to support this statement of fact, which Rolovich does

5    not dispute is accurate, and which cannot be disputed with a self-serving

6    declaration under the sham affidavit rule. Further, that Rolovich could not

7    recall specifically which reason he relied upon in declining the flu vaccine

8    does not create a dispute of fact regarding his testimony about his reasons

9    for rejecting vaccines generally. *See* General Objections 1, 5, and 6.

10    51.    <u>WSU's Fact, ECF No. 94 ¶ 51</u>: In his deposition, Rolovich testified that

11    his concerns with the COVID-19 vaccines included: (1) the "abnormal number"

12    of adverse health reactions "attributed to the COVID vaccine"; (2) the risk of

13    myocarditis, stroke, or other heart conditions; (3) the "novel technology" utilized

14    in the Pfizer and Moderna vaccines; and (4) the short development and approval

15    time period, which was a "minute percentage of the normal vaccine timeline." *Id.*

16    at 172:7–175:20.

17    <u>Rolovich's Response, ECF No. 118 ¶ 51</u>: Rolovich disputes WSU's

18    characterization of his deposition testimony regarding his concerns with

19    the COVID-19 vaccine. In his deposition, Rolovich tied his preference for

20    healthier, more natural products, as opposed to vaccines with potential side

21    effects (including the COVID-19 vaccine), to his religion, stating that

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 31
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    "God created the earth and there's a lot of things on the earth that are

2    natural remedies from many different cultures," and that he and his wife

3    would rather raise their family "in that world[.]" Rolovich Depo at 176:18-

4    178:2.

5    **WSU's Reply:** No genuine dispute of material fact. WSU cites Rolovich's

6    testimony to support this statement of fact, which Rolovich does not

7    dispute is accurate. Further, the additional testimony cited by Rolovich

8    does not create a dispute of fact regarding the statements from Rolovich's

9    deposition that are quoted in WSU's Paragraph 51. *See* General Objections

10    1 and 2.

11        52.    <u>WSU's Fact, ECF No. 94 ¶ 52</u>: Throughout the COVID-19 pandemic,

12    Rolovich shared with friends, family, and coworkers various media, memes, and

13    other materials opining that the virus did not present a significant public health

14    risk and that the pandemic was part of a conspiracy between government officials

15    and public figures like George Soros and Bill Gates. Declaration of Renée

16    DiResta in Support of Defendant's Cross-MSJ, Ex. A (DiResta Rep.) ¶ 48,

17    Attachment E; Chun Decl. ¶ 27, Dickert Decl. ¶ 42. Throughout late 2020 and

18    2021, in written communications with family members, friends, and coworkers,

19    Rolovich also expressed concerns regarding the COVID-19 vaccines, including

20    concerns about the vaccines' safety, efficacy, and regulatory approval processes.

21    DiResta Rep., Attachments A–F; Coates Decl. Exs. B–M.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 32
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(37 of 293), Page 37 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 37 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4795    Page 36
of 155

1    <u>Rolovich's Response, ECF No. 118 ¶ 52</u>: Rolovich disputes this statement

2    as his viewpoint on the COVID-19 virus changed and evolved throughout

3    the pandemic. Rolovich Decl. at ¶ 16. Expert opinions differed and advice

4    constantly was updated as society learned more about the virus and the

5    associated health risks.    *Id.*

6    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Whether Rolovich's

7    views on COVID-19 evolved and expert opinions regarding COVID-19

8    differed are irrelevant to whether Rolovich shared the opinions and

9    messages described in WSU's Paragraph 52. Additionally, WSU cites

10   communications produced by Rolovich in this action to support the facts

11   in WSU's Paragraph 52, which Rolovich does not dispute are accurate. *See*

12   *General Objections 1, 2, and 5.*

13   53.    <u>WSU's Fact, ECF No. 94 ¶ 53</u>: Before August 17, 2021, Rolovich

14   expressed some of those same concerns regarding the COVID-19 vaccines in

15   multiple communications between with then-Athletics Director Chun, then-

16   Deputy Athletics Director Bryan Blair, and then-WSU defensive coordinator

17   Jake Dickert. Coates Decl., Ex. A at 258:11–259:1; Chun Decl. ¶¶ 35–36; Dickert

18   Decl. ¶¶ 42–43. In those communications between, Rolovich did not mention any

19   religiously based objection to the COVID-19 vaccines. Chun Decl. ¶¶ 48, 61;

20   Dickert Decl. ¶ 42; Coates Decl., Ex. A at 259:2–261:22.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 33
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    <u>Rolovich's Response, ECF No. 118 ¶ 53</u>: Rolovich disputes this statement

2    as his viewpoint on the COVID-19 virus changed and evolved throughout

3    the pandemic. Id. Expert opinions differed and advice constantly was

4    updated as society learned more about the virus and the associated health

5    risks. *Id*.

6    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Whether Rolovich's

7    views on COVID-19 evolved and expert opinions regarding COVID-19

8    differed are irrelevant to whether Rolovich engaged in the communications

9    described in WSU's Paragraph 53 and Rolovich does not cite any "specific

10   page or paragraph of the record" that disputes these facts. LCR

11   56(c)(1)(C). Additionally, WSU cites Rolovich's testimony to support this

12   statement of fact, which Rolovich does not dispute is accurate. *See* General

13   Objections 1, 2, and 5.

14       54.   <u>WSU's Fact, ECF No. 94 ¶ 54</u>: None of Rolovich's written

15   communications before August 17, 2021, stated that he had a religiously based

16   objection to the COVID-19 vaccines. *See* DiResta Rep. ¶¶ 50–53; Coates Decl.,

17   Exs. B–M.

18       <u>Rolovich's Response, ECF No. 118 ¶ 54</u>: Rolovich's written

19   communications speak for themselves.

20   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

21   any "specific page or paragraph of the record where the disputed fact is

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 34
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

2    *See also* General Objections 1 and 3.

3  **I.    Rolovich's Meeting with Dr. Guy Palmer**

4      55.  WSU's Fact, ECF No. 94 ¶ 55: Because Rolovich had expressed

5  concerns about the safety and efficacy of the vaccines, Chun set up a meeting

6  between Rolovich and Dr. Guy Palmer, an expert in pathology and infectious

7  disease and the Chief Science Advisor for WSU's COVID-19 response. Chun

8  Decl. ¶ 36; Palmer Decl. ¶ 25.

9      Rolovich's Response, ECF No. 118 ¶ 55: For purposes of this Motion

10     alone, Rolovich does not dispute this statement.

11     **WSU's Reply:** No genuine dispute of material fact.

12     56.  WSU's Fact, ECF No. 94 ¶ 56: Dr. Palmer met with Rolovich by Zoom

13  on April 21, 2021. Palmer Decl. ¶ 26.

14     Rolovich's Response, ECF No. 118 ¶ 56: For purposes of this Motion

15     alone, Rolovich does not dispute this statement.

16     **WSU's Reply:** No genuine dispute of material fact.

17     57.  WSU's Fact, ECF No. 94 ¶ 57: In the meeting, Rolovich expressed

18  concerns about the COVID-19 vaccines that were circulating online and on social

19  media at the time. *Id.* ¶ 27.

20     Rolovich's Response, ECF No. 118 ¶ 57: For purposes of this Motion

21     alone, Rolovich does not dispute this statement.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 35
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0079

1    **WSU's Reply:** No genuine dispute of material fact.

2    58.   WSU's Fact, ECF No. 94 ¶ 58: These included that the vaccines were

3    authorized as "experimental" and had been "rushed;" that they were "new" and

4    "untested" for safety; that the vaccines could "change one's genes;" that the

5    vaccines were somehow contaminated; that the vaccines could cause COVID-19;

6    and that there were "chronic" effects of vaccination. *Id.*

7        Rolovich's Response, ECF No. 118 ¶ 58: For purposes of this Motion

8        alone, Rolovich does not dispute this statement.

9    **WSU's Reply:** No genuine dispute of material fact.

10   59.   WSU's Fact, ECF No. 94 ¶ 59: Dr. Palmer stated that none of these

11   concerns were supported by scientific or medical research. *Id.*

12       Rolovich's Response, ECF No. 118 ¶ 59: For purposes of this Motion

13       alone, Rolovich does not dispute this statement.

14   **WSU's Reply:** No genuine dispute of material fact.

15   60.   WSU's Fact, ECF No. 94 ¶ 60: He also explained how mRNA vaccines

16   like the COVID-19 vaccines work and that they are the product of many years of

17   research and testing. *Id.*

18       Rolovich's Response, ECF No. 118 ¶ 60: For purposes of this Motion

19       alone, Rolovich does not dispute this statement.

20   **WSU's Reply:** No genuine dispute of material fact.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 36
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

61.   <u>WSU's Fact, ECF No. 94 ¶ 61</u>: At no point did Rolovich raise any concerns about the vaccines with Dr. Palmer that were rooted in his religious beliefs, nor did he mention religion at all. *Id.* ¶ 29.

<u>Rolovich's Response, ECF No. 118 ¶ 61</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

62.   <u>WSU's Fact, ECF No. 94 ¶ 62</u>: Rolovich did not ask Dr. Palmer about the role of fetal stem cells in the vaccine development and production process. *Id.*

<u>Rolovich's Response, ECF No. 118 ¶ 62</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

63.   <u>WSU's Fact, ECF No. 94 ¶ 63</u>: On April 30, 2021, Dr. Palmer presented a scientific overview of the development, safety, and efficacy of the COVID-19 vaccines, with an emphasis on the mRNA vaccines, to a wider group of the Athletics Department, including Rolovich. *Id.* ¶ 31.

<u>Rolovich's Response, ECF No. 118 ¶ 63</u>: For purposes of this Motion alone, Rolovich does not dispute this statement.

**<u>WSU's Reply:</u>** No genuine dispute of material fact.

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 37
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0081

1        64.    <u>WSU's Fact, ECF No. 94 ¶ 64</u>: Dr. Palmer also explained how

2 remarkably effective the vaccines were, and how there was no risk of them

3 causing a COVID-19 infection. *Id.* ¶ 33, 35.

4        <u>Rolovich's Response, ECF No. 118 ¶ 64</u>: For purposes of this Motion

5        alone, Rolovich does not dispute this statement.

6        **<u>WSU's Reply:</u>** No genuine dispute of material fact.

7        65.    <u>WSU's Fact, ECF No. 94 ¶ 65</u>: Rolovich did not ask any questions or

8 make any statements during Dr. Palmer's presentation on April 30, 2021. *Id.* ¶

9 36.

10        <u>Rolovich's Response, ECF No. 118 ¶ 65</u>: For purposes of this Motion

11        alone, Rolovich does not dispute this statement.

12        **<u>WSU's Reply:</u>** No genuine dispute of material fact.

13 **J.**     **Rolovich Reiterates His Concerns About Vaccination to Chun**

14        66.    <u>WSU's Fact, ECF No. 94 ¶ 66</u>: On May 24, 2021, Chun and Rolovich

15 met in Rolovich's office. Rolovich reiterated his earlier position that he did not

16 intend to be vaccinated against COVID-19. Coates Decl., Ex. N; Chun Decl. ¶ 41.

17 Rolovich again stated that he was afraid of the COVID-19 vaccines because of

18 possible adverse effects on his health. Coates Decl., Ex. N; Chun Decl. ¶ 41.

19 Rolovich also expressed doubts over the origin of the COVID-19 pandemic.

20 Chun Decl. ¶ 41. Rolovich did not raise any religious objection to vaccination in

21 this May 24 meeting. *Id.*

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 38
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(43 of 293), Page 43 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 43 of 293
Case 2:22-cv-00319-TOR     ECF No. 127    filed 11/18/24    PageID.4801     Page 42
of 155

1    Rolovich's Response, ECF No. 118 ¶ 66: For purposes of this Motion

2    alone, Rolovich does not dispute this statement.

3    **WSU's Reply:** No genuine dispute of material fact.

4    67.    WSU's Fact, ECF No. 94 ¶ 67: At their meeting on May 24, 2021, Chun

5    stated that in-person recruiting would be permitted to resume under NCAA rules

6    on June 1. *Id.*; Coates Decl., Ex. N. However, unvaccinated coaches traveling

7    outside Whitman County would be required to quarantine for five days upon their

8    return to campus. Chun Decl. ¶ 42, Exs. A & B; Coates Decl., Ex. N.

9    Rolovich's Response, ECF No. 118 ¶ 67: This statement undermines

10   WSU's position that Rolovich could not recruit in-person. While it was not

11   a required means to recruit football players, Rolovich could have done so.

12   Rolovich Decl. at ¶ 6.

13   **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

14   fails to directly address WSU's asserted facts or provide record citations

15   to dispute the facts stated in WSU's Paragraph 67 beyond a self-serving

16   declaration, which is insufficient to create a dispute of fact. Rolovich's

17   response does not address the rules applicable to in-person recruiting as

18   described in WSU's Paragraph 67 and, therefore, there is no dispute of

19   fact. *See* General Objections 1, 2, and 6.

20   68.    WSU's Fact, ECF No. 94 ¶ 68: In 2021, state, county, and school district

21   authorities where Rolovich conducted his few recruiting visits imposed stringent

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 39
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1   COVID-19 safety measures, such as mandatory masking and social distancing.

2   McCoy Decl. ¶ 49, Exs. D, E. Several of these jurisdictions restricted or barred

3   unvaccinated visitors from accessing school facilities. *Id.*

4       Rolovich's Response, ECF No. 118 ¶ 68: Rolovich was significantly

5       hindered to conduct recruiting visits under NCAA rules. Seese Decl. ¶¶ 3-

6       8, Exhs. B-G.

7       **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

8       does not address WSU's asserted facts, does not address the "safety

9       measures" imposed by "state, county, and school district authorities" as

10      described in WSU's Paragraph 68 and, therefore, there is no dispute of

11      fact. *See* General Objection 2.

12  69.   WSU's Fact, ECF No. 94 ¶ 69: With WSU's football team starting

13  training camp in June 2021, it would not have been practical for Rolovich to

14  quarantine for five-day periods were he to leave Whitman County. Chun Decl.

15  ¶ 40. Rolovich therefore did not leave campus for the purpose of recruiting

16  between January 1 and September 30, 2021. Declaration of Brad Corbin in

17  Support of Def.'s Cross-MSJ (Corbin Decl.) ¶ 7, Ex. C. Rolovich's combined

18  recruiting efforts in 2020 and 2021 lagged behind those of his successor, Jake

19  Dickert, over a similar length of time. *Id.* ¶¶ 6–9, Exs. A–D.

20      Rolovich's Response, ECF No. 118 ¶ 69: Rolovich objects to the

21      ambiguous and undefined term "lagged behind". Subject to that objection,

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 40
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(45 of 293), Page 45 of 293   Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 45 of 293
Case 2:22-cv-00319-TOR   ECF No. 127   filed 11/18/24   PageID.4803   Page 44
of 155

1    Rolovich disputes WSU's characterization that his recruiting efforts in

2    2020 and 2021 "lagged behind" those of his successor over a similar length

3    of time. Rolovich Decl. at ¶ 8. Rolovich engaged in extensive recruiting

4    efforts during that time. *Id*. Rolovich also disputes any characterization of

5    this statement as implying that differences in recruiting activity between

6    Rolovich and his successor would have been due solely to his vaccination

7    status, as opposed to any other potential factors related to the COVID-19

8    pandemic. *Id*. at ¶ 9.

9    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's objection

10   to terms does not cite any "specific page or paragraph of the record where

11   the disputed fact is found" and, therefore, does not create a dispute of fact.

12   LCR 56(c)(1)(C). Rolovich's response consists entirely of argument that

13   is not responsive to WSU's asserted fact and is therefore insufficient and

14   does not create a dispute of fact regarding the facts stated in WSU's

15   Paragraph 69. Further, Rolovich's response fails to provide record citations

16   to dispute the facts stated in WSU's Paragraph 69 beyond a self-serving

17   declaration, which is insufficient to create a dispute of fact. *See* General

18   Objections 1, 2, and 6.

19   70.   <u>WSU's Fact, ECF No. 94 ¶ 70</u>: In 2021, Rolovich's only off-campus

20   recruiting activity was observing a high school football game in the Bay Area on

21   October 1, 2021, in connection with the WSU football team's trip to California

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 41
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(46 of 293), Page 46 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 46 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4804    Page 45
of 155

1   for its October 2 game against the University of California-Berkeley. *Id.*; Coates

2   Decl., Ex. A at 55:1–57:3.

3      Rolovich's Response, ECF No. 118 ¶ 72: For purposes of this Motion

4   alone, Rolovich does not dispute this statement.

5   **WSU's Reply:** No genuine dispute of material fact.

6      71.   WSU's Fact, ECF No. 94 ¶ 71: On May 27, 2021, Chun and Rolovich

7   met again. Coates Decl., Ex. N. Rolovich again repeated his objections to the

8   COVID-19 vaccines based on his belief that they were not safe. *Id.*; Chun Decl.

9   ¶ 43. Rolovich did not mention religion or any religious objections to

10   vaccination. Chun Decl. ¶ 43.

11      Rolovich's Response, ECF No. 118 ¶ 73: For purposes of this Motion

12   alone, Rolovich does not dispute this statement.

13   **WSU's Reply:** No genuine dispute of material fact.

14   **K.**    **Rolovich Publicly Announces Decision Not to Be Vaccinated**

15      72.   WSU's Fact, ECF No. 94 ¶ 72: Each year, every NCAA conference

16   holds a football media day before the start of the season for teams to discuss the

17   upcoming season and promote their football programs. Chun Decl. ¶ 45.

18      Rolovich's Response, ECF No. 118 ¶ 74: For purposes of this Motion

19   alone, Rolovich does not dispute this statement.

20   **WSU's Reply:** No genuine dispute of material fact.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 42
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(47 of 293), Page 47 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 47 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4805    Page 46
of 155

1    73.   WSU's Fact, ECF No. 94 ¶ 73: In 2021, the football media day for the

2    Pac-12 conference, of which WSU is a member, was scheduled to take place in

3    Los Angeles on July 27. *Id.*

4    Rolovich's Response, ECF No. 118 ¶ 75: For purposes of this Motion

5    alone, Rolovich does not dispute this statement.

6    **WSU's Reply:** No genuine dispute of material fact.

7    74.   WSU's Fact, ECF No. 94 ¶ 74: On June 10, 2021, the Pac-12 conference

8    announced that all media day attendees would be required to be vaccinated

9    against COVID-19. Chun Decl. ¶ 46.

10    Rolovich's Response, ECF No. 118 ¶ 76: For purposes of this Motion

11    alone, Rolovich does not dispute this statement.

12    **WSU's Reply:** No genuine dispute of material fact.

13    75.   WSU's Fact, ECF No. 94 ¶ 75: Following the Pac-12's announcement,

14    Chun met with Rolovich to notify him of the Pac-12's vaccination requirement

15    and discuss next steps. *Id.*

16    Rolovich's Response, ECF No. 118 ¶ 77: For purposes of this Motion

17    alone, Rolovich does not dispute this statement.

18    **WSU's Reply:** No genuine dispute of material fact.

19    76.   WSU's Fact, ECF No. 94 ¶ 76: During that meeting, Rolovich confirmed

20    that his concerns about the COVID-19 vaccines had not changed, nor would his

21    vaccination status. Chun Decl. ¶ 46.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 43
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(48 of 293), Page 48 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 48 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4806    Page 47
of 155

1    Rolovich's Response, ECF No. 118 ¶ 78: For purposes of this Motion

2    alone, Rolovich does not dispute this statement.

3    **WSU's Reply:** No genuine dispute of material fact.

4    77.    WSU's Fact, ECF No. 94 ¶ 77: On July 21, 2021, Rolovich released a

5    public statement via his personal Twitter (now X) account. Chun Decl. ¶ 49, Ex.

6    D.

7    Rolovich's Response, ECF No. 118 ¶ 79: For purposes of this Motion

8    alone, Rolovich does not dispute this statement.

9    **WSU's Reply:** No genuine dispute of material fact.

10    78.    WSU's Fact, ECF No. 94 ¶ 78: In his tweet, Rolovich stated: "I have

11    elected not to receive a COVID-19 vaccine for reasons which will remain private.

12    While I have made my own decision, I respect that every individual—including

13    our coaches, staff and student-athletes—can make his or her own decision

14    regarding the COVID-19 vaccine." Chun Decl., Ex. D.

15    Rolovich's Response, ECF No. 118 ¶ 80: The tweet speaks for itself. This

16    tweet was statement drafted by WSU, which it requested Rolovich posted

17    on his Twitter (now X) account. Rolovich Decl. ¶ 17. Further, Rolovich

18    read WSU's prepared statement as part of Pac-12 media days. Rolovich

19    Decl. ¶ *Id.* Seese Decl. ¶ 9, Exh. H.

20    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not

21    dispute that the tweet cited in WSU's Paragraph 78 is accurate. Rolovich's

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 44
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(49 of 293), Page 49 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 49 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4807    Page 48
of 155

1       additional facts are not relevant to the content of Rolovich's tweet as

2       described in WSU's Paragraph 78 and do not create a dispute of fact.

3       Further, Rolovich's response fails to provide record citations to dispute the

4       facts stated in WSU's Paragraph 78 beyond a self-serving declaration,

5       which is insufficient to create a dispute of fact. *See* General Objections 1,

6       2, 3, and 6.

7       79.   WSU's Fact, ECF No. 94 ¶ 79: Rolovich's announcement resulted in

8    significant negative media attention—both locally and nationally—relating to his

9    decision not to get vaccinated. Chun Decl. ¶ 50, Exs. E, F; Schulz Decl. ¶ 27.

10      Rolovich's Response, ECF No. 118 ¶ 81: Rolovich objects to the

11      ambiguous and undefined term, "significant negative". Subject to that

12      objection, Rolovich does not dispute that his decision not to get vaccinated

13      received media attention.

14      **WSU's Reply:** No genuine dispute of material fact. Rolovich's objection

15      to terms does not cite any "specific page or paragraph of the record where

16      the disputed fact is found" and, therefore, does not create a dispute of fact.

17      LCR 56(c)(1)(C). *See* General Objections 1 and 2.

18      80.   WSU's Fact, ECF No. 94 ¶ 80: Rolovich's announcement and the

19   resulting media coverage caught the attention of alumni, donors, and others in the

20   WSU community, many of whom expressed their disapproval of Rolovich's

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 45
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0089

(50 of 293), Page 50 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 50 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4808    Page 49
of 155

1  stance and threatened to withhold donations to WSU over his decision. Schulz

2  Decl. ¶ 28, Ex. D; Chun Decl. ¶¶ 50, 53 & Exs. G, H, I, J, & K.

3      <u>Rolovich's Response, ECF No. 118 ¶ 82</u>: Rolovich disputes that all of the

4  alumni, donors and other in the WSU community expressed disapproval.

5  Rolovich Decl. at ¶ 18. Rolovich received positive comments from many

6  in the WSU community in light of his decision. Id. This was a highly

7  contested issue, of which most of the country was divided. Id. To believe

8  that the feedback was all negative is disingenuous. Seese Decl. ¶ 10, Exh.

9  I.

10  **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

11  reflects a misunderstanding of the statement in WSU's Paragraph 80,

12  which does not state that "all" alumni, donors, and others in the WSU

13  community expressed disapproval, but that "many" did. That Rolovich

14  received some positive feedback is not responsive to the facts described in

15  WSU's Paragraph 80 and does not create a dispute of fact. Further,

16  Rolovich's response relies on a self-serving declaration, which is

17  insufficient to create a dispute of fact. *See* General Objections 1, 2, and 6.

18      81.  <u>WSU's Fact, ECF No. 94 ¶ 81</u>: Because of donor uproar and other local

19  health restrictions on the unvaccinated, WSU had to cancel a number of

20  previously scheduled in-person donor events for that Rolovich was scheduled to

21  attend, including the "Kickoff with the Cougs" event on August 26, 2021, donor

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 46
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0090

1    dinners, and the Coaches' Luncheon held on Fridays before home games. Chun

2    Decl. ¶ 70; Declaration of Mitchell Straub in Support of Defendant's Cross-MSJ

3    (Straub Decl.) ¶ 12.

4        <u>Rolovich's Response, ECF No. 118 ¶ 83</u>: Rolovich objects to the

5    ambiguous and undefined term, "donor uproar". Subject to that objection,

6    Rolovich contends that many of these school sponsored events could have

7    been held remotely. Rolovich Decl. at ¶ 11, 18. Further, Rolovich was not

8    approached by WSU for any alternative options to accommodate his

9    attendance at 2021 in-person events, or events for donor events. *Id.* at ¶ 11,

10   19. In 2020, Rolovich participated in several Zoom dinners for donors.

11   Rolovich Decl. ¶ 20. This option was not provided to Rolovich in 2021. *Id.*

12   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's objection

13   to terms does not cite any "specific page or paragraph of the record where

14   the disputed fact is found" and, therefore, does not create a dispute of fact.

15   LCR 56(c)(1)(C). Further, Rolovich's response does not address the facts

16   described in WSU's Paragraph 81 and, therefore, creates no dispute of fact.

17   Additionally, Rolovich's response fails to provide record citations to

18   dispute the facts stated in WSU's Paragraph 81 beyond a self-serving

19   declaration, which is insufficient to create a dispute of fact. *See* General

20   Objections 1, 2, and 6.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 47
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

82.   WSU's Fact, ECF No. 94 ¶ 82: At the Pac-12 football media day event, Rolovich was the only participant out of 36 football coaches and student-athletes to participate remotely; all other coaches and players attended the event in person. Chun Decl. ¶ 55.

Rolovich's Response, ECF No. 118 ¶ 84: For purposes of this Motion alone, Rolovich does not dispute this statement.

**WSU's Reply:** No genuine dispute of material fact.

**L.    The Delta Surge**

83.   WSU's Fact, ECF No. 94 ¶ 83: Rolovich's vaccination announcement in late July 2021 coincided with the highly infectious "Delta variant" becoming the dominant strain of COVID-19 in Washington and worldwide. Lynch Rep. ¶ 62.

Rolovich's Response, ECF No. 118 ¶ 85: For purposes of this Motion alone, Rolovich does not dispute this statement.

**WSU's Reply:** No genuine dispute of material fact.

84.   WSU's Fact, ECF No. 94 ¶ 84: According to Washington State Department of Health (DOH) data, Delta caused Washington's seven-day average case rate to jump from 375 per day on July 3, 2021, to a then-high of 3,476 per day on August 31, 2021. Lynch Rep. ¶¶ 22, 62, Ex. B at 5.

Rolovich's Response, ECF No. 118 ¶ 86: For purposes of this Motion alone, Rolovich does not dispute this statement.

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 48
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0092

(53 of 293), Page 53 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 53 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4811    Page 52
of 155

1    **WSU's Reply:** No genuine dispute of material fact.

2    85.   WSU's Fact, ECF No. 94 ¶ 85: According to DOH data, hospital

3    admissions due to COVID-19 also increased dramatically, from a low average of

4    29 new hospitalizations per day on June 16, 2021, to an average of 190 new

5    hospitalizations per day by August 27. *Id. ¶* 24, Ex. B at 5. Deaths increased

6    rapidly, too, reaching 27 per day on August 28 after varying between 5 and 10

7    per day from March through late July. *Id.*, Ex. B at 5.

8    Rolovich's Response, ECF No. 118 ¶ 87: For purposes of this Motion

9    alone, Rolovich does not dispute this statement.

10   **WSU's Reply:** No genuine dispute of material fact.

11   86.   WSU's Fact, ECF No. 94 ¶ 86: Hospitals across the state were

12   attempting to avoid rationing care in response to these climbing admissions. *Id.*

13   ¶ 25.

14   Rolovich's Response, ECF No. 118 ¶ 88: For purposes of this Motion

15   alone, Rolovich does not dispute this statement.

16   **WSU's Reply:** No genuine dispute of material fact.

17   87.   WSU's Fact, ECF No. 94 ¶ 87: According to CDC data in summer and

18   fall of 2021, the COVID-19 vaccines proved highly effective at preventing the

19   virus's spread and severe disease, including with the Delta variant. *Id.* ¶ 64.

20   Rolovich's Response, ECF No. 118 ¶ 89: For purposes of this Motion

21   alone, Rolovich does not dispute this statement.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 49
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    **WSU's Reply:** No genuine dispute of material fact.

2    88.    <u>WSU's Fact, ECF No. 94 ¶ 88</u>: According to a September 2021 CDC

3    report (when Delta was dominant), unvaccinated people were 5 times more likely

4    to contract, 10 times more likely to be hospitalized with, and 10 times more likely

5    to die from COVID-19 than those who were fully vaccinated. *Id.*

6    <u>Rolovich's Response, ECF No. 118 ¶ 90</u>: For purposes of this Motion

7    alone, Rolovich does not dispute this statement.

8    **WSU's Reply:** No genuine dispute of material fact.

9    89.    <u>WSU's Fact, ECF No. 94 ¶ 89</u>: In August 2021, the CDC stated: "[t]he

10   Delta variant causes more infections and spreads faster than earlier forms of the

11   virus that causes COVID-19," but "[v]accines continue to reduce a person's risk

12   of contracting the virus that causes COVID-19, including this variant." *Id.*

13   <u>Rolovich's Response, ECF No. 118 ¶ 91</u>: For purposes of this Motion

14   alone, Rolovich does not dispute this statement.

15   **WSU's Reply:** No genuine dispute of material fact.

16   90.    <u>WSU's Fact, ECF No. 94 ¶ 90</u>: In September of 2021, 95% of

17   hospitalized COVID-19 patients were unvaccinated, and data suggested that the

18   Delta variant was more likely to cause severe illness in unvaccinated individuals

19   than earlier variants of the virus. *Id.* ¶ 62.

20   <u>Rolovich's Response, ECF No. 118 ¶ 92</u>: For purposes of this Motion

21   alone, Rolovich does not dispute this statement.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 50
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(55 of 293), Page 55 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 55 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4813    Page 54
of 155

1    **WSU's Reply:** No genuine dispute of material fact.

2    **M.    Proclamation 21-14**

3    91.    WSU's Fact, ECF No. 94 ¶ 91: In the summer of 2021, Governor Inslee

4    issued several iterations of Proclamation 21-14 (the Proclamation). Palmer Rep.

5    ¶ 24; Lynch Rep. ¶ 61.

6        Rolovich's Response, ECF No. 118 ¶ 93: The Governor's proclamations

7        speak for themselves.

8        **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

9        any "specific page or paragraph of the record where the disputed fact is

10       found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

11       *See also* General Objections 1 and 3.

12   92.    WSU's Fact, ECF No. 94 ¶ 92: As originally adopted on August 9, 2021,

13   the Proclamation prohibited healthcare providers and most state employees—

14   although not yet those working in higher education—from working after October

15   18, 2021, without being fully vaccinated against COVID-19. Lynch Rep. ¶ 61;

16   Schulz Decl. ¶ 29; Office of Wash. Governor Jay Inslee, *Proclamations*, Procl.

17   21-14,    https://governor.wa.gov/sites/default/files/proclamations/21-14%20-

18   %20COVID-19%20Vax%20Washington%20%28tmp%29.pdf (last visited Oct.

19   11, 2024).

20       Rolovich's Response, ECF No. 118 ¶ 94: The proclamations speak for

21       themselves.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 51
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

2    any "specific page or paragraph of the record where the disputed fact is

3    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

4    *See also* General Objections 1 and 3.

5    93.    <u>WSU's Fact, ECF No. 94 ¶ 93</u>: On August 18, 2021, Governor Inslee

6    announced that he would be expanding the Proclamation to include educational

7    workers, including employees working in four-year institutions of higher

8    education. Schulz Decl. ¶ 31; ECF No. 89 ¶ 17.

9    <u>Rolovich's Response, ECF No. 118 ¶ 101</u>: For purposes of this Motion

10    alone, Rolovich does not dispute this statement.

11    **<u>WSU's Reply:</u>** No genuine dispute of material fact.

12    94.    <u>WSU's Fact, ECF No. 94 ¶ 94</u>: On August 20, 2021, Governor Inslee

13    issued Proclamation 21-14.1, which expanded the Proclamation to educational

14    workers, including all WSU employees. Office of Wash. Governor Jay Inslee,

15    *Proclamations*,    Procl.    21-14.1,

16    https://governor.wa.gov/sites/default/files/proclamations/21-14.1%20-

17    %20COVID-19%20Vax%20Washington%20Amendment.pdf (last visited Oct.

18    11, 2024).

19    <u>Rolovich's Response, ECF No. 118 ¶ 102</u>: The proclamation speaks for

20    itself.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 52
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(57 of 293), Page 57 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 57 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4815    Page 56
of 155

1    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

2    any "specific page or paragraph of the record where the disputed fact is

3    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

4    *See also* Objections 1 and 3.

5    95.    <u>WSU's Fact, ECF No. 94 ¶ 95</u>: The Proclamation required covered

6    employers to provide reasonable accommodations for religious- or medical-

7    based objections to the COVID-19 vaccines as required by state and federal

8    antidiscrimination statutes. Procl. 21-14.2 at 5–6. This superseded WSU's

9    employee vaccination policy in effect at the time, which allowed for exemptions

10    for non-religious philosophical/personal reasons. Phares Decl. ¶¶ 7, 12.

11    <u>Rolovich's Response, ECF No. 118 ¶ 103</u>: The proclamation speaks for

12    itself.

13    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

14    any "specific page or paragraph of the record where the disputed fact is

15    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

16    *See also* General Objections 1 and 3.

17    **N.    WSU's Implementation of the Proclamation**

18    96.    <u>WSU's Fact, ECF No. 94 ¶ 96</u>: On September 1, 2021, HRS sent an

19    email to all WSU employees outlining the requirements of the Proclamation and

20    HRS's vaccination verification and religious accommodation process. Phares

21    Decl. ¶ 15 & Ex. A.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 53
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Rolovich's Response, ECF No. 118 ¶ 105: For purposes of this Motion

2    alone, Rolovich does not dispute this statement.

3    **WSU's Reply:** No genuine dispute of material fact.

4    97.    WSU's Fact, ECF No. 94 ¶ 97: To implement the Proclamation, WSU

5    instructed employees to provide proof of vaccination or request an

6    accommodation by October 4, 2021, the last day to get the final dose to be

7    considered fully vaccinated by the October 18 deadline. *Id.* ¶ 16.

8    Rolovich's Response, ECF No. 118 ¶ 106: For purposes of this Motion

9    alone, Rolovich does not dispute this statement.

10    **WSU's Reply:** No genuine dispute of material fact.

11    98.    WSU's Fact, ECF No. 94 ¶ 98: Employees who declared that they were

12    fully vaccinated for COVID-19 were required to provide proof of their

13    vaccination status (i.e., vaccination cards, but not self-attestation) to their

14    managers for review. *Id.* ¶ 17.

15    Rolovich's Response, ECF No. 118 ¶ 107: For purposes of this Motion

16    alone, Rolovich does not dispute this statement.

17    **WSU's Reply:** No genuine dispute of material fact.

18    99.    WSU's Fact, ECF No. 94 ¶ 99: If an employee indicated on Workday

19    that they were requesting an accommodation, HRS was notified of the request

20    via Workday and emailed an exemption request form directly to the employee's

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 54
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(59 of 293), Page 59 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 59 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4817    Page 58
of 155

1   work email, which the employee was required to complete and return to HRS via

2   email. *Id*. ¶ 18.

3       <u>Rolovich's Response, ECF No. 118 ¶ 108</u>: For purposes of this Motion

4       alone, Rolovich does not dispute this statement.

5       **<u>WSU's Reply:</u>** No genuine dispute of material fact.

6     100. <u>WSU's Fact, ECF No. 94 ¶ 100</u>: After redacting all identifying

7   information from the employee's religious exemption request form, a redacted

8   version of the form was submitted to two members of a four-person committee

9   for review. *Id*. ¶ 19.

10       <u>Rolovich's Response, ECF No. 118 ¶ 109</u>: For purposes of this Motion

11       alone, Rolovich does not dispute this statement.

12       **<u>WSU's Reply:</u>** No genuine dispute of material fact.

13     101. <u>WSU's Fact, ECF No. 94 ¶ 101</u>: If the committee determined that the

14   employee's religious exemption request form adequately stated a religiously

15   based conflict with COVID-19 vaccination, the employee's request proceeded to

16   the second phase of the review process, the reasonable accommodation review.

17   *Id*. ¶ 21.

18       <u>Rolovich's Response, ECF No. 118 ¶ 111</u>: Rolovich disputes that this was

19       the articulated, published, blind review process.

20       **<u>WSU's Reply:</u>** No genuine dispute of material fact.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 55
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(60 of 293), Page 60 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 60 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4818    Page 59
of 155

1    102. <u>WSU's Fact, ECF No. 94 ¶ 102</u>: In the second phase of the

2    accommodation process, HRS requested that the employee's department make a

3    determination of whether accommodating the employee would impose an undue

4    hardship on the University. *Id*. ¶ 22.

5    <u>Rolovich's Response, ECF No. 118 ¶ 116</u>: Rolovich disputes that this was

6    the articulated, published, blind review process.

7    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

8    any "specific page or paragraph of the record where the disputed fact is

9    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

10    *See also* General Objections 1 and 2.

11    103. <u>WSU's Fact, ECF No. 94 ¶ 103</u>: In many cases, HRS also notified WSU

12    Employee Health & Safety (EH&S) of the employee's accommodation request,

13    and EH&S provided HRS and the employing department with a health and safety

14    review of the requested accommodation. *Id*. ¶ 24.

15    <u>Rolovich's Response, ECF No. 118 ¶ 117</u>: Rolovich disputes this

16    statement as he was never afforded an opportunity to engage with his

17    employing department to discuss an accommodation request. Rolovich

18    Decl. at ¶ 21.

19    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

20    does not directly address WSU's asserted facts and does not address the

21    process described in WSU's Paragraph 103 and, therefore, there is no

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 56
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    dispute of fact. Further, Rolovich's response fails to provide record

2    citations to dispute the facts stated in WSU's Paragraph 103 beyond a self-

3    serving and unrelated declaration, which is insufficient to create a dispute

4    of fact. *See* General Objections 1, 2 and 6.

5    104. WSU's Fact, ECF No. 94 ¶ 104: Specifically, EH&S provided

6    recommendations    for    reasonable    and    necessary    interventions    and

7    countermeasures that were the minimum steps that WSU would have to take to

8    be in compliance with regulatory guidelines. *Id.*; Coates Decl., Ex. O at 31:5–20.

9    Rolovich's Response, ECF No. 118 ¶ 118: Rolovich disputes this

10    statement as he was never afforded an opportunity to engage with his

11    employing department to discuss an accommodation request. *Id.*

12    **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

13    does not directly address WSU's asserted facts and does not address the

14    process described in WSU's Paragraph 104 and, therefore, there is no

15    dispute of fact. Further, Rolovich's response fails to provide record

16    citations to dispute the facts stated in WSU's Paragraph 104 beyond a self-

17    serving and unrelated declaration, which is insufficient to create a dispute

18    of fact. *See* General Objections 1, 2 and 6.

19    105. WSU's Fact, ECF No. 94 ¶ 105: After reviewing the employee's

20    position description, essential job functions, and any other pertinent information,

21    the employing department notified HRS whether an accommodation would pose

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 57
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0101

(62 of 293), Page 62 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 62 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4820    Page 61
of 155

1    an undue hardship to the employing department or the University. Phares Decl. ¶

2    25.

3            Rolovich's Response, ECF No. 118 ¶ 119: Rolovich disputes this

4    statement as he was never afforded an opportunity to engage with his

5    employing department to discuss an accommodation request. *Id.*

6    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

7    does not address WSU's asserted facts and does not address the process

8    described in WSU's Paragraph 105 and, therefore, there is no dispute of

9    fact. Further, Rolovich's response fails to provide record citations to

10   dispute the facts stated in WSU's Paragraph 105 beyond a self-serving and

11   unrelated declaration, which is insufficient to create a dispute of fact. *See*

12   General Objections 1, 2 and 6.

13       106.  WSU's Fact, ECF No. 94 ¶ 106: HRS would then notify the employee

14   of WSU's decision. *Id.* ¶ 26.

15           Rolovich's Response, ECF No. 118 ¶ 122: Rolovich disputes this

16   statement as he was never afforded an opportunity to engage with his

17   employing department to discuss an accommodation request. *Id.*

18   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

19   does not address WSU's asserted facts and does not address the process

20   described in WSU's Paragraph 106 and, therefore, there is no dispute of

21   fact. Further, Rolovich's response fails to provide record citations to

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 58
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0102

(63 of 293), Page 63 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 63 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4821    Page 62
of 155

1    dispute the facts stated in WSU's Paragraph 106 beyond a self-serving and

2    unrelated declaration, which is insufficient to create a dispute of fact. *See*

3    General Objections 1, 2 and 6.

4    **O.    Rolovich's Noncompliance with COVID-19 Safety Protocols**

5        107. WSU's Fact, ECF No. 94 ¶ 107: Rolovich repeatedly violated and

6    criticized masking requirements in place during the pandemic, both before and

7    after his termination. McCoy Decl. ¶ 27; Chun Decl. ¶ 33; Coates Decl., Exs. FF–

8    II.

9        Rolovich's Response, ECF No. 118 ¶ 126: Rolovich disputes the

10       characterization that he "repeatedly violated and criticized masking

11       requirements in place during the pandemic[.]" Rolovich made good faith

12       efforts to comply with all masking requirements related to his employment

13       at WSU during the COVID-19 pandemic. *Id*. at ¶ 23.

14       **WSU's Reply:** Rolovich's response fails to provide record citations to

15       dispute the facts stated in WSU's Paragraph 107 beyond a self-serving

16       declaration, which is insufficient to create a dispute of fact. Further,

17       Rolovich's self-serving statement contradicts the statements he made in

18       communications he produced, which are attached to the Coates

19       Declaration at Exhibits FF–II, and Rolovich does not dispute the accuracy

20       of these communications. *See* General Objections 1, 2 and 6.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 59
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(64 of 293), Page 64 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 64 of 293
Case 2:22-cv-00319-TOR   ECF No. 127   filed 11/18/24   PageID.4822   Page 63
of 155

108.  <u>WSU's Fact, ECF No. 94 ¶ 108</u>: On September 25, 2020, a colleague sent Rolovich a photo showing Rolovich wearing a cloth covering over his forehead (and not covering his mouth and nose). Rolovich responded: "They told me to wear a mask." Coates Decl., Ex. P.

 <u>Rolovich's Response, ECF No. 118 ¶ 127</u>: The photo speaks for itself.

 **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). *See also* General Objections 1 and 3.

109.  <u>WSU's Fact, ECF No. 94 ¶ 109</u>: On April 19, 2021, Rolovich texted himself a link about how masks were "absolutely worthless against covid." Coates Decl., Ex. Q.

 <u>Rolovich's Response, ECF No. 118 ¶ 129</u>: The text speaks for itself.

 **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). *See also* General Objections 1 and 3.

110.  <u>WSU's Fact, ECF No. 94 ¶ 110</u>: On May 13, 2021, Washington Governor Jay Inslee announced that Washington would be updating its masking guidance to allow individuals who were fully vaccinated against COVID-19 to remove their mask in most settings. *See* Office of Wash. Gov. Jay Inslee, *Inslee*

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 60
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(65 of 293), Page 65 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 65 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4823    Page 64
of 155

1     *announces statewide reopening date of June 30 and short-term statewide move*

2     *to Phase 3*, May 13, 2021,   https://medium.com/wagovernor/inslee-announces-

3     statewide-reopening-date-of-june-30-and-short-term-statewide-move-to-phase-

4     3-4943c8be9c37. That order was ultimately reflected in Proclamation 20-25.13,

5     issued May 21, 2021.   Office of Wash. Gov. Jay Inslee, Proclamations,

6     *Proclamation 20-25.13*,       May      21,       2021,

7     https://governor.wa.gov/sites/default/files/proclamations/proc_20-25.13.pdf

8     (last visited Oct. 9, 2024).

9       <u>Rolovich's Response, ECF No. 118 ¶ 130</u>: The proclamation speaks for

10       itself.

11       **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

12       any "specific page or paragraph of the record where the disputed fact is

13       found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

14       *See also* General Objections 1 and 3.

15     111. <u>WSU's Fact, ECF No. 94 ¶ 111</u>: On May 13, 2021, Rolovich was

16     traveling with then-Deputy Athletics Director Mitch Straub to Seattle to meet in

17     person with several WSU donors. Straub Decl. ¶ 7.

18       <u>Rolovich's Response, ECF No. 118 ¶ 131</u>: For purposes of this Motion

19       alone, Rolovich does not dispute this statement.

20       **<u>WSU's Reply:</u>** No genuine dispute of material fact.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 61
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(66 of 293), Page 66 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 66 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4824    Page 65
of 155

1    112. <u>WSU's Fact, ECF No. 94 ¶ 112</u>: While in a hotel lobby, Rolovich and

2  Straub received the news that Washington had lifted its mask requirement for the

3  vaccinated, and Straub witnessed Rolovich immediately removing his mask. *Id.*

4  ¶ 8.

5    <u>Rolovich's Response, ECF No. 118 ¶ 132</u>: Rolovich objects to the

6  ambiguous and undefined term, "immediately".

7  **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's objection

8  to terms does not cite any "specific page or paragraph of the record where

9  the disputed fact is found" and, therefore, does not create a dispute of fact.

10  LCR 56(c)(1)(C). *See also* General Objection 1.

11    113. <u>WSU's Fact, ECF No. 94 ¶ 113</u>: At that point, Rolovich had not

12  disclosed to Straub or the donors he met with that he was unvaccinated. *Id.*

13    <u>Rolovich's Response, ECF No. 118 ¶ 133</u>: For purposes of this Motion

14  alone, Rolovich does not dispute this statement.

15  **<u>WSU's Reply:</u>** No genuine dispute of material fact.

16    114. <u>WSU's Fact, ECF No. 94 ¶ 114</u>: Rolovich and Straub met with several

17  WSU donors on the Seattle trip and Rolovich did not wear his mask during those

18  meetings. *Id.*

19    <u>Rolovich's Response, ECF No. 118 ¶ 134</u>: For purposes of this Motion

20  alone, Rolovich does not dispute this statement.

21  **<u>WSU's Reply:</u>** No genuine dispute of material fact.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 62
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    115. <u>WSU's Fact, ECF No. 94 ¶ 115</u>: On the night of May 13, 2021, Rolovich

2    entered a wine bar in Mercer Island (Barrels Wine Bar) with Straub and other

3    WSU donors that had a policy of only allowing vaccinated customers inside.

4    Declaration of Joseph Kennedy in Support of Def.'s Cross-Motion for Summary

5    Judgment (Kennedy Decl.), Ex. A; Straub Decl., Ex. A.

6        <u>Rolovich's Response, ECF No. 118 ¶ 135</u>: For purposes of this Motion

7        alone, Rolovich does not dispute this statement.

8        **<u>WSU's Reply:</u>** No genuine dispute of material fact.

9    116. <u>WSU's Fact, ECF No. 94 ¶ 116</u>: When an employee asked if Rolovich

10   and the group were all vaccinated, Rolovich indicated that he was. Kennedy Decl.

11   ¶ 7 & Ex. A. Rolovich removed his mask and stayed (unmasked) inside the

12   restaurant for over an hour. *Id.* While dining at the bar, Rolovich posed for a

13   photo with a WSU alumna while unmasked. *Id.*; Straub Decl. ¶¶ 7–10.

14       <u>Rolovich's Response, ECF No. 118 ¶ 136</u>: For purposes of this Motion

15       alone, Rolovich does not dispute this statement.

16       **<u>WSU's Reply:</u>** No genuine dispute of material fact.

17   117. <u>WSU's Fact, ECF No. 94 ¶ 117</u>: Later in May 2021, Rolovich traveled

18   to Pebble Beach, California to meet two WSU Donors for a golf event, the

19   Coaches Classic. One of the donors, Kurt Dammeier, later expressed anger to Mr.

20   Straub that Rolovich had played the event and dined with him while maskless

21   and without revealing his unvaccinated status. Straub Decl. ¶ 12.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 63
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Rolovich's Response, ECF No. 118 ¶ 137: For purposes of this Motion

2    alone, Rolovich does not dispute this statement.

3    **WSU's Reply:** No genuine dispute of material fact.

4    118.  WSU's Fact, ECF No. 94 ¶ 118: On July 17, 2021, when state law still

5    mandated that unvaccinated persons wear face coverings in public, Rolovich was

6    photographed at a Spokane Shock game not only violating masking rules, but

7    doing so by blowing through a vuvuzela and posing with a football player while

8    unmasked.  Chun Decl., Exs. L, M.

9    Rolovich's Response, ECF No. 118 ¶ 138: For purposes of this Motion

10    alone, Rolovich does not dispute this statement.

11    **WSU's Reply:** No genuine dispute of material fact.

12    119.  WSU's Fact, ECF No. 94 ¶ 119: On August 8, 2021, Rolovich wrote to

13    his cousin, Chris Smith, that he did not want to send his children to schools that

14    required masks and sent Smith a link to "studies undercutting utilities of masks."

15    Coates Decl., Ex. S.

16    Rolovich's Response, ECF No. 118 ¶ 139: Rolovich's message speaks for

17    itself.

18    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

19    any "specific page or paragraph of the record where the disputed fact is

20    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

21    *See also* General Objections 1 and 3.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 64
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

120. <u>WSU's Fact, ECF No. 94 ¶ 120</u>: On or about August 1, 2021, the Pac-12 issued its Medical Guidelines for Fall 2021 sports, which included the requirement for unvaccinated coaches to remain "physically distanced" from others and to "wear a face covering" while on the sidelines. McCoy Decl. ¶ 29, Ex. C at 5.

<u>Rolovich's Response, ECF No. 118 ¶ 140</u>: The Guidelines speak for themselves. During the 2021 season while Rolovich was head coach, WSU had guidelines in place for weekly testing. Rolovich Decl., ¶ 14.

**<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is found" to dispute the facts in WSU's Paragraph 120 regarding Pac-12 Medical Guidelines and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). Rolovich's additional statement regarding WSU guidelines, which he supports solely by citing to a self-serving declaration, does not create a dispute of fact regarding Pac-12 Medical Guidelines. *See* General Objections 1, 2, 3 and 6.

121. <u>WSU's Fact, ECF No. 94 ¶ 121</u>: WSU Athletics presented a draft of its own Covid-19 guidelines, written in accordance with the Pac-12 guidelines, in a meeting that Rolovich attended on August 3, 2021, which stated that coaches were "required" to wear masks "indoors and outside during practice and games

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 65
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0109

(70 of 293), Page 70 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 70 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4828    Page 69
of 155

1  as well as other circumstances where physical distancing is not

2  possible/reasonable." *See* Coates Decl., Ex. T.

3      Rolovich's Response, ECF No. 118 ¶ 141: The guidelines speak for

4  themselves.

5  **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

6  any "specific page or paragraph of the record where the disputed fact is

7  found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

8  *See also* General Objections 1 and 3.

9      122.  WSU's Fact, ECF No. 94 ¶ 122: On August 31, 2021, WSU Athletics

10  updated its guidelines, drawing from both the Pac-12 and Washington's statewide

11  masking rules, reiterating requirements for unvaccinated coaches to mask while

12  on the sidelines during games and practice. Chun Decl. ¶ 40, Ex. A.

13      Rolovich's Response, ECF No. 118 ¶ 142: The guidelines speak for

14  themselves.

15  **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

16  any "specific page or paragraph of the record where the disputed fact is

17  found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

18  *See also* General Objections 1 and 3.

19      123.  WSU's Fact, ECF No. 94 ¶ 123: Pac-12 and WSU protocols, as well as

20  Washington's masking rules, prohibited Rolovich from removing his mask while

21  he was leading football practice or coaching WSU football games, regardless of

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 66
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(71 of 293), Page 71 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 71 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4829    Page 70
of 155

1    whether they were home or away. Palmer Rep., Exs. D–E; McCoy Decl., Ex. C;

2    Chun Decl., Ex. A.

3        Rolovich's Response, ECF No. 118 ¶ 143: The protocols and rules speak

4        for themselves.

5    **_WSU's Reply:_** No genuine dispute of material fact. Rolovich does not cite

6    any "specific page or paragraph of the record where the disputed fact is

7    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

8    _See also_ General Objections 1 and 3.

9        124. WSU's Fact, ECF No. 94 ¶ 124: Rolovich was aware that he was

10    required to wear a mask during games and practices. Coates Decl. Ex. A at

11    139:15–22. He understood "there was too much media scrutiny for [him] to go

12    outside at a practice or a game . . . without a mask." _Id._ at 139:23–140:1.

13        Rolovich's Response, ECF No. 118 ¶ 144: Rolovich understood the rules

14        and protocols. Rolovich Decl. at ¶ 24.

15    **_WSU's Reply:_** No genuine dispute of material fact. Rolovich does not cite

16    any "specific page or paragraph of the record where the disputed fact is

17    found" to dispute the facts in WSU's Paragraph 124 and, therefore, does

18    not create a dispute of fact. LCR 56(c)(1)(C). Rolovich's response

19    regarding his understanding, which he supports solely by citing a self-

20    serving declaration, does not create a dispute of fact as to the cited

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 67
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(72 of 293), Page 72 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 72 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4830    Page 71
of 155

1   testimony from his deposition, which he does not dispute is accurate. *See*

2   General Objections 1, 2, 3, and 6.

3   125. <u>WSU's Fact, ECF No. 94 ¶ 125</u>: During his deposition Rolovich

4   admitted to repeatedly removing his mask so that he could effectively

5   communicate with players, coaches, and officials during football games. Coates

6   Decl., Ex. A at 140:7–154:6.

7   <u>Rolovich's Response, ECF No. 118 ¶ 145</u>: Rolovich's deposition transcript

8   speak for itself.

9   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

10   any "specific page or paragraph of the record where the disputed fact is

11   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

12   *See also* General Objections 1 and 3.

13   126. <u>WSU's Fact, ECF No. 94 ¶ 126</u>: During his deposition, before being

14   presented with any photographic or video evidence, Rolovich testified that he

15   "possibly" removed his masks during games and practices in 2021 to "un-muffle

16   [his] voice," and to "verbalize coaching stuff" *Id.* at 140:7–19.

17   <u>Rolovich's Response, ECF No. 118 ¶ 146</u>: Rolovich's deposition transcript

18   speak for itself.

19   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

20   any "specific page or paragraph of the record where the disputed fact is

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 68
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(73 of 293), Page 73 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 73 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4831    Page 72
of 155

1    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

2    *See also* General Objections 1 and 3.

3    127.  <u>WSU's Fact, ECF No. 94 ¶ 127</u>: During his deposition, Rolovich was

4    shown on camera repeatedly removing his mask in six of the seven games he

5    coached in 2021. Chun Decl. ¶ 67; McCoy Decl. ¶ 54; Coates Decl. ¶ 49, Ex.

6    UU; Palmer Rep., Ex. C.

7    <u>Rolovich's Response, ECF No. 118 ¶ 147</u>: Rolovich's deposition transcript

8    speak for itself.

9    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

10    any "specific page or paragraph of the record where the disputed fact is

11    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

12    *See also* General Objections 1 and 3.

13    128.  <u>WSU's Fact, ECF No. 94 ¶ 128</u>: In his deposition, when presented with

14    photographic and broadcast media depictions of him removing his mask during

15    games in the 2021 season, Rolovich admitted to removing his mask on at least

16    eighteen (18) separate occasions. Coates Decl., Ex. A at 141:16–154:15.

17    <u>Rolovich's Response, ECF No. 118 ¶ 148</u>: Rolovich's deposition transcript

18    speak for itself.

19    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

20    any "specific page or paragraph of the record where the disputed fact is

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 69
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(74 of 293), Page 74 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 74 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4832    Page 73
of 155

1    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

2    *See also* General Objections 1 and 3.

3    129. <u>WSU's Fact, ECF No. 94 ¶ 129</u>: Rolovich mostly justified these

4    intentional removals as necessary for communication with players, coaches, or

5    officials "to make sure they heard me," to "mak[e] sure [players were] able to

6    understand body language of the importance of whatever I was communicating,"

7    and to allow them to "read[] lips" when he was "sending in plays and/or

8    information." *Id.* at 144:11–13; 152:14–6; 154:12–15. Rolovich explained this

9    noncompliance was necessary for him to effectively communicate in a noisy

10   "football stadium with 30,000 people." *Id.* at 144:5–8.

11       <u>Rolovich's Response, ECF No. 118 ¶ 149</u>: Rolovich's deposition transcript

12       speak for itself.

13       **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

14       any "specific page or paragraph of the record where the disputed fact is

15       found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

16       *See also* General Objections 1 and 3.

17   130. <u>WSU's Fact, ECF No. 94 ¶ 130</u>: In WSU's first game on September 4,

18   2021, Rolovich admitted he was photographed removing his mask and yelling at

19   someone on the field. *Id.* at 142:24-143:1.

20       <u>Rolovich's Response, ECF No. 118 ¶ 150</u>: Rolovich's deposition transcript

21       speak for itself.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 70
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

2   any "specific page or paragraph of the record where the disputed fact is

3   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

4   *See also* General Objections 1 and 3.

5   131. <u>WSU's Fact, ECF No. 94 ¶ 131</u>: In one instance during the game against

6   the University of California-Berkeley on October 2, 2021, Rolovich justified

7   removing his mask when speaking in close proximity with his quarterback by

8   arguing that masks reduced oxygen flow and exacerbated the "party headaches"

9   he had from yelling during games. *Id.* at 147:15–148:7.

10  <u>Rolovich's Response, ECF No. 118 ¶ 151</u>: Rolovich's deposition transcript

11  speak for itself.

12  **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

13  any "specific page or paragraph of the record where the disputed fact is

14  found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

15  *See also* General Objections 1 and 3.

16  132. <u>WSU's Fact, ECF No. 94 ¶ 132</u>: In another instance during the Oregon

17  State game on October 9, 2021, Rolovich admitted to removing his mask to drink

18  water. *Id.* at 153:7–9.

19  <u>Rolovich's Response, ECF No. 118 ¶ 152</u>: Rolovich's deposition transcript

20  speak for itself.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 71
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

2   any "specific page or paragraph of the record where the disputed fact is

3   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

4   *See also* General Objections 1 and 3.

5       133.  <u>WSU's Fact, ECF No. 94 ¶ 133</u>: Rolovich also admitted his mask

6   inadvertently slipped below his nose while hugging his quarterback during the

7   Stanford game on October 16, 2021. *Id.* at 153:10–19.

8       <u>Rolovich's Response, ECF No. 118 ¶ 153</u>: Rolovich's deposition transcript

9       speak for itself.

10      **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

11      any "specific page or paragraph of the record where the disputed fact is

12      found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

13      *See also* General Objections 1 and 3.

14  **P.    Rolovich's Request for a Religious Accommodation**

15      134.  <u>WSU's Fact, ECF No. 94 ¶ 134</u>: In July or August 2021, Rolovich and

16  his agent, Thayer Evans, discussed getting a doctor to write him a note to pursue

17  a medical exemption from the vaccine requirement. Coates Decl., Ex. A at 214:1–

18  24; Ex. U.

19      <u>Rolovich's Response, ECF No. 118 ¶ 154</u>: Rolovich disputes this

20      allegation as written, as Rolovich was discussing and considering the

21      options he had available. Rolovich Decl. at ¶ 26.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 72
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(77 of 293), Page 77 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 77 of 293
Case 2:22-cv-00319-TOR   ECF No. 127   filed 11/18/24   PageID.4835   Page 76
of 155

1   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

2   any "specific page or paragraph of the record where the disputed fact is

3   found" to dispute the facts and testimony cited in WSU's Paragraph 134

4   and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

5   Rolovich's response characterizing his deposition testimony, which he

6   supports solely by citing to a self-serving declaration, does not create a

7   dispute of fact as to the cited testimony from his deposition, which he does

8   not dispute is accurate. *See* General Objections 1, 2, and 6.

9   135.   <u>WSU's Fact, ECF No. 94 ¶ 135</u>: Rolovich has no medical condition that

10   would have supported a medical exemption. Coates Decl., Ex. A at 212:23–

11   213:2, 214:13–24.

12   <u>Rolovich's Response, ECF No. 118 ¶ 155</u>: Rolovich did not submit a

13   request for a medical exemption and therefore does not dispute this

14   statement. Rolovich Decl. at ¶ 26.

15   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

16   any "specific page or paragraph of the record where the disputed fact is

17   found" to dispute the facts and testimony cited in WSU's Paragraph 135

18   and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

19   Rolovich's response that he did not submit a medical exemption, which he

20   supports solely by citing to a self-serving declaration, does not address the

21   facts stated in WSU's Paragraph 135 and does not create a dispute of fact

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 73
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    as to the cited testimony from his deposition, which he does not dispute is

2    accurate. *See* General Objections 1, 2, and 6.

3        136. <u>WSU's Fact, ECF No. 94 ¶ 136</u>: On July 24, 2021, Rolovich sent a text

4    message to his friends David Fox and Bill Stutzmann stating: "I need some help.

5    Shit is getting pretty hot for me." Coates Decl., Ex. TT. Fox responded by

6    encouraging Rolovich to contact attorney Sidney Powell's team. *Id.* Later that

7    day, Rolovich sent Fox and Stutzmann a text message with an image stating

8    "Vakseen fascism is the apotheosis of neoliberalism. Under vakseen fascism the

9    state owns your body, Pharma is the state, Pharma uses human bodies as toxic

10   profit factories, life itself is ultimately discarded as waste, and a bunch of bougie

11   grifters help manage and cover up the genocide in return for a share of the loot."

12   *Id.* Rolovich then sent a tweet stating that "[s]even fully vaccinated Stanford

13   [s]tudents test[ed] positive for coronavirus—all of whom are symptomatic." *Id.*

14   Rolovich also sent links to videos titled "In Remembrance: Victims of the

15   COVID vaccine" and "SHOCKING!!! Alicia Smith (A Mother of Two) Shares

16   the Horrors of Her COVID-19 Vaccine Injury." *Id.*

17       <u>Rolovich's Response, ECF No. 118 ¶ 156</u>: The texts speak for themselves.

18   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

19   any "specific page or paragraph of the record where the disputed fact is

20   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

21   *See also* General Objections 1 and 2.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 74
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0118

1    137. <u>WSU's Fact, ECF No. 94 ¶ 137</u>: On July 24, 2021, Rolovich first

2    contacted Fr. Paul Heric, a Catholic priest and the Chaplain at the St. Thomas

3    More Cougs Center at WSU. Coates Decl., Ex. QQ; ECF No. 89 ¶ 1.

4        <u>Rolovich's Response, ECF No. 118 ¶ 157</u>: For purposes of this Motion

5        alone, Rolovich does not dispute this statement.

6        **<u>WSU's Reply:</u>** No genuine dispute of material fact.

7    138. <u>WSU's Fact, ECF No. 94 ¶ 138</u>: Rolovich asked Fr. Paul about the

8    Catholic Church's teaching regarding the vaccines. See ECF No. 89 ¶ 4.

9        <u>Rolovich's Response, ECF No. 118 ¶ 158</u>: Rolovich disputes this

10       statement as he and Fr. Paul discussed many things, spiritual and otherwise,

11       during their meetings. Rolovich Decl. at ¶ 27.

12       **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

13       fails to provide record citations to dispute the facts stated in WSU's

14       Paragraph 138 beyond a self-serving declaration, which is insufficient to

15       create a dispute of fact. Further, that Rolovich "discussed many things"

16       with Fr. Paul does not address whether Rolovich asked Fr. Paul about the

17       Catholic Church's teaching regarding the vaccines. Additionally,

18       Rolovich's response directly contradicts his deposition testimony, in

19       which Rolovich was asked "Did you have questions for Father Paul about

20       what the Catholic Church teaches about the COVID vaccines?" and

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 75
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Rolovich responded, "At some point, yeah." Coates Decl., Ex A. at

2    220:14–17. *See* General Objections 1, 2, and 6.

3    139. WSU's Fact, ECF No. 94 ¶ 139: Fr. Heric gave Rolovich's phone

4    number to Fr. Kyle Ratuiste, the bioethicist for the Catholic Diocese of Spokane.

5    Coates Decl., Ex. QQ.

6    Rolovich's Response, ECF No. 118 ¶ 159: For purposes of this Motion

7    alone, Rolovich does not dispute this statement.

8    **WSU's Reply:** No genuine dispute of material fact.

9    140. WSU's Fact, ECF No. 94 ¶ 140: On July 24, 2021, Fr. Kyle sent

10   Rolovich a text message stating: "Nick, Fr. Heric gave me your phone number

11   and said that you had some questions about what the Catholic Church teaches

12   about the COVID vaccines. I am Fr. Kyle Ratuiste, the bioethicist for the Spokane

13   Diocese. I'd be happy to receive a brief phone call to respond to any questions

14   you may have." Coates Decl., Ex. V.

15   Rolovich's Response, ECF No. 118 ¶ 160: The text speaks for itself.

16   **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

17   any "specific page or paragraph of the record where the disputed fact is

18   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

19   *See also* General Objections 1 and 2.

20   141. WSU's Fact, ECF No. 94 ¶ 141: Rolovich does not recall responding to

21   or ever speaking with Fr. Kyle. *Id*. Ex. A. at 219:5–221:1.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 76
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Rolovich's Response, ECF No. 118 ¶ 161: Rolovich's deposition

2    testimony speaks for itself.

3    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

4    any "specific page or paragraph of the record where the disputed fact is

5    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

6    *See also* General Objections 1 and 2.

7    142.  WSU's Fact, ECF No. 94 ¶ 142: Fr. Paul initially encouraged Rolovich

8    to get vaccinated. ECF No. 89 ¶ 5; Coates Decl., Ex. W.

9    Rolovich's Response, ECF No. 118 ¶ 162: Rolovich disputes this

10   statement. Fr. Paul encouraged Rolovich to consider his options, only one

11   of which was to get vaccinated. Rolovich Decl. at ¶ 28.

12   **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

13   fails to provide record citations to dispute the facts stated in WSU's

14   Paragraph 142 beyond a self-serving declaration, which is insufficient to

15   create a dispute of fact. Further, that Fr. Paul encouraged Rolovich to

16   "consider his options" does not address whether he encouraged Rolovich

17   to get vaccinated. Additionally, Rolovich's dispute directly contradicts his

18   deposition testimony, in which Rolovich was shown a text message

19   between him and Fr. Paul and was asked, "Is it safe to say that Father

20   Paul's message here is encouraging you to get the vaccine?" to which

21   Rolovich responded, in part, "Yes, I do early on remember Father Paul

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 77
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0121

(82 of 293), Page 82 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 82 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4840    Page 81
of 155

1    wanting me to get the vaccine to remain the coach at Washington State."

2    Coates Decl., Ex A. at 222:8–17. *See* General Objections 1, 2 and 6.

3    143.  <u>WSU's Fact, ECF No. 94 ¶ 143</u>: Fr. Paul encouraged Rolovich to speak

4    to Bishop Tom Daly of the Diocese of Spokane about the COVID-19 vaccines.

5    ECF No. 89 ¶ 11.

6    <u>Rolovich's Response, ECF No. 118 ¶ 163</u>: For purposes of this Motion

7    alone, Rolovich does not dispute this statement.

8    **<u>WSU's Reply:</u>** No genuine dispute of material fact.

9    144.  <u>WSU's Fact, ECF No. 94 ¶ 144</u>: On July 25, 2021, Rolovich sent a text

10   message to Bishop Daly asking, "You support this vaccine?" Bishop Daly

11   responded, "Yes, with reservations." Coates Decl., Ex. X.

12   <u>Rolovich's Response, ECF No. 118 ¶ 164</u>: The text speaks for itself.

13   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

14   any "specific page or paragraph of the record where the disputed fact is

15   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

16   *See also* General Objections 1 and 2.

17   145.  <u>WSU's Fact, ECF No. 94 ¶ 145</u>: On August 5, 2021, Rolovich selected

18   via Workday a "non-medical (religious or philosophical/personal) reason for

19   declining COVID-19 vaccination." Phares Decl. ¶ 12.

20   <u>Rolovich's Response, ECF No. 118 ¶ 165</u>: Rolovich does not dispute this

21   statement.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 78
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0122

(83 of 293), Page 83 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 83 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4841    Page 82
of 155

1    **WSU's Reply:** No genuine dispute of material fact.

2    146.  WSU's Fact, ECF No. 94 ¶ 146: As of August 5, 2021, Rolovich did not

3    have a religious objection to the COVID-19 vaccines. Coates Decl., Ex. A at

4    260:15–22; ECF No. 89-2 ¶ 16.

5    Rolovich's Response, ECF No. 118 ¶ 166: Rolovich disputes this

6    statement as he had discussions with Fr. Paul Heric regarding the vaccine

7    since July 2021. *See* Plaintiff's Statement of Material Facts Not In Dispute,

8    ¶ 1.

9    **WSU's Reply:** No genuine dispute of material fact. That Rolovich may

10   have "had discussions with Fr. Paul Heric regarding the vaccine since July

11   2021" does not address the facts stated in WSU's Paragraph 146 and is

12   insufficient to dispute the deposition testimony cited. Additionally,

13   Rolovich's response fails to provide record citations to dispute the facts

14   stated in WSU's Paragraph 145 beyond a citation to a self-serving

15   declaration, see ECF No. 89 ¶ 1, which is insufficient to create a dispute

16   of fact. *See* General Objections 1, 2, and 6.

17   147.  WSU's Fact, ECF No. 94 ¶ 147: On August 16, 2021, Rolovich met with

18   Chun and Blair, who informed him that Governor Inslee would be extending the

19   Proclamation to cover university employees, and that exemptions would be

20   permitted for medical or religious reasons only. Chun Decl. ¶ 60.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 79
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(84 of 293), Page 84 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 84 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4842    Page 83
of 155

1    Rolovich's Response, ECF No. 118 ¶ 168: For purposes of this Motion

2    alone, Rolovich does not dispute this statement.

3    **WSU's Reply:** No genuine dispute of material fact.

4    148.  WSU's Fact, ECF No. 94 ¶ 148: On August 17, 2021, at approximately

5    8:53 a.m. PDT, Rolovich's agent, Thayer Evans, sent him a template for a

6    religious exemption request from the website of the National Catholic Bioethics

7    Center (NCBC). Coates Decl., Ex. Y.

8    Rolovich's Response, ECF No. 118 ¶ 169: For purposes of this Motion

9    alone, Rolovich does not dispute this statement.

10   **WSU's Reply:** No genuine dispute of material fact.

11   149.  WSU's Fact, ECF No. 94 ¶ 149: The NCBC template states, in relevant

12   part, that "[v]accination is not morally obligatory in principle and so must be

13   voluntary," "[a] person is morally required to obey his or her sure conscience,"

14   and "if a Catholic comes to an informed and sure judgment in conscience that he

15   or she should not receive a vaccine, then the Catholic Church requires that the

16   person follow this certain judgment of conscience and refuse the vaccine." *Id.*

17   Rolovich's Response, ECF No. 118 ¶ 170: The template speaks for itself.

18   **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

19   any "specific page or paragraph of the record where the disputed fact is

20   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

21   *See also* General Objections 1 and 2.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 80
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(85 of 293), Page 85 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 85 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4843    Page 84
of 155

1    150. <u>WSU's Fact, ECF No. 94 ¶ 150</u>: On August 17, 2021, at approximately

2    3:00 p.m. PDT, Rolovich met with Father Paul Heric. According to Rolovich,

3    after their conversation he "came to understand that I had a religious obligation

4    as a Catholic to follow my conscience and decline to take a COVID vaccination."

5    ECF No. 89-2 ¶ 16; Coates Decl., Ex. A at 247:11–23, 256:13–17, 257:5–258:3

6    & Ex. Z.

7        <u>Rolovich's Response, ECF No. 118 ¶ 171</u>: Rolovich's deposition

8    testimony speaks for itself.

9    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

10    any "specific page or paragraph of the record where the disputed fact is

11    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

12    *See also* General Objections 1 and 2.

13    151. <u>WSU's Fact, ECF No. 94 ¶ 151</u>: On August 19, 2021, Evans wrote a

14    text message to Rolovich stating that Evans had "[b]een on the phone with Brian

15    and just got off," referring to attorney Brian Fahling. Coates Decl., Ex. AA.

16    Evans then wrote: "We are good with you sending the following" to "Washington

17    State [University] vice president and chief human resource officer Theresa Elliot-

18    Cheslek": "Theresa, In accordance with Governor Inslee's proclamation

19    yesterday, could you please send me the specifics for obtaining a COVID-19

20    vaccine exemption?" *Id.*

21        <u>Rolovich's Response, ECF No. 118 ¶ 173</u>: The text speaks for itself.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 81
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0125

1     **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

2     any "specific page or paragraph of the record where the disputed fact is

3     found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). *See*

4     *also* General Objections 1 and 2.

5     152. <u>WSU's Fact, ECF No. 94 ¶ 152</u>: On August 19, 2021, Rolovich sent an

6 email to Elliot-Cheslek stating: "In accordance with Governor Inslee's

7 proclamation yesterday, could you please send me the specifics for obtaining a

8 Covid-19 vaccine exemption?" Coates Decl., Ex. BB.

9     <u>Rolovich's Response, ECF No. 118 ¶ 174</u>: The email speaks for itself.

10     **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

11     any "specific page or paragraph of the record where the disputed fact is

12     found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

13     *See also* General Objections 1 and 2.

14     153. <u>WSU's Fact, ECF No. 94 ¶ 153</u>: On August 19, 2021, Rolovich

15 informed Chun and Blair that he intended to request a religious accommodation

16 with respect to the COVID-19 vaccination requirement. Chun Decl. ¶ 61; Coates

17 Decl., Ex A at 259:18–260:14. This was the first time Rolovich stated to Chun or

18 Blair that he intended to seek a religious accommodation or that he had a

19 religiously based objection to COVID-19. Chun Decl. ¶ 61; Coates Decl., Ex. A

20 at 261:9–22; ECF No. 53 ¶ 39.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 82
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0126

(87 of 293), Page 87 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 87 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4845    Page 86
of 155

1  Rolovich's Response, ECF No. 118 ¶ 175: Rolovich disputes the

2  implication that he did not have a religiously based objection to COVID-

3  19 prior to this meeting. Rolovich Decl. at ¶ 29.

4  **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

5  consists entirely of argument that is not responsive to WSU's asserted fact

6  and is therefore insufficient and does not create a dispute of fact regarding

7  the facts stated in WSU's Paragraph 153. Further, Rolovich's response

8  fails to provide record citations to dispute the facts stated in WSU's

9  Paragraph 153 beyond a self-serving declaration, which is insufficient to

10  create a dispute of fact. *See* General Objections 1, 2, and 6.

11  154.  WSU's Fact, ECF No. 94 ¶ 154: Rolovich did not share the nature of his

12  religious objection to the COVID-19 vaccines with Chun and Blair at that August

13  19 meeting (or at any point thereafter). Chun Decl. ¶ 61; Coates Decl. Ex A at

14  261:9–22.

15  Rolovich's Response, ECF No. 118 ¶ 177: Religion is a very private thing.

16  Rolovich disputes that he had any obligation to share the nature of his

17  religious objection to Chun and Blair. Rolovich Decl. at ¶ 30.

18  **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

19  consists entirely of argument that is not responsive to WSU's asserted fact

20  and is therefore insufficient and does not create a dispute of fact regarding

21  the facts stated in WSU's Paragraph 154, which do not discuss whether

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 83
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    religion is "private" or any "obligation." Further, Rolovich's response fails

2    to provide record citations to dispute the facts stated in WSU's Paragraph

3    154 beyond a self-serving declaration, which is insufficient to create a

4    dispute of fact. *See* General Objections 1, 2, and 6.

5    155.  <u>WSU's Fact, ECF No. 94 ¶ 155</u>: In a text message with Rolovich and

6    Fahling, Evans wrote that the "winning argument is taking advantage of the

7    exemptions within the mandate" and recommended that Rolovich pursue a

8    religious exemption. Coates Decl. Ex U.  Evans wrote: "Since Nick's not going

9    to get the shot and we can't find a doctor to write him a note, I think the

10   aforementioned is the best alternative strategy we have." *Id.*

11   <u>Rolovich's Response, ECF No. 118 ¶ 178</u>: The text speaks for itself.

12   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

13   any "specific page or paragraph of the record where the disputed fact is

14   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

15   *See also* General Objections 1 and 2.

16   156.  <u>WSU's Fact, ECF No. 94 ¶ 156</u>: On September 20 and 23, 2021, Fahling

17   emailed Rolovich draft versions of Rolovich's religious exemption request, both

18   of which were based on the NCBC template. Coates Decl., Exs. CC & DD; ECF

19   No. 89 ¶ 20.

20

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 84
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(89 of 293), Page 89 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 89 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4847    Page 88
of 155

1    <u>Rolovich's Response, ECF No. 118 ¶ 179</u>: The emails speaks for

2    themselves. Also, to the extent that this attorney-client communication,

3    Rolovich objects to its inclusion.

4    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

5    any "specific page or paragraph of the record where the disputed fact is

6    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

7    Further, Rolovich's belated reference to attorney-client privilege regarding

8    documents that were produced months ago and presented as exhibits at

9    Rolovich's deposition is insufficient to create a dispute of fact. *See* General

10    Objections 1 and 3.

11    157. <u>WSU's Fact, ECF No. 94 ¶ 157</u>: No documents were produced that

12    indicate that Rolovich personally drafted or edited his exemption request and

13    Rolovich testified that he could not recall making any edits. Coates Decl., Ex. A

14    at 237:1–3.

15    <u>Rolovich's Response, ECF No. 118 ¶ 180</u>: Rolovich disputes that because

16    he may not have personally drafted the exemption request, he did not

17    sincerely believe what was submitted. Rolovich Decl. at ¶ 31.

18    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

19    consists entirely of argument that is not responsive to WSU's asserted fact

20    and is therefore insufficient and does not create a dispute of fact regarding

21    the facts stated in WSU's Paragraph 157, which do not discuss his sincere

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 85
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(90 of 293), Page 90 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 90 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4848    Page 89
of 155

1    belief. Further, Rolovich's response fails to provide record citations to

2    dispute the facts stated in WSU's Paragraph 157 beyond a self-serving

3    declaration, which is insufficient to create a dispute of fact. *See* General

4    Objections 1, 2, and 6.

5    158.  WSU's Fact, ECF No. 94 ¶ 158: Rolovich submitted a request for a

6    religious exemption to HRS on October 4, 2021, the day of the deadline. ECF

7    No. 89 ¶ 19; ECF No. 89-6; Phares Decl. ¶ 28.

8    Rolovich's Response, ECF No. 118 ¶ 181: Rolovich does not dispute this

9    statement.

10    **WSU's Reply:** No genuine dispute of material fact.

11    159.  WSU's Fact, ECF No. 94 ¶ 159: The exemption request that Rolovich

12    ultimately submitted to WSU was an edited version of the NCBC template that

13    Evans had sent him. Coates Decl., Ex. A at 231:15–19; ECF No. 89 ¶ 20; ECF

14    No. 89-6.

15    Rolovich's Response, ECF No. 118 ¶ 182: The exemption request speaks

16    for itself.

17    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

18    any "specific page or paragraph of the record where the disputed fact is

19    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

20    *See also* General Objections 1 and 2.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 86
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**Q.    WSU Determines It Cannot Accommodate Rolovich**

160.  <u>WSU's Fact, ECF No. 94 ¶ 160</u>: On October 6, 2021, HRS emailed Chun and McCoy notifying them that HRS had determined that the documents submitted by Rolovich "support[ed] the accommodation request based on a sincerely held religious belief." Phares Decl. ¶ 30; Chun Decl. ¶ 73, Ex. Q.

<u>Rolovich's Response, ECF No. 118 ¶ 183</u>: Rolovich agrees that through the blind review process, WSU concluded that Rolovich had a sincerely held religious belief. Seese Decl. ¶ 30, Exh. CC.

**<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response is not responsive to the facts stated in WSU's Paragraph 160 and, therefore, is insufficient to create a dispute of fact. *See* General Objection 2.

161.  <u>WSU's Fact, ECF No. 94 ¶ 161</u>: In this email, HRS wrote that it was the Athletics Department's responsibility "to review the employee's position description or essential job functions, to determine if the employee is able to perform essential functions of the position and meet the COVID-19 safety measures consistent with the recommendations of the state and protect the health and safety of the WSU community as part of this accommodation request." Chun Decl. ¶ 73, Ex. Q.

<u>Rolovich's Response, ECF No. 118 ¶ 184</u>: The email speaks for itself.

**<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 87
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0131

1    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

2    *See also* General Objections 1 and 3.

3    162.  <u>WSU's Fact, ECF No. 94 ¶ 162</u>: This email also informed Chun and

4    McCoy that they could reach out to HRS if they had any questions or wanted to

5    discuss Rolovich's accommodation request further. Chun Decl., Ex. Q.

6    <u>Rolovich's Response, ECF No. 118 ¶ 185</u>: The email speaks for itself.

7    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

8    any "specific page or paragraph of the record where the disputed fact is

9    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

10    *See also* General Objections 1 and 3.

11    163.  <u>WSU's Fact, ECF No. 94 ¶ 163</u>: In total, the Athletics Department

12    received notification that eleven employees, including eight coaches and other

13    staff from the football program, were seeking religious accommodations

14    allowing them to remain unvaccinated. McCoy Decl. ¶ 32.

15    <u>Rolovich's Response, ECF No. 118 ¶ 186</u>: For purposes of this Motion

16    alone, Rolovich does not dispute this statement.

17    **<u>WSU's Reply:</u>** No genuine dispute of material fact.

18    164.  <u>WSU's Fact, ECF No. 94 ¶ 164</u>: Chun, McCoy, and Blair worked

19    together—with advice from the Attorney General's Office and HRS—to evaluate

20    Rolovich's role and determine whether he could be accommodated without

21    risking the health and safety of others. Chun Decl. ¶ 74; McCoy Decl. ¶ 40.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 88
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    <u>Rolovich's Response, ECF No. 118 ¶ 187</u>: Rolovich disputes this claim as

2    WSU refuses to disclose how it determined that it could not accommodate

3    him.  Rolovich Decl. at ¶ 32. WSU has claimed attorney-client privilege

4    but now seems to want to use this fact to its benefit, while still hiding

5    behind the privilege. Additionally, WSU failed to communicate or engage

6    with Rolovich when determining if there was a reasonable accommodation

7    which they could provide him.  *Id*. Further, WSU has made no statements

8    that it considered other accommodation options.

9    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

10   consists entirely of argument that is not responsive to WSU's asserted fact

11   and is therefore insufficient and does not create a dispute of fact regarding

12   the facts stated in WSU's Paragraph 164. Further, Rolovich's response

13   fails to provide record citations to dispute the facts stated in WSU's

14   Paragraph 164 beyond a self-serving declaration, which is insufficient to

15   create a dispute of fact. Additionally, Rolovich's claim of privilege is

16   misleading as the declarations cited in WSU's Paragraph 164 detail the

17   process the Athletics Department engaged in to evaluate Rolovich's

18   accommodation request. WSU's claim of privilege over communications

19   between Athletics Department personnel and Attorney General's Office

20   (AGO) attorneys is proper—as this Court has already ruled on August 28,

21   2024, ECF No. 83—and Rolovich cannot create a dispute of fact by raising

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 89
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0133

1    objections to attorney-client privilege here. *See* General Objections 1, 2, 4,

2    and 6.

3    165. <u>WSU's Fact, ECF No. 94 ¶ 165</u>: In order to make a determination,

4    Rolovich's essential job functions, duties, and working environment were

5    evaluated by Chun, McCoy, and Blair. McCoy Decl. ¶ 40.

6    <u>Rolovich's Response, ECF No. 118 ¶ 188</u>: Rolovich disputes this claim as

7    WSU refuses to disclose how it determined that it could not accommodate

8    him. *Id*. WSU has claimed attorney-client privilege but now seems to want

9    to use this fact to its benefit, while still hiding behind the privilege.

10    Additionally, WSU failed to communicate or engage with Rolovich when

11    determining if there was a reasonable accommodation which they could

12    provide him. *Id*.

13    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

14    consists entirely of argument that is not responsive to WSU's asserted fact

15    and is therefore insufficient and does not create a dispute of fact regarding

16    the facts stated in WSU's Paragraph 165. Further, Rolovich's response

17    fails to provide record citations to dispute the facts stated in WSU's

18    Paragraph 165 beyond a self-serving declaration, which is insufficient to

19    create a dispute of fact. Additionally, Rolovich's claim of privilege is

20    misleading as the declaration cited in WSU's Paragraph 165 details the

21    process WSU engaged in to evaluate Rolovich's accommodation request.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 90
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1     WSU's claim of privilege over communications between Athletics

2     Department personnel and Attorney General's Office (AGO) attorneys is

3     proper—as this Court has already ruled on August 28, 2024, ECF No. 83—

4     and Rolovich cannot create a dispute of fact by raising objections to

5     attorney-client privilege here. *See* General Objections 1, 2, 4, and 6.

6     166.   <u>WSU's Fact, ECF No. 94 ¶ 166</u>: Chun, McCoy, and Blair also evaluated

7     the other seven football employees individually, considering their specific jobs

8     and working environments to the extent they differed from those of the other

9     football employees. *Id.*

10        <u>Rolovich's Response, ECF No. 118 ¶ 189</u>: Rolovich disputes this claim as

11        WSU refuses to disclose how it determined that it could not accommodate

12        him. *Id.* WSU has claimed attorney-client privilege but now seems to want

13        to use this fact to its benefit, while still hiding behind the privilege.

14        Additionally, WSU failed to communicate or engage with Rolovich when

15        determining if there was a reasonable accommodation which they could

16        provide him. *Id.*

17        **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

18        consists entirely of argument that is not responsive to WSU's asserted fact

19        and is therefore insufficient and does not create a dispute of fact regarding

20        the facts stated in WSU's Paragraph 166. Further, Rolovich's response

21        fails to provide record citations to dispute the facts stated in WSU's

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 91
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Paragraph 166 beyond a self-serving declaration, which is insufficient to

2    create a dispute of fact. Additionally, Rolovich's claim of privilege is

3    misleading as the declaration cited in WSU's Paragraph 166 details the

4    process WSU engaged in to evaluate Rolovich's accommodation request.

5    WSU's claim of privilege over communications between Athletics

6    Department personnel and Attorney General's Office (AGO) attorneys is

7    proper—as this Court has already ruled on August 28, 2024, ECF No. 83—

8    and Rolovich cannot create a dispute of fact by raising objections to

9    attorney-client privilege here. *See* General Objections 1, 2, 4, and 6.

10    167.  WSU's Fact, ECF No. 94 ¶ 167: The Athletics Department leadership

11    also relied on the public health data and guidance available at the time—including

12    from the CDC and DOH—indicating that unvaccinated persons had a

13    significantly higher risk of contracting and transmitting COVID-19 compared

14    with unvaccinated persons, as well as a higher risk of developing severe illness.

15    McCoy Decl. ¶ 45; Chun Decl. ¶ 68.

16    Rolovich's Response, ECF No. 118 ¶ 190: Rolovich disputes this claim as

17    WSU refuses to disclose how it determined that it could not accommodate

18    him. *Id*. WSU has claimed attorney-client privilege but now seems to want

19    to use this fact to its benefit, while still hiding behind the privilege.

20    Additionally, WSU failed to communicate or engage with Rolovich when

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 92
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(97 of 293), Page 97 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 97 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4855    Page 96
of 155

1    determining if there was a reasonable accommodation which they could

2    provide him. *Id.*

3    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

4    consists entirely of argument that is not responsive to WSU's asserted fact

5    and is therefore insufficient and does not create a dispute of fact regarding

6    the facts stated in WSU's Paragraph 167. Further, Rolovich's response

7    fails to provide record citations to dispute the facts stated in WSU's

8    Paragraph 167 beyond a self-serving declaration, which is insufficient to

9    create a dispute of fact. Additionally, Rolovich's claim of privilege is

10   misleading as the declaration cited in WSU's Paragraph 167 details the

11   process WSU engaged in to evaluate Rolovich's accommodation request.

12   WSU's claim of privilege over communications between Athletics

13   Department personnel and Attorney General's Office (AGO) attorneys is

14   proper—as this Court has already ruled on August 28, 2024, ECF No. 83—

15   and Rolovich cannot create a dispute of fact by raising objections to

16   attorney-client privilege here. *See* General Objections 1, 2, 4, and 6.

17       168. <u>WSU's Fact, ECF No. 94 ¶ 168</u>: On October 13, 2021, the Athletics

18   Department submitted a memo to HRS stating that it had determined that

19   Rolovich "would not be able to perform the essential functions of his job" without

20   creating an "undue hardship on the Athletic Department and WSU as a whole."

21   Chun Decl. ¶¶ 75–76, Ex. R. The memo specifically noted that "[c]oaching duties

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 93
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(98 of 293), Page 98 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 98 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4856    Page 97
of 155

1    require close contact with student-athletes as well as other Department personnel

2    and the public." *Id.*, Ex. R.

3        <u>Rolovich's Response, ECF No. 118 ¶ 191</u>: The memo speaks for itself.

4    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

5    any "specific page or paragraph of the record where the disputed fact is

6    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

7    *See* General Objections 1 and 3.

8        169.  <u>WSU's Fact, ECF No. 94 ¶ 169</u>: Also on October 13, 2021, the Athletics

9    Department submitted a second memo as a "supplement." Chun Decl. ¶ 77, Ex.

10   S. The supplemental memo stated that "Rolovich has made several statements

11   that cast doubt on his claimed sincerely held religious belief" against COVID-19

12   vaccination, including his "vocal and consistent . . . opinions and skepticisms

13   about the COVID-19 virus," the nature of the public health emergency," and his

14   own "theories with respect to vaccination"—such as that the vaccine "was not

15   fully FDA approved, and therefore not safe" and "would negatively impact his

16   mortality." *Id.*, Ex. S.

17       <u>Rolovich's Response, ECF No. 118 ¶ 192</u>: The second memo speaks for

18   itself.

19   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

20   any "specific page or paragraph of the record where the disputed fact is

21

22

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(99 of 293), Page 99 of 293, Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 99 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4857    Page 98
of 155

1    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

2    *See also* General Objections 1 and 3.

3    170.  <u>WSU's Fact, ECF No. 94 ¶ 170</u>: As part of the accommodation process,

4    HRS also notified EH&S of Rolovich's accommodation request and sought input

5    on the minimum necessary interventions and countermeasures for Rolovich to

6    remain unvaccinated based on EH&S's understanding of his role from a position

7    description provided by HRS. *See* Phares Decl. ¶ 34; Coates Decl., Ex O at 31:5–

8    20.

9    <u>Rolovich's Response, ECF No. 118 ¶ 193</u>: Rolovich disputes this

10    statement as neither HRS nor EH&S ever engaged with Rolovich to

11    discuss his accommodation request. Id. Rolovich submitted an exemption

12    request, but WSU never asked him about a possible accommodation. *Id.*

13    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

14    consists entirely of argument that is not responsive to WSU's asserted fact

15    and is therefore insufficient and does not create a dispute of fact regarding

16    the process described in WSU's Paragraph 170. Further, Rolovich's

17    response fails to provide record citations to dispute the facts stated in

18    WSU's Paragraph 170 beyond a self-serving declaration, which is

19    insufficient to create a dispute of fact. *See* General Objections 1, 2, 4, and

20    6.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 95
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    171. <u>WSU's Fact, ECF No. 94 ¶ 171</u>: On October 14, 2021, EH&S emailed

2    Chun their assessment of Rolovich's position and recommendations of the

3    minimum safety standards and requirements for Rolovich to follow. Chun Decl.

4    ¶ 78, Ex. T.

5         <u>Rolovich's Response, ECF No. 118 ¶ 194</u>: The email speaks for itself.

6         <u>**WSU's Reply:**</u> No genuine dispute of material fact. Rolovich does not cite

7         any "specific page or paragraph of the record where the disputed fact is

8         found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

9         *See also* General Objections 1 and 3.

10    172. <u>WSU's Fact, ECF No. 94 ¶ 172</u>: The assessment made clear that EH&S

11    did "not determine whether these interventions and countermeasures

12    fundamentally alter the employee's job and cannot be accommodated." Chun

13    Decl., Ex. T.

14        <u>Rolovich's Response, ECF No. 118 ¶ 195</u>: Rolovich disputes this

15        statement. The EH&S assessment was prepared by individuals tasked in

16        making these type of determinations. Chun's conclusion is self-serving and

17        not based on any direct communications he had with those who prepared

18        the assessment.

19        <u>**WSU's Reply:**</u> No genuine dispute of material fact. Rolovich does not cite

20        any "specific page or paragraph of the record where the disputed fact is

21        found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 96
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Further, WSU's Paragraph 172 quotes directly from a letter sent from EH&S to Patrick Chun, which was produced in this action and which Rolovich does not dispute is accurate. *See* General Objections 1 and 2.

173. <u>WSU's Fact, ECF No. 94 ¶ 173</u>: As EH&S Director Jason Sampson testified, EH&S's recommendations were "a minimum that was required by . . . Department of Health, Labor & Industries, in order for any unvaccinated individual to work," but EH&S "were not to determine if [the employee] could do their job." Coates Decl., Ex O at 31:15–20, 32:6–9.

<u>Rolovich's Response, ECF No. 118 ¶ 196</u>: Rolovich disputes that he would not have been able to perform his job with some reasonable accommodations. *Id.*

**<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response consists entirely of argument that is not responsive to WSU's asserted fact and is therefore insufficient and does not create a dispute of fact regarding the testimony described in WSU's Paragraph 173, which Rolovich does not dispute is accurate. Further, Rolovich's response fails to provide record citations to dispute the facts stated in WSU's Paragraph 173 beyond a self-serving declaration, which is insufficient to create a dispute of fact. *See* General Objections 1, 2, and 6.

174. <u>WSU's Fact, ECF No. 94 ¶ 174</u>: In this assessment, EH&S noted that Rolovich's job involved "[f]requent" contact with higher education students (i.e.,

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 97
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0141

(102 of 293), Page 102 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 102 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4860    Page 101
of 155

football players) and "[r]egular/[o]ccasional" contacts with K-12 students (i.e.,
football recruits) and various "[v]ulnerable [p]opulations as determined by
CDC." Chun Decl. ¶ 80, Ex. T.

Rolovich's Response, ECF No. 118 ¶ 197: The assessment speaks for
itself.

**WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite
any "specific page or paragraph of the record where the disputed fact is
found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).
*See also* General Objections 1 and 3.

175.  WSU's Fact, ECF No. 94 ¶ 175: The EH&S assessment also recognized
that "[s]ocial distancing is generally not possible" in Rolovich's job "due to work
duties requiring direct face-to-face services or activities for greater than 15
minutes" and that Rolovich's "responsibilities require regular travel to locations
with stringent COVID-19 protocols and safety requirements that may preclude
an unvaccinated worker's attendance." Chun Decl., Ex. T.

Rolovich's Response, ECF No. 118 ¶ 198: The assessment speaks for
itself.

**WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite
any "specific page or paragraph of the record where the disputed fact is
found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).
*See also* General Objections 1 and 3.

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 98
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(103 of 293), Page 103 of 293Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 103 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4861    Page 102
of 155

1    176. <u>WSU's Fact, ECF No. 94 ¶ 176</u>: The assessment's recommendations

2    included that Rolovich wear a NIOSH certified N95 respirator, equivalent, or

3    higher rated respirator without an exhalation valve if he would be interacting with

4    students or staff within 6 feet for durations exceeding 10 minutes. *Id.*

5    <u>Rolovich's Response, ECF No. 118 ¶ 199</u>: The assessment speaks for

6    itself. Additionally, it is clear that WSU's AD could have attempted to

7    accommodate Rolovich using these recommendations, yet unilaterally

8    elected not to attempt such measures. Rolovich Decl. at ¶ 34.

9    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's second

10   sentence in response consists entirely of argument that is not responsive to

11   WSU's asserted fact and is therefore insufficient and does not create a

12   dispute of fact regarding the facts described in WSU's Paragraph 176.

13   Further, Rolovich's response fails to provide record citations to dispute the

14   facts stated in WSU's Paragraph 176 beyond a self-serving declaration,

15   which is insufficient to create a dispute of fact. *See* General Objections 1,

16   2, and 6.

17   177. <u>WSU's Fact, ECF No. 94 ¶ 177</u>: Rolovich's need to communicate with

18   players, coaches, and officials in a noisy environment meant he would have to

19   constantly choose between coaching effectively and removing his mask—and

20   this requirement would have only become more onerous with the additional

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 99
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(104 of 293), Page 104 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 104 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4862    Page 103
of 155

1    requirement that he wear an N95 respirator rather than a basic cloth mask. Coates

2    Decl., Ex. A at 141:16–154:15.

3         <u>Rolovich's Response, ECF No. 118 ¶ 200</u>: Rolovich disputes this

4    statement as WSU never gave him the opportunity to communicate with

5    others while wearing the N95 respirator. Rolovich Decl. at ¶ 35. WSU

6    unilaterally made this decision, ignoring the advice of EH&S, and without

7    ever conferring with Rolovich. *Id*. at ¶ 34.

8    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

9    consists entirely of argument that is not responsive to WSU's asserted fact

10   and is therefore insufficient and does not create a dispute of fact regarding

11   the facts described in WSU's Paragraph 177. Further, Rolovich's response

12   fails to provide record citations to dispute the facts stated in WSU's

13   Paragraph 177 beyond a self-serving declaration, which is insufficient to

14   create a dispute of fact. Additionally, Rolovich's response contradicts the

15   deposition testimony cited in WSU's Paragraph 177, in which Rolovich

16   was shown video footage from WSU football games in 2021 in which he

17   removed his mask and testified that he did so, in part, "to get information

18   to the players," "for communication purposes," "to communicate

19   effectively," and to "make sure I got good breaths" in order to yell at

20   players, other coaches, and game officials. *See* General Objections 1, 2, 4,

21   and 6.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 100
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0144

(105 of 293), Page 105 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 105 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4863    Page 104
of 155

178. <u>WSU's Fact, ECF No. 94 ¶ 178</u>: The EH&S assessment also noted that, to ensure "distancing during travel," it "may require rental of additional buses, booking additional flights or options where the unvaccinated individual travels in [a] separate vehicle." Chun Decl., Ex. T. The assessment also recommended that, after a close-contact with someone testing positive for COVID-19, Rolovich be required to quarantine for 14 days from the close contact. *Id.*

 <u>Rolovich's Response, ECF No. 118 ¶ 201</u>: The assessment speaks for itself.

 **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). *See also* General Objections 1 and 3.

179. <u>WSU's Fact, ECF No. 94 ¶ 179</u>: If someone in Rolovich's household tested positive, this 14-day quarantine would start *after* the tenth day of that household member's isolation period. *Id.* Thus, if someone in Rolovich's household tested positive, Rolovich would have had to quarantine for 24 days. *See id.*

 <u>Rolovich's Response, ECF No. 118 ¶ 202</u>: The assessment speaks for itself.

 **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 101
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(106 of 293), Page 106 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 106 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4864    Page 105
of 155

1      found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

2      *See also* General Objections 1 and 3.

3      180.  <u>WSU's Fact, ECF No. 94 ¶ 180</u>: In the wrong 24-day period, this could

4  leave the football team without the head coach for four games, or one-third of

5  WSU's 12-game season. Dickert Decl. ¶ 10.

6      <u>Rolovich's Response, ECF No. 118 ¶ 203</u>: Rolovich disputes this

7      statement as it is attempting to predict a future event that may or may not

8      happen.

9      **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

10      any "specific page or paragraph of the record where the disputed fact is

11      found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

12      *See also* General Objections 1 and 2.

13      181.  <u>WSU's Fact, ECF No. 94 ¶ 181</u>: The Athletics Department leadership

14  then considered the assessment of Rolovich's position provided by EH&S and

15  concluded that they could not accommodate Rolovich by allowing him to remain

16  unvaccinated without causing undue hardship to WSU. Chun Decl. ¶ 79. On

17  October 17, 2021, Chun sent an email to Rolovich summarizing the next steps

18  regarding his accommodation request. *Id.* ¶ 86, Ex. V.

19      <u>Rolovich's Response, ECF No. 118 ¶ 204</u>: Rolovich disputes this claim as

20      WSU refuses to disclose how it determined that it could not accommodate

21      him. Rolovich Decl. at ¶ 32. WSU has claimed attorney-client privilege

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 102
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0146

(107 of 293), Page 107 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 107 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4865    Page 106
of 155

1    but now seems to want to use this fact to its benefit, while still hiding

2    behind the privilege. Additionally, WSU failed to communicate or engage

3    with Rolovich when determining if there was a reasonable accommodation

4    which they could provide him. *Id*.

5    **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

6    consists entirely of argument that is not responsive to WSU's asserted fact

7    and is therefore insufficient and does not create a dispute of fact regarding

8    the facts stated in WSU's Paragraph 181. Further, Rolovich's response

9    fails to provide record citations to dispute the facts stated in WSU's

10    Paragraph 181 beyond a self-serving declaration, which is insufficient to

11    create a dispute of fact. Additionally, Rolovich's claim of privilege is

12    misleading as the declaration cited in WSU's Paragraph 181 details the

13    process WSU engaged in to evaluate Rolovich's accommodation request.

14    WSU's claim of privilege over communications between Athletics

15    Department personnel and Attorney General's Office (AGO) attorneys is

16    proper—as this Court has already ruled on August 28, 2024, ECF No. 83—

17    and Rolovich cannot create a dispute of fact by raising objections to

18    attorney-client privilege here. Finally, Rolovich does not dispute that the

19    exhibit cited to support the facts stated in WSU's Paragraph 181, which

20    notified Rolovich of the "next steps" in the accommodation process, is

21    accurate. *See* General Objection, 2, 4, and 6.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 103
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(108 of 293), Page 108 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 108 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4866    Page 107
of 155

1    182.  WSU's Fact, ECF No. 94 ¶ 182: On October 18, 2021, Chun sent a letter

2    to HRS and EH&S explaining why he continued to believe that Rolovich could

3    not reasonably be accommodated without undue hardship to WSU. Chun Decl. ¶

4    85, Ex. U.

5        Rolovich's Response, ECF No. 118 ¶ 205: Chun's letter speaks for itself.

6        **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

7        any "specific page or paragraph of the record where the disputed fact is

8        found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

9        *See also* General Objections 1 and 3.

10   **R.    Rolovich's Separation from WSU**

11   183.  WSU's Fact, ECF No. 94 ¶ 183: After Chun, in consultation with

12   McCoy and Blair, determined that Rolovich could not be accommodated in his

13   role as head football coach, HRS emailed Rolovich on October 18, 2021, to

14   inform him that his religious accommodation request had been denied. Chun

15   Decl. ¶ 87.

16       Rolovich's Response, ECF No. 118 ¶ 206: HRS' email speaks for itself.

17       **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

18       any "specific page or paragraph of the record where the disputed fact is

19       found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

20       *See also* General Objections 1 and 3.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 104
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(109 of 293), Page 109 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 109 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4867    Page 108
of 155

1    184.  <u>WSU's Fact, ECF No. 94 ¶ 184</u>: This notification stated that "it would

2    pose an undue hardship to the University and/or a threat to [Rolovich] and others

3    to allow [him] to remain in [his] position while unvaccinated." ECF No. 89-15.

4    The notification went on: "Based upon the nature of your head coaching

5    responsibilities and core job functions and activities, the University has

6    determined you cannot safely and effectively do your job without undue hardship

7    to the University." *Id.*

8         <u>Rolovich's Response, ECF No. 118 ¶ 207</u>: HRS' email speaks for itself.

9         **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

10   any "specific page or paragraph of the record where the disputed fact is

11   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

12   *See also* General Objections 1 and 3.

13   185.  <u>WSU's Fact, ECF No. 94 ¶ 185</u>: The HRS notification also stated that,

14   in considering Rolovich's request, "the University considered both the

15   information you submitted as well as your own prior statements to WSU staff

16   and others regarding vaccination." *Id.* The notification continued: "Based on your

17   comments, in conjunction with the timing of your request for a religious

18   accommodation, the University questions the assertion that your sincerely held

19   religious views conflict with the University's vaccine requirement." *Id.*

20        <u>Rolovich's Response, ECF No. 118 ¶ 208</u>: HRS' email speaks for itself.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 105
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). *See also* General Objections 1 and 3.

186. <u>WSU's Fact, ECF No. 94 ¶ 186</u>: Shortly after HRS notified Rolovich of the denial of his accommodation request, Chun and Blair met with him and delivered a termination letter stating that WSU would be terminating Rolovich for just cause pursuant to the terms of his employment contract. Chun Decl. ¶ 87, Ex. W; ECF No. 89 ¶ 49.

<u>Rolovich's Response, ECF No. 118 ¶ 209</u>: For purposes of this Motion alone, Rolovich does not dispute this statement. Just cause was not a permissible basis for terminating Rolovich due to his alleged failure to comply with the vaccine mandate, as stated in Washington's FAQs, and as acknowledged by Lisa Gehring. Seese Decl. ¶ 31, Exh. DD.

**WSU's Reply:** No genuine dispute of material fact. Rolovich's second sentence in response consists entirely of argument that is not responsive to WSU's asserted fact and is therefore insufficient and does not create a dispute of fact regarding the facts described in WSU's Paragraph 186 and misrepresents the testimony of Lisa Gehring. *See* General Objections 1 and 2.

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 106
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1     187.  <u>WSU's Fact, ECF No. 94 ¶ 187</u>: The termination letter explained that

2  Rolovich had breached the terms of his contract because he had failed to comply

3  with WSU "rules, regulations, and policies" and "abide by all provisions of law"

4  because his failure to comply with the Proclamation rendered him legally unable

5  to work for WSU. Chun Decl. Ex. W.

6     <u>Rolovich's Response, ECF No. 118 ¶ 211</u>: The termination letter speaks

7    for itself.

8    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

9    any "specific page or paragraph of the record where the disputed fact is

10    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

11    *See also* General Objections 1 and 3.

12     188.  <u>WSU's Fact, ECF No. 94 ¶ 188</u>: Through counsel, Rolovich submitted

13  a detailed appeal to Chun explaining why Rolovich should be accommodated and

14  allowed to remain unvaccinated. Chun Decl. ¶ 89; ECF No. 89 ¶ 50.

15     <u>Rolovich's Response, ECF No. 118 ¶ 212</u>: The appeal speaks for itself.

16    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

17    any "specific page or paragraph of the record where the disputed fact is

18    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

19    *See also* General Objections 1 and 3.

20     189.  <u>WSU's Fact, ECF No. 94 ¶ 189</u>: Chun sent a letter to Rolovich on

21  November 12, 2021, denying the appeal and explaining why accommodation

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 107
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0151

(112 of 293), Page 112 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 112 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4870    Page 111
of 155

1    would cause undue hardship to WSU. Chun Decl. ¶ 89, Ex. X; ECF. No 89 ¶ 51.

2    Rolovich's last day as a WSU employee was November 15 and WSU issued his

3    final paycheck on November 24. Phares Decl. ¶ 37.

4        Rolovich's Response, ECF No. 118 ¶ 213: The letter speaks for itself.

5    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

6    any "specific page or paragraph of the record where the disputed fact is

7    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

8    *See also* General Objections 1 and 3.

9      190.  WSU's Fact, ECF No. 94 ¶ 190: Rolovich's employment contract

10    included another level of appeal to Kirk Schulz, WSU's President. McCoy Decl.,

11    Ex. A § 4.3.

12        Rolovich's Response, ECF No. 118 ¶ 214: Rolovich's employment

13    contract speaks for itself.

14    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

15    any "specific page or paragraph of the record where the disputed fact is

16    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

17    *See also* General Objections 1 and 3.

18      191.  WSU's Fact, ECF No. 94 ¶ 191: On November 26, 2021, Rolovich,

19    through counsel, sent an appeal letter to Schulz explaining why he felt that

20    Chun's decision to terminate for cause was incorrect and attaching numerous

21    documents. Schulz Decl. ¶ 39, Ex. F; ECF No. 89 ¶ 52.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 108
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0152

1    Rolovich's Response, ECF No. 118 ¶ 215: The appeal letter speaks for

2    itself.

3    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

4    any "specific page or paragraph of the record where the disputed fact is

5    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

6    *See also* General Objections 1 and 3.

7    192. WSU's Fact, ECF No. 94 ¶ 192: Schulz ultimately denied Rolovich's

8    appeal in a letter sent to Rolovich on December 6, 2021. Schulz Decl. ¶¶ 40–41,

9    Ex. G.

10    Rolovich's Response, ECF No. 118 ¶ 216: Shulz' appeal speaks for itself.

11    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

12    any "specific page or paragraph of the record where the disputed fact is

13    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

14    *See also* General Objections 1 and 3.

15    **S.    The Unrebutted Conclusions of WSU's Scientific Experts**

16    193. WSU's Fact, ECF No. 94 ¶ 193: WSU timely disclosed two scientific

17    experts, Dr. John Lynch and Dr. Guy Palmer. Lynch Rep. at 1; Palmer Rep. at 1.

18    Both are experts in infectious diseases and epidemiology. Lynch Rep. at 1;

19    Palmer Rep. at 1.

20    Rolovich's Response, ECF No. 118 ¶ 218: For purposes of this Motion

21    alone, Rolovich does not dispute this statement.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 109
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(114 of 293), Page 114 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 114 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4872    Page 113
of 155

1    **WSU's Reply:** No genuine dispute of material fact.

2    194.  WSU's Fact, ECF No. 94 ¶ 194: Dr. Lynch's findings and conclusions

3    include the following:

4    • The primary mode of COVID-19 transmission is aerosol-based, and

5      generally spread through "floating clouds of invisible particles." Lynch

6      Rep. ¶ 57.  While the greatest risk is indoors, it can also spread

7      outdoors, and at the time of the Vaccine Proclamation, it was known

8      that outdoor work was not clearly associated with a decrease to the risk

9      in infection. *Id.* ¶¶ 68–69. Having football games is associated with

10     higher COVID-19 case rates at universities. *Id.* ¶ 69.

11   • The regular indoor and outdoor interactions with other individuals that

12     were required of Rolovich and the other coaches were settings that

13     "create risks for transmission of COVID-19 from Rolovich and the

14     other vaccinated coach to others." *Id.* ¶ 86.

15   • After rigorous clinical testing and more than 3.5 years of real-world

16     use, the Pfizer and Moderna COVID-19 vaccines (the mRNA vaccines)

17     have been found safe for everyone except the less-than-0.001% of the

18     population that is "acutely allergic to their ingredients." *Id.* ¶ 39.

19   • The COVID-19 "vaccines offer protection against transmission—both

20     indoors and outdoors—and . . . reducing transmission limits the

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 110
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0154

1    development of more dangerous variants, eases pressure on extremely

2    overwhelmed health care facilities, and saves lives." *Id.* ¶ 70.

3    • The COVID-19 vaccines were effective against the Delta variant. *Id.*

4    ¶¶ 62, 64. Multiple CDC studies in summer and fall of 2021 found that

5    unvaccinated persons were much likelier to contract, be hospitalized

6    with, and die from COVID-19. *Id.* ¶ 64.

7    • Researchers estimate that vaccination against COVID-19 prevented

8    over 3 million deaths and 18 million hospitalizations in the United

9    States by the end of 2022. *Id.* ¶ 60.

10    • "[V]accination was and is the single best tool available for stemming

11    the spread of COVID-19 and its variants, especially when used in

12    combination with other mitigations." *Id.* ¶ 71.

13    • Because vaccination was "the most important and effective public

14    health tool at our disposal to combat COVID-19," "[n]o other public

15    health strategy could effectively meet WSU's goals of a running a

16    world-class university, athletic department, and NCAA football

17    program while protecting the health, safety, and well-being of

18    University employees, students, donors, and the public at large." *Id.*

19    ¶ 71.

20    • Based on those findings, Dr. Lynch concluded that, "allowing Rolovich

21    and seven other football coaches or professionals to continue working

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 111
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(116 of 293), Page 116 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 116 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4874    Page 115
of 155

1   in their positions unvaccinated in the fall of 2021 would have

2   significantly increased the risk of their contracting and transmitting

3   COVID-19 to . . . other football coaches, Athletics Department staff,

4   student-athletes, members of the media, WSU donors, and others." *Id.*

5   ¶ 72.

6   Rolovich's Response, ECF No. 118 ¶ 219: Dr. Lynch's report speaks for

7   itself.

8   **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

9   any "specific page or paragraph of the record where the disputed fact is

10  found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

11  *See also* General Objections 1 and 3.

12      195.  WSU's Fact, ECF No. 94 ¶ 195: Dr. Palmer agreed with Dr. Lynch's

13  conclusions "generally and in their particulars." Palmer Rep. ¶ 10. Dr. Palmer's

14  findings and conclusions also include the following:

15      • Attempting to accommodate Rolovich and the other football staff

16        members seeking exemptions "would have posed a serious risk of them

17        contracting COVID-19 and transmitting it to others—including other

18        coaches, the members of the football team, donors, other individuals

19        they regularly came into contact with, and the university and Pullman

20        community at large." Palmer Rep. ¶ 57. This would be especially true

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 112
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(117 of 293), Page 117 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 117 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4875    Page 116
of 155

1      if WSU attempted to accommodate all eight individuals on the football

2      staff who sought exemptions. *Id.* ¶ 58.

3      • In his report, Dr. Palmer lists the many requirements from the WSU

4      Athletics Department and the Pac-12 for unvaccinated individuals, as

5      well as additional recommendations he would have made had they

6      attempted to accommodate the eight individuals. *Id.* ¶¶ 59–60. But

7      Dr. Palmer concluded that none "of those mitigation measures (whether

8      viewed in isolation or together)" would have been "an adequate

9      substitute for vaccination." *Id.* ¶ 61.

10      • Even if WSU had implemented those mitigation measures—and if the

11      eight individuals had actually complied—Dr. Palmer concluded that

12      "granting accommodations to Mr. Rolovich and the other coaches

13      would have resulted in a significantly greater risk of them getting

14      infected with COVID-19 and transmitting it to others." *Id.* ¶ 61.

15      <u>Rolovich's Response, ECF No. 118 ¶ 210</u>: Dr. Palmer's report speaks for

16      itself.

17      **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

18      any "specific page or paragraph of the record where the disputed fact is

19      found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

20      *See also* General Objections 1 and 3.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 113
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(118 of 293), Page 118 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 118 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4876    Page 117
of 155

**T.    Fiscal Impacts of Accommodating Rolovich's Request**

196.  <u>WSU's Fact, ECF No. 94 ¶ 196</u>: Based on the unrebutted findings of WSU's economic expert, the cost to charter separate flights for Rolovich and the other unvaccinated coaches to travel to games would have been approximately $28,000 per game, totaling $168,000 for all six games. Bones Rep. at 30.

<u>Rolovich's Response, ECF No. 118 ¶ 222</u>: Rolovich disputes this statement as it does not take into account the unvaccinated football players and whether WSU was already making separate arrangements for those individuals, or had determined separate accommodations for unvaccinated individuals on the football team were not needed. Further, the six games are across both the 2021 and 2022 football seasons. ECF No. 96 at p. 30.

<u>**WSU's Reply:**</u> No genuine dispute of material fact. Rolovich's response consists entirely of argument that is not responsive to WSU's asserted fact and is therefore insufficient and does not create a dispute of fact regarding the facts stated in WSU's Paragraph 196. Rolovich does not cite any "specific page or paragraph of the record where the disputed fact is found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). The only document cited in Rolovich's response is the Bones Report, which confirms the facts stated in WSU's Paragraph 196. Additionally, Rolovich has failed to provide expert testimony to rebut the Bones Report, so there

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 114
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0158

1    is no dispute of fact regarding the conclusions in the report. *See* General

2    Objections 1 and 2.

3    197.  <u>WSU's Fact, ECF No. 94 ¶ 197</u>: The cost for hiring separate buses for

4    Rolovich and other unvaccinated coaches to travel to the stadiums for games

5    would have cost approximately $28,500 for the 2021 season. *Id.*

6        <u>Rolovich's Response, ECF No. 118 ¶ 223</u>: The cost estimated by David

7        Bones, WSU's expert, of $28,500 for hiring separate buses were for 13

8        games across the 2021 and 2022 seasons. Bones Rep. at 30. Rolovich

9        further disputes this statement as it does not take into account the

10        unvaccinated football players and whether WSU was already making

11        separate arrangements for those individuals, or had determined separate

12        accommodations for unvaccinated individuals on the football team were

13        not needed.

14    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

15    consists entirely of argument that is not responsive to WSU's asserted fact

16    and is therefore insufficient and does not create a dispute of fact regarding

17    the facts stated in WSU's Paragraph 197. Rolovich does not cite any

18    "specific page or paragraph of the record where the disputed fact is found"

19    and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C). The only

20    document cited in Rolovich's response is the Bones Report, which

21    confirms the facts stated in WSU's Paragraph 197. Additionally, Rolovich

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 115
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(120 of 293), Page 120 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 120 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4878    Page 119
of 155

1    has failed to provide expert testimony to rebut the Bones Report, so there

2    is no dispute of fact regarding the conclusions in the report. *See* General

3    Objections 1 and 2.

4    198. <u>WSU's Fact, ECF No. 94 ¶ 198</u>: The lost revenue from ticket sales

5    resulting from one canceled football game would have been approximately $1.25

6    million. *Id.* at 23.

7    <u>Rolovich's Response, ECF No. 118 ¶ 227</u>: Rolovich disputes the fact that

8    there would have been any canceled football games.  WSU had already

9    played seven games during the 2021 football season, without any

10    cancellations. Rolovich Decl., at ¶ 13.

11    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

12    consists of argument that is not responsive to WSU's asserted fact and is

13    therefore insufficient and does not create a dispute of fact as it fails to

14    address the calculated revenue losses attributable to canceled games.

15    Further, Rolovich's response fails to provide record citations to dispute the

16    facts stated in WSU's Paragraph 198 beyond a self-serving declaration,

17    which is insufficient to create a dispute of fact. Additionally, Rolovich has

18    failed to provide expert testimony to rebut the Bones Report, so there is no

19    dispute of fact regarding the conclusions in the report. *See* General

20    Objections 1, 2, and 6.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 116
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0160

1    199. <u>WSU's Fact, ECF No. 94 ¶ 199</u>: The lost revenue from ticket sales

2    resulting from cancellation of one bowl game would be higher: approximately

3    $1.8 million. *Id.* at 26.

4         <u>Rolovich's Response, ECF No. 118 ¶ 228</u>: Rolovich disputes the fact that

5         there would have been any canceled football games.  WSU had already

6         played seven games during the 2021 football season, without any

7         cancellations. Rolovich Decl., at ¶ 13.

8         **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

9         consists of argument that is not responsive to WSU's asserted fact and is

10        therefore insufficient and does not create a dispute of fact as it fails to

11        address the calculated revenue losses attributable to canceled bowl games.

12        Further, Rolovich's response fails to provide record citations to dispute the

13        facts stated in WSU's Paragraph 199 beyond a self-serving declaration,

14        which is insufficient to create a dispute of fact. Additionally, Rolovich has

15        failed to provide expert testimony to rebut the Bones Report, so there is no

16        dispute of fact regarding the conclusions in the report. *See* General

17        Objections 1, 2, and 6.

18    200. <u>WSU's Fact, ECF No. 94 ¶ 200</u>: Canceled games would also result in

19    lost revenue from media rights.  *Id.* at 9, 23–25. Media-rights revenues—those

20    realized from the Pac-12 conference's contracts with ESPN and Fox to broadcast

21    games—are the largest income source for WSU's football program. *Id.* at 9.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 117
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**ER0161**

1    <u>Rolovich's Response, ECF No. 118 ¶ 229</u>: Rolovich disputes the fact that

2    there would have been any canceled football games.  WSU had already

3    played seven games during the 2021 football season, without any

4    cancellations. Rolovich Decl., at ¶ 13.

5    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

6    consists of argument that is not responsive to WSU's asserted fact and is

7    therefore insufficient and does not create a dispute of fact as it fails to

8    address the losses attributable to canceled games. Further, Rolovich's

9    response fails to provide record citations to dispute the facts stated in

10    WSU's Paragraph 200 beyond a self-serving declaration, which is

11    insufficient to create a dispute of fact. Additionally, Rolovich has failed to

12    provide expert testimony to rebut the Bones Report, so there is no dispute

13    of fact regarding the conclusions in the report. *See* General Objections 1,

14    2, and 6.

15    201.  <u>WSU's Fact, ECF No. 94 ¶ 201</u>: The lost revenue from media rights for

16    one canceled game would be approximately $170,000. *Id.* at 25.

17    <u>Rolovich's Response, ECF No. 118 ¶ 230</u>: Rolovich disputes the fact that

18    there would have been any canceled football games.  WSU had already

19    played seven games during the 2021 football season, without any

20    cancellations. Rolovich Decl., at ¶ 13.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 118
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

2    consists of argument that is not responsive to WSU's asserted fact and is

3    therefore insufficient and does not create a dispute of fact as it fails to

4    address the losses attributable to canceled games. Further, Rolovich's

5    response fails to provide record citations to dispute the facts stated in

6    WSU's Paragraph 201 beyond a self-serving declaration, which is

7    insufficient to create a dispute of fact. Additionally, Rolovich has failed to

8    provide expert testimony to rebut the Bones Report, so there is no dispute

9    of fact regarding the conclusions in the report. *See* General Objections 1,

10   2, and 6.

11   202.  <u>WSU's Fact, ECF No. 94 ¶ 202</u>: There would be additional lost revenue

12   in the forms of parking fees, concessions, and other revenues generated by having

13   large amounts of fans attend the game. *Id.* at 26.

14   <u>Rolovich's Response, ECF No. 118 ¶ 231</u>: Rolovich disputes the fact that

15   there would have been any canceled football games.  WSU had already

16   played seven games during the 2021 football season, without any

17   cancellations. Rolovich Decl., at ¶ 13.

18   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

19   consists of argument that is not responsive to WSU's asserted fact and is

20   therefore insufficient and does not create a dispute of fact as it fails to

21   address the losses attributable to canceled games. Further, Rolovich's

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 119
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(124 of 293), Page 124 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 124 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4882    Page 123
of 155

1   response fails to provide record citations to dispute the facts stated in

2   WSU's Paragraph 202 beyond a self-serving declaration, which is

3   insufficient to create a dispute of fact. Additionally, Rolovich has failed to

4   provide expert testimony to rebut the Bones Report, so there is no dispute

5   of fact regarding the conclusions in the report. *See* General Objections 1,

6   2, and 6.

7   203. WSU's Fact, ECF No. 94 ¶ 203: A media survey prepared by the

8   Meltwater media monitoring company, which WSU regularly use to analyze

9   media coverage of the University, demonstrated that Rolovich's vaccine stance

10  was the single-largest driver of negative coverage of WSU in years. Bones Rep.

11  at 34–35; Coates Decl., Ex. EE.

12  Rolovich's Response, ECF No. 118 ¶ 232: Rolovich objects to the

13  ambiguous and undefined term, "negative coverage."

14  **WSU's Reply:** No genuine dispute of material fact. Rolovich's objection

15  to terms does not cite any "specific page or paragraph of the record where

16  the disputed fact is found" and, therefore, does not create a dispute of fact.

17  LCR 56(c)(1)(C). *See* General Objection 1.

18  204. WSU's Fact, ECF No. 94 ¶ 204: Donor contributions to the WSU

19  Athletics Department generally range from $2.3 to 3.8 million each year. Bones

20  Rep. at 10–11.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 120
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(125 of 293), Page 125 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 125 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4883    Page 124
of 155

1    <u>Rolovich's Response, ECF No. 118 ¶ 233</u>: Rolovich disputes this as it was

2    the football program that generally received $2.3 to 3.8 million each year.

3    Bones Rep. at 10-11. However, the Athletics Department received

4    donations that ranged from $7.7 to 14.5 million per year from fiscal year

5    2018 through 2023. Bones Rep., Attachment C.

6    **<u>WSU's Reply:</u>** WSU agrees that donor contributions to the football

7    program at WSU ranged from $2.3–3.8 million. WSU contends that the

8    fact that contributions totaled $2.3–3.8 million for the football program,

9    rather than the entire Athletics Department, is not material to resolution of

10    its Cross-Motion for Summary Judgment. *See* General Objections 1 and

11    2.

12    205. <u>WSU's Fact, ECF No. 94 ¶ 205</u>: Once it became publicly known that

13    Rolovich was refusing to be vaccinated, multiple donors—including several that

14    had previously given millions to WSU—expressed their anger and

15    disappointment that Rolovich was endangering student-athletes and the WSU

16    community. Ganders Decl. ¶ 5, Ex. A; Chun Decl. ¶¶ 50, 53, Exs. G, H, I, J & K.

17    <u>Rolovich's Response, ECF No. 118 ¶ 234</u>: Rolovich disputes that all of the

18    donors expressed disapproval. Rolovich Decl. at ¶ 18. This was a highly

19    contested issue, of which most of the country was divided. *Id*. To believe

20    that there were not donors on the other side supporting Rolovich's decision

21    is disingenuous.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 121
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(126 of 293), Page 126 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 126 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4884    Page 125
of 155

1  **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

2  reflects a misunderstanding of the facts in WSU's Paragraph 205, which

3  does not state that "all" donors expressed anger and disappointment, but

4  that "multiple donors" did.  Rolovich's response consists entirely of

5  argument that is not responsive to WSU's asserted fact and is therefore

6  insufficient and does not create a dispute of fact regarding the facts stated

7  in WSU's Paragraph 205. That vaccination was a highly contested issue

8  does not address the response WSU received from donors. Further,

9  Rolovich's response fails to provide record citations to dispute the facts

10  stated in WSU's Paragraph 205 beyond a self-serving declaration, which

11  is insufficient to create a dispute of fact. *See* General Objections 1, 2 and

12  6.

13  206. <u>WSU's Fact, ECF No. 94 ¶ 206</u>: Multiple donors even explicitly

14  threatened to withhold further donations and bequests based on Rolovich's

15  vaccine stance, including one donor who canceled a planned $1 million bequest

16  to the university. Ganders Decl. ¶ 5; Bones Rep. at 31–32.

17  <u>Rolovich's Response, ECF No. 118 ¶ 235</u>: Rolovich disputes that all of the

18  donors expressed disapproval. *Id*. This was a highly contested issue, of

19  which most of the country was divided. *Id*. To believe that there were not

20  donors on the other side supporting Rolovich's decision is disingenuous.

21  Further, WSU has not stated that these multiple donors were giving to the

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 122
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(127 of 293), Page 127 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 127 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4885    Page 126
of 155

1    football program of the Athletics Department specifically or to WSU as a

2    whole.

3    **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

4    reflects a misunderstanding of the facts in WSU's Paragraph 206, which

5    does not state that "all" donors threatened to withhold donations, but that

6    "multiple donors" did. Rolovich's response consists entirely of argument

7    that is not responsive to WSU's asserted fact and is therefore insufficient

8    and does not create a dispute of fact regarding the facts stated in WSU's

9    Paragraph 206. That vaccination was a highly contested issue does not

10   address whether donors threatened to withhold donations. Further,

11   Rolovich's response fails to provide record citations to dispute the facts

12   stated in WSU's Paragraph 206 beyond a self-serving declaration, which

13   is insufficient to create a dispute of fact. *See* General Objections 1, 2 and

14   6.

15       207. <u>WSU's Fact, ECF No. 94 ¶ 207</u>: WSU reviewed the historical donations

16   received from numerous donors who had expressed frustration with Rolovich's

17   decision via written communications. Ganders Decl. ¶¶ 6–7. Based on WSU's

18   data, the historical giving amounts from these disaffected donors totaled several

19   million dollars. *Id.* ¶¶ 6–7, Ex. B.

20       <u>Rolovich's Response, ECF No. 118 ¶ 236</u>: Rolovich disputes that all of the

21   donors expressed disapproval. *Id.* This was a highly contested issue, of

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 123
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(128 of 293), Page 128 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 128 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4886    Page 127
of 155

1    which most of the country was divided. *Id*. To believe that there were not

2    donors on the other side supporting Rolovich's decision is disingenuous.

3    Rolovich disputes WSU's characterization of the "historical giving

4    amounts," as to amount to several million dollars, it is the lifetime giving

5    combined of these donors. Further, the Athletics Department received

6    $120.9 million in fiscal year 2022, "the highest activity since FY2015."

7    Seese Decl. ¶ 36, Exh. HH. In fiscal year 2023, WSU received $167.9

8    million in annual fundraising. Seese Decl. ¶ 37, Exh. II.

9    **WSU's Reply:** No genuine dispute of material fact. Rolovich's response

10   reflects a misunderstanding of the statement in WSU's Paragraph 207,

11   which does not state that "all" donors expressed disapproval. Rolovich's

12   response consists entirely of argument that is not responsive to WSU's

13   asserted fact and is therefore insufficient and does not create a dispute of

14   fact regarding the facts stated in WSU's Paragraph 207. Whether

15   "vaccination was a highly contested issue" does not address WSU's review

16   of historical donations. Further, Rolovich's response is not responsive to

17   the facts stated and includes statements that do not cite any "specific page

18   or paragraph of the record where the disputed fact is found" and, therefore,

19   does not create a dispute of fact. LCR 56(c)(1)(C). Finally, the donations

20   received in 2022 and 2023 are irrelevant to the facts stated in WSU's

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 124
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(129 of 293), Page 129 of 293Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 129 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4887    Page 128
of 155

1    Paragraph 207 and do not create a dispute of fact. *See* General Objections

2    1, 2 and 6.

3    208.  <u>WSU's Fact, ECF No. 94 ¶ 208</u>: The week after Rolovich's employment

4    was terminated, WSU received over $3.5 million in new donations. Straub Decl.

5    ¶ 16.

6    <u>Rolovich's Response, ECF No. 118 ¶ 237</u>: Rolovich disputes that all of the

7    donors expressed disapproval. *Id*. This was a highly contested issue, of

8    which most of the country was divided. *Id*. To believe that there were not

9    donors on the other side supporting Rolovich's decision is disingenuous.

10   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich's response

11   reflects a misunderstanding of the facts in WSU's Paragraph 208, which

12   does not state that "all" donors threatened to withhold donations.

13   Rolovich's response consists entirely of argument that is not responsive to

14   WSU's asserted fact and is therefore insufficient and does not create a

15   dispute of fact regarding the facts stated in WSU's Paragraph 208.

16   Additionally, Rolovich does not respond to the facts stated. That

17   vaccination was a highly contested issue does not address the total

18   donations WSU received following Rolovich's termination. Further,

19   Rolovich's response fails to provide record citations to dispute the facts

20   stated in WSU's Paragraph 208 beyond a self-serving declaration, which

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 125
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    is insufficient to create a dispute of fact. *See* General Objections 1, 2 and

2    6.

3    **U.    Additional Rolovich Communications Post-Separation**

4    209. <u>WSU's Fact, ECF No. 94 ¶ 209</u>: On December 25, 2021, Rolovich

5    texted David Fox and Bill Stutzman that he "[j]ust got out of church with my

6    mom. Only ones without masks. You should've seen the faces." Coates Decl.,

7    Ex. FF.

8    <u>Rolovich's Response, ECF No. 118 ¶ 238</u>: The texts speak for themselves.

9    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

10    any "specific page or paragraph of the record where the disputed fact is

11    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

12    LCR 56(c)(1)(C). *See also* General Objections 1 and 3.

13    210. <u>WSU's Fact, ECF No. 94 ¶ 210</u>: On January 30, 2022, Rolovich mocked

14    a vaccinated friend via text by calling him a "butt jab pussy" and telling him to

15    "[g]o put your mask on and be a good little butt jabber." *Id.*, Ex. GG.

16    <u>Rolovich's Response, ECF No. 118 ¶ 239</u>: The texts speak for themselves.

17    **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

18    any "specific page or paragraph of the record where the disputed fact is

19    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

20    *See also* General Objections 1 and 3.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 126
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(131 of 293), Page 131 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 131 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4889    Page 130
of 155

1    211.  WSU's Fact, ECF No. 94 ¶ 211: On February 16, 2022, when David Fox

2    referred to those trying to implement masking protocols as "mask nazis,"

3    Rolovich responded "Damn right." *Id.*, Ex. HH.

4        Rolovich's Response, ECF No. 118 ¶ 240: The texts speak for themselves.

5    **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

6    any "specific page or paragraph of the record where the disputed fact is

7    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

8    *See also* General Objections 1 and 3.

9    212.  WSU's Fact, ECF No. 94 ¶ 212: On March 18, 2022, Rolovich texted

10   David Fox and Bill Stutzman the following: "The real virus was intercepted at a

11   DUMB in Dulce NM and replaced with a weak virus that died two months later.

12   Trump and the White Hats used the fake COVID PLANDEMIC to discreetly

13   hunt down and arrested over 300,000 criminals guilty of TREASON and crimes

14   against humanity across the country with the assistance of the USMC, Putin, Xi,

15   Modi, and Interpol. 2 million+ children have been saved from thousands of

16   DUMBs and Immense tunnel systems across the planet. This operation was about

17   saving children from child sex trafficking and adrenochrome production

18   facilities." *Id.*, Ex. II.

19       Rolovich's Response, ECF No. 118 ¶ 241: The texts speak for themselves.

20   **WSU's Reply:** No genuine dispute of material fact. Rolovich does not cite

21   any "specific page or paragraph of the record where the disputed fact is

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 127
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

2    *See also* General Objections 1 and 3.

3    **V.    Rolovich's Post-Separation Job Prospects**

4    213.  <u>WSU's Fact, ECF No. 94 ¶ 213</u>: On December 6, 2021, Rolovich texted

5    Craig Stutzman, John Richardson, Ricky Logo, Mark Weber, and other

6    individuals that the University of Nevada, along with two private Christian

7    universities in Texas, would not hire him unless he had been vaccinated. Coates

8    Decl., Ex. JJ.

9    <u>Rolovich's Response, ECF No. 118 ¶ 242</u>: The text speaks for itself.

10   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

11   any "specific page or paragraph of the record where the disputed fact is

12   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

13   *See also* General Objections 1 and 3.

14   214.  <u>WSU's Fact, ECF No. 94 ¶ 214</u>: On January 15, 2022, Rolovich texted

15   Aaron Ingram that the University of Hawaii would not hire him because he was

16   unvaccinated. Coates Decl., Ex. KK.

17   <u>Rolovich's Response, ECF No. 118 ¶ 243</u>: The text speaks for itself.

18   **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

19   any "specific page or paragraph of the record where the disputed fact is

20   found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

21   *See also* General Objections 1 and 3.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 128
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1      215. <u>WSU's Fact, ECF No. 94 ¶ 215</u>: On November 7, 2022, Rolovich texted

2    Craig Stutzman, John Richardson, Ricky Logo, Mark Weber, and other

3    individuals that if the current athletic director stayed at ASU "we ain't going

4    there. He is making them wear masks on the bus and plane." Coates Decl., Ex.

5    LL.

6      <u>Rolovich's Response, ECF No. 118 ¶ 244</u>: The text speaks for itself.

7      **<u>WSU's Reply:</u>** No genuine dispute of material fact. Rolovich does not cite

8    any "specific page or paragraph of the record where the disputed fact is

9    found" and, therefore, does not create a dispute of fact. LCR 56(c)(1)(C).

10    *See also* General Objections 1 and 3.

11  **III.**    **WSU'S RESPONSES TO PLAINTIFF'S ADDITIONAL FACTS**

12    <u>Rolovich's Additional Fact, ECF No. 118 ¶ 70</u>: The NCAA had significantly

13    restricted in-person recruiting by instituting a "dead period" from March 18, 2020

14    through May 31, 2021. Seese Decl., ¶¶ 3-5, Exhs. B, C, and D. Rolovich could

15    not conduct any in-person recruiting from January 1, 2021 through May 31, 2021,

16    and did not do any such in-person recruiting in adherence to NCAA rules.

17    Rolovich Decl. at ¶ 7. Rather, Rolovich virtually recruited through phone calls

18    and video calls, which the NCAA permitted during this period. *Id*. Rolovich even

19    conducted video tours of campus to potential recruits. *Id.*

20      **<u>WSU's Response:</u>** WSU does not dispute that Exhibit G to the Seese

21    Declaration is the 2021–2022 NCAA Recruiting Calendar and reflects the

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 129
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0173

1    dates and limitations indicated. Further, WSU does not dispute that

2    Rolovich engaged in some virtual recruiting, but disputes that he engaged

3    in any virtual recruiting that is not reflected in Rolovich's ARMS call logs.

4    Corbin Decl., Ex. A. WSU also disputes the implication these efforts were

5    adequate to fulfill the recruiting efforts required of a head football coach.

6    As noted by Coach Dickert, Rolovich's predominantly virtual recruiting

7    efforts in 2020 and 2021 were insufficient to construct a viable recruiting

8    class for the following season. Dickert Decl. ¶ 45.

9    Rolovich's Additional Fact, ECF No. 118 ¶ 71: While the NCAA resumed

10    pre-pandemic recruiting activities on June 1, 2021, the quiet period was in place

11    from June 1, 2021 through June 27, 2021 followed by a dead period from June

12    28, 2021 through July 24, 2021, then a quiet period from July 25, 2021 through

13    July 31, 2021. Seese Decl. ¶ 6, Exh. E. However, the NCAA did permit on-

14    campus evaluations during unofficial visits during the days football camps and

15    clinics were allowed in June and July 2021 only, but otherwise the recruiting

16    calendar was followed with a waiver of the telephone call legislation. *Id.* at ¶ 7,

17    Exh. F. Once the 2021-2022 recruiting period began, it initiated with a dead

18    period from August 1, 2021 through August 31, 2021. Seese Decl. ¶ 8, Exh. G.

19    Finally, from September 1, 2021 through November 27, 2021 was the evaluation

20    period permitted by the NCAA, which still did not allow in-person, off-campus

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 130
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0174

1  recruiting. *Id.* From November 28, 2021 through December 11, 2021, in-person,

2  offcampus recruiting was permitted. *Id.*

3      **WSU's Response:** WSU does not dispute that Exhibit G to the Seese

4  Declaration is the 2021–2022 NCAA Recruiting Calendar and reflects the

5  dates and limitations indicated.

6      Rolovich's "Additional" Fact, ECF No. 118 ¶ 95: On August 17, 2021, a WSU

7  Board of Regents member texted President Kirk Schulz asking, "What is our

8  game plan in dealing with Rolovich?" Seese Decl. at ¶ 11, Exh. J.

9      **WSU's Response:** WSU does not dispute that Regent Cerna sent President

10  Schulz the following text message on August 17, 2021: "What is our game

11  plan in dealing with Rolovich? I've had alumni friends contact about him.

12  They want to know what I think and what if anything will be done." Seese

13  Decl., Ex. J at Schulz_SDT_00000054.

14      Rolovich's Additional Fact, ECF No. 118 ¶ 96: That same day, President Kirk

15  Schulz texted Athletics Director Patrick Chun, "We have a plan - so let me get

16  some details and I will give you a call." *Id.* at ¶ 12, Exh. K. President Schulz also

17  texted the Chair of the Board of Regents, Marty Dickinson, "Let me know how

18  schedule looks for next few days - we have a Rolo strategy." *Id.* at ¶ 13, Exh. L.

19      **WSU's Response:** Exhibit K to the Seese Declaration, ECF No. 120-12,

20  does not contain the quoted text message from President Schulz to

21  Athletics Director Patrick Chun. WSU does not dispute that President

22  Schulz sent Regent Dickinson the following text message on August 17,

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 131
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(136 of 293), Page 136 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 136 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4894    Page 135
of 155

1        2021: "Let me know how schedule looks for next few days – we have a

2        Rolo strategy, and believe Gov will do indoor mask mandate and vaccine

3        requirement for higher Ed tomorrow. Just want to run by you what we are

4        planning." Seese Decl., Ex. L at Schulz_SDT_00000123. The

5        contemporaneous written communications between President Schulz,

6        Regent Dickinson, and WSU Vice President of Communications Phil

7        Weiler make clear that the "strategy" referred to was a media and

8        communications strategy. Seese Decl., Ex. M.

9    <u>Rolovich's Additional Fact, ECF No. 118 ¶ 97</u>: Two days later, President

10 Schulz texted Ms. Dickinson, "Not to be too depressing this evening – but it

11 appears that Nick is going to claim a religious exemption to the vaccine mandate.

12 I asked Phils to engage a Seattle firm to assist us – and I intend to be pretty public

13 expressing my disappointment with his decision. Right now we are so angry (Pat

14 and myself) that we cannot see straight." *Id.* at ¶ 14, Exh. M. Ms. Dickinson

15 responded to President Schulz: "So disappointed and pissed!! Right there with

16 you Kirk! And can you pls tell me his devoted religion?" President Schulz

17 responded, "I have no $&$@@ idea. Probably searching on the internet as we

18 speak." *Id.* President Shulz also texted, "While I know I have to be careful—I

19 would like to include a quote expressing my disappointment in this decision." *Id.*

20

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 132
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0176

(137 of 293), Page 137 of 293Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 137 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4895    Page 136
of 155

1  **WSU's Response:** Exhibit M to the Seese Declaration, ECF No. 120-14,

2  does not contain the quoted text messages between President Schulz and

3  Regent Dickinson.

4  Rolovich's Additional Fact, ECF No. 118 ¶ 98: The next morning, Ms.

5  Dickinson texted President Schulz saying that they needed to "recognized all the

6  nuances" of the situation, including "From firing and paying $$$ while Seattle

7  beats us up on deficit yet want the coach gone!!!! . . . time to take the reigns and

8  in my opinion no longer protect Nick who has tarnished WSU Brand." *Id.* at ¶

9  16, Exh. O.

10  **WSU's Response:** Exhibit O to the Seese Declaration, ECF No. 120-15,

11  does not contain the quoted text messages from Regent Dickinson to

12  President Schulz.

13  Rolovich's Additional Fact, ECF No. 118 ¶ 99: Later that day, President

14  Schulz sent the Board of Regents an update expressing his "disappointment" in

15  Rolovich's decision to file for a religious exemption. Schulz stated that while he

16  has "the greatest respect" for other WSU employees "whose religious convictions

17  prevent them from taking the vaccine," he was "deeply disappointed that WSU's

18  football coach has opted to use the exemption process." *Id.* at ¶ 17, Exh. P.

19  **WSU's Response:** Exhibit P to the Seese Declaration, ECF No. 120-15,

20  does not contain "an update" from President Schulz to the Board of

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 133
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(138 of 293), Page 138 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 138 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4896    Page 137
of 155

1    Regents; instead, Exhibit P is a screenshot of a text message thread with

2    "Ashton."

3    **Rolovich's Additional Fact, ECF No. 118 ¶ 100**: Chun texted a friend, Ashton

4    Youboty, "Our head coach has put himself in a bad situation by not getting Vax.

5    It's going to be a great lesson for current or future coaches about decisions you

6    can or cannot make as a head coach." *Id*. at ¶ 17, Exh. P.

7    **WSU's Response:** WSU does not dispute that Exhibit P to the Seese

8    Declaration contains, in part, the language quoted.

9    **Rolovich's Additional Fact, ECF No. 118 ¶ 104**: On August 20, 2024,

10    President Schulz road [sic] the WSU Board of Regents an update about Coach

11    Rolovich's decision not to exercise his personal exemption to not get vaccinated.

12    Seese Decl. ¶ 16, Exh. O.

13    **WSU's Response:** WSU disputes Rolovich's description of President

14    Schulz's update to the Board of Regents, which is attached as Exhibit O to

15    the Seese Declaration, ECF No. 120-15. The update states: "We worked

16    closely with Governor Inslee on the recent vaccinate [sic] mandate for

17    higher education employees and felt that once the personal exemption was

18    lifted that Coach Rolovich would agree to the vaccine. He informed Pat

19    yesterday afternoon/evening that he intends to seek a religious exemption

20    to the vaccine mandate. To say that we are disappointed in this would be a

21    severe understatement." Seese Decl., Ex. O at WSU_00028442. Stated

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 134
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0178

1    differently, President Schulz's update to the Board of Regents concerned

2    Rolovich's decision to seek religious accommodation after "the personal

3    exemption was lifted." *Id*.

4    <u>Rolovich's Additional Fact, ECF No. 118 ¶ 110</u>: Internal procedures drafted

5    by HRS state that the review committee "*determines* if the employee holds

6    sincerely held religious beliefs, practice, or observance" and the employee's

7    department is contacted only after a "sincerely held religious belief is

8    *confirmed.*" (emphasis added). Seese Decl. ¶ 18, Exh. Q.

9    **<u>WSU's Response:</u>** WSU disputes any characterization of the internal

10    procedures as representing WSU's *complete* policy for assessing religious

11    accommodation requests. As explained in her deposition by Lisa Gehring,

12    the former Assistant Vice President of WSU's Human Resource Services

13    (HRS), while "[t]he guidelines were written very Step 1, Step 2," they did

14    not specifically identify "every potential circumstance that might come up

15    from Step 1 to Step 2 or within Step 1 or within Step 2." Coates Decl., Ex.

16    NN at 124:3–15.

17    <u>Rolovich's Additional Fact, ECF No. 118 ¶ 112</u>: WSU talking points from

18    October 15 state, "If an employee exemption is *approved*, the application goes

19    through a second process…" Seese Decl. at ¶ 19, Exh. R. (emphasis added).

20    **<u>WSU's Response:</u>** WSU disputes that the document produced at

21    WSU_00029716, contains the language quoted. The actual quote is, in

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 135
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(140 of 293), Page 140 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 140 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4898    Page 139
of 155

1    relevant part: "If an employee exemption request was approved, the

2    application went through a second process. The applicant was re-identified

3    and the individual's supervisor was contacted to see if the employee could

4    perform all of their duties and maintain public safety even if the worker

5    was unvaccinated. If reasonable accommodations were not possible, the

6    request was denied." Seese Decl., Ex. R. WSU also disputes the

7    implication that Exhibit R represents finalized talking points—as indicated

8    by the following paragraph, it is undisputed these were "draft" talking

9    points.

10    <u>Rolovich's Additional Fact, ECF No. 118 ¶ 113</u>: In draft talking points from

11    October 18, WSU stated that its review process was "fair and equitable for all

12    requestors." *Id*. at ¶ 20, Exh. S.

13    **<u>WSU's Response:</u>** WSU does not dispute that the document produced at

14    WSU_00029716, which was prepared by WSU's University Marketing

15    and Communications Department and were "draft" talking points,

16    contains, in part, the following language:

17    The exemption review process was **fair and equitable** for all
requestors.
18    o   The criteria for approving medical and religious
exemptions were developed in consultation with the
19    Washington Attorney General's Office.
o   The requests for exemptions are evaluated in a "blind"
20    review process, meaning the identities of the individuals
requesting exemptions were unknown to the members
21    of the review committee making the decisions.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 136
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0180

(141 of 293), Page 141 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 141 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4899    Page 140
of 155

○ A team of at least two trained staff members reviewed each of the blinded requests.

Seese Dec. Ex. R (emphasis in original).

Rolovich's Additional Fact, ECF No. 118 ¶ 114: On October 19, WSU's current Chief Human Resource Officer, Theresa Elliot-Cheslek, wrote am email stating, "Once a determination was made, the process moved to HRS for notification. If the [Religious Exemption] was **approved**, the next step was the accommodation process." Seese Decl. at ¶ 21, Exh. T. (emphasis added).

**WSU's Response:** WSU does not dispute that Exhibit T to the Seese Declaration is a true and correct copy of an October 19, 2021 email from Theresa Elliot-Cheslek to an employee at Kansas State University, and that it contains, in part, the following language: "If the RE was approved, the next step was the accommodation process. HRS provided initial notification to department and Environmental Health and Safety reviewed and provided possible accommodations. The department utilized the information EHS provided and in consultation with HRS determined if they could accommodate the employee. Determination was then provided to employee."

Rolovich's Additional Fact, ECF No. 118 ¶ 115: WSU stated that the blind review committee never made the final call as to whether an exemption request was based on a sincerely held religious belief. *Id.* at ¶ 22, Exh. U. WSU also stated, "Ultimately, department as the appointing authority had the authority and

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 137
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(142 of 293), Page 142 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 142 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4900    Page 141
of 155

responsibility to decide whether the employee had a sincerely held belief in conflict with COVID-19 vaccination….” *Id*. WSU stated that the Governor's Proclamation and EEOC guidance *precluded* the University from entrusting the sincerity determination to a blind review process. *Id*.

  **<u>WSU's Response:</u>** WSU disputes Rolovich's characterization that "WSU stated that the blind review committee never made the final call as to whether an exemption request was based on a sincerely held religious belief." To support this contention, Rolovich cites the outline prepared for WSU's 30(b)(6) deposition (the "30(b)(6) outline"), which actually states that the blind review committee "initially determined whether an employee's de-identified *exemption request form* appeared to adequately describe a religious belief in conflict with COVID-19 vaccination." Seese Decl., Ex. U at 3. If the department did not provide additional information relevant to whether the employee had sincere religious beliefs in conflict with vaccination, the blind review committee's initial determination would be final. *Id*. at 3–4. WSU further disputes Rolovich's characterization that "WSU stated that the Governor's Proclamation and EEOC guidance *precluded* the University from entrusting the sincerity determination to a blind review process." The 30(b)(6) outline, which Rolovich again cites for this proposition, states that an employee's department "was free to provide information relevant to whether the employee had sincere religious beliefs in conflict with vaccination" and identifies the Proclamation and

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 138
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(143 of 293), Page 143 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 143 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4901    Page 142
of 155

1   EEOC guidance as *some* of the policies supporting the department's ability

2   to provide that information to HRS. *Id.* at 5. The 30(b)(6) outline does not

3   describe the Proclamation or EEOC guidance as "*preclud[ing]* the

4   University from entrusting the sincerity determination to a blind review

5   process."

6   <u>Rolovich's Additional Fact, ECF No. 118 ¶ 120</u>: On October 8th, Lisa

7   Gehring affirmed as "correct" a draft statement to the Governor's office stating

8   that the review committee makes the "***final decision*** as to whether to grant a

9   religious exemption." (emphasis added). Seese Decl. ¶ 23, Exh. V.

10  **<u>WSU's Response:</u>** WSU disputes Rolovich's characterization that "Lisa

11  Gehring affirmed as 'correct'" a draft description of WSU's religious

12  accommodation process prepared by Chris Mulick, WSU's Director of

13  State Relations. Instead, in response to Mulick's statement that he was

14  "guessing that not all 437 requests for exemption have been fully

15  investigated," Gehring answered: "That is correct, we haven't reviewed all

16  437 requests and are still in the follow-up stages with some." Seese Decl.,

17  Ex. V at WSU_00024738.

18  <u>Rolovich's Additional Fact, ECF No. 118 ¶ 121</u>: A WSU Insider article

19  published the same day (October 8) which HHS reviewed before publication,

20  says that the employee's department is notified by email only "if an exemption is

21  ***approved***." (emphasis added). *Id.* at ¶ 24, Exh. W.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 139
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    **WSU's Response:** WSU disputes Rolovich's characterization that "HHS

2    reviewed before publication" the article contained in Exhibit W to the

3    Seese Declaration, ECF No. 120-23, because nothing in Exhibit W

4    establishes that fact. WSU also disputes Rolovich's characterization that

5    the article contained in Exhibit W "says that the employee's department is

6    notified by email" because nothing in Exhibit W establishes that fact.

7    Rolovich's Additional Fact, ECF No. 118 ¶ 123: In 473 of 475 applications

8    received for religious exemption requests (99.6%), the review committee made

9    the final determination as to whether an employee had a sincerely held religious

10   objection to the vaccine mandate. Seese Decl. at ¶ 25, Exh. X.

11   **WSU's Response:** WSU disputes Rolovich's characterization of the

12   spreadsheet contained in Exhibit X to the Seese Declaration, ECF No. 120-

13   24. The spreadsheet contains information relating to religious

14   accommodation requests received by HRS, including whether an

15   accommodation request was granted or denied, and if denied, the reason

16   for the denial. *See* Seese Decl., Ex. U at 11–12. Rolovich does not point to

17   any data in the spreadsheet establishing that "the review committee made

18   the final determination as to whether an employee had a sincerely held

19   religious objection to the vaccine mandate" in "473 of 475 applications

20   received for religious exemption requests (99.6%)." The spreadsheet alone

21   does not support this contention.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 140
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(145 of 293), Page 145 of 293Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 145 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4903    Page 144
of 155

1   <u>Rolovich's Additional Fact, ECF No. 118 ¶ 124</u>: When WSU review

2   committee member Bonnie Dennler was asked in her deposition if there was "any

3   other employee at WSU whose application for religious exemption was treated

4   the way Nick Rolovich's was treated," she answered: "I do not believe so." Seese

5   Decl. at ¶ 26, Exh. Y.

6       <u>**WSU's Response:**</u> WSU does not dispute that Ms. Dennler's deposition

7       transcript contains, in parts, the quoted language, but WSU's attorney

8       interposed a true objection as to the form of the question, which was

9       confusingly vague—particularly in light of the four-sentence wind-up to

10      counsel's question. *See* Seese Decl., Ex. Y at 3.

11  <u>Rolovich's Additional Fact, ECF No. 118 ¶ 125</u>: In a September Seattle Times

12  article, WSU's President Kirk Schulz was quoted saying, "Regardless of (how

13  much money) the person makes, what position they have, we have to treat people

14  the same." *Id*. at ¶ 27, Exh. Z. He also stated, "Well, am I willing to terminate a

15  faculty member for the same decision? Am I willing to terminate a staff member

16  for the same decision?" *Id*.

17      <u>**WSU's Response:**</u> WSU does not dispute the Seattle Times article

18      contains, in parts, the quoted language.

19  <u>Rolovich's Additional Fact, ECF No. 118 ¶ 128</u>: On or about September 24,

20  2021, President Schulz stated publicly: "I just want to remind everybody:

21  Regardless of (how much money) the person makes, what position they have, we

22  have to treat people the same." Seese Decl. ¶ 27, Exh. Z. President Shulz [sic]

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 141
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(146 of 293), Page 146 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 146 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4904    Page 145
of 155

1  also noted that the relevant question was whether he was "willing to terminate a

2  faculty member [or] a staff member for the same decision?" *Id.*

3      **<u>WSU's Response:</u>** WSU disputes Rolovich's misleading characterization

4      of President Schulz's statements. In the article published by the Seattle

5      Times, President Schulz was quoted as saying: "I just remind everybody:

6      Regardless of (how much money) the person makes, what position they

7      have, we have to treat people the same." Later in the article, President

8      Schulz was quoted as saying: "Well, am I willing to terminate a faculty

9      member for the same decision?" He does not describe that as "the relevant

10     question," as Rolovich contends.

11     Rolovich's Additional Fact, ECF No. 118 ¶ 167: On August 9, 2021,

12 Governor Jay Inslee issued "FAQs for vaccine mandate for some state employees

13 and certain private employers." Seese Decl. ¶ 28, Exh. AA. The FAQs read:

14 "What if someone refuses to get vaccinated?" Answer: "[E]mployees who refuse

15 will be subject to *non-disciplinary dismissal* from employment for failing to meet

16 the qualifications of the job." *Id.*

17     **<u>WSU's Response:</u>** WSU does not dispute that the "FAQs for vaccine

18     mandate for some state employees and certain private employers"

19     document in Exhibit AA to the Seese Declaration, ECF No. 120-27, was

20     issued by the Office of the Governor. WSU disputes that the quoted

21     language is accurate, as it does not appear with any emphasis in the

22     original. WSU further disputes any implication that the FAQ document

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 142
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0186

1    was binding on WSU. Not only do such guidance documents not carry the

2    force of law, but the Proclamation had not been extended to educational

3    workers on August 9, 2021, when the FAQ document was issued. The FAQ

4    document specifically states: "The proclamation does not cover . . . higher

5    education institutions . . . ." Further, WSU HR personnel understood the

6    portion of the FAQs referencing "non-disciplinary" separations as

7    applying to civil service employees subject to the "disciplinary" or "non-

8    disciplinary" separation and appeal processes set forth in Chapters 41.06

9    and 41.80 RCW, and WAC Chapter 357-40—not contractual, term

10    employees like Rolovich. *See* Pekelis Decl., Ex. D at 9–10; *id.*, Ex. E at

11    53:4–15; 59:25–62:3; *id.*, Ex. F at 150:19–152:1. It is undisputed that in

12    processing terminations for noncompliance with the Proclamation, WSU

13    utilized non-disciplinary separations for civil service employees but "for

14    cause" terminations for faculty, administrative professionals, coaches, and

15    all other types of employees. Additionally, as Lisa Gehring testified:

16    "When the state comes out with guidance, that's what it is, it's—it's

17    guidance. It's not saying we have to follow these very specific things from

18    the [OFM], but they're just giving us general guidance." *See* Pekelis Decl.,

19    Ex. E at 39:11–15.

20    <u>Rolovich's Additional Fact, ECF No. 118 ¶ 172</u>: In response to Rolovich's

21    intention to seek a religious exemption, President Schulz and the Chair of the

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 143
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(148 of 293), Page 148 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 148 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4906    Page 147
of 155

1  Board of Regents, Marty Dickinson, exchanged messages expressing their anger

2  at Rolovich for expressing an intent to seek a religious accommodation and their

3  ignorance and disdain for his religious objection to the vaccine. Seese Decl., ¶

4  29, Exh. BB.

5        **WSU's Response:** WSU disputes Rolovich's characterization of the text

6  message correspondence between President Schulz and Regent Dickinson

7  in Exhibit BB to the Seese Declaration, ECF No. 120-28. President Schulz

8  and Regent Dickinson did express that Rolovich's decision "to file a

9  religious exemption claim" disappointed and angered them. They did not,

10  however, express "their ignorance and disdain for his religious objection

11  to the vaccine." Instead, they questioned whether Rolovich had a

12  religiously based objection to COVID-19 vaccination, with President

13  Schulz noting that Rolovich "will have to identify that." ECF No. 120-28

14  at 2.

15      <u>Rolovich's Additional Fact, ECF No. 118 ¶ 176</u>: On August 19, 2021,

16  President Schulz messaged Patrick Chun: "It appears that Nick is going to claim

17  a religious exemption to the vaccine mandate. While I know I have to be careful

18  – I would like to include a quote expressing my disappointment in this decision.

19  . . ." Seese Decl. ¶ 14, Exh. M.

20        **WSU's Response:** WSU states that the quoted text message from

21  President Schulz contains, in part, the quoted language.

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 144
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(149 of 293), Page 149 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 149 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4907    Page 148
of 155

1  <u>Rolovich's Additional Fact, ECF No. 118 ¶ 210</u>: At the time of Rolovich's
2  termination, no outbreaks had occurred on the WSU football team over the course
3  of seven games that had been played during the 2021 season under Rolovich.
4  Rolovich Decl., ¶ 13.

5  **<u>WSU's Response:</u>** Rolovich's characterization that "no outbreaks had
6  occurred on the WSU football team over the course of the seven games
7  that had been played during the 2021 season under Rolovich" is not
8  adequately supported by the record. To support this contention, Rolovich
9  cites paragraph 13 of his declaration, ECF No. 121 at 4, which states: "At
10  the time of my termination, WSU had already played 7 football games
11  during the 2021 season, without any cancellations." Rolovich's self-
12  serving declaration does not establish that "no outbreaks occurred" during
13  that time period. Further, a text message produced by Rolovich indicates
14  that at least one unvaccinated football staff member, Kolney Cassel, tested
15  positive for COVID-19 around September 28, 2021. *See* Pekelis Decl., Ex.
16  G.

17  <u>Rolovich's Additional Fact, ECF No. 118 ¶ 217</u>: Other WSU football coaches
18  were also terminated based on their failure to receive the COVID-19 vaccine.
19  Seese Decl. ¶ 32, Exh. EE. These contracts were largely identical to Rolovich's
20  contract except that they contained the following additional language: "Employee
21  agrees to follow all federal, state, and local health directives as well as university
22  policies related to health and safety." *Id*.

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 145
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0189

1      **<u>WSU's Response:</u>** Rolovich's statement that "[o]ther WSU football

2      coaches were also terminated based on their failure to receive the COVID-

3      19 vaccine" is not adequately supported by the record. To support this

4      contention, Rolovich cites only to Exhibit EE of the Seese Declaration,

5      ECF No. 120–31, which is the employment agreement of Stanley Franks,

6      Jr. The employment agreement alone does not establish that other unnamed

7      coaches' "contracts were largely identical to Rolovich's contract except

8      they contained" the language quoted above. Another way in which

9      Franks's employment agreement was not "identical" to Rolovich's

10     employment agreement is that the former was executed in 2021, while the

11     latter was executed in 2020—before the above language was added to

12     WSU's contract templates, as Anne McCoy testified in her deposition. *See*

13     Pekelis Decl., Ex. H. Setting aside those disputes, WSU does not dispute

14     that Franks's employment agreement contains, in part, the quoted

15     language.

16        Rolovich's Additional Fact, ECF No. 118 ¶ 221: WSU's fiscal year runs from

17     July 1 through June 30. ECF No. 96, p. 65, n. 7. In fiscal year 2019, WSU had

18     total operating expenses of $22,822,345. *Id.* at p. 67, n. 2. In fiscal year 2020,

19     WSU had total operating expenses of $23,049,901. *Id.* at p. 67, n. 3. In fiscal year

20     2021, WSU had total operating expenses of $16,533, 539. *Id.* at p. 67, n. 4. In

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 146
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    fiscal year 2022, $22,822,345. *Id.* at p. 67, n. 5. In fiscal year 2023, WSU had

2    total operating expenses of $25,335,772. *Id.* at p. 67, n. 6.

3        **<u>WSU's Response:</u>** WSU does not dispute the first sentence of Rolovich's

4    additional facts in Paragraph 221. However, the remaining additional facts

5    stated in Paragraph 221 are unsupported as they fail to "cite the specific

6    page or paragraph of the record where the fact is found." LCR 56(c)(1)(A).

7    Rather, Rolovich's Paragraph 221 cites only footnotes in the Bones Report

8    cross-referencing produced documents that are not part of the summary

9    judgment record. These footnotes do not include the information stated in

10   this paragraph of additional facts.

11      <u>Rolovich's Additional Fact, ECF No. 118 ¶ 224</u>: WSU's expert, David Bones,

12   admitted at his deposition that he failed to determine the actual costs for each

13   season and performed no calculation to determine the costs against the overall

14   operating expenses. Seese Decl., ¶ 33, Exh. FF. Rather, he only looked at the

15   incremental costs across two seasons. *Id.*

16       **<u>WSU's Response:</u>** WSU disputes Rolovich's characterization of David

17   Bones's testimony. First, it is unclear which portion of Bones's deposition

18   testimony Rolovich relies on to support these facts as the exhibit cited

19   includes eight pages of non-sequential testimony. To the extent Rolovich

20   relies on page 56 of Seese Declaration Exhibit FF, in discussing the

21   additional costs to WSU of testing for COVID-19, Bones stated "in order

22   to figure out … whether it was the actual costs or a budget or what was

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 147
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(152 of 293), Page 152 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 152 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4910    Page 151
of 155

1   anticipated, I'd be looking at what's all the testing in play, what do – what

2   percentage of that do I think would be incremental or over and above due

3   to unvaccinated personnel and what's that cost." ECF No. 120-32 at 56:6–

4   11. Further, to the extent Rolovich is relying on page 96, Bones testified

5   as follows:

6       Q: So why didn't you consider what the overall impact of the
            accommodations would be against WSU's overall budget
7           then?
8       A. Because that's not part of this case. I'm not looking at all
            of the accommodations across all of Washington State.
            I'm looking at my understanding of the – the individuals
9           and issues involved in this particular case, what's the
            incremental cost.
10

11  ECF No. 120-32 at 96:4–11.

12  Further, in his deposition, Bones also testified:

13      Q: Did you get more specific and ask for the specific actual
            costs of any accommodations or testing, contract tracing?
14      A: I [did]…. The reason I didn't include all of those actual
            numbers is because I wanted to make sure I was focused
15          on incremental costs, not just the total cost that was
            actually incurred, right? COVID is happening with or
16          without people getting vaccinations. So what's the
            incremental cost if you have in this case coaches that are
17          not vaccinated? What would be the incremental-type cost?
            If I had brought in all the actual costs the numbers would
18          have been a lot – a lot higher than what I considered in my
            report.
19

20      Pekelis Decl., Ex. I at 45:24–46:16.

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 148
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(153 of 293), Page 153 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 153 of 293
Case 2:22-cv-00319-TOR    ECF No. 127    filed 11/18/24    PageID.4911    Page 152
of 155

1  <u>Rolovich's Additional Fact, ECF No. 118 ¶ 225</u>: Taking WSU expert David

2  Bones calculation that the cost of accommodation was $196,500, and compared

3  against the total expenses for the 2021 and 2022 seasons, it amounts to 0.4 percent

4  of WSU's total expenses. Seese Decl., ¶ 34.

5  **WSU's Response:** WSU disputes that the cost of accommodating

6  Rolovich was $196,500. The total expense of $196,500 was the cost

7  calculated only for providing separate travel by charter plane and bus for

8  the unvaccinated football coaches to attend 13 football games between the

9  time the Athletics Department denied Rolovich's accommodation request

10  on October 18, 2021, and the time the Proclamation was rescinded on

11  October 31, 2022. ECF No. 96 at 37. The Bones Report describes and

12  calculates in detail additional costs and losses related to accommodating

13  Rolovich that totaled millions of dollars. *See generally* ECF No. 96.

14  Further, Rolovich has failed to provide expert testimony to rebut the Bones

15  Report, so there is no dispute of fact regarding the conclusions in the

16  report. Rolovich's use of the testimony and calculations of his attorney is

17  improper and inadmissible.

18  <u>Rolovich's Additional Fact, ECF No. 118 ¶ 226</u>: WSU's expert, David Bones,

19  determined that the cost of quarantine and testing would have been minimal – so

20  minimal that it was not worthy of an analysis. Seese Decl., ¶ 35, Exh. GG.

21  **WSU's Response:** WSU disputes that its economic expert, David Bones,

22  determined that the cost of quarantine and testing would have been

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 149
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    "minimal." First, it is unclear which portion of Bones's deposition

2    testimony Rolovich relies on to support these facts as the exhibit cited

3    includes six pages of non-sequential testimony, none of which discusses

4    quarantine and few of which discuss COVID-19 testing. Further, the

5    deposition testimony cited in Rolovich's additional facts in Paragraph 226

6    includes the following testimony by Bones:

> Given some of the other size of numbers that were in play,
> [COVID-19 testing] was not an area that—that seemed worth
> to do a lot of additional analysis to get into the weeds on
> something that was—that particular issue that you're talking
> about was likely to be a smaller number. Any my goal here
> was not to try and capture every single dollar of impact, as I
> describe throughout, but, rather, to highlight, you know,
> bigger-picture items and discuss things that I had not included
> as conservatisms.

ECF. No. 120-33 at 56:12–21.

13

14    ///

15

16    ///

17    ///

18

19    ///

20

21    ///

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 150
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1     DATED this 18th day of November, 2024.

2                PACIFICA LAW GROUP LLP

3

                *s/Zachary J. Pekelis*

4                Zachary J. Pekelis WSBA #44557
                Ai-Li Chiong-Martinson, WSBA #53359

5                Erica P. Coray, WSBA #61987
                W. Scott Ferron, WSBA #61154

6                Special Assistant Attorneys General
                1191 Second Ave., Suite 2000

7                Seattle, WA 98101

8                ROBERT W. FERGUSON
                Attorney General

9

                Spencer W. Coates, WSBA #49683

10               Assistant Attorney General
               800 Fifth Avenue, Suite 2000

11               Seattle, WA 98101-3404

12               *Counsel for Defendant*
               *Washington State University*

13

14

15

16

17

18

19

20

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 151
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on this day I electronically filed the foregoing with the

3    Clerk of the Court using the CM/ECF System, which in turn automatically

4    generated a notice of Electronic Filing to all parties in the case who are registered

5    users.

6    I declare under penalty of perjury that the foregoing is true and correct.

7    DATED this 18th day of November, 2024.

8

9    Erica Knerr, Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANT'S REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE - 152
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DocuSign Envelope ID: 9B7F721E-4836C-9875-B8E3-BF3DB58A42F4

1

2

3

4

5                        UNITED STATES DISTRICT COURT

6                    FOR THE EASTERN DISTRICT OF WASHINGTON

7

8   NICOLAS ROLOVICH,                        CASE NO: 2:22-CV-00319-TOR

9                         Plaintiff,         **DECLARATION OF LIAM**

10          v.                               **RYAN**

11  WASHINGTON STATE
    UNIVERSITY,
12

13                        Defendant.

14

15          1.      My name is Liam Ryan. I am over the age of eighteen, competent to

16
    testify, and make this declaration based on my personal knowledge.
17

18          2.      I was a member of the Washington State University football team

19
    from 2016 to 2021.  I played for Coach Nick Rolovich during the 2021 season.
20

21          3.      I appeared in three games during the 2017 season. With the

22
    exception of a single game, I started every game during the 2018, 2019, 2020,
23
    and 2021 seasons.
24

25

26

DECLARATION OF LIAM RYAN - 1

4. I received Pac-12 Conference All-Academic Honors in 2018, was an All-Pac-12 Honorable Mention selection in 2020, and Preseason All-Pac-12 Second Team selection in 2021.

5. I am personally aware that multiple members of the Washington State football team received religious exemptions to the COVID-19 vaccine mandate.

6. Following the implementation of the vaccine mandate, Washington State did not require or provide separate travel or lodging accommodations for any unvaccinated players. Those individuals traveled with and in the same manner as the rest of the team.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 4th day of November 2024.

Liam Ryan

0157347.0787550  4873-7327-0517v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2024, I electronically filed the forgoing DECLARATION OF LIAM RYAN with the Clerk of Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that none of the represented parties are non-CM/ECF participants.

By:    /s/ E. Job Seese
E. Job Seese

ER0199

(160 of 293), Page 160 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 160 of 293
Case 2:22-cv-00319-TOR    ECF No. 122    filed 11/05/24    PageID.4680    Page 1
of 3

DocuSign Envelope ID: ...

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

NICOLAS ROLOVICH,

          Plaintiff,

v.

WASHINGTON STATE
UNIVERSITY,

          Defendant.

CASE NO:  2:22-CV-00319-TOR

**DECLARATION OF KONNER
GOMNESS**

1.    My name is Konner Gomness. I am over the age of eighteen, competent to testify, and make this declaration based on my personal knowledge.

2.    I was a member of the Washington State University football team from 2019 to 2023.  I played for Coach Nick Rolovich during the 2020 and 2021 seasons.

3.    I appeared in all four games during the 2020 season, appeared in 11 games during the 2021 season, and started every game during the 2022 and 2023 seasons.

**ER0200**

4.     I sought a religious exemption from the COVID-19 vaccine mandate. WSU granted my exemption request, as it also did for numerous other players on the football team.

5.     At no point during the COVID-19 pandemic — whether before, during, or after the vaccine mandate — did WSU or its Athletic Department either require or provide separate travel or lodging accommodations for unvaccinated football players.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 4th day of November 2024.

DocuSigned by:

Konner Gomness

DBC4AF8DDA714FF...

Konner Gomness

0157347.0787550   4869-3404-8245v1

DECLARATION OF KONNER GOMNESS - 2

ER0201

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of November, 2024, I electronically filed the forgoing DECLARATION OF KONNER GOMNESS with the Clerk of Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that none of the represented parties are non-CM/ECF participants.

By:   /s/ E. Job Seese
      E. Job Seese

DECLARATION OF KONNER GOMNESS - 3

**ER0202**

(163 of 293), Page 163 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 163 of 293
Case 2:22-cv-00319-TOR    ECF No. 121    filed 11/05/24    PageID.4670    Page 1
of 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

NICOLAS ROLOVICH,

           Plaintiff,

    v.

WASHINGTON STATE
UNIVERSITY,

           Defendant.

CASE NO: 2:22-CV-00319-TOR

**DECLARATION OF NICHOLAS ROLOVICH**

1.    My name is Nicholas Rolovich. I am over the age of eighteen, competent to testify, and make this declaration based on my personal knowledge.

2.    All football coaches are different, and they cannot be lumped into one category. Some take on more responsibility whereas others delegate much of their tasks and day-to-day activities.

3.    Some coaches are better at what they do than others, and some have different coaching styles.

**ER0203**

(164 of 293), Page 164 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 164 of 293
Case 2:22-cv-00319-TOR    ECF No. 121    filed 11/05/24    PageID.4671    Page 2
of 10

4.      There is no one-size-fits-all approach to coaching a football team. Every football team is different, and every team has different needs from its coaches. I coached at WSU during the COVID-19 pandemic, which was unique and different from the coaching experience of my predecessors and successors.

5.      WSU never approached me to discuss potential accommodations for my religious exemption request, but I am aware that at least 14 WSU football players were unvaccinated and I could have traveled and eaten meals with them, to the extent WSU had to deviate from its normal travel and meals for those unvaccinated players.

6.      Effective recruiting for college football programs can be done in a wide variety of ways. It does not require in-person meetings with recruits in order to be effective. During the fall semester of 2021, WSU students were taking classes via Zoom and many families were not allowing "outsiders" into their home. Just like how WSU professors were able to effectively teach their classes and engage with students virtually, one-on-one or otherwise, I could successfully recruit high school football players to WSU without meeting them or their families in-person. For the 2022 season, 7 of the 27 enrollees committed while Rolovich was head coach.

DECLARATION OF NICHOLAS ROLOVICH - 2

**ER0204**

7.      I conducted one recruiting visit in 2021 due to NCAA restrictions. The NCAA had significantly restricted in-person recruiting by instituting a "dead period" from March 18, 2020 through May 31, 2021. I could not conduct any in-person recruiting from January 1, 2021 through May 31, 2021, and did not do any such in-person recruiting in adherence to NCAA rules. Rather, I virtually recruited through phone calls and video calls, which the NCAA permitted during this period. I even conducted video tours of campus to potential recruits.

8.      I worked hard at recruiting in 2020 and 2021, and was successful in doing so. For example, I helped develop a ten topic zoom series with 30-45 minute presentations on different topics for recruits. I also had personal Zooms with the main football trainers in the state including Reggie Jones and Tracy Ford. I also engaged over Zoom with all the top recruits in the state/area and their parents. We also focused on transfer recruiting as WSU was the first school to employ a Director of Transfer Recruiting.

9.      Any differences in the type of recruiting activities that I engaged in during 2020 and 2021 compared to prior years would not have been unique to recruiting. They would have been due to a variety of factors related to the COVID-19 pandemic and the significant changes it had on the world.

10.    My official duties as WSU's head football coach were set forth in my employment agreement, which did not spell out many of the "duties" that WSU is now emphasizing.

11.    My official duties as WSU's head football coach did not require frequent in-person contacts and interactions with a wide range of individuals. Even if it were one of my official duties, I could have engaged in all required interactions and contacts virtually, as many did during the COVID-19 pandemic, or with another form of accommodation from WSU. WSU never approached me about alternative options for accommodation at in-person events.

12.    I had a variety of strategies, approaches, and strengths as WSU's head football coach. One of many included being a player's coach and my ability to build deep connections with my players. These were not my only strengths. I could have modified my approach to coaching WSU's football team had I needed to in light of COVID-19 restrictions. I did modify my approach during the 2020 and 2021 seasons due to social distancing requirements.

13.    At the time of my termination, WSU had already played 7 football games during the 2021 season, without any cancellations.

DECLARATION OF NICHOLAS ROLOVICH - 4

ER0206

14.     During the 2021 season, WSU had guidelines in place for weekly COVID-19 testing at least up until my termination.

15.     During my adult life, I have declined receiving vaccinations for a variety of reasons, including for religious reasons, health concerns, among other things.

16.     My viewpoint on the COVID-19 pandemic and vaccine was not static. It evolved and changed over the course of the pandemic. Expert opinions on the COVID-19 pandemic and vaccine differed and were constantly changing, as society and the healthcare community learned more about the virus and associated health risks.

17.     On July 21, 2021, I posted a public statement which was drafted by WSU and requested that I post on my Twitter (now X) account, which announced that I had declined to receive the COVID-19 vaccine. I also read a statement prepared by WSU as part of the Pac-12 media days.

18.     When I announced my decision to not receive the COVID-19 vaccine, I received positive comments from many in the WSU community in light of my decision. The COVID-19 vaccine was a highly-contested issue at the time and many were divided on their feelings on it.

19.    Many of WSU's cancelled donor events in 2021 could have been held remotely, as many other types of events were held during the pandemic. I was never approached by WSU for any alternative options to accommodate my attendance at 2021 in-person events, or events for donor events.

20.    In 2020, I participated in several Zoom dinners for donors, although this option was not offered to me in 2021.

21.    I was never given the opportunity to engage with WSU's Athletic Department to discuss accommodation requests.

22.    I voluntarily took a 15% pay cut for the period of April 16, 2020 through June 30, 2021.

23.    Throughout the COVID-19 pandemic, I made good faith efforts to comply with all masking requirements associated with my employment with WSU.

24.    I understood the rules that were required of me during games and practices when it came to wearing a mask during the pandemic.

25.    Mandatory COVID-19 testing continued on a weekly basis for me until I was terminated.

DECLARATION OF NICHOLAS ROLOVICH - 6

26.     I considered all options I had available in requesting an exemption to the vaccine mandate. I never submitted a request for a medical exemption to the vaccine mandate.

27.     In 2021, I had numerous meetings and exchanged many text messages with Father Paul, wherein we discussed many things including my Catholic faith, spirituality, my beliefs concerning the COVID-19 vaccine, and also non-spiritual matters.

28.     Initially, Father Paul encouraged me to consider all of my options when it came to the COVID-19 vaccine, one option being to receive the vaccine.

29.     Father Paul helped me realize and understand my religious objection to the COVID-19 vaccine. My religious objection to the COVID vaccine arose prior to my discussing my intention to seek a religious exemption with anyone at WSU or Patrick Chun.

30.     Religion is very personal, private, and intimate for each person. I did not wish to discuss my religion or the nature of my religious objection to the COVID-19 vaccine with Patrick Chun, Brian Blair, or anyone else at WSU, nor was I obligated to.

31.    The religious exemption request that I submitted to WSU expressed my sincere religious beliefs and objection to the COVID-19 vaccine. I sincerely believe all statements contained in it.

32.    No one from WSU, including HRS and EH&S, ever reached out to me to discuss my accommodation request, or any potential accommodations. WSU also never disclosed to me how it determined that it could not accommodate me.

33.    I could have performed my job with reasonable accommodations from WSU, which could have included (among other things) regular COVID-19 testing, enhanced masking, and virtual meetings when in-person attendance was not permitted.

34.    Without considering or discussing any potential accommodations with me, WSU unilaterally declined to accommodate my request at all.

35.    No one from WSU ever discussed the possibility of requiring me to communicate with others while wearing an N95 respirator as an accommodation.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 4th day of November 2024, at Novato, California.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*Nick Rolovich*
_____
Nicholas Rolovich

**ER0211**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of November, 2024, I electronically filed the forgoing DECLARATION OF NICHOLAS ROLOVICH with the Clerk of Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that none of the represented parties are non-CM/ECF participants.

By:    /s/ E. Job Seese
       E. Job Seese

# ANNUAL REPORT

**WSU SYSTEM STRATEGIC PLAN**
2022-2023


WASHINGTON STATE UNIVERSITY

ER0213

# 2022-2023 PROGRESS & IMPACT

**OBJECTIVE:** *Increase total R&D expenditures by 5% from $357.6M to $375.5M*

**2022-2023 RESULTS:** *Increased total R&D expenditures to $368.3M*

## FY 2021 TOTAL R&D EXPENDITURES

**Washington State University R&D Expenditures** **$413K**

**PER TENURE TRACK FACULTY**

## WSU ranked

**#3** among its peers
**$342.5K**
Peer Average Expenditures per T/TT

| Total R&D Expenditures ($M) | |
|---|---|
| 2017 | 331.1 |
| 2018 | 331.4 |
| 2019 | 345.0 |
| 2020 | 335.2 |
| 2021 | 357.6 |
| 2022 | 368.3 |

| Rank Description | FY2017 | FY2018 | FY2019 | FY2020 | FY2021 |
|---|---|---|---|---|---|
| All | 66/644 | 71/646 | 70/647 | 76/660 | 78/648 |
| Public | 44/400 | 47/408 | 46/405 | 49/405 | 52/412 |
| Peer | 6/14 | 8/14 | 8/14 | 8/14 | 9/14 |
| Total R&D per T/TT, Peer Ranking | 2/14 | 4/14 | 2/14 | 3/14 | 3/14 |



Harrison Yan, WSU Tri-Cities
PhD Candidate, Mechanical Engineering

## REAL IMPACT

*"We have something that other campuses do not have, which is the collaboration between Washington State University and the Pacific Northwest National Labs.*

*This is a really, really unique experience. You don't get this anywhere else."*

Washington State University has incredible industry and community partnerships that make educational and research opportunities unlike any other institution. At WSU, students engage in innovative research with real-world impacts that address global issues.

### MORE INFORMATION

Learn more about Harrison's story at strategicplan.wsu.edu/stories.



SCAN ME

ER0214





# ANNUAL REPORT

**ON THE WSU SYSTEM STRATEGIC PLAN FY 2021-2022**

**WASHINGTON STATE** UNIVERSITY

Case 2:22-cv-00319-TOR    ECF No. 120-34    filed 11/05/24    PageID.4630    Page 5 of 12



# YEAR IN REVIEW

## MEMORABLE MOMENTS

WSU named one of top producers of Fulbright scholars in the US.

Student research regarding the relationship between women and dogs went viral with over 1.17 billion views.

WSU Tri-Cities was awarded the Inclusive Energy Innovation prize.

WSU received $120.9 million in philanthropic support, the highest activity since FY2015.

## FAST FACTS

### System Enrollment

**29,843** STUDENTS FALL 2021
- **24,278** Undergrad
- **1,262** Professional
- **4,303** Graduate/MBA

**27,202** STUDENTS SPRING 2022
- **21,842** Undergrad
- **1,245** Professional
- **4,115** Graduate/MBA

### Enrollment by Campus: Fall 2021

| Pullman | Spokane | Tri-Cities |
|---|---|---|
| 19,114 | 1,625 | 1,558 |

| Vancouver | Everett | Global |
|---|---|---|
| 3,233 | 244 | 4,069 |

### Degrees Conferred: FY 2021

- **6,228** Undergrad
- **925** Master
- **292** Doctorate
- **350** Professional

**WSU ENDOWMENT: FY 2021**
$1.308 billion
[$665.5M WSU Foundation | $642.9M land grant funds]

**ANNUAL FUNDRAISING: FY 2021**
$120.9 million

**UNDERGRAD TIME TO DEGREE FY 2021:**
Full-time first-time new freshman students: 4.1 yrs
Full-time first-time new transfer students w/ AA degree: 2.4 yrs

**FOUR-YEAR GRADUATION RATE: FY 2021**
Undergrad rate: 38.1%

**EMPLOYEE FTE* BY CAMPUS: FALL 2021**

|  | Faculty | AP/Coaches** | Classified | Total |
|---|---|---|---|---|
| Pullman | 1502.5 | 1628.3 | 1525.5 | 4656.3 |
| Spokane | 273.3 | 201.9 | 196.5 | 671.7 |
| Tri-Cities | 103.3 | 107.6 | 46.0 | 256.9 |
| Vancouver | 204.3 | 78.0 | 92.9 | 375.2 |
| Everett | 7.0 | 5.8 | 9.0 | 21.8 |
| Global *** |  | 51.6 | 33.0 | 84.6 |
| **Total** | **2090.3** | **2073.1** | **1902.9** | **6066.4** |

*Includes FTE for monthly appointments only **AP - administrative professional employees
***Administrative faculty and faculty teaching for Global Campus are reported in Pullman.

**MORE INFORMATION**
Additional metrics and reports can be found on the **Institutional Research** website.

SCAN ME

P.6      P.7

# WASHINGTON STATE

## A T H L E T I C S

June 28, 2021

To:    Stanley Franks, Jr.
       Football

From:  Anne McCoy
       *Deputy Director of Athletics*

RE:    **EMPLOYMENT AGREEMENT**

Attached, please find an employment agreement for you, effective July 1, 2021-June 30, 2022.

Please review the agreement and return the signed original to me at your earliest convenience. If you have any questions, feel free to let me know.

Thank you.

08.13.2024
Schulz
**61**
Buell Realtime Reporting

ER0217

## EMPLOYMENT AGREEMENT

This Employment Agreement (Agreement) is made between Washington State University (University) and Stanley Franks, Jr. (Employee), and it cancels and replaces any and all prior employment agreements or understandings, whether in writing or otherwise, between these two parties.

1. **Employment Position**

   1.1. **Employment as Employee of University.** Employee shall serve as the Defensive Quality Control of the University's Intercollegiate Football Program (Football) and shall perform the duties outlined in Section 1.2 herein during the term of this Agreement. Employee is subject to and governed by the terms and conditions of the Agreement.

   1.2 **Description of Employee's responsibilities**

   1.2.1 **Recognition of duties.** Employee agrees to devote Employee's best efforts to the performance of their duties for the University, and to comply with and support all rules, regulations, policies, and decisions established or issued by the University. Employee agrees to abide by all provisions of law, including the Washington State Ethics in Public Service Law, RCW 42.52, and the Washington Public Records Act, RCW 42.56. Employee also agrees during the term of this Agreement that Employee will not engage, directly or indirectly, in any business that would detract from Employee's ability to apply their best efforts to the performance of their duties hereunder. Employee also agrees not to usurp any economic opportunities of the University.

   1.2.1.1 **General duties and responsibilities.** Employee agrees to undertake and perform properly, efficiently, to the best of Employee's ability, and consistent with the standards of the University all duties and responsibilities (as defined by the Head Coach and/or Athletic Director) attendant to the position of Defensive Quality Control of the University's Football Program. Employee further agrees to abide by and comply with the constitution, bylaws, and interpretations of the National Collegiate Athletic Association (NCAA) and Pac-12 Conference (Pac-12), Title IX of the Education Amendments Act of 1972 (Title IX) including, but not limited to, ensuring that all Title IX matters are reported in accordance with applicable law, NCAA, Pac-12 and University policy, and all NCAA, Pac-12, and University rules and regulations relating to the conduct and administration of the Football Further, Employee will abide and comply with all Name, Image, and Likeness Program directives issues by the NCAA, Pac-12, or WSU, as now constituted or as may be amended during the term hereof. **Employee also specifically agrees to follow all federal, state, and local health directives as well as university policies related to health and safety, including mandatory vaccination consistent with any health directives or university policy.** In the event Employee becomes aware, or has reasonable cause to believe, that violations of any of the aforementioned rules or regulations may have taken place, Employee shall promptly report the same to the Athletic Director, Director of Compliance, or Faculty Athletic Representative of the University, and cooperate and comply with any related inquiries or investigations. Employee agrees to adhere to, respect, and to follow the academic standards and requirements of the University in regard to the recruitment and eligibility of prospective and current student-athletes for the Football Program. All academic standards, requirements, and policies of the University shall also be observed by Employee at all times.

   1.2.1.2 **Other duties.** The Athletic Director in his sole discretion may reasonably assign Employee, as needed, to other related duties from time to time, and may also reassign Employee to unrelated duties if the Head Coach's Employment Agreement is terminated for any reason.

   1.3 **Employee subject to discipline for violations of NCAA rules and regulations.** If Employee is found to be in violation of NCAA rules and regulations, including, but not limited to, the ethical

1

**ER0218**

(179 of 293), Page 179 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 179 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-31    filed 11/05/24    PageID.4601    Page
5 of 11

conduct expectations as stated in NCAA Bylaws 10.1, 11.1.1, 11.1.2, 11.1.2.1, and 19.01.2, whether while employed by the University or during prior employment at another NCAA member institution, Employee shall be subject to disciplinary or corrective action as set forth through the NCAA enforcement procedures. Further, the University may suspend Employee for a period of time, without pay, or may terminate employment as provided in Section 4.1 hereof if Employee is found to have been involved in or condoned a major violation or a pattern of uncorrected secondary violations of NCAA, Pac-12, or University rules and regulations.

**1.4**    **Reporting relationship.** Employee shall report to the Head Coach of the University's Football Program and through the Head Coach to the Athletic Director, or to such other person as the Athletic Director may designate.

**2.**    **Term of Employment**

The University hereby employs and Employee accepts employment for the period beginning on July 1, 2021 and ending on June 30, 2022, subject, however, to prior termination in accordance with the provisions set forth in Section 4. Employee is solely responsible for obtaining legal employment status in the United States and is required to report legal status to University, unless otherwise required by law or university policy. Employee must immediately inform University if legal employment status is denied or revoked. The University may terminate this agreement if Employee is unable to maintain legal employment status in the U.S.

As part of a university-wide budget reduction, Employee's position may be subject to furlough for a period not to exceed sixty (60) calendar days during the term of this Agreement. Employee will be given at least 30 days' notice of furlough, and specific terms and conditions of furlough will be provided to Employee in writing consistent with university guidelines. Employee may not perform any work under this contract during a furlough period.

On or before May 31, 2022, Employee will receive written notification from the University of its intent to renew or not renew the Agreement.

If Employee obtains new employment commencing prior to June 30, 2022, Employee shall notify University immediately, and all payments and fringe benefits under this Agreement shall cease on the date Employee's new employment commences.

**3.**    **Compensation**

In consideration for the promises made in entering into this Agreement, Employee shall be entitled to the compensation set forth herein. All payments from the University are subject to normal deductions and withholding for state, local, and federal taxes and for any retirement or other benefits to which Employee is entitled or in which Employee participates, and are subject to the terms and conditions of Section 4 concerning termination of this Agreement.

**3.1**    **Base salary.** The base salary paid by the University to Employee for services and satisfactory performance of the terms and conditions of this Agreement shall be at the annual salary rate of $50,000 payable by the University in accord with payroll dates and procedures applicable to University employees generally. In addition, University may provide additional compensation, in the form of one-time monies, for extra services required of Employee in preparation for and participation in post-season competition, if applicable. Employee shall be eligible for consideration for salary increases to the base salary that are authorized and funded by the state of Washington, subject to a determination by the Athletic Director.

University may reduce Employee's FTE (full-time equivalent) or impose a salary reduction of no greater than ten percent (10%) with thirty (30) days' written notice to Employee.

**3.2**    **Fringe benefits.** During the term of this Agreement, the University will provide Employee with the fringe benefits described in this Section 3.2 and no others.

2

**ER0219**

**3.2.1**     **Standard University fringe benefits**.  Employee shall be entitled to the standard University fringe benefits, including group life insurance, family medical coverage, and retirement plan contributions. Retirement contributions shall be made in accordance with the retirement plan selected by Employee and offered through the University. If any benefit/consideration is based in whole or in part upon the salary paid to Employee, such benefit/consideration shall be made without including any collateral compensation or incentive or supplemental compensation. Notwithstanding the above, Employee shall not accrue nor be entitled to use annual leave.

**3.2.2**     **Expenses**. The University will reimburse Employee at the rate authorized by state law and University regulations for all travel and out-of-pocket expenses reasonably incurred by Employee for the purpose of and in connection with the performance of Employee's duties under this Agreement.

**3.2.3**     **Vehicle**.  During the term of this Agreement, University may provide Employee with a vehicle stipend in the amount of $450 per month. Employee understands and acknowledges that this stipend will be considered income to Employee and will be so reported by University. The vehicle stipend may be revoked by the University without notice.

**3.2.4**     **Tickets**.  The University will provide one ticket specifically for use by a spouse/partner, plus an additional ticket specifically for use by each dependent child living at home who has not yet graduated from high school, for each home, or post-season Football contest in which the University's Football team competes during the term of this Agreement. Tickets to each home game of each of the University's other varsity intercollegiate athletic teams will be provided in non-priority seating sections according to the provisions of the athletic department's ticket policy for staff members. Employee understands and acknowledges that the value of tickets and passes may be considered income to Employee and will be so reported by the University. Employee also understands that the use of tickets and passes will be subject to normal compliance review for complimentary tickets.

**3.2.5**     **Guest travel for post-season competition**.  Whenever Employee attends post-season athletic competition because the Football team is participating in the event, Employee may elect to bring their spouse or partner and dependent children, regardless of age, to the event and related activities.  The University will pay as compensation to Employee all costs associated with bringing Employee's spouse or partner and dependent children to the event and its related activities in accordance with University travel regulations and, where relevant, NCAA and/or Pac-12 regulations. Compensation paid by the University shall not exceed costs associated with bringing Employee's spouse or partner and dependent children to the event, including, but not limited to, airfare, other travel costs such as rental car or bus fare, lodging, subsistence, and cost of admission to the game and related events. Employee understands and acknowledges that the value of such travel may be considered income to Employee and will be so reported by the University.

**3.2.6**     **Supplemental compensation camps and clinics**.  Employee may be permitted to receive supplemental compensation from institutional camps and/or clinics when authorized by the Athletic Director.  The decision to allow the performance of such additional work and whether to pay said compensation will be made before Employee renders the additional services, subject to University, Athletic Department, and NCAA policies.

**3.2.7**     **Outside income**.  Employee may be compensated for outside activities appropriate to the promotion of athletic programs, provided such activities do not conflict or interfere with the discharge of duties under this Agreement.  Employee must receive prior approval from the Athletic Director, or from such other person as the Athletic Director may designate, for all such outside compensation. Such activities must comply with the state ethics law and University policy.

**ER0220**

(181 of 293), Page 181 of 293
Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 181 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-31    filed 11/05/24    PageID.4603    Page 7 of 11

**3.2.8**   **Tax Liability.**  The University does not assume any tax liability to responsibility on behalf Employee other than reporting responsibilities as required by law.

**4.**   **Termination**

**4.1**   **Termination by University for just cause.**  The University shall have the right to terminate this Agreement for just cause (Just Cause) prior to its normal expiration.  The term Just Cause shall include, in addition to and as examples of its normally understood meaning in employment contracts, any of the following:

**4.1.1**   Deliberate and serious violations of the duties outlined in Section 1.2 of this Agreement or refusal or unwillingness to perform such duties in good faith and to the best of Employee's abilities;

**4.1.2**   Deliberate and serious violations by Employee of any of the other terms and conditions of this Agreement not remedied after fourteen (14) days' written notice to Employee or, if the violation cannot reasonably be remedied within that period, Employee's failure to make reasonable efforts to cure such violation;

**4.1.3**   Any act of misconduct by Employee including, but not limited to, an act of dishonesty, theft or misappropriation of University property, moral turpitude, insubordination, violation of WSU policies including the Executive Policies (EP) and Business Practices and Procedures Manual (BPPM), or act injuring, abusing, or endangering others, including physical, psychological, or sexual abuse, misconduct or violence, or acts that constitute use of excessive exercise or training for punitive purposes, or repeated acts of insubordination or a single act of insubordination of significant magnitude;

**4.1.4**   An intentional or major violation or repeated instances of secondary violations by Employee, or by any person under Employee's supervision where Employee had knowledge of the intended violation and failed to intervene, or by student-athletes in the Football Program where Employee had knowledge of the intended violation and failed to intervene, of any law, rule, regulation, constitutional provision, bylaw or interpretation of the University, the NCAA, or the Pac-12 which may in the reasonable judgment of the University reflect adversely upon the University or its athletic program including, but not limited to, any such violation which may result in the University being placed on probation by the Pac-12 or the NCAA and including any such violation which may have occurred during prior employment of Employee at another NCAA member institution;

**4.1.5**   Conduct of Employee seriously prejudicial to the best interests of the University or its athletic program;

**4.1.6**   Prolonged absence from duty without the consent of Employee's supervisor

**4.1.7**   Employee's inability to perform the essential functions of the position with or without reasonable accommodation;

**4.1.8**   Failure to provide information under RCW 28B.112.080, Washington's Sexual Misconduct Reporting Statute; or,

**4.1.9**   Failure to authorize or to pass a background check required by the position.

**4.2**   **Determination of Just Cause and hearing provision.**  Just Cause sufficient to satisfy the provisions of Section 4.1 shall initially be determined in good faith by the Athletic Director of the University.  The Athletic Director shall give Employee written notice of the provisions of the Agreement alleged to have been violated, together with a statement of the factual basis for those allegations.  Employee will have fifteen (15) calendar days within which to respond to the Athletic Director, in writing, with reasons Employee should not be terminated.  The Athletic Director, after considering any response provided by Employee, will issue a decision regarding termination for Just Cause.  If a summary suspension has been issued in accordance with paragraph 4.3.1, the Athletic

4

**ER0221**

Director must issue a decision regarding termination within five (5) calendar days of receipt of Employee's response. If a summary suspension has not been ordered, the Athletic Director shall issue a decision regarding termination within ten (10) calendar days of receipt of Employee's response.

Employee's right to receive any payment under this Agreement, including all portions of Section 3, shall cease the day following the effective date of the termination for Just Cause.

4.3 **Appeal of termination for Just Cause.** Employee may appeal the Athletic Director's decision to terminate for Just Cause to the University President or designee. Such appeal must be made in writing within fifteen (15) calendar days' notice of the Athletic Director's determination and must contain a statement of the reasons Employee requests the President to set aside the decision to terminate for Just Cause. Employee must provide a copy of the appeal to the Athletic Director at the time it is delivered to the Office of the President. The Athletic Director may, within seven (7) calendar days of receipt of the notice of appeal, provide to the President an additional written statement supporting the Athletic Director's decision and shall provide the President with: 1) the written notice of termination sent to Employee; 2) Employee's written response, if any; and 3) the written decision of termination. The President may allow oral statements in the President's discretion. The President shall render a final decision within thirty (30) calendar days of receiving the materials provided by the Athletic Director, which shall be the final decision of the University.

Employee shall not be entitled to receive any compensation under this Agreement pending the appeal. Should Employee be reinstated by the President, Employee shall be entitled to back pay for compensation not paid during the pendency of the appeal.

4.3.1 **Summary suspension.** Once the preliminary determination of intent to terminate for Just Cause is made, the Athletic Director shall have the administrative authority to order suspension of Employee from Employee's duties and salary pending termination of this Agreement, provided that notice of any such suspension shall be delivered to Employee in writing, detailing the reasons for such suspension. This notice may be contained in the same document as the written notice of termination. Summary suspension may also be imposed if the Athletic Director finds that Employee has committed gross misconduct or poses an immediate threat to the safety of persons or property. The Athletic Director has the authority to issue immediate summary suspension if facts show that Employee has committed gross misconduct or poses an immediate threat to the safety of persons or property. Employee may respond to the notice of summary suspension together with Employee's response, if any, to the notice of termination.

Employee shall not be entitled to receive any compensation under this Agreement during the summary suspension period.

4.3.2 **University's obligations upon termination for Just Cause.** In the event this Agreement is terminated for Just Cause in accordance with the provisions of Sections 4.1 and 4.2, all obligations of the University to make further payments under this Agreement and/or to provide any other consideration shall cease. In no case shall the University be liable to Employee for the loss of any collateral business opportunities or any other benefits, perquisites, or athletically-related income from any other source, nor shall Employee be liable to the University for the loss of any such collateral business opportunities. Employee will be paid all compensation earned up to the date of termination for Just Cause.

4.4 **Termination by University without Just Cause.** The University reserves the right to terminate this Agreement without Just Cause prior to its normal expiration. Termination by the University without Just Cause shall be effectuated by delivering to Employee fourteen (14) calendar days' written notice, signed by the President of the University or by the Athletic Director or such other person as the President may designate, of the University's intent to terminate this Agreement without Just Cause. The University shall not be liable for the loss of any fringe benefit described in Section 3.2, or any intangible benefit associated with being an NCAA coach, or any athletically-related income from any other source if Employee is terminated without Just Cause.

5

**ER0222**

    **4.4.1**    **Liquidated damages upon termination by University without Just Cause.** The parties agree that actual damages resulting from termination without just cause would be difficult to calculate and that the payment of liquidated damages by University to Employee shall constitute sufficient and reasonable compensation to Employee for any loss, damages, or injury suffered by Employee because of termination without just cause by University. The parties further agree that the payment of liquidated damages shall not be construed as a penalty. If the University terminates this Agreement without just cause at any time prior to June 30, 2022, the University shall pay Employee sixty percent (60%) of the remainder of the base salary due under the terms of this Agreement. Payment of damages may be subject to approval under RCW 28B.15.120(1)(d). The University's obligation shall be paid as a lump sum. In no case shall the University be liable for the loss of any business opportunities or any other benefits, perquisites, supplemental income or athletically-related income from any other source.

**4.5**    **Termination by Employee**

    **4.5.1**    **Written notice by Employee.** Employee may terminate this Agreement during its term by giving the University fourteen (14) calendar days' advance written notice of the termination. Payment of remaining salary will cease on the date Employee fails to report to work, or otherwise engages in actions that clearly establish employment with another party, or the effective date of the Employee's resignation as specified in the written notice.

**5.**    **Restriction on Competition**

Employee agrees and specifically promises that Employee will neither directly nor indirectly through an agent actively seek, negotiate for, or accept employment, under any circumstances, as a coach or in any other capacity related to intercollegiate athletics with any member institution of the NCAA or with any Football team participating in any professional league or conference in the United States or elsewhere requiring performance of duties prior to the expiration date of the term of this Agreement or any extension without first notifying the Athletic Director and obtaining permission from the Athletic Director to seek such described employment opportunities, such permission to not be unreasonably withheld.

**6.**    **Choice of Law**

This Agreement has been entered into under, and shall be governed by, the laws of the State of Washington. In the event that either party for the enforcement or construction of any of the provisions of this Agreement commences litigation, the actions shall be brought in the Superior Court of the State of Washington and the venue shall be in Whitman County, Washington.

**7.**    **Alternate Dispute Resolution**

Except as otherwise provided in this Agreement, when a dispute arises between the parties and it cannot be resolved by direct negotiation, the parties agree to participate in good faith mediation. The mediator shall be chosen by agreement of the parties. If the parties cannot agree on a mediator, the parties shall use a mediation service that selects the mediator for the parties. The cost of the mediation, if any, shall be shared equally by the parties, unless otherwise agreed. The parties agree that mediation shall precede any action in a judicial tribunal.

Nothing in this Agreement shall be construed to limit the parties' choice of a mutually acceptable alternative resolution method such as a dispute hearing, a Dispute Resolution Panel, or arbitration.

**8.**    **Merger Clause**

This Agreement supersedes all prior understandings and agreements, oral or written, regarding Employee's employment by the University, including University handbooks or manuals.

6

**ER0223**

(184 of 293), Page 184 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 184 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-31    filed 11/05/24    PageID.4606    Page
10 of 11

9.    **Amendments to Agreement**

This Agreement may be amended at any time only by a written instrument duly approved by the University through its designated representative and accepted by Employee, such approval and acceptance to be acknowledged in writing.

10.    **Acknowledgment**

Employee acknowledges that Employee has read and understands the foregoing provisions of this Agreement and that such provisions are reasonable and enforceable and that Employee agrees to abide by this Agreement and the terms and conditions set forth herein. Employee further acknowledges that Employee has been provided an opportunity to seek the advice of legal counsel before entering into this Agreement.

11.    **Severability**

If any provision of this Agreement is found to be unenforceable, either in whole or in part, then such provision shall be deemed amended to delete or modify, as necessary, the offending provision or provisions or to alter the bound thereof in order to render said provision valid and enforceable. The remainder of this Agreement will not be affected, and will remain in full force and effect to the extent provided by law.

12.    **Force Majeure**

**Following execution of this Agreement, if the Pac-12 Conference, NCAA, local health department, board, or officer, the Washington State Department of Health, the Governor of the State of Washington, the Washington State Military Department, the United States Department of Health & Human Services, the United States Centers for Disease Control and Prevention or any other Local, State, or Federal Public Health Agency orders or recommends a suspension or cancellation of intercollegiate athletic training, the relevant intercollegiate athletic season, and/or events, then the parties may be released from performance under this Agreement. University will make a good faith effort to provide 30 days' notice to Employee if this occurs. Both parties hereby waive any claim for damages or compensation for such delay or failure to perform, other than obligations incurred up to the date of such recommendation/prohibition.**

**IN WITNESS WHEREOF, the PARTIES have executed this AGREEMENT.**

WASHINGTON STATE UNIVERSITY                    EMPLOYEE

_____                _____
Patrick Chun                                   Stanley Franks, Jr.
Director of Athletics
Date: _____                  Date:  7/1/21


_____
Kirk H. Schulz
Office of the President
Date: _____


Approved as to form:

_____
Office of the Attorney General
Date: _____

7

**ER0224**

Rolovich v. Washington State University, et al.                    Lisa Gehring

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON


NICHOLAS ROLOVICH,                  )   CIVIL ACTION NO.
                                    )   2:22-CV-00319-TOR
          Plaintiff,                )
                                    )
vs.                                 )
                                    )
WASHINGTON STATE UNIVERSITY,        )
                                    )
                                    )
          Defendant.                )
_____


VIDEORECORDED DEPOSITION OF LISA GEHRING

Deposition upon oral examination of Lisa Gehring taken at

the request of the Plaintiff, before Danelle Bungen, CSR,

by the law offices of Frost Brown Todd, 1801 California

Street, Suite 2700, Denver, Colorado, commencing at

10:30 A.M. on August 20, 2024, pursuant to the Federal

Rules of Civil Procedure.

(186 of 293), Page 186 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 186 of 293
Case 2:22-cv-00319-TOR   ECF No. 120-30   filed 11/05/24   PageID.4594   Page
3 of 5

Rolovich v. Washington State University, et al.                           Lisa Gehring

Page 58

1      So I want to switch it back to these facts and this

2      guidance.

3           Doesn't this guidance say that failure to

4      follow the vaccine mandate will result in a

5      nondisciplinary separation?

6   A.  That's --

7           MR. COATES:  Object to form.  Foundation.

8           THE WITNESS:  That's what the guidance from

9      OFM stated.

10  Q.  (BY MR. KNIFFIN)  In your experience, having worked at

11     WSU in HRS for 25 years, does that document preclude

12     WSU from citing failure to comply with the vaccine

13     mandate as cause for termination?

14          MR. COATES:  Object to the form.  Foundation.

15     Calls for a legal conclusion.

16          THE WITNESS:  And I don't -- in the letters

17     that were issued from our office for the Civil, it

18     would not be for cause.  It wasn't for cause.  I --

19  Q.  (BY MR. KNIFFIN)  Say that again.

20  A.  I -- Yeah.  And in terms of that e-mail, I don't know

21     the context in which that -- there was some context to

22     that.

23  Q.  Let's leave that e-mail aside.  I was trying to

24     understand the categorization.  But as a general

25     matter, are you saying that the guidance we looked at

(187 of 293), Page 187 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 187 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-30    filed 11/05/24    PageID.4595    Page
4 of 5

Rolovich v. Washington State University, et al.                    Lisa Gehring

Page 59

1    precludes WSU from firing someone for cause for not

2    complying with the vaccine mandate?

3            MR. COATES:  Object to the form.  Misstates

4    prior testimony.

5            THE WITNESS:  Correct, that's what that's

6    stating.

7  Q.  (BY MR. KNIFFIN)  So if you turn a few pages to

8    page 21, at the top it says "Sample nondiscrim-" --

9    excuse me -- "Sample nondisciplinary separation

10   letters are provided here."  Do you see that?

11           MR. COATES:  What are you --

12           THE WITNESS:  What exhibit are you looking

13   at?

14 Q.  (BY MR. KNIFFIN)  I am looking at still this guidance

15   document.

16 A.  70.

17 Q.  Sorry.

18           MR. COATES:  72?

19 Q.  (BY MR. KNIFFIN)  I'm going backwards, I apologize.

20           So looking back at 72, I want you to look at

21   page 21 of that document.

22           MR. KNIFFIN:  Is this 72?  I didn't write

23   down the numbers myself.  72.  Thank you.  (Speaking

24   to court reporter.)

25 Q.  (BY MR. KNIFFIN)  Do you see that, "Sample

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

ER0227

(188 of 293), Page 188 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 188 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-30    filed 11/05/24    PageID.4596    Page
5 of 5

Rolovich v. Washington State University, et al.                    Lisa Gehring

Page 226

1                    REPORTER'S CERTIFICATE

2

3    STATE OF WASHINGTON
                              ss.
     COUNTY OF SPOKANE

4              I, Danelle Bungen, Certified Shorthand

5    Reporter, Spokane County, State of Washington, License

6    No. 2760, do certify that I reported the taking of the

7    videorecorded deposition of the witness, LISA GEHRING,

8    commencing on August 20, 2024, at the hour of 10:30 A.M.;

9    that prior to being examined, the witness was by me duly

10   sworn to testify to the truth and nothing but the truth.

11             I further certify that the foregoing transcript

12   is a true and correct transcription of my original

13   stenographic notes; that the reading and signing of the

14   deposition by the witness was expressly requested.

15             I further certify that I am not a relative or

16   employee of any attorney or counsel of any of the parties,

17   nor a relative or employee of any attorney or counsel

18   involved in this action, nor a person financially

19   interested in the action.

20             IN WITNESS WHEREOF, I have hereunto set my hand

21   this 4th day of September 2024.

22

23                         _Danelle Bungen_

24                         _____

25                         Danelle Bungen, CSR

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

ER0228



— WASHINGTON GOVERNOR —

# JAY INSLEE

**August 9, 2021**

# FAQs for vaccine mandate for some state employees and certain private employers

### Who does the Proclamation apply to?

All Cabinet Agency worksites and employees and Health Care employees in private sector health care and in long term care settings including but not limited to nursing homes, adult family homes, assisted living, enhanced services facilities, RTFs, and other treatment facilities. This includes most contractors, volunteers and other positions that have any onsite presence in a workplace setting. The proclamation does not cover separately elected officials, boards and commissions or K-12 and higher education institutions, but those organizations are encouraged to adopt a similar approach.

### What does the Proclamation do?

The proclamation requires all state employees and most health and long-term care providers to be fully vaccinated with a recommended COVID-19 vaccine by October 18, 2021 as a condition of employment. Employers will need to verify vaccination status of all employees.

## For state employees:

### With so many state employees working remotely, does the requirement only apply if/when they return to the office?

No. The requirement applies to all state workers regardless of their work setting. All workers need to be prepared to come to a worksite at any time necessary to meet business needs.

### Staff have been successful keeping infection rates low with safety precautions such as social distancing, hand washing, and mask wearing, why is this needed?

Frontline workers in state service and across the private sector have continued working since the initial "Stay home, Stay Healthy" order. They, rightfully, are becoming weary of the day to day stress of high and dangerous caseloads. Significant efforts have been made to address workplace safety in the face of COVID, a new workplace hazard. Even with all of those safety efforts we did not curtail all outbreaks. The threat of COVID-19 is evolving as new more easily transmitted and aggressive variants become prevalent in our state. We now have the tool of vaccine, which is the single most effective resource to combat spread, prevent illness and death. The state of Washington has a duty to our employees to provide a safe work environment free of known hazards, and to reduce risk to the public we serve. This safety measure is equally important to fight the spread of COVID generally and statewide because it will help to protect the communities in which we live and interact before and after our state work hours. Private employers operate under the same workplace safety standards as the state.

### When will this be in effect?

The order is effective immediately, the deadline to become fully vaccinated will be October 18, 2021.

WSU_00026838

### Is there any avenue to opt out of vaccination?

Under the proclamation, employees must show proof of vaccination by October 18, 2021. State employees may work with their agency's human resources office if they need a reasonable accommodation for medical or religious reasons. Private sector employers may choose a different process.

### What is the mechanism for proving vaccination?

The Department of Labor and Industries (L&I) and the Department of Health (DOH) have published requirements and guidance that all employers must adhere to. State agencies already have protocols in place per the Healthy WA – Roadmap to Recovery Guide v11 to develop vaccination verification. Many are in the early stages of implementation while others have been doing this work for the entire COVID response period. Updates to the protocol will be made as needed to meet any new requirements. For state employees, proof of vaccination is required; attestation is not allowed. Private employers may choose a different process.

### How will agencies safeguard my vaccination information?

State agencies have protocol in place for safeguarding confidential information. Vaccination information will meet these requirements.

### What if someone refuses to get vaccinated?

All employees must be fully vaccinated by October 18, 2021 as a qualification of fitness for continued employment. Employees who refuse will be subject to non-disciplinary dismissal from employment for failing to meet the qualifications of the job. Those employees granted a reasonable accommodation for medical or religious reasons may not be subject to non-disciplinary dismissal. There may be continued or additional safety requirements for employees who are granted accommodations.

### What if an employee is vaccinated but refuses to provide verification?

State employees must provide proof of vaccination. Employees who refuse will be subject to non-disciplinary dismissal from employment for failing to meet the qualifications of the job.

### Will employees have any recourse to losing employment?

Any post dismissal dispute over a dismissal action would follow any applicable collective bargaining agreement, civil service rules, and/or agency policy and procedure.

### On what legal grounds can this be imposed?

In response to the emerging COVID-19 threat, the Governor declared a state of emergency on February 29, 2020, using his broad emergency authority under RCW 43.06. More specifically, under RCW 43.06.220, after a state of emergency has been declared, the Governor may suspend statutes and prohibit any activity that he believes should be prohibited to help preserve and maintain life, health, property or the public peace. Under an emergency such as this, the Governor's paramount duty is to focus on the health and safety of our communities. In addition, the Governor is also a large employer and needs to meet the obligation to provide a safe workplace for government employees. This Proclamation answers both of those obligations.

### How will the state be engaging with labor on this issue?

We understand that there will be many questions about the processes that agencies, and other employers, will use to implement this direction. Employers value their relationships with labor organizations and will discuss the impacts of this directive as requested.

WSU_00026839

(191 of 293), Page 191 of 293     Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 191 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-27    filed 11/05/24    PageID.4585    Page
5 of 5

**What stakeholders were consulted in arriving at this decision?**

The state engaged with labor organizations, local governments, and private healthcare, and received communications from various associations representing segments of private healthcare settings. These engagements revealed differing viewpoints and perspectives. Many organizations expressed an interest in implementation of a "vaccination or test" approach. Many other settings have taken this approach. We considered this feedback in great depth and deemed that approach infeasible in state government and across our health systems. The state and some private entities have used a "vaccination or test" system in various congregate care settings and many recognized it to have not stopped the threat to our communities and places of work, as outbreaks have persisted. The cost and administrative process to sustain, or expand, this model long-term is significant. Ultimately, the state made the tough decision to proceed with a mandate for the healthcare workforce and the state employee workforce.

**Given the spread of the Delta variant, what other steps is the state taking to protect the workforce and the community?**

The state continues to assess what measures need to be in place in state agencies and community settings. L&I and DOH are engaged daily on disease data analytics, health requirements, and workplace safety requirements to determine what is working well and what is not. The current variant is very rapidly spreading amongst unvaccinated populations that were previously a lesser target for the virus.

Younger unvaccinated people are getting sicker faster and more often. Grounded in the Healthy WA – Roadmap to Recovery Guide for state agencies, monthly updates are provided to state Cabinet agencies to meet CDC, DOH, and L&I requirements and to determine agency implementation directions. We take into consideration business, customer, and employee impacts as we develop our implementation strategies to keep people healthy and safe in our worksites. This includes planning for return to work that emphasizes a new hybrid model of service delivery.

We continue to update masking and physical distancing requirements in a way that best protects our employees and the people we serve. We have increased options for customers to get services online or remotely to decrease the need for in person contact and travel. We have also prioritized closing business gaps where in person services are needed as we pay attention to equity in our approach to customer access.

**Will the state provide additional guidance regarding this directive?**

The state will establish additional resources as needed to help employees and employers move into compliance with this directive.

WSU_00026840

ER0231

Rolovich v. Washington State University, et al.          Bonnie Dennler (AWAITING CONFIDENTIAL DESIGNATIONS)

Page 1

UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF WASHINGTON

---

NICHOLAS ROLOVICH,                    )
                                      )
              Plaintiff,              )
                                      )
       v.                             )  No. 2:22-cv-00319-TOR
                                      )
WASHINGTON STATE UNIVERSITY,          )
                                      )
              Defendant.              )

---

VIDEOTAPED VIDEOCONFERENCE DEPOSITION

UPON ORAL EXAMINATION OF

BONNIE DENNLER

---

*AWAITING CONFIDENTIAL DESIGNATIONS*

Spokane, Washington

DATE TAKEN:   AUGUST 21, 2024

REPORTED BY:  CINDY M. KOCH, RPR, CRR, CCR #2357

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

51c108eb-f2a1-48c9-a39b-08bef351f92e

(193 of 293), Page 193 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 193 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-25    filed 11/05/24    PageID.4576    Page
3 of 3

Rolovich v. Washington State University, et al.          Bonnie Dennler (AWAITING CONFIDENTIAL DESIGNATIONS)

Page 168

1   unilateral or not.  I only know the information that we

2   were provided and the different times it was.  But the

3   appointing authority has the authority to make those

4   determinations.

5   BY MR. KNIFFIN:

6       Q.  President Schulz said in the Seattle Times, on

7   September 24th, "I just want to remind everybody,

8   regardless of how much money the person makes, what

9   position they have, we have to treat people the same."

10          He said on September 3rd, "The rules for

11  Rolovich and other faculty and staff need to be the

12  same."

13          And he said over and over to the regents, "I

14  want people to understand the review process."

15          He said in the Seattle Times, "We need to

16  follow our plan and protocols."

17          Based on your understanding and your role at

18  HRS, based on the documents you've reviewed today, is

19  there any other employee at WSU whose application for

20  religious exemption was treated the way Nick Rolovich's

21  was treated?

22          MR. COATES:  Object to form.  Foundation.

23      A.  I do not believe so.

24          MR. KNIFFIN:  I have no more questions.

25          MR. COATES:  I don't have any questions for

ER0233

51c108eb-f2a1-48c9-a39b-08bef351f92e

**From:** "Gehring, Lisa" <gehring@wsu.edu>

**To:** "Elliot-Cheslek, Theresa L" <telliot@wsu.edu>

**Subject:** FW: Exemption and accommodation process

**Date:** Fri, 8 Oct 2021 00:53:06 +0000

**Importance:** Normal

**Inline-Images:** image011.png; image012.png; image013.png; image014.png; image015.png; image016.png; image006.png; image007.png; image008.png; image009.jpg

---

FYI – on info Chris is going to share with Governor's office – we talked on phone after email to clarify AG's is for legal advice.

**From:** Mulick, Christopher B <chris.mulick@wsu.edu>
**Sent:** Thursday, October 7, 2021 4:45 PM
**To:** Gehring, Lisa <gehring@wsu.edu>
**Subject:** Re: Exemption and accommodation process

Very helpful. I'm done with zoom calls so if you'd like to call me so that I can thank you properly, please do so. I just tried calling and got vm. Are you deleting the AGO reference because it feels redundant to you? I'd like to keep it if possible.



**Chris Mulick**
Director of State Relations
Office of External Affairs and Government Relations
Washington State University
Mobile: 253-579-2461
Email: chris.mulick@wsu.edu
wsu.edu

---

**From:** Lisa Gehring <gehring@wsu.edu>
**Date:** Thursday, October 7, 2021 at 4:07 PM
**To:** "Mulick, Christopher B" <chris.mulick@wsu.edu>
**Subject:** RE: Exemption and accommodation process

Hi Chris –

That is correct, we haven't reviewed all 437 requests and are still in the follow-up stages with some. I removed reference to AGO, since they provide legal guidance for us in all areas of HR when requested and highlighted a minor typo.

**From:** Mulick, Christopher B <chris.mulick@wsu.edu>
**Sent:** Thursday, October 7, 2021 3:25 PM
**To:** Gehring, Lisa <gehring@wsu.edu>
**Subject:** Re: Exemption and accommodation process

How is this? I dropped the sentence about percentage of religious requests granted (for now) because I'm guessing that not all 437 requests for exemption have been fully investigated. I may reach out to Kendra on that one.

**ER0234**

Employee applications for religious exemptions are received by a central coordinator from Human Resource Services, who confirms completion and redacts the name of the applicant prior to forwarding it to a four-member review committee. The committee is comprised of three representatives from Human Resource Services and one member from the Office of Compliance and Civil Rights. ~~It is advised by an Assistant Attorney General in its work.~~

Each application, is reviewed by two members of the committee. If the two committee members are unable to determine if the employee holds a sincerely held religious belief, practice, or observance that is in conflict with the COVID-19 vaccine, it will be referred to the larger committee for review. If it is determined additional information is needed, the coordinator will follow up and additional HRS staff may be deployed to question the individual or request additional documentation. In order to pursue this, the applicant's identity becomes known at this stage.

After the full committee makes a final decision as to whether to grant a religious exemption, separation proceedings begin for those whose application has been denied. The single largest reason for rejection relates to applicants ~~who to~~ don't state a religious case for warranting an exemption. For those whose application has been accepted, HRS will work with the applicant's department to determine whether an accommodation can be made. Cases have arisen in which employees have been approved for a religious exemption but for whom the university has been unable to make an accommodation due to increased health and safety risks.



**Chris Mulick**
Director of State Relations
Office of External Affairs and Government Relations
Washington State University
Mobile: 253-579-2461
Email: chris.mulick@wsu.edu
wsu.edu

---

**From:** Lisa Gehring <gehring@wsu.edu>
**Date:** Thursday, October 7, 2021 at 2:27 PM
**To:** "Mulick, Christopher B" <chris.mulick@wsu.edu>
**Subject:** RE: Exemption and accommodation process

Yes, the full committee will know at step 3 in process, which is prior to  making the final decision.

1. 2 person sub-committee reviews (identity redacted) – if approved moves to accommodation step and identity is known to HRS committee members.  If not approved moves to step 2.
2. Full committee reviews (Identity redacted ) – if approved moves to accommodation step and identity is known to HRS committee members.   If not approved moves to Step 3
3. Request for follow-up information – employee is identified at this point to send email communication to request follow-up.

Feel free to call 509.335.0166 as it may be easier to discuss over phone.

---

**From:** Mulick, Christopher B <chris.mulick@wsu.edu>
**Sent:** Thursday, October 7, 2021 1:57 PM

**ER0235**

WSU_00024739

**To:** Gehring, Lisa <gehring@wsu.edu>
**Subject:** Re: Exemption and accommodation process

But will members of the review committee know the names of applicants at any point before making a final decision on their application?



**Chris Mulick**
Director of State Relations
Office of External Affairs and Government Relations
Washington State University
Mobile: 253-579-2461
Email: chris.mulick@wsu.edu
wsu.edu

---

**From:** Lisa Gehring <gehring@wsu.edu>
**Date:** Thursday, October 7, 2021 at 1:28 PM
**To:** "Mulick, Christopher B" <chris.mulick@wsu.edu>
**Subject:** RE: Exemption and accommodation process

No worries.  HRS will be aware of the name of the employees, since we are doing all accommodations.  If the request is approved based on review of the two-person committee, Dan Records with CCR will not know the identity of the employee.  Dan will only know identity if the full committee decides additional follow-up with employee is needed to better understand request.  The follow-up is done mostly in email, but could be a verbal conversation as well.

**From:** Mulick, Christopher B <chris.mulick@wsu.edu>
**Sent:** Thursday, October 7, 2021 12:18 PM
**To:** Gehring, Lisa <gehring@wsu.edu>
**Subject:** Re: Exemption and accommodation process

I'm sorry. One more thing still. It appears to me that all applicants whose application is ultimately rejected will have their identity known before that decision is made. Is that correct? The two-person group that makes the initial review would never reject an application themselves and no application would be rejected without additional information being requested first. Is that correct?



**Chris Mulick**
Director of State Relations
Office of External Affairs and Government Relations
Washington State University
Mobile: 253-579-2461
Email: chris.mulick@wsu.edu
wsu.edu

---

**From:** "Mulick, Christopher B" <chris.mulick@wsu.edu>
**Date:** Thursday, October 7, 2021 at 12:07 PM
**To:** Lisa Gehring <gehring@wsu.edu>
**Subject:** Re: Exemption and accommodation process

One more thing. Do we have an updated approval rate? Or do I need to ask Kendra?



**Chris Mulick**
Director of State Relations
Office of External Affairs and Government Relations

**ER0236**

WSU_00024740



Washington State University
Mobile: 253-579-2461
Email: chris.mulick@wsu.edu
wsu.edu

**From:** "Mulick, Christopher B" <chris.mulick@wsu.edu>
**Date:** Thursday, October 7, 2021 at 12:02 PM
**To:** Lisa Gehring <gehring@wsu.edu>
**Subject:** Re: Exemption and accommodation process

This is helpful. I won't send the draft but will use it to inform my response, probably in the format I suggested below.
Many thanks. Hang in there.



**Chris Mulick**
Director of State Relations
Office of External Affairs and Government Relations
Washington State University
Mobile: 253-579-2461
Email: chris.mulick@wsu.edu
wsu.edu

**From:** Lisa Gehring <gehring@wsu.edu>
**Date:** Thursday, October 7, 2021 at 11:54 AM
**To:** "Mulick, Christopher B" <chris.mulick@wsu.edu>
**Subject:** RE: Exemption and accommodation process

Hi Chris,

The attached rough draft isn't intended for distribution, but should provide sufficient detail on process. Our committee consists of 4 members (3 HRS and 1 Compliance and Civil Rights).

Employees can't appeal if the committee determines the employees does not have a sincerely held religious belief that is in conflict with receiving the COVID-19 vaccine. We have a two step review and will follow-up to request additional information related to exemption request prior to denying. The applicant is identified if request is returned to the larger committee for a 2nd review (we had to identify employee to request clarifying information).

If an employee's religious exemption is approved, HRS works with the department to determine if the employee can be accommodated. We have had situations where an employee may have a sincerely held religious belief in conflict, but we cannot accommodate due to increased health and safety risks. You are correct, I anticipate most we determine don't have a sincerely held religious belief that is in conflict with receiving the COVID-19 vaccine, is due to failure to engage in process and provide information.

The employee may appeal the separation of employment in accordance with their employment type.

Please let me know if you need any additional details.

Lisa Gehring, PHR
Assistant Vice President
Human Resource Services, Washington State University

**ER0237**

WSU_00024741

French Administration Building, Room 139 | Pullman, WA 99164-1014
(509) 335-4521 | gehring@wsu.edu | hrs.wsu.edu

Main hrs.wsu.edu | Jobs wsu.edu/jobs



---

**From:** Mulick, Christopher B <chris.mulick@wsu.edu>
**Sent:** Thursday, October 7, 2021 9:35 AM
**To:** Gehring, Lisa <gehring@wsu.edu>
**Subject:** Exemption and accommodation process

Lisa,

The governor's office has asked for an explanation of our religious exemption and accommodation process. They are surveying multiple agencies. I've drafted the following hoping you can fill in the blanks and correct. Much correction will be needed as I'm putting a lot of this here as a place holder. Can you help? The accommodation process is more of a mystery to me.


Employee applications for religious exemptions are reviewed by a committee comprised of individuals representing student affairs, admissions, NAME HERE, NAME HERE and NAME HERE. All employees are held to the same standard. The name of the applicant whose application is being reviewed is not made available to the review committee. To date, approximately XX percent of applications for religious exemption have been accepted. The single largest reason for rejection relates to applicants to don't state a religious case for warranting an exemption. Separation proceedings have commenced for unvaccinated individuals who have not successfully secured an exemption and some have already resigned.

Those who have their applications rejected can appeal the decision. The appeal is heard by a panel with representatives from UNIT NAME HERE, UNIT NAME HERE and UNITE NAME HERE.
For those who secure a religious exemption, the employee's supervisor will then determine whether an accommodation can be made to allow the employee to continue to work under enhanced safety protocols. In determining whether an accommodation can be made, supervisors will consider THIS, THAT, and THE OTHER THING.




**Chris Mulick**
Director of State Relations
Office of External Affairs and Government Relations
Washington State University
Mobile: 253-579-2461
Email: chris.mulick@wsu.edu
wsu.edu

**ER0238**

WSU_00024742

(199 of 293), Page 199 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 199 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-21    filed 11/05/24    PageID.4538    Page
12 of 16

# VI.   <u>APPENDIX B</u>

<span style="color:red">**Topic #2:**</span> Appendix B to WSU's Supplemental Response to Plaintiff's Interrogatory No. 11, including its authenticity, the process of preparing the document, the significant of classifications contained therein, the authenticity thereof, and all other relevant facts and circumstances regarding how the data was collected, compiled and classified in Appendix B.

1. <u>Preparation of Appendix B</u>:

<u>Religious Spreadsheet</u>
- Employee would email form to hrs.exemptions@wsu.edu and submitted request in Workday.
- HR Assistant added the request information to the spreadsheet under "religious exemption request" tab.
- Blind review completed review and communicated to HR Assistant to either:
  - o Move the individual's name to the "accommodation process" excel sheet in the excel workbook
  - o Update notes to "additional information needed" for former AVP/former Manager to request additional information from the requester.
    - If updated information received HR Assistant redacted information for blind committee review.
- If approved by department, HRS emailed final accommodation approval email to employee and department, updated spreadsheet to "approved."
- If accommodation denied, employee was notified and updated spreadsheet to "denial."

<u>Medical exemption information exported from Workday and supplemented through employee relations database (ERD)</u>

<u>Creation of Appendix B</u>
- At request of WSU's counsel, HRS combined religious spreadsheet and generated similar spreadsheet for medical exemptions based on Workday and ERD data, then updated, confirmed, or corrected information in the spreadsheets using Workday or other employee records.

2. <u>Classifications contained in Appendix B</u>:

**ER0239**

(200 of 293), Page 200 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 200 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-21    filed 11/05/24    PageID.4539    Page
13 of 16

**Statuses:**

1. Denial – Did not provide information
2. Denial – did not provide information regarding conflict with beliefs
3. Denial did not provide information regarding sincerely held beliefs or conflict with beliefs
4. DENIED

**KEY: Individual did not provide sufficient information in their form or clarifying information to the blind review committee that the vaccine requirement conflicted with their sincerely held religious belief, practice or observance.**

**Status:** Denied – Accommodation
**KEY: Individual explained in their materials to the blind review committee how the vaccine requirement conflicted with their sincerely held religious belief, practice, or observance, however, the department was unable to accommodate the unvaccinated worker without undue hardship.**

**Status:** Denied Student
**KEY: The student was denied on the student review side for a religious exemption request and therefore exemption denied for student employment.**

**Status –** Denied – Submitted request in WD, did not submit form for evaluation
**Key: Individual submitted the task request in the Workday system, but did not provide the form to hrs.exemptions@wsu.edu to be evaluated for a religious exemption**

**Status:** Denied – RA
**Key: Medical documentation supported the exemption request from COVID-19 vaccination, but the unit could not reasonably accommodate.**

**Status:** No records
**Key: Denied the exemption request due to the absence of supporting medical documentation.**

**Status:** Reversed and approved
**Key: The exemption request was initially denied due to lack of supporting medical documentation. The exemption request was then approved upon receipt of supportive medial documentation.**

**Status:** Cancelled

**Key: Cancelled by the requester**

**Status:** Denied – No med
**Key: DS did not receive medication documentation to support the exemption request**

**Status:** Denied – No records
**Key: DS did not receive medication documentation to support the exemption request**

**Status:** Denied – Outside of US – exempt from order
**Key: the order did not apply to the individual as they were out of country**

ER0241

(202 of 293), Page 202 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 202 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-21    filed 11/05/24    PageID.4541    Page
15 of 16

# VII.  MISCELLANEOUS

**Topic #8:** All complaints, formal or otherwise, raised against Patrick Chun during Plaintiff's tenure at WSU and descriptions of the complaint.

- No complaints to President's Office or HRS.
- One complaint to CCR:
  - In 2018, an anonymous reporter alleged that another employee (Jason Gesser) engaged in sexual misconduct, and also alleged that Pat Chun was aware of the misconduct and did not take steps to address is. With respect to the allegations against Chun, CCR conducted interviews to gather more information, but ultimately did not receive any corroborating information or sufficient information to support proceeding with further investigation.

**Topic #9:** All WSU employment agreements within the Athletics Department from the past 5 years that were terminated "for cause," the identity of each Employee, and the underlying reason(s) or behavior(s) that warranted such termination and characterization.

- None aside from the other separated coaches and football staff due to noncompliance with Proclamation 21-14.1

**Topic #10:** WSU's response to Request for Admission No. 7 and the basis of such response, including all facts supporting the response.

- Plaintiff's RFA 7 asked WSU to "admit that the reversal of the review committee's determination that Plaintiff's Request for Religious Exemption described a sincerely held religious belief was the only instance in which the review committee's finding of sincerity was subsequently reversed."
  - Without waiving its objections to the phrasing and inaccurate characterization of "reversal" in this request, WSU denied RFA 7 because it was aware of at least one other instance where, following the blind review committee's initial determination that the requestor's deidentified exemption request adequately stated a religious objection to the COVID-19 vaccine, the employing department provided additional information that ultimately led WSU to doubt whether the employee had a sincerely held religious belief in conflict with COVID-19 vaccination.
  - Department: Elson S. Floyd College of Medicine
  - Position: Clinical resident (internal medicine)
  - Additional information provided by employee's department: After consulting with HRS, supervisor provided additional information to

HRS noting that employee previously expressed that he had chosen not to vaccinated based on his concerns about potential side effects and vaccine safety.

○ Denial notification: "In considering your request for accommodation, the University considered both the information you submitted as well as comments you made to WSU staff regarding adverse reactions to the vaccine being the cited reason for not receiving the COVID-19 vaccination. Based on your prior comments in conjunction with the timing of your request for a religious accommodation, the University doubts the sincerity of your religious belief practice or observance. Furthermore, the University determined that it would pose an undue hardship and/or a threat to yourself and others to allow you to remain in your position while unvaccinated."

ER0243

(204 of 293), Page 204 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 204 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-20    filed 11/05/24    PageID.4524    Page
3 of 5

**From:** "Elliot-Cheslek, Theresa L" <telliot@wsu.edu>
**To:** "jaystephens@ksu.edu" <jaystephens@ksu.edu>
**Subject:** RE: request
**Date:** Tue, 19 Oct 2021 17:36:38 -0000
**Importance:** Normal
**Attachments:** 2021-09-01-Religious_Exemption_Request_Form_FINAL2-1-2.pdf; COVID-19_Vaccine_Exemption_Request_Form.pdf
**Inline-Images:** image001.png; image002.png; image003.png; image004.png; image005.png; image006.png; image007.jpg

---

Hi Jay:

The general information to our employees is available on our website at:

COVID-19 Vaccination Verification – Human Resource Services, Washington State University (wsu.edu)

The forms for exemption requests are attached.  They adhere to the state of WA mandate.

Basic Process:

- Employees indicated their status within Workday
- Managers verified employee status in Workday (viewed vaccination card)
- If an employee requested an exemption, the manager could only see "in progress" and request came to HRS within workday.  To help ensure confidentiality, the exemption forms were downloaded an emailed to HRS via dedicated email accounts
- Once exemption approved or not, HRS updated employee status in Workday

Exemption process:

- Medical exemption request went through our normal disability services processes, including accommodation
- Religious exemption requests -  redacted identifiers from RE form – blind review process
A select group of individuals reviewed the redacted RE requests.  Included representatives from HR, Compliance and Attorney General's office.
Initial review by two members with broader review by the group.
Any possible denial required additional review by attorney.
Once a  determination was made, the process moved to HRS for notification.
If the RE was approved, the next step was the accommodation process.  HRS provided initial notification to department and Environmental Health and Safety reviewed and provided possible accommodations.  The department utilized the information EHS provided and in consultation with HRS determined if they could accommodate the employee.  Determination was then provided to employee.
- Employees who are not fully vaccinated or received an approved accommodation are notified, in accordance with their employee type, of separation processes.
- Employees who are "in process" of vaccination or exemption review, as of today, cannot work.  They may be utilize accrued leave, LWOP etc. until in compliance or separated.

If  your state allows RE exemptions, I strongly recommend creating a dedicated group, provide training on RE processes and use a blind review process.  WSU is lucky because we do have individuals in

WSU_00024543

(205 of 293), Page 205 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 205 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-20    filed 11/05/24    PageID.4525    Page
4 of 5

compliance familiar with RE because of their work with students.

The state deadline to be in compliance was yesterday. Our biggest issue as of today, is managers not completing or updating their employees status within WD and last min. changes by employees and or managers. Also we created a mid-step in workday for employees who started the vaccination but had not yet completed it. This has been problematic, since many employees or managers have failed to update the information to fully vaccinated.

Hope this helps. Let me know if you have additional questions.

Regards,
Theresa

---

**From:** Jay Stephens <jaystephens@ksu.edu>
**Sent:** Tuesday, October 19, 2021 10:01 AM
**To:** Elliot-Cheslek, Theresa L <telliot@wsu.edu>
**Subject:** Re: request

Yes sure did

Get Outlook for Android

---

**From:** Elliot-Cheslek, Theresa L <telliot@wsu.edu>
**Sent:** Tuesday, October 19, 2021 11:59:54 AM
**To:** Jay Stephens <jaystephens@ksu.edu>
**Subject:** request

**This email originated from outside of K-State.**

Hi Jay:

We are getting a lot of spam emails today.
Did you send me an email asking about our vaccination process?

Regards,
Theresa



**Theresa Elliot-Cheslek**
Vice President and Chief Human Resource Officer
Human Resource Services
Washington State University
Office: 509-335-4521
Email:telliot@wsu.edu
*Connect with Human Resource Services*!
Main hrs.wsu.edu | Jobs https://hrs.wsu.edu/jobs/




**ER0245**

WSU_00024544

IMPORTANT NOTICE: This communication, including any attachment, contains information that may be confidential or privileged, and is intended solely for the entity or individual to whom it is addressed. If you are not the intended recipient, you should delete this message and are hereby notified that any disclosure, copying, or distribution of this message is strictly prohibited. Nothing in this email, including any attachment, is intended to be a legally binding signature.

**ER0246**

**From:** "Connell, Michael C" <connell@wsu.edu>
**Cc:** wsu.advancement.lteam <wsu.advancement.lteam@wsu.edu>
**Subject:** Cougars Make Leadership Change with Football Program
**Date:** Tue, 19 Oct 2021 01:35:30 +0000
**Importance:** Normal
**Attachments:** WSU_employee_vax_compliance_talking_points.10.18.21.docx

---

Dear Directors,

Please see the below press release concerning Coach Rolovich and attached talking points about WSU employee compliance with Governor Inslee's vaccine mandate for state employees.  Please do not hesitate to reach out if you have any questions.

We look forward to seeing you later this week.

Thank you,

Mike

Mike Connell
Acting Vice President of Advancement &
CEO, WSU Foundation


## Cougars Make Leadership Change with Football Program

**PULLMAN, Wash.** – Due to the requirements set forth in Washington Governor Jay Inslee's Proclamation 21-14, Nick Rolovich is no longer able to fulfill the duties as the football head coach at Washington State University. In addition, four football assistant coaches, Ricky Logo, John Richardson, Craig Stutzmann and Mark Weber, are also not in compliance with the Proclamation. As a result, Washington State University has initiated the separation process based on the terms of their respective contracts, effective immediately.

Proclamation 21-14, prohibits, "Any State Agency from permitting any Worker to engage in work for the agency after October 18, 2021, if the Worker has not been fully vaccinated against COVID-19 and provided proof thereof to the agency."

Current WSU defensive coordinator Jake Dickert will be elevated to acting head coach.

<u>WSU Director of Athletics Pat Chun</u>
"This is a disheartening day for our football program. Our priority has been and will continue to be the health and well-being of the young men on our team. The leadership on our football team is filled with young men of character, selflessness and resiliency and we are confident these same attributes will help guide this program as we move forward."

<u>WSU President Kirk Schulz</u>

**ER0247**

WSU_00027047

"While much has been made of the relatively small number of university employees who are not complying with the Governor's mandate, we are immensely gratified that nearly 90 percent of WSU employees and 97 percent of our students are now vaccinated. WSU students, faculty, and staff understand the importance of getting vaccinated and wearing masks so that we can safely return to in-person learning and activities. I am proud of all those members of our community who have set the example and taken the steps to protect not just themselves, but their fellow Cougs."

WSU Board of Regents Chair Marty Dickinson
"Experience is showing that vaccine mandates help motivate people to complete the vaccination process. WSU has worked diligently to ensure the health and safety of our students, facility, staff and communities, as seen in our outstanding vaccination rates. WSU leadership takes Governor Inslee's mandate policy seriously and we are committed to complying."

ER0248

WSU_00027048

(209 of 293), Page 209 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 209 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-19    filed 11/05/24    PageID.4521    Page
6 of 6



University Marketing and Communications

**Talking points regarding WSU employee compliance with the state vaccination mandate**
October 18, 2021 – V.2

For media inquiries, please contact Phil Weiler at phil.weiler@wsu.edu or 509-595-1708.

- Washington Governor Jay Inslee required all higher education employees in the state to be fully vaccinated against COVID-19 or have qualified for a medical or religious exemption by Oct. 18. This requirement is considered a condition of employment. WSU placed a similar vaccination requirement on its students.

- Personal privacy requirements prevent us from discussing the vaccination status of individual employees, but we can talk about how the vaccine exemption process worked.

- Employees and students were able to seek exemptions to the vaccine mandate for documented medical reasons or sincerely held religious beliefs.

- The process WSU created to review exemption requests was **fair and equitable** for all requestors.
  - The criteria for approving medical and religious exemptions were developed in consultation with the Washington Attorney General's Office.
  - The requests for religious exemptions were evaluated in a "blind" review process, meaning the identities of the individuals requesting exemptions were unknown to the members of the review committee making the decisions.
  - A team of at least two trained staff members reviewed each of the blinded requests.

- If an employee exemption request was provisionally approved, the application went through a second process.
  - The applicant was re-identified, and the individual's supervisor, as well as Environmental Health and Safety staff, as needed, were consulted to see if the employee could perform all their duties and maintain public health and safety even if the worker was unvaccinated. If reasonable accommodations were not possible, the request was denied.

- If a request for exemption was denied, the employee had to get vaccinated or be terminated. If they chose to take the vaccine but are not fully vaccinated by Oct. 18, they must take annual leave or leave without pay until two weeks after their final shot.

# # #

**ER0249**

WSU_00027049



University Marketing and Communications

**Talking points regarding WSU's vaccination exemption process**
October 15, 2021

**Vaccine exemption process**

- Employees and students were able to seek exemptions to the vaccine mandate for documented medical reasons or sincerely held religious beliefs.

- Those who requested exemptions were asked to provide supporting information to verify their claims.

- The exemption review process was **fair and equitable** for all requestors.
  - The criteria for approving medical and religious exemptions were developed in consultation with the Washington Attorney General's Office.
  - The requests for exemptions are evaluated in a "blind" review process, meaning the identities of the individuals requesting exemptions were unknown to the members of the review committee making the decisions.
  - A team of at least two trained staff members reviewed each of the blinded requests.

- If an employee exemption request was approved, the application went through a second process.
  - The applicant was re-identified and the individual's supervisor was contacted to see if the employee could perform all of their duties and maintain public safety even if the worker was unvaccinated. If reasonable accomodations were not possible, the request was denied.

- If a request for exemption was denied, the employee had to get vaccinated or be terminated. If they chose to take the vaccine but are not fully vaccinated by Oct. 18, they have to take annual leave or leave without pay until two weeks after their final shot.

- An appeals process is in place for both students and employees.

# # #

PO Box 641040, Pullman, WA 99164-1040 | 509-335-1221 | wsu.edu

ER0250

**From:** "Gehring, Lisa" <gehring@wsu.edu>

**To:** "Dennler, Bonnie E" <b.carothers@wsu.edu>

**Subject:** 2021-12-13_ReligiousAccomProceduresFinalDRAFT

**Date:** Thu, 23 Dec 2021 16:42:45 +0000

**Importance:** Normal

**Attachments:** 2021-12-13_ReligiousAccomProceduresFinalDRAFT.docx

---

If you would review and let me know if any additions before we call this final.  Thanks.

**ER0251**

WSU_00021213

(212 of 293), Page 212 of 293  Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 212 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-17    filed 11/05/24    PageID.4512    Page
5 of 6

**DRAFT FOR INTERNAL DISCUSSION ONLY**

**Religious Accommodation Internal Procedures**

**Objective**

State of Washington Proclamation 21-14.2 prohibits any worker from engaging in work for Washington State University (WSU) after October 18, 2021, that has not been fully vaccinated against COVID-19 and provided proof thereof.  WSU will provide reasonable accommodations to qualified employees with sincerely held religious beliefs, practice, or observance that conflict with job requirements, unless providing such accommodations would pose an undue hardship or fundamental alteration.

**Requesting a Religious Accommodation**

Employee must initiate a request for a sincerely held religious beliefs, practice, or observance accommodation in Workday and complete the *Religious Exemption Request Form* located on the HRS website at COVID-19 Vaccination Verification  and submit it to HRS by October 4, 2021.

**Review of Religious Accommodation**

Following completion of an exemption request in Workday.

1.  HRS central coordinator (coordinator) will email the employee a Religious Exemption Request Form, if completed form is not provided.
2.  Upon receipt of an exemption request form, coordinator will confirm form completion.
    a.  Redact employee name and add to SharePoint Site using employees ID only, for committee review.
    b.  Coordinator will confirm if the requestor is a student employee and track it on a separate Excel tab.
    c.  Two committee members review each request.  If the two-committee members are unable to determine if employee holds a sincerely held religious beliefs, practice, or observance accommodation that is in conflict with the COVID-19 vaccine, it will be referred to the larger committee for review.
    d.  If the committee determines the completed form contains insufficient information, the coordinator will follow up with the employee to obtain clarifying information.  A HR Consultant with an additional committee representative may conduct verbal questioning and document responses, if needed.
    e.  The committee determines if employee holds sincerely held religious beliefs, practice, or observance.  An AAG will advise the committee in its work.  The committee may seek follow-up information from an employee in order to make this initial determination.
3.  Reasonable Accommodation
    a.  If sincerely held religious belief is confirmed, HRS will notify employing department and to determine if an accommodation would pose an undue hardship or fundamental alteration of position.

**ER0252**

      b. HRS will notify Enivornmental Health and Safety (EH&S) of accommodation request, and they will provide HRS and the employing department a health and safety review of requested accommodation.

4. Employee Notification
    a. If a request is denied, the coordinator will inform the employee and employing department of the denial, and the reason provided.
    b. If request is approved, the employing and employing department are notified of approval and accommodation requirements.

5. Student Employees
    i. Student Religious Exemption Committee will inform coordinator of student exemptions that the Student Religious Exemption Committee approved or denied. If confirmed, HRS, may consult with employee's supervisor and/or appointing authority to determine if any additional information should be provided to the review committee and if an accommodation would pose an undue hardship or fundamental alteration of position.

**ER0253**

WSU_00021215



**11:26**

< **36**

AY

Ashton ›

you!! Talk soon

Sep 23, 2021 at 6:38 PM

What's going on? How you holding up?

OK. Our head coach has put himself in a bad situation by not getting Vax. It's going to be a great lesson for current or future coaches about decisions you can or cannot make as a head coach.

Good luck this weekend!

Nov 25, 2021 at 4:53 PM

Happy Thanksgiving!! I know there's a lot on your plate, stay positive + keep Leading. If it was easy, ALL the Monday Morning Quarterbacks would actually APPLY for the job. Big Weekend!!! Best of luck... Talk soon

Nov 26, 2021 at 7:30 AM



Thx Ashton. Happy Thanksgiving to you as well. Big Weekend indeed. We need a win tonight and

iMessage

 Chun_SDT_00000042

07.30.2024
Dickinson
**2**
Buell Realtime Reporting

**From:** "Druffel, Ginger K" <gkdruffel@wsu.edu>
**To:** Brett Blankenship <4brettb@gmail.com>, "Blankenship, Brett" <RegentBlankenship@wsu.edu>, "Cayanan, Arliegh Pamintuan" <arliegh.p.cayanan@wsu.edu>, "Cerna, Enrique S" <regent.cerna@wsu.edu>, Enrique Cerna <enriquecerna@msn.com>, "Redman, Heather" <RegentRedman@wsu.edu>, Heather Redman <heather@flyingfish.vc>, Jenette Ramos <JR_JenetteRamos@icloud.com>, John Schoettler <jschoett@amazon.com>, "Schoettler, John F" <regent.schoettler@wsu.edu>, Lisa Schauer <lschauer@pointnorthinc.com>, "Schauer, Lisa" <regent.schauer@wsu.edu>, "Powell, Lura J." <RegentPowell@wsu.edu>, Lura Powell <4lurajp@gmail.com>, Marty Dickinson <martyd@stcu.org>, "Ron Sims (simsron@gmail.com)" <simsron@gmail.com>, "Wright, Shain" <shain.wright@wsu.edu>
**Cc:** Cayan Tapacio <cayan@comcast.net>, Kate Kitto <kate@flyingfish.vc>, "Kimly Weaver" <kimly@amazon.com>, Lauren Shimer <lauren@pointnorthinc.com>, "Sylvia Hedrick" <sylviah@stcu.org>, "Hoyt, Christine Rae" <christine.hoyt@wsu.edu>, "Schulz, Kirk" <kirk.schulz@wsu.edu>, "Jacobsen, Desiree" <desiree@wsu.edu>
**Subject:** Friday Regents Update
**Date:** Fri, 20 Aug 2021 22:21:13 +0000
**Importance:** Normal
**Attachments:** August_20_2021_COVID_Regents_Update.pdf

---

Dear Regents,

Attached you will find a Regents update from President Schulz.

Thank you
Ginger

*Ginger Druffel*
*Senior Executive Assistant to the President*
  *and Office Manager*
*Washington State University*
*(509)335-7932 – direct*
*(509)432-9019 - cell*

ER0255

WSU_00028440

August 20, 2021

Regents –

Happy Friday! I wanted to provide you with my regular update and include some information on some successes for WSU during this last week.

We had a convocation earlier today where we welcomed new Cougs to Pullman, have moved in several thousand students into our residence halls, and are prepared for in-person classes to start on Monday at all of our campus locations across Washington.

**Currently, we are sitting at 94% of our new and returning students are vaccinated.** Currently this represents data on about 11,000 students and more continue to register each day across the system. **Starting next week, I will provide weekly updates for each campus location.** Additionally, we continue to update our webpages for the WSU system on COVID related policies around vaccination requirements, indoor mask mandates and other major policy issues - https://wsu.edu/covid-19/.

I want to provide an update on Coach Rolovich and our continued saga with vaccination with him. I understand that this situation has made many of our alumni, fans, supporters, and employees angry, embarrassed, and eager for the administration (and me personally) to show some leadership. **As a reminder – whatever penalties we impose on Coach Rolovich for exercising the personal exemption will apply to every other employee at WSU who has also exercised the personal exemption option**.

As many of you know, this has been a significant topic in the Seattle Times –

- August 17 – Rolovich should tell us why he refuses the vaccine - https://www.seattletimes.com/opinion/rolovich-should-tell-us-why-he-refuses-the-vaccine/

- August 17 – WSU president reveals weak hand with student-only mandate - https://www.seattletimes.com/opinion/editorials/wsu-president-reveals-weak-hand-with-student-only-mandate/

- August 10 – How can state's highest-paid employee – more than $3M – be allowed to shirt vaccine mandate - https://www.seattletimes.com/opinion/editorials/how-can-states-highest-paid-employee-more-than-3m-be-allowed-to-shirk-vaccine-mandate/

- July 28 – Hold WSU coach accountable for refusal to vaccinate - https://www.seattletimes.com/opinion/editorials/how-can-states-highest-paid-employee-more-than-3m-be-allowed-to-shirk-vaccine-mandate/

**ER0256**

(217 of 293), Page 217 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 217 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-15    filed 11/05/24    PageID.4504    Page
4 of 5

We worked closely with Governor Inslee on the recent vaccinate mandate for higher education employees and felt that once the personal exemption was lifted that Coach Rolovich would agree to the vaccine.

**He informed Pat yesterday afternoon/evening that he intends to seek a religious exemption to the vaccine mandate.** To say that we are disappointed in this would be a severe understatement.

We are currently working with Paradigm Four as a Crisis Management Consultant (https://www.paradigmfour.com) for assistance with our communications and strategy around announcing this decision. We have prepared a holding statement (which I have appended below) for next week (or sooner if needed), and will be meeting Monday to finalize our communications strategy around this. Coach Rolovich has been instructed to not discuss this with the media or outside parties so that we (WSU) controls the messaging. **This statement may change substantially next week as we get additional feedback.**

Prepared Statement (DRAFT) –

***Draft statement – Friday, August 20, 2021 – 9 a.m.***

*Washington Governor Jay Inslee's decision on Wednesday to require that all school employees be vaccinated against COVID-19 was the right thing to do for our students, faculty, staff, and their families across the state. It is the step we need to take to help get students and teachers safely back into the classroom this fall.*

*While thousands of Washington educators have already received the vaccine, some are unable to because of legitimate medical concerns or sincerely held religious objections. I have the greatest respect for those individuals whose religious convictions prevent them from taking the vaccine. The Governor's order recognizes this and appropriately allows for religious exemptions to the mandate.*

*That said, I am deeply disappointed that WSU's head football coach has opted to use the exemption process. This was an opportunity for the coach to display leadership and he has fallen short in the eyes of many in our state, including me.*

*Nearly 94 percent of students on the WSU Pullman campus who have declared their vaccination status have received the COVID-19 vaccine so far. Our students understand that we all must do our part to end this pandemic.*

*If you are not yet vaccinated, get your shot today and wear a mask indoors. We owe it to ourselves, and we owe it to each other.*

*Kirk Schulz, President*
*Washington State University*

WSU_00028442

## Attorney-Client Privilege

Let me know if you have any questions or concerns – send me a text message (509-339-9350) and I will give you a call.

Regards,

Kirk

WSU_00028443

KS ipad - MC59903



# Chats

07.30.2024
Dickinson
1
Buell Realtime Reporting

| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

---

**1/5/2021**

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

01/05/2021
03:14:31
PM
(UTC-8)
Happy New Year!! I am working a setting up a Zoom meeting with you, Elizabeth and our new Vice Provost for Enrollment Management to discuss recruiting opportunities in WA. This is a follow up to our pre-Christmas phone call. Just wanted you to be aware.

Threads

---

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Got it! Thank you for heads up!

01/05/2021
03:17:23
PM
(UTC-8)

Threads

---

**6/3/2021**

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

What is your suite number

06/03/2021
02:55:04
PM
(UTC-7)

Threads

---

**6/22/2021**

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

06/22/2021
06:18:56
AM
(UTC-7)
Good morning! A positive piece of news to share this morning - we expect to announce 100% capacity for Martin Stadium later today. UW will announce the same.

Threads

---

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

06/22/2021
08:25:04
AM
(UTC-7)
Another piece of good news today - LCME will announce that we have been fully accredited with the Med School!!!

Threads

---

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Wow! This is all such great stuff Kirk! Thank you for sharing with me!!!

06/22/2021
11:28:22
AM
(UTC-7)

Threads

---

**7/22/2021**

1

Schulz_SDT_00000116

(220 of 293), Page 220 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 220 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4472    Page
3 of 31



ER0260

Schulz_SDT_00000117

(221 of 293), Page 221 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 221 of 293
Case 2:22-cv-00319-TOR ECF No. 120-14 filed 11/05/24 PageID.4473 Page
4 of 31

KS ipad - MC59903

---

**155**      kirkhschulz@gmail.com, Marty Dickinson      **143**

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

07/26/2021
09:47:23
AM
(UTC-7)

Quick update - we are going to do a letter for NR which details how he needs to comply with masking regulations, etc... if not vaccinated. Attorney-Client Privilege Also looking at a designed pro-vaccine social media campaign with some prominent university folks to double down on message. More later - Kirk

Threads

---

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Thank you for the update and the approach.

07/26/2021
10:00:12
AM
(UTC-7)

Threads

---

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

07/26/2021
10:49:48
AM
(UTC-7)

Good meeting with Governor Inslee - he agrees with our approach. We read him the statement that Coach Rolovich will read tomorrow at PAC 12 press conference - and he asked for some slight modification. I will provide final version to Regents later and before tomorrow.

Threads

---

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Good news! Really appreciate the communication Kirk.

07/26/2021
10:52:26
AM
(UTC-7)

Threads

---

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

07/26/2021
03:19:54
PM
(UTC-7)

I sent a copy of NR statement for tomorrow at PAC 12 media days. Will send final version tomorrow to all of the Regents

Threads

---

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Got it. ☐

07/26/2021
03:45:31
PM
(UTC-7)

Threads

---

*7/27/2021*

**3**

**ER0261**        Schulz_SDT_00000118



KS ipad - MC59903

| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

07/28/2021
03:05:10
PM
(UTC-7)

I am talking w Heather Monday morning.

Threads

---

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Liked "I am talking w Heather Monday morning."

07/28/2021
03:07:31
PM
(UTC-7)

Threads

---

7/29/2021

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Good morning! I will talk w you and Colleen at 9- my mom is having some trouble so I am in the middle of getting her to a dr and needing to sit in on that this am at 9:30!!! So my time is limited for the call!!

07/29/2021
07:50:44
AM
(UTC-7)

Threads

---

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

07/29/2021
07:52:18
AM
(UTC-7)

Marty - I do not have this on my schedule for today - I am in a donor meeting in Seattle at 9 …

Threads

---

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Ah- ok- I think this may have been a temporary hold- thanks! Phew!!!

07/29/2021
07:52:48
AM
(UTC-7)

Threads

---

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

07/29/2021
01:14:35
PM
(UTC-7)

Update - we sent a thorough and complete letter to Coach yesterday that provides clear guidelines and behavior expectations moving forward. I have calls scheduled with Lura today and Heather Monday. Will provide another update to all of the Regents tomorrow.

Threads

5

**ER0263**

Schulz_SDT_00000120

(224 of 293), Page 224 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 224 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4476    Page
7 of 31

KS ipad - MC59903



155    kirkhschulz@gmail.com, Marty Dickinson    143

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Ok…. Tough article in Seattle Times - however not unexpected…

07/29/2021
01:15:31
PM
(UTC-7)

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

07/29/2021
01:20:09
PM
(UTC-7)

Yup - pretty brutal and direct - but expected.  We need to move on and not add more logs to the media fire

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Yes…. Agreed! We however have some Regents who I believe will want to publicly address this- something we can plan & prepare for at Sept mtg.

07/29/2021
01:22:22
PM
(UTC-7)

Threads

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

07/29/2021
01:22:57
PM
(UTC-7)

Sounds good

Threads

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

07/29/2021
04:47:09
PM
(UTC-7)

Talked with Lura who talked with former Regent Durkan.  Generally understands I (we) cannot do much - but I made sure to share what we are doing.  Fine call overall and I understand (and share) frustrations with the situation.

Threads

7/30/2021

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Liked "Talked with Lura who talked with former Regent Durkan.  Generally understands I (we) cannot do much - but I made sure to share what we are doing.  Fine call overall and I understand (and share) frustrations with the situation. "

07/29/2021
08:53:37
PM
(UTC-7)

Threads

8/2/2021

6

**ER0264**    Schulz_SDT_00000121

KS ipad - MC59903



ER0265

Schulz_SDT_00000122

(226 of 293), Page 226 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 226 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4478    Page
9 of 31

KS ipad - MC59903



| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/12/2021
08:39:01
AM
(UTC-7)

Sorry - let's try for later or tomorrow.

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Liked "Sorry - let's try for later or tomorrow."

08/12/2021
09:01:51
AM
(UTC-7)

Threads

—————— 8/13/2021 ——————

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

I am around- sorry I missed the call- you caught me while I was out for a morning water ski!

08/13/2021
09:17:58
AM
(UTC-7)

Threads

—————— 8/17/2021 ——————

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/17/2021
03:53:03
PM
(UTC-7)

Let me know how schedule looks for next few days - we have a Rolo strategy, and believe Gov will do indoor mask mandate and vaccine requirement for higher Ed tomorrow.  Just want to run by you what we are planning ….

Threads

—————— 8/18/2021 ——————

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

I am on vacation all week- if you can call me this evening as I am free!

08/17/2021
05:58:01
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/17/2021
09:20:00
PM
(UTC-7)

Sorry I missed your calls - will text tomorrow and connect

Threads

8

Schulz_SDT_00000123

(227 of 293), Page 227 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 227 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4479    Page
10 of 31



KS ipad - MC59903

| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Ok- sorry. We are on the midst of moving kids back to school. Will connect tomorrow!

08/17/2021
09:22:25
PM
(UTC-7)

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Getting on a plane but will be available after 11:30 am today-

08/18/2021
07:34:03
AM
(UTC-7)

Threads

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

08/18/2021
07:34:30
AM
(UTC-7)

Ok - will call this afternoon

Threads

8/19/2021

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Quick question - do you happen to have any contacts at ASU? Blake starting grad school and looking for an on campus job - lots of postings but kind of a giant sea of people …..

08/18/2021
05:56:55
PM
(UTC-7)

Threads

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

08/18/2021
05:57:57
PM
(UTC-7)

I do - can you send me Blake's contact info and I will connect him w ASU Prez

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Ok- Blake will reach out to you directly w his contact info!

08/18/2021
06:07:04
PM
(UTC-7)

Threads

9

**ER0267**

Schulz_SDT_00000124

KS ipad - MC59903



| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021
10:38:41
AM
(UTC-7)

Pat is meeting with football coaching staff today at 2. Coaching staff will need to conform to new policy announced or will be placed on administrative leave on Monday. I will keep you posted.

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Thanks Kirk- are working with a PR firm to have formal press release and communication points for all scenarios of potential outcomes?

08/19/2021
10:40:09
AM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021
11:11:42
AM
(UTC-7)

Not yet.

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

I think a communication plan and prep for this is an important competent to all that unfolds and the steps being taken.

08/19/2021
11:15:44
AM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021
11:16:13
AM
(UTC-7)

Agreed. We are working on it

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

We have an opportunity to control the narrative here but need to be ahead of the game ….

08/19/2021
11:17:59
AM
(UTC-7)

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

It would be helpful and somewhat necessary for WSU to be very aggressive and proactive and somewhat in your face on the thoughtful and intentional steps and nuisances our leadership has taken vs the next headline being Gov Inslee takes care of the job that WSU would not….

08/19/2021
11:22:19
AM
(UTC-7)

Threads

10

**ER0268**

Schulz_SDT_00000125

KS ipad - MC59903



**155**     kirkhschulz@gmail.com, Marty Dickinson     **143**

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021 11:38:19 AM (UTC-7)
Got it. Phil and his team are working with athletics and doing scenario planning and your points are good ones. He is going to reach out to you this afternoon when we have some of this laid out.

Threads

8/20/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021 07:00:39 PM (UTC-7)
Not to be too depressing this evening - but it appears Nick is going to file a religious exemption claim. I asked Phil to engage a Seattle firm to assist us - and I intend to be pretty public expressing my disappointment with his decision. Right now we are so angry (Pat and myself) that we cannot see straight. I will provide a briefing tomorrow once I have some more conversations with our team.

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Ughh!! So disappointed and pissed!! Right there with you Kirk!

08/19/2021 07:04:13 PM (UTC-7)

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

And can you pls tell me his devoted religion?

08/19/2021 07:06:15 PM (UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021 07:07:41 PM (UTC-7)
I have no $&$@@ idea. Probably searching on the internet as we speak.

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021 07:08:02 PM (UTC-7)
However - he will have to identify that.

Threads

11

Schulz_SDT_00000126

(230 of 293), Page 230 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 230 of 293
Case 2:22-cv-00319-TOR ECF No. 120-14 filed 11/05/24 PageID.4482 Page
13 of 31

KS ipad - MC59903



| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

☐☐☐

08/19/2021
07:08:08
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021
07:15:39
PM
(UTC-7)

https://www.paradigmfour.com

https://www.paradigmfour.com

**P4**

11DC49E9-4796-49
BE-B2F2-957AECD
2C661.pluginPayloa
dAttachment

FE2A263F-8AB2-40
09-9EFC-A635DB33
E179.pluginPayload
Attachment

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/19/2021
07:15:49
PM
(UTC-7)

This is firm we are currently using

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Thank Kirk! I am so bummed that Nick doesn't see the bigger picture. What an incredibly massive let down on his being in it for Cougar Nation! You and Pat have and continue to do an outstanding job navigating this incredibly difficult situation. Than you for what you do everyday on behalf of WSU! You are a great leader!! Hold tight!!!

08/19/2021
07:23:03
PM
(UTC-7)

Threads

12

Schulz_SDT_00000127



**ER0271**

Schulz_SDT_00000128

KS ipad - MC59903

| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/20/2021
03:21:05
PM
(UTC-7)

Got it - and agree

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Liked "Got it - and agree "

08/20/2021
03:21:16
PM
(UTC-7)

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

I am happy to join an editorial board mtg w you and Pat if needed!

08/20/2021
03:24:40
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/20/2021
03:34:00
PM
(UTC-7)

Thanks. That might be a good idea to show unity in our stance.

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Liked "Thanks. That might be a good idea to show unity in our stance. "

08/20/2021
03:36:30
PM
(UTC-7)

Threads

8/23/2021

14

**ER0272**

Schulz_SDT_00000129

KS ipad - MC59903



155    kirkhschulz@gmail.com, Marty Dickinson    143

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

So fun!! The Tri Cities Crimson COug and STCU cart!!

08/23/2021
01:31:23
PM
(UTC-7)

IMG_9423.heic

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/23/2021
01:49:40
PM
(UTC-7)

☐

Threads

8/30/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/30/2021
10:25:46
AM
(UTC-7)

Let me know if you have any time today, tomorrow or Wednesday for a short phone call.  I just want to update you on a pending personnel action I am taking.

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

On my way back from Canada- will shoot you a few options when I get home

08/30/2021
10:27:05
AM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/30/2021
10:27:20
AM
(UTC-7)

Sounds good - thanks

Threads

8/31/2021

15

ER0273

Schulz_SDT_00000130

(234 of 293), Page 234 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 234 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4486    Page
17 of 31

KS ipad - MC59903



**ER0274**

Schulz_SDT_00000131

(235 of 293), Page 235 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4487    Page
18 of 31

KS ipad - MC59903



155    kirkhschulz@gmail.com, Marty Dickinson    143

**1**  Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

How many times is our Football coach going to make national headlines?    09/01/2021
05:38:43
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

09/01/2021   I wish I had a satisfactory answer.  I saw the Wolken article.  I did talk with Brett, Heather, and Lura
07:16:42    today.
PM
(UTC-7)

Threads

**1**  Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

☐☐    09/01/2021
07:31:16
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

09/02/2021   Talked with Shain and John S today.  Will get Ron tomorrow morning.
04:16:56
PM
(UTC-7)

Threads

**1**  Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Liked "Talked with Shain and John S today.  Will get Ron tomorrow morning."    09/02/2021
04:18:28
PM
(UTC-7)

Threads

─────────────── 9/3/2021 ───────────────

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

09/03/2021   Talked with Ron - so called everyone this week personally and had a conversation.  As I learn more - I
09:55:30    probably waited too long to make this decision.  Thanks for your support this week.
AM
(UTC-7)

Threads

17

**ER0275**    Schulz_SDT_00000132

(236 of 293), Page 236 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4488    Page
19 of 31
Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 236 of 293

KS ipad - MC59903

| 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Thanks Kirk!

09/03/2021
09:58:55
AM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

09/03/2021
04:20:30
PM
(UTC-7)

Just a quick update. I think we will come to terms fairly quickly with the employee and should have it wrapped up by Regents meeting. I think we will be able to avoid litigation as well. Will keep you posted.

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

That would be such a good resolution for all parties if we can get there. Thanks

09/03/2021
04:21:07
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

09/03/2021
04:21:33
PM
(UTC-7)

We are not far apart

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Liked "We are not far apart"

09/03/2021
04:21:46
PM
(UTC-7)

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

A mutual separation would be a good path for sure -

09/03/2021
04:22:05
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

09/03/2021
04:23:03
PM
(UTC-7)

☐

Threads

18

**ER0276**

Schulz_SDT_00000133

KS ipad - MC59903



**ER0277**

Schulz_SDT_00000134



(239 of 293), Page 239 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 239 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4491    Page
22 of 31

KS ipad - MC59903



| | 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 | |

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

09/19/2021
02:01:01
PM
(UTC-7)

Yup. Tough day. I do remind myself that a team that we are 10-60 against may not be the best measuring stick.

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Yes…. That is true. There is little grace for Rolo however…

09/19/2021
02:01:48
PM
(UTC-7)

Threads

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

09/19/2021
02:13:03
PM
(UTC-7)

Got it. Bottom line - We need to win some games

Threads

**kirkhschulz@gmail.com**
To: Marty Dickinson <+15098688170>

09/19/2021
02:19:13
PM
(UTC-7)

Also - I am not sticking my head in the sand. I know folks are not happy about direction of Cougar Football & Rolo - and I suspect the volume will increase with every loss.

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Liked "Also - I am not sticking my head in the sand. I know folks are not happy about direction of Cougar Football & Rolo - and I suspect the volume will increase with every loss. "

09/19/2021
02:56:23
PM
(UTC-7)

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Liked "Got it. Bottom line - We need to win some games "

09/19/2021
02:56:27
PM
(UTC-7)

Threads

9/25/2021

21

**ER0279**    Schulz_SDT_00000136

KS ipad - MC59903



**ER0280**

Schulz_SDT_00000137

(241 of 293), Page 241 of 293
Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 241 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4493    Page
24 of 31

KS ipad - MC59903

| | 155 | kirkhschulz@gmail.com, Marty Dickinson | 143 |

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Yep- that is great!! Thanks

10/07/2021
02:30:08
PM
(UTC-7)

Threads

---

10/8/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/08/2021
02:55:05
PM
(UTC-7)

Can we schedule a call on Monday with Pat and myself to talk through some scenarios and our plan?

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Yes- name the time….. I am open!

10/08/2021
03:01:48
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/08/2021
03:02:31
PM
(UTC-7)

Ginger will be in touch shortly

Threads

**Marty Dickinson <+15098688170>**
To: kirkhschulz@gmail.com

Liked "Ginger will be in touch shortly "

10/08/2021
03:06:05
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/08/2021
04:32:40
PM
(UTC-7)

We have a pretty good idea of our pathway forward - will be ready to discuss on Monday

Threads

23

**ER0281**

Schulz_SDT_00000138

KS ipad - MC59903



ER0282     Schulz_SDT_00000139

KS ipad - MC59903



155      kirkhschulz@gmail.com, Marty Dickinson      143

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Probably a bit relieved- the next 3 weeks in the State Of WA is going to get very interesting a mind a bit wild…

10/12/2021 03:58:05 PM (UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/12/2021 03:59:11 PM (UTC-7)

I think the word you are looking for is a "shit show". Not very professional language but probably accurate

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Yes that is the accurate and spot on description- ☐☐☐

10/12/2021 03:59:40 PM (UTC-7)

Threads

10/14/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/13/2021 09:25:25 PM (UTC-7)

Communicated with both Heather and Lura today - both are in Europe this week. All good thus far.

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Well I wish I was in Europe right now ☐☐

10/13/2021 09:28:19 PM (UTC-7)

Threads

10/15/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/15/2021 11:34:49 AM (UTC-7)

Pat will call with details on everything. I talked with Shain and Ron this morning. The only person left is John S. Everyone feels this is the right pathway to take. Will keep you updated as things progress.

Threads

25

**ER0283**      Schulz_SDT_00000140

KS ipad - MC59903



ER0284

Schulz_SDT_00000141

KS ipad - MC59903



**ER0285**

Schulz_SDT_00000142



**155**  kirkhschulz@gmail.com, Marty Dickinson  **143**

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/19/2021
04:56:57
PM
(UTC-7)

As the season went forward - we would have been in a world of hurt on the recruiting front - not being able to meet with recruits in person was not going to work. I will update you again tomorrow.

Threads

**1**  Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Emphasized "As the season went forward - we would have been in a world of hurt on the recruiting front - not being able to meet with recruits in person was not going to work. I will update you again tomorrow."

10/19/2021
04:59:10
PM
(UTC-7)

Threads

---

10/20/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/20/2021
01:49:13
PM
(UTC-7)

Some positive news - we just received a commitment for $3M for the Indoor Practice Facility today - that should complete fundraising for this!!!

Threads

---

10/21/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/20/2021
05:20:57
PM
(UTC-7)

Generally - VERY mild day on email and phone calls. USA Today ran an article describing legal analysis of Rolo legal action - I can send a copy if you want. Some positive vibes out of athletics today for first time in weeks. Coach Dickert has already started to build out his staff. He is very composed.

Threads

**1**  Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Great news on the $3 M gift!! My side was quieter today- how is Pat? What can we be doing for him?

10/20/2021
05:31:27
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/20/2021
08:23:38
PM
(UTC-7)

Also got another $500K in last two days for IPF. Some folks were waiting for our decision I believe. Pat doing much better today. I will send you copy of email I sent to athletic staff today.

Threads

28

Schulz_SDT_00000143

(247 of 293), Page 247 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 247 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-14    filed 11/05/24    PageID.4499    Page
30 of 31

KS ipad - MC59903



**155**      kirkhschulz@gmail.com, Marty Dickinson      **143**

**1** — Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Ok. I think people were waiting to see as well. Let me know if Regents can do anything to show our support for Pat

10/20/2021
08:24:40
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/20/2021
08:28:51
PM
(UTC-7)

I think we are good right now with Pat. Jake is impressive - we will see how things go on the field but he will have a lot of folks cheering for his success.

Threads

**1** — Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Liked "I think we are good right now with Pat. Jake is impressive - we will see how things go on the field but he will have a lot of folks cheering for his success. "

10/20/2021
08:29:04
PM
(UTC-7)

Threads

**1** — Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Sure appreciate the communication the past week here Kirk! Thank you-

10/20/2021
08:29:31
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/20/2021
08:30:39
PM
(UTC-7)

☐

Threads

10/22/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/21/2021
05:27:38
PM
(UTC-7)

Daily update - less than 20 emails today and zero phone calls into the office. It has really quieted down. In day #2 of Foundation meetings - lists of positive energy. Will provide general update to Regents tomorrow summarizing where we are in general. Received another $3.5M gift for Accounting today - so on a role.

Threads

29

Schulz_SDT_00000144

(248 of 293), Page 248 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 248 of 293
Case 2:22-cv-00319-TOR ECF No. 120-14 filed 11/05/24 PageID.4500 Page
31 of 31

KS ipad - MC59903



155      kirkhschulz@gmail.com, Marty Dickinson      143

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Great news !!!! No calls or emails for me today! Other than one of my employees giving me a card thanking me for the position WSU has taken . ☺

10/21/2021 05:29:55 PM (UTC-7)

Threads

10/30/2021

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Such a good win!!!

10/30/2021 04:03:21 PM (UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/30/2021 04:06:28 PM (UTC-7)

I know - fantastic

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Emphasized "I know - fantastic "

10/30/2021 04:08:03 PM (UTC-7)

Threads

10/31/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

10/31/2021 01:31:44 PM (UTC-7)

2 items - we got another $3M gift yesterday for Cougar Athletics! Second - I would like to suggest a modification to my contract - I can send you a Orr outlining my proposal - let me know how you would like me to proceed. This is NOT urgent.

Threads

Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Wow! Well that was a great way to wrap up a super weekend for the Cougs!! Happy to work through contract modifications- thanks for heads up!

10/31/2021 03:37:19 PM (UTC-7)

Threads

11/8/2021

30

ER0288      Schulz_SDT_00000145

# Chats



**7**     **+15095926030, +15095951708**     **6**

8/19/2021

kirkhschulz@gmail.com
To: +15095926030, +15095951708 <iMessage;+;chat564015416929017209>

08/19/2021 11:41:19 AM (UTC-7)
I have visited with both of you this morning - Phil is working on scenario planning for the next steps we are taking with athletics in terms of vaccinations for coaches and subsequent communications based on decisions individuals make. We may need to make it clear that individuals need to refrain from making statements on meetings, etc on their social media accounts to help control our messaging.
Threads

**1** +15095951708
To: +15095926030, +15095951708 <iMessage;+;chat564015416929017209>

Liked "I have visited with both of you this morning - Phil is working on scenario planning for the next steps we are taking with athletics in terms of vaccinations for coaches and subsequent communications based on decisions individuals make. We may need to make it clear that individuals need to refrain from making statements on meetings, etc on their social media accounts to help control our messaging."
Threads
08/19/2021 11:43:55 AM (UTC-7)

8/20/2021

kirkhschulz@gmail.com
To: +15095926030, +15095951708 <iMessage;+;chat564015416929017209>

08/19/2021 06:45:20 PM (UTC-7)
It appears that Nick is going to claim a religious exemption to the vaccine mandate. While I know I have to be careful - I would like to include a quote expressing my disappointment in this decision. I also think it would be wise to get a Seattle firm to assist with our communications strategy in the Puget Sound.
Threads

kirkhschulz@gmail.com
To: +15095926030, +15095951708 <iMessage;+;chat564015416929017209>

08/19/2021 07:02:35 PM (UTC-7)
I also updated the Chair of the Regents tonight. I told her I will call her tomorrow and provide a briefing and update.
Threads

**1** +15095951708
To: +15095926030, +15095951708 <iMessage;+;chat564015416929017209>

Thanks for the update. Pat and I had a call earlier this evening. We will continue to coordinate. He has retained a crisis comms person. FYI I emailed Marty asking if we could meet tomorrow afternoon. Will keep the meeting with her if she is available to hear her thoughts.
Threads
08/19/2021 07:05:29 PM (UTC-7)

kirkhschulz@gmail.com
To: +15095926030, +15095951708 <iMessage;+;chat564015416929017209>

08/19/2021 07:06:48 PM (UTC-7)
Right now - she is like the rest of us and pretty pissed off. Marty will want to know name of firm - so you should have that in your pocket.
Threads

1

Schulz_SDT_00000011

KS ipad - MC59903



**155**      kirkhschulz@gmail.com, Marty Dickinson      **143**

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/12/2021
08:39:01
AM
(UTC-7)

Sorry - let's try for later or tomorrow.

Threads

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

Liked "Sorry - let's try for later or tomorrow."

08/12/2021
09:01:51
AM
(UTC-7)

Threads

8/13/2021

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

I am around- sorry I missed the call- you caught me while I was out for a morning water ski!

08/13/2021
09:17:58
AM
(UTC-7)

Threads

8/17/2021

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/17/2021
03:53:03
PM
(UTC-7)

Let me know how schedule looks for next few days - we have a Rolo strategy, and believe Gov will do indoor mask mandate and vaccine requirement for higher Ed tomorrow. Just want to run by you what we are planning ….

Threads

8/18/2021

**1** Marty Dickinson <+15098688170>
To: kirkhschulz@gmail.com

I am on vacation all week- if you can call me this evening as I am free!

08/17/2021
05:58:01
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: Marty Dickinson <+15098688170>

08/17/2021
09:20:00
PM
(UTC-7)

Sorry I missed your calls - will text tomorrow and connect

Threads

8

Schulz_SDT_00000123

KS ipad - MC59903

62          **Pat Chun, kirkhschulz@gmail.com**          66

kirkhschulz@gmail.com
To: Pat Chun <+15095926030>

08/17/2021
02:06:43
PM
(UTC-7)

> How are ticket sales looking for our home opener?

**1**   Pat Chun <+15095926030>
To: kirkhschulz@gmail.com

> Trending line is on point with opening games on Labor Day weekend for the past 4 years (now that we track data!!!). We typically draw 25-27K …. We will be dependent on students showing up for the game. So in pretty good shape.

08/17/2021
02:42:10
PM
(UTC-7)

kirkhschulz@gmail.com
To: Pat Chun <+15095926030>

08/17/2021
02:43:56
PM
(UTC-7)

> Sounds good.  I got hammered in ST editorial today - so expect a bunch more calls, etc.

**1**   Pat Chun <+15095926030>
To: kirkhschulz@gmail.com

> Greg Sankey referenced you in an Athletic story today … so I'll pause our SEC application for now ☐!!

08/17/2021
02:44:52
PM
(UTC-7)

kirkhschulz@gmail.com
To: Pat Chun <+15095926030>

08/17/2021
02:45:54
PM
(UTC-7)

> I saw that.  One sentence ….

**1**   Pat Chun <+15095926030>
To: kirkhschulz@gmail.com

> Also … with Governor mandate expected for tomorrow … we are set with a statement … Phil W should have it here shortly. I've spoken directly to our 2 head coaches the mandate will impact … call and I can give you an update.

08/17/2021
02:46:39
PM
(UTC-7)

— 8/18/2021 —

kirkhschulz@gmail.com
To: Pat Chun <+15095926030>

08/17/2021
05:08:22
PM
(UTC-7)

> I agree with your approach on the 2 HC.

3

**ER0291**          Schulz_SDT_00000034

KS ipad - MC59903

# Chats



| 12 | enrique@enriquecerna.com, kirkhschulz@gmail.com | 10 |

**7/22/2021**

**E** enrique@enriquecerna.com
To: kirkhschulz@gmail.com

07/21/2021 10:12:52 PM (UTC-7)

Kirk,
I sent this text to Pat Chun earlier this evening. Pat called me later and we had a good conversation. Still, I am disappointed.

Pat,
I feel the need to express my disappointment with our football coach and his decision to not get vaccinated. In my view, it sends a bad message to our students especially as the variants are surging, young people are increasingly contracting the virus, and as WSU requires students be vaccinated before they return to campus. As someone who has lost family members and close friends to the virus, I am dismayed with Coach Rolovich's decision. I do hope he, his family and his players do not contract the virus. I just can't understand taking the risk.

`PatChun`  `Threads`

**7/25/2021**

kirkhschulz@gmail.com
To: enrique@enriquecerna.com

07/25/2021 01:15:39 PM (UTC-7)

Thanks for your note and for reaching out to Pat. I am just getting back from 2 weeks out in the woods and am catching up - so sorry for the late response.

`Threads`

**E** enrique@enriquecerna.com
To: kirkhschulz@gmail.com

No problem. This is a tough one. Please keep me updated. Thank you.

07/25/2021 01:48:02 PM (UTC-7)

`Threads`

**8/17/2021**

**E** enrique@enriquecerna.com
To: kirkhschulz@gmail.com

What is our game plan in dealing with Rolovich? I've had alumni friends contact about him. They want to know what I think and what if anything will be done.

08/17/2021 01:29:05 PM (UTC-7)

`Threads`

kirkhschulz@gmail.com
To: enrique@enriquecerna.com

08/17/2021 01:37:19 PM (UTC-7)

Let me call you in the next couple of days as your schedule allows. Removal of the personal exemption is key - we have done that with students and the governor will remove it for faculty and staff either today or tomorrow.

`Threads`

1

Schulz_SDT_00000054

KS ipad - MC59903



**12**    enrique@enriquecerna.com, kirkhschulz@gmail.com    **10**

enrique@enriquecerna.com
To: kirkhschulz@gmail.com

Ok. Thanks

08/17/2021
01:37:41
PM
(UTC-7)

Threads

kirkhschulz@gmail.com
To: enrique@enriquecerna.com

08/17/2021
02:31:03
PM
(UTC-7)

I just saw the most recent Seattle Times editorial calling me out again.  Sorry you have to continue to see it and have to hear about this.

Threads

enrique@enriquecerna.com
To: kirkhschulz@gmail.com

I'm sorry for you, Pat Chun and the university. I'm irritated as hell with Rolovich for creating this situation. We are in short supply of common sense these days and his stance is proof of it.

08/17/2021
02:44:19
PM
(UTC-7)

PatChun    Threads

kirkhschulz@gmail.com
To: enrique@enriquecerna.com

08/17/2021
02:59:46
PM
(UTC-7)

We have a plan - so let me get some details and I will give you a call

Threads

enrique@enriquecerna.com
To: kirkhschulz@gmail.com

Thanks

08/17/2021
03:00:20
PM
(UTC-7)

Threads

8/19/2021

kirkhschulz@gmail.com
To: enrique@enriquecerna.com

08/19/2021
09:46:51
AM
(UTC-7)

What does your schedule look like this morning for an update call?

Threads

**2**

**ER0293**    Schulz_SDT_00000055

**From:** "Schulz, Kirk" <kirk.schulz@wsu.edu>
**To:** Marty Dickinson <martyd@stcu.org>
**Subject:** [EXT] Re: Rolovich
**Date:** Tue, 19 Oct 2021 18:23:57 +0000
**Importance:** Normal
**Inline-Images:** image001.png

---

This email originated from outside of STCU. Exercise caution when opening attachments or links from external senders.

So – it is interesting today.
Internal – 100% support for our decision – most faculty and staff expected me to fold because it is football.
I received a hearty thanks for your leadership from 2 other head coaches. Other schools have been using rolo's vaccine status as a recruiting tool in sports outside of football.
I have heard from the many of our major donors this morning affirming our decision.
I have also heard from a bunch of folks that I should have defied the governors order. We have received about 200 emails thus far in Prez office – also a mixture but majority supportive.
K.

**From:** Marty Dickinson <martyd@stcu.org>
**Date:** Tuesday, October 19, 2021 at 11:20 AM
**To:** Kirk Schulz <kirk.schulz@wsu.edu>
**Subject:** RE: Rolovich
It is ok.
Both Ryan and Scott have been long time friends. I am hoping that is not a past tense thing but it could be now. They have been very vocal with me all along how they feel about the situation. It is not surprising.
Unfortunately, this is some of the fall out from Inslee's mandate.
Marty

**From:** Schulz, Kirk <kirk.schulz@wsu.edu>
**Sent:** Tuesday, October 19, 2021 11:01 AM
**To:** Marty Dickinson <martyd@stcu.org>
**Subject:** [EXT] FW: Rolovich

This email originated from outside of STCU. Exercise caution when opening attachments or links from external senders.

I am sorry these folks dragged you into these email chains. Kirk

**From:** Scott Wetzel <swetzel@windermere.com>
**Date:** Tuesday, October 19, 2021 at 10:58 AM
**To:** Marty Dickinson <martyd@stcu.org>
**Cc:** Kirk Schulz <kirk.schulz@wsu.edu>
**Subject:** FW: Rolovich
Big business leader and attorney in Spokane. Has been a COUG through and through. Past tense now. Sad. No question more will follow.
**Scott Wetzel /** President & CEO



**WINDERMERE SERVICES MOUNTAIN WEST**
————————————————————————
25 W Cataldo – Suite D

DICKINSON_SDT_00000027

Spokane, WA 99201
**MAIN** 509-468-2923
**CELL** 509-979-4116
Click Here To Submit An Outgoing Referral
ExperienceWindermere.com

**From:** Ryan McNeice <ryan@mcneicewheeler.com>
**Sent:** Tuesday, October 19, 2021 10:16 AM
**To:** Scott Wetzel <swetzel@windermere.com>
**Subject:** Rolovich

I am so disappointed in the decision of Washington State on the Rolovich matter. No choice in the matter. Zero choice in the matter.

WSU will never get a dime from me. Ever!

Ryan McNeice
McNEICE WHEELER, PLLC

221 W. Main #100

Spokane, WA 99201
www.mcneicewheeler.com
www.facebook.com/mcneicewheeler
509.928.4141 p
509.928.9166 f

**Washington & Idaho**

*This e-mail is for the sole use of the intended recipient(s). It contains information that is confidential and/or legally privileged. If you believe that it has been sent to you in error, please notify the sender by reply e-mail and delete the message. Any disclosure, copying, distribution or use of this information by someone other than the intended recipient is prohibited.*

DICKINSON_SDT_00000028

## 2021-22 NCAA RECRUITING CALENDAR

# Division I Football Bowl Subdivision

See NCAA Division I Bylaw 13.17.5.1 for Football Calendar Formula.

## *Aug. 1, 2021-July 31, 2022*

| | |
|---|---|
| **Aug. 1-31, 2021, except as noted below:** | **DEAD PERIOD** |
| • Forty-eight hours before a home contest (on the institution's campus or in a facility normally used for its home games) that occurs in August or on Sept. 1 or 2 through 48 hours after the conclusion of the contest. | **QUIET PERIOD** |
| **Sept. 1 through Nov. 27, except as noted below:** | **QUIET PERIOD** |
| • Fifty-six (68 for U.S. service academies) evaluation days (see Bylaw 13.02.7.2) during the months of September, October and November selected at the discretion of the institution; authorized off-campus recruiters shall not visit a prospective student-athlete's educational institution on more than one calendar day during this period. | **EVALUATION PERIOD** |
| **Nov. 28 through Jan. 29, 2022, except as noted below:** | **CONTACT PERIOD** |
| Six in-person off-campus contacts per prospective student-athlete shall be permitted during this time period with not more than one permitted in any one calendar week (Sunday through Saturday) or partial calendar week. | |
| • **Dec. 12** | **QUIET PERIOD** |
| • **Dec. 13 through Jan. 13, 2022 (see Bylaw 13.02.5.5.2), except as noted below:** | **DEAD PERIOD** |
| • The seven days immediately before the first day of classes of the institution's second academic term that are not part of the contact period (applicable only to prospective student-athletes who intend to enroll midyear). | **QUIET PERIOD** |
| • **Dec. 12-18, for National Service Academies*, except as noted below:** | **CONTACT PERIOD** |
| • Dec. 13-16. | **DEAD PERIOD** |
| • **Jan. 7-9,** for National Service Academies. | **QUIET PERIOD** |

\* Dec. 12-18, 2021, for midyear junior college National Letter of Intent signing period remains a dead period for junior college prospective student-athletes who intend to enroll midyear.

*Continued on next page.*

## *Recruiting periods defined*

**QUIET PERIOD**

A quiet period is that period of time when it is permissible to make in-person recruiting contacts only on the member institution's campus. No in-person, off-campus recruiting contacts or evaluations may be made during the quiet period.

**DEAD PERIOD**

A dead period is that period of time when it is not permissible to make in-person recruiting contacts or evaluations on or off the member institution's campus or to permit official or unofficial visits by prospective student-athletes to the institution's campus.

**EVALUATION PERIOD**

An evaluation period is that period of time when it is permissible for authorized athletics department staff members to be involved in off-campus activities designed to assess the academic qualifications and playing ability of prospective student-athletes. No in-person, off-campus recruiting contacts shall be made with the prospective student-athlete during an evaluation period.

**CONTACT PERIOD**

A contact period is that period of time when it is permissible for authorized athletics department staff members to make in-person, off-campus recruiting contacts and evaluations.

 DIVISION I

ER0296

1

**2021-22 NCAA RECRUITING CALENDAR**

# Division I Football Bowl Subdivision

See NCAA Division I Bylaw 13.17.5.1 for Football Calendar Formula.

## Aug. 1, 2021-July 31, 2022

*Continued from previous page.*

| | |
|---|---|
| **Jan. 30, 2022** | *QUIET PERIOD* |
| **Jan. 31 through Feb. 28** | *DEAD PERIOD* |
| **March 1 through April 14** | *QUIET PERIOD* |
| **April 15 through May 31, except as noted below:**<br><br>One hundred sixty-eight evaluation days [216 for U.S. service academies (see Bylaw 13.02.7.2) excluding Memorial Day and Sundays selected at the discretion of the member institution as provided below]:<br><br>• An authorized off-campus recruiter may use one evaluation to assess the prospective student-athlete's athletics ability and one evaluation to assess the prospective student-athlete's academic qualifications during this evaluation period. If an institution's coaching staff member conducts both an athletics and an academic evaluation of a prospective student-athlete on the same day during this evaluation period, the institution shall be charged with the use of an academics evaluation only and shall be permitted to conduct a second athletics evaluation of the prospective student-athlete on a separate day during this evaluation period. | *EVALUATION PERIOD* |
| Those days in April/May not selected above for evaluation opportunities. | *QUIET PERIOD* |
| **June 1 through July 31, except as noted below:**<br><br>• **July 25 through July 31:** Official visits may not be provided to high school juniors (e.g., Class of 2023) | *QUIET PERIOD* |
| • **June 27 through July 24** | *DEAD PERIOD* |

## Recruiting periods defined

**QUIET PERIOD**

A quiet period is that period of time when it is permissible to make in-person recruiting contacts only on the member institution's campus. No in-person, off-campus recruiting contacts or evaluations may be made during the quiet period.

**DEAD PERIOD**

A dead period is that period of time when it is not permissible to make in-person recruiting contacts or evaluations on or off the member institution's campus or to permit official or unofficial visits by prospective student-athletes to the institution's campus.

**EVALUATION PERIOD**

An evaluation period is that period of time when it is permissible for authorized athletics department staff members to be involved in off-campus activities designed to assess the academic qualifications and playing ability of prospective student-athletes. No in-person, off-campus recruiting contacts shall be made with the prospective student-athlete during an evaluation period.

**CONTACT PERIOD**

A contact period is that period of time when it is permissible for authorized athletics department staff members to make in-person, off-campus recruiting contacts and evaluations.


ER0297

## 2021-22 NCAA RECRUITING CALENDAR
# Division I Football Bowl Subdivision

| | QUIET PERIOD | | DEAD PERIOD | | EVALUATION PERIOD | | CONTACT PERIOD |

### AUG 2021

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

### SEP

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

### OCT

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

### NOV

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

### DEC

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

### JAN 2022

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

### FEB

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | | | | | |

### MAR

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

### APR

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### MAY

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

### JUN

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

### JUL

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

NCAA DIVISION I

NCAA is a trademark of the National Collegiate Athletic Association. October 2021.

ER0298

(259 of 293), Page 259 of 293   Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 259 of 293
Case 2:22-cv-00319-TOR     ECF No. 120-5     filed 11/05/24     PageID.4446     Page 2
of 4



### NCAA Division I Bowl Subdivision Football Recruiting Calendar

### August 1, 2020, through July 31, 2021

### (See NCAA Division I Bylaw 13.17.5.1 for Football Calendar Formula)

| | | |
|---|---|---|
| (a) | August 1-31, 2020 [except for (1) below]: | Dead Period |
| | (1) Forty-eight hours before a home contest (on the institution's campus or in a facility normally used for its home games) that occurs in August or on September 1 or 2 through 48 hours after the conclusion of the contest: | Quiet Period |
| (b) | September 1 through November 28, 2020 [except for (1) below]: | Quiet Period |
| | (1) Forty-two (54 for U.S. service academies) evaluation days (see Bylaw 13.02.7.2) during the months of September, October and November selected at the discretion of the institution; authorized off-campus recruiters shall not visit a prospective student-athlete's educational institution on more than one calendar day during this period: | Evaluation Period |
| (c) | November 29, 2020, through January 30, 2021 [except for (1) and (2) below]: | Contact Period |
| | Six in-person off-campus contacts per prospective student-athlete shall be permitted during this time period with not more than one permitted in any one calendar week (Sunday through Saturday) or partial calendar week: | |
| | (1) December 13, 2020: | Quiet Period |
| | (2) December 14, 2020, through January 14, 2021 (see Bylaw 13.02.5.5.2) [except for (i) through (iii) below]: | Dead Period |
| | (i) The seven days immediately before the first day of classes of the institution's second academic term that are not part of the contact period (applicable only to prospective student-athletes who intend to enroll midyear): | Quiet Period |
| | (ii) December 13-19, 2020, for National Service Academies:* | Contact Period |
| | (iii) January 8-10, 2021, for National Service Academies: | Quiet Period |

ER0299

NCAA Division I Bowl Subdivision Football
Recruiting Calendar
August 1, 2020, through July 31, 2021
Page No. 2
_____

| | | |
|---|---|---|
| (d) | January 31, 2021: | Quiet Period |
| (e) | February 1-28, 2021: | Dead Period |
| (f) | March 1 through April 14, 2021: | Quiet Period |
| (g) | April 15 through May 31, 2021 [except for (1) below]: | Evaluation Period |

One hundred sixty-eight evaluation days [216 for U.S. service academies (see Bylaw 13.02.7.2) excluding Memorial Day and Sundays selected at the discretion of the member institution as provided in (1) below]:

(1)    An authorized off-campus recruiter may use one evaluation to assess the prospective student-athlete's athletics ability and one evaluation to assess the prospective student-athlete's academic qualifications during this evaluation period. If an institution's coaching staff member conducts both an athletics and an academic evaluation of a prospective student-athlete on the same day during this evaluation period, the institution shall be charged with the use of an academics evaluation only and shall be permitted to conduct a second athletics evaluation of the prospective student-athlete on a separate day during this evaluation period.

| | | |
|---|---|---|
| (h) | Those days in April/May not selected in (g) above for evaluation opportunities: | Quiet Period |
| (i) | June 1 through July 31, 2021 [except for below]: | Quiet Period |
| | (1)    June 28 through July 24, 2021: | Dead Period |

\*  December 14-17, 2020, for midyear junior college National Letter of Intent signing period remains a dead period for junior college prospective student-athletes who intend to enroll midyear.

NCAA/09_29_2020/SH:jgd



# DIVISION I FOOTBALL BOWL SUBDIVISION
# 2020-21 RECRUITING CALENDAR

## AUGUST 2020

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 30 | 24 31 | 25 | 26 | 27 | 28 | 29 |

## SEPTEMBER

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

## OCTOBER

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## NOVEMBER

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

## DECEMBER

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

## JANUARY 2021

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 31 | 25 | 26 | 27 | 28 | 29 | 30 |

## FEBRUARY

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | | | | | | |

## MARCH

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

## APRIL

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

## MAY

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 30 | 24 31 | 25 | 26 | 27 | 28 | 29 |

## JUNE

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

## JULY

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### QUIET PERIOD
A quiet period is that period of time when it is permissible to make in-person recruiting contacts only on the member institution's campus. No in-person, off-campus recruiting contacts or evaluations may be made during the quiet period.

### DEAD PERIOD
A dead period is that period of time when it is not permissible to make in-person recruiting contacts or evaluations on or off the member institution's campus or to permit official or unofficial visits by prospective student-athletes to the institution's campus.

### EVALUATION PERIOD
An evaluation period is that period of time when it is permissible for authorized athletics department staff members to be involved in off-campus activities designed to assess the academic qualifications and playing ability of prospective student-athletes. No in-person, off-campus recruiting contacts shall be made with the prospective student-athlete during an evaluation period.

### CONTACT PERIOD
A contact period is that period of time when it is permissible for authorized athletics department staff members to make in-person, off-campus recruiting contacts and evaluations.

## KEY CALENDAR DATES

**EVALUATION PERIOD   QUIET PERIOD**
- Please reference the narrative for additional information that impacts the dates during **Sept. 1 through Nov. 28, 2020,** and **April 15 through May 31, 2021,** evaluation/quiet periods.

**DEAD PERIOD**
- Please reference the narrative for additional information that impacts the dates during the **Aug. 1-31, 2020,** and **Dec. 14, 2020, through Jan. 14, 2021,** dead periods.

**NATIONAL SERVICE ACADEMIES:** Please reference the narrative for additional information that impacts the dates during the **Dec. 13-19, 2020,** contact period and **Jan. 8-10, 2021,** quiet period.

**NOTE:** This recruiting calendar is based on Bylaw 13.17 and does not reflect any action taken by the NCAA Division I Council (e.g., temporary dead period). Member institutions should continue to monitor action related to the impact of COVID-19 and apply changes as appropriate.

(262 of 293), Page 262 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 262 of 293

11/4/24, 10:20 AM Case 2:22-cv-00319-TOR DI Council extends recruiting dead period through May 31 | NCAA.org Page 2 of 3

# NCAA.org

DI Council extends recruiting dead period through May 31
Members will use the time to plan the transition to in-person recruiting activities
Michelle Brutlag Hosick
Media Center
Posted: 2/17/2021 6:45:00 PM

The Division I Council extended the recruiting dead period for all sports through May 31, continuing the ban on in-person recruiting activities that began when the pandemic hit last spring. As part of the vote, members also committed to providing clarity on plans for the transition back to recruiting calendars, including potential modifications for the return to in-person recruiting activity, no later than April 15. The Council met virtually Wednesday.

The Division I Football, Men's Basketball and Women's Basketball Oversight Committees and Division I Legislative Committee recommended the extension through May due to continued COVID-19 pandemic uncertainty and concern regarding in-person interaction among recruits and their families, current student-athletes and school staff. Members noted that many schools in different areas of the country still do not allow in-person visits of any prospective students, including potential student-athletes, while others are conducting campus tours that can't involve athletics.

"After careful consideration of all available information, the Council agreed that an extension of the dead period through May 31 was necessary," said Council chair M. Grace Calhoun, athletics director at Pennsylvania. "However, there is a strong commitment to use the next several weeks to outline the transition plan back to recruiting activities post June 1 and to provide those plans to prospective student-athletes, their families and the NCAA membership no later than April 15."

The Division I Student-Athlete Advisory Committee also supported an extension of the dead period, noting a need to both provide prospective student-athletes and their families immediate guidance and also prioritize the health and safety of student-athletes who still will be competing in their spring sport seasons at that time.

"While we support the dead period extension, we also note the importance of providing prospective student-athletes immediate guidance on the future of the dead period," said SAAC co-chair Justice Littrell.

Several Council members noted the importance of summer camps and clinics for both coaches and prospective student-athletes and expressed that returning to recruiting activities prior to June 1 could jeopardize the opportunity for coaches and recruits to engage in summer activities like certified nonscholastic events.

Council members also provided a blanket waiver that increased the number of hours football teams can spend on countable, athletically related, out-of-season activities this spring from eight to 10 hours per week. The 10 hours may include:

- Up to four hours per week for meetings/film review
- Up to two hours per week for walk-throughs
- No more than six hours of physical activities (weight training/conditioning).

All activities will be non-contact. The waiver does not change the existing requirement that student-athletes have two days off per week.

The waiver is effective Feb. 22.

The Council also adopted a proposal that narrows the definition of an individual associated with a prospect in bowl subdivision football and men's and women's basketball. The proposal was tabled last year due to the COVID-19 pandemic.

ER0302

Council members think the base rule, aimed at preventing schools from hiring people in a prospective student-athlete's life in order to gain a recruiting advantage, has had the unintended consequence of preventing coaches and noncoaching staff members from career advancement at different schools. The change will be effective Feb. 24 if Division I Board of Directors members do not object.

Council members declined to provide at this time a blanket waiver that would have extended the seasons of competition and period of eligibility for freshman spring sport student-athletes, noting that significant changes to spring sport seasons have not occurred yet. The Council noted that the existing waiver standards and process remain the appropriate way to consider relief for spring sport student-athletes. However, the Council agreed to continue to monitor the issues related to the season and the pandemic. If warranted, appropriate actions could be taken later.

Copyright ©2024 NCAA.org

ER0303

(264 of 293), Page 264 of 293 Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 264 of 293
Case 2:22-cv-00319-TOR    ECF No. 120-1    filed 11/05/24    PageID.4428    Page 2
of 11

ROBERT W. FERGUSON
Attorney General

ZACHARY J. PEKELIS, WSBA #44557
Special Assistant Attorney General
PACIFICA LAW GROUP LLP
1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404
(206) 245-1700

SPENCER W. COATES, WSBA #49683
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLAS ROLOVICH,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE<br>UNIVERSITY<br><br>Defendant. | CASE NO: 2:22-CV-00319-TOR<br><br>PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANT **AND DEFENDANT'S ANSWERS AND OBJECTIONS THERETO** |

In accordance with Federal Rules of Civil Procedure 26 and 33, Defendant Washington State University (WSU or the University) hereby submits these answers and objections (Answers) to Plaintiff's Third Set of Interrogatories to Defendant (Interrogatories) as follows:

PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANT **AND DEFENDANT'S ANSWERS AND OBJECTIONS THERETO** – 1

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**GENERAL OBJECTIONS APPLICABLE TO ALL RESPONSES**

1.      WSU objects to Plaintiff's characterization of the Interrogatories as "continuing." WSU will respond to the specific Interrogatories set forth herein and will supplement its Answers as necessary to comply with applicable rules, including Federal Rule of Civil Procedure 33. WSU reserves the right to modify or supplement these Answers as necessary or appropriate.

2.      WSU objects to the Interrogatories as overbroad, unduly burdensome, duplicative of or cumulative with other discovery requests, not relevant to any party's claims or defenses, and not proportional to the needs of the litigation.

3.      WSU objects to the Interrogatories' definition of "You/Your" as vague, ambiguous, overbroad, not relevant to any party's claims or defenses, and not proportional to the needs of the litigation, including to the extent it purports to require WSU to obtain information from persons who either are not WSU employees or were not involved in WSU's actions challenged by Plaintiff. WSU understands these Interrogatories to seek—and its Answers reflect—only information currently known by WSU.

4.      WSU objects to the Interrogatories to the extent they impose burdens or seek discovery beyond what is permitted or required under the Federal Rules of Civil Procedure, including Rules 26 and 33.

5.      WSU objects to the Interrogatories to the extent they call for documents or information protected from disclosure by attorney-client privilege, the work product doctrine, or any other applicable privilege, protection, or immunity.

PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANT **AND DEFENDANT'S ANSWERS AND OBJECTIONS THERETO** – 2

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

6.      WSU objects to the Interrogatories to the extent they seek documents or information protected from disclosure by the Family Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6, or any other applicable privacy protection. WSU only will produce or disclose such protected documents or information consistent with the Stipulated Protective Order entered in this case. *See* ECF No. 61.

7.      WSU objects to the Interrogatories to the extent they seek documents or information already possessed by or equally available to Plaintiff, including documents or information in the public domain or which WSU has previously produced or disclosed to Plaintiff.

8.      WSU objects to the Interrogatories to the extent they seek documents, electronically stored information ("ESI"), or tangible things, and are therefore more properly framed as Requests for Production pursuant to Federal Rule of Civil Procedure 34. Pursuant to Rule 33(d), for such Interrogatories WSU will describe and produce business records, consistent with the Parties' ESI Protocol Agreement.

9.      The foregoing General Objections are incorporated by reference into the Answer to each Interrogatory. WSU not having listed specifically any one of its General Objections in response to a particular Interrogatory does not constitute a waiver of any objection, even if it could have been specifically stated.

## **INTERROGATORIES**

**INTERROGATORY NO. 20:** For all WSU football players who sought an exemption from the Vaccine Mandate in 2021, please identify with specificity:

PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANT **AND DEFENDANT'S ANSWERS AND OBJECTIONS THERETO** – 3

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

i.    the number of WSU football players who requested an exemption to the Vaccine Mandate and the nature of the exemption requested (i.e., medical or religious),

ii.    the number of WSU football players who received an exemption to the Vaccine Mandate and the nature of such exemption,

iii.    the specific accommodations made to allow football players to continue to participate on the football team (including playing in games, travel, sports camps, TV appearances, press conferences),

iv.    the costs associated with each accommodation, and

v.    the date of the denial or grant of such exemption requests.

**ANSWER:** WSU objects to Interrogatory No. 20 as vague, overbroad, and unduly burdensome, including in the use of the phrases "sought an exemption," "requested an exemption," and "nature of such exemption." WSU further objects to Interrogatory No. 20 as not proportional to the needs of the case and not relevant to any party's claims or defenses. As WSU has repeatedly explained to Plaintiff, unless they were also employees, students (including student-athletes) were not subject to Proclamation 21-14 but instead to Proclamation 20-12.4. Accordingly, WSU's COVID-19 vaccination requirement for students, its implementation of that requirement, and its process for providing exemptions from that requirement,

PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANT **AND DEFENDANT'S ANSWERS AND OBJECTIONS THERETO** – 4

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

did not follow the employee vaccination requirement WSU implemented pursuant to Proclamation 21-14. In sum, the disposition of students' exemption requests simply has nothing to do with Plaintiff's case. WSU further objects to the Interrogatory's request for information regarding the "costs associated with each accommodation" to the extent it implies that any applicable legal duty or standard business practice would require WSU to prepare a cost analysis when granting or denying a student's request for a religious exemption from a vaccination requirement pursuant to Proclamation 20-12.4.

Subject to and without waiving the foregoing objections, WSU answers that, following WSU's August 12, 2021 update to its student COVID-19 vaccination policy pursuant to Proclamation 20-12.4, fifteen (15) student-athletes on the WSU football team submitted requests for exemptions from the COVID-19 vaccination requirement on religious grounds, of which twelve (12) were granted. Two (2) student-athletes on the WSU football team submitted requests for exemptions on medical grounds, both of which were granted. The disposition of each request was completed on the following dates:

| Type | Date Granted/Denied |
| --- | --- |
| Religious | Initial request approved 9/23/2021 |
| Religious | Initial request approved 9/26/2021 |
| Religious | Initial request approved 9/26/2021 |

PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANT **AND DEFENDANT'S ANSWERS AND OBJECTIONS THERETO** – 5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

| Religious | Initial request approved 9/30/2021 |
|---|---|
| Religious | Initial request approved 9/30/2021 |
| Religious | Initial request approved 9/30/2021 |
| Religious | Initial request approved 10/15/2021 |
| Religious | Initial request approved 10/15/2021 |
| Religious | Initial request approved 10/15/2021 |
| Religious | Initial request denied 9/23/2021, appeal approved 10/15/2021 |
| Religious | Initial request denied 10/7/2021, appeal denied 10/15/2021 |
| Religious | Initial request denied 10/7/2021, appeal approved 10/20/2021 |
| Religious | Initial request denied 10/15/2021, appeal approved 11/01/2021 |
| Religious | Initial request denied 9/27/2021, no appeal |
| Religious | Initial request denied 11/22/2021, no appeal |
| Medical | Initial request granted 9/8/2021 |
| Medical | Initial request granted 10/22/2021 |

Pursuant to Proclamation 20-12.4, students whose exemption requests were granted were required to wear a face covering that covered both their noses and mouths at all times while on WSU property unless: (1) they were outside and could maintain six feet of social distance from others; (2) they were alone indoors; (3) they were swimming or engaged in other water sports; (4) they were actively engaged in eating or drinking; (5) they were showering, bathing, or engaging in other person hygiene activities that required removal of their face covering; (6) they were communicating with a deaf or hard of hearing person and removal of the mask was essential to that communication; (7) they were obtaining a service or engaged in a

PLAINTIFF'S THIRD SET OF INTERROGATORIES TO
DEFENDANT **AND DEFENDANT'S ANSWERS AND
OBJECTIONS THERETO** – 6

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

transient activity that required temporary and brief removal of the face covering; (8) removal was necessary to confirm identity; (9) they were sleeping; (10) they were inside their bedroom alone or only with their assigned roommate; (11) federal law prohibited wearing a face covering or required its removal; (12) in cases of emergency in which they are unable to put on a face covering. Students were also required to remain socially distanced from others while on WSU property. Additionally, all student-athletes were required to comply with WSU Athletics Department COVID-19 Guidelines, Pac-12 COVID-19 policies, rules, and procedures, and NCAA COVID-19 policies, rules, and procedures.

DATED this 25th day of October, 2024.

ROBERT W. FERGUSON
Attorney General

/s/ Zachary J. Pekelis
ZACHARY J. PEKELIS, WSBA #44557
AI-LI CHIONG-MARTINSON, WSBA #53359
ERICA P. CORAY, WSBA #61987
W. SCOTT FERRON, WSBA #61154
Special Assistant Attorneys General
PACIFICA LAW GROUP LLP
1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404
(206) 245-1700
Zach.Pekelis@PacificaLawGroup.com

SPENCER W. COATES, WSBA #49683
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANT **AND DEFENDANT'S ANSWERS AND OBJECTIONS THERETO** – 7

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**ER0310**

1    Spencer.Coates@atg.wa.gov

2
      *Attorneys for Defendant Washington State*
3     *University*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   PLAINTIFF'S THIRD SET OF INTERROGATORIES TO
      DEFENDANT **AND DEFENDANT'S ANSWERS AND
      OBJECTIONS THERETO** – 8

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ER0311

1

## **<u>VERIFICATION</u>**

2

3     I, Sharyl Kammerzell, being first duly sworn, upon oath, state as follows:

4     I have read the foregoing responses to Plaintiff's Third Set of Interrogatories

5 to Defendant, know the contents thereof, and swear under penalty of perjury that the

6

7 foregoing answers are true and correct.

8     DATED at Pullman, Washington, this _25_ day of _October_____, 2024.

9

10                    Signed: _Sharyl Kammerzell_____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 PLAINTIFF'S THIRD SET OF INTERROGATORIES TO
DEFENDANT **AND DEFENDANT'S ANSWERS AND
OBJECTIONS THERETO** – 9

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

## **CERTIFICATE OF SERVICE**

2

3    I hereby declare that on this day I caused the foregoing document to be served

4    upon all counsel of record.

5    I declare under penalty of perjury under the laws of the State of Washington

6
7    and the United States that the foregoing is true and correct.

8    DATED this ___ day of October, 2024 at Seattle, Washington.

9

10                    */s/ Zachary J. Pekelis*
                     ZACHARY J. PEKELIS
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    PLAINTIFF'S THIRD SET OF INTERROGATORIES TO
     DEFENDANT **AND DEFENDANT'S ANSWERS AND
     OBJECTIONS THERETO** – 10

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ROBERT W. FERGUSON
Attorney General
SPENCER W. COATES, WSBA #49683
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
ZACHARY J. PEKELIS, WSBA #44557
W. SCOTT FERRON, WSBA #61154
Special Assistant Attorneys General
PACIFICA LAW GROUP LLP
1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404
(206) 245-1700

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| NICHOLAS ROLOVICH, | NO. 2:22-cv-00319-TOR |
|---|---|
| Plaintiff, | DECLARATION OF MITCHELL STRAUB |
| v. | |
| WASHINGTON STATE UNIVERSITY, an agency of the State of Washington, | |
| Defendant. | |

I, Mitchell Straub, declare as follows:

1.    I am over the age of eighteen, competent to testify, and make this declaration based on my personal knowledge.

2.    I am the Deputy Director of Athletics for Washington State University (WSU), a role that I have served in since July 2020. Prior to that, I served as the Senior Associate Athletic Director at WSU between May 2018 and

DECLARATION OF MITCHELL STRAUB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

ER0314

1    July 2020. Between 2020 and 2022, I oversaw all facets of Cougar Athletics

2    fundraising and development, including major gifts, as well as the Cougar

3    Athletic Fund (CAF) annual giving program. Today, I also oversee

4    communications, concessions, creative video, design and branding, marketing,

5    ticket operations, ticket sales, and social media. Additionally, I handle WSU

6    Athletics' multi-media rights relationship with Learfield and was the main

7    Athletics liaison for Government Relations, the President's Office, the Alumni

8    Association, and the WSU Foundation.

9        3.    One of my main responsibilities in this role was overseeing

10   relationships with WSU Athletics' top donors. In executing this responsibility, I

11   frequently communicated and engaged with WSU Athletics' Top 50 donors to

12   ascertain their views on the direction of WSU Athletics and to procure continued

13   high-value donations. Maintaining positive donor relations with high-value

14   donors is critical to the survival of WSU Athletics, because without the financial

15   support of donors, WSU Athletics would have significant budget challenges.

16       4.    Between the time I arrived at WSU to 2023, the CAF saw its five

17   highest fundraising years in history, including raising over $62 million between

18   2022 and 2023.

19       5.    From January 2020 to October 2021, I interacted regularly with

20   then-head football coach Nicholas Rolovich. I was on the WSU committee that

21   initially interviewed Mr. Rolovich in late January 2020 and supported his hiring.

22

DECLARATION OF MITCHELL          2          ATTORNEY GENERAL OF WASHINGTON
STRAUB                                          Complex Litigation Division
                                                 800 Fifth Avenue, Suite 2000
                                                   Seattle, WA 98104-3188
                                                     (206) 464-7744

**ER0315**

1    My first impression of Mr. Rolovich at this time was that he was grounded,

2    humble, and player-centric. Mr. Rolovich's hiring was initially well-received

3    among donors, fans, and coaches due to his quirky demeanor and history of

4    success at Hawaii.

5         6.    In the Spring of 2020, I traveled with Mr. Rolovich to the Pac-12

6    Basketball Tournament in Las Vegas. During the tournament, we received word

7    that much of America was shutting down in-person activities due to the arrival of

8    the pandemic. Upon receiving news of the Tournament's cancellation and the

9    arrival of the pandemic more broadly, Mr. Rolovich indicated to me that he did

10    not think coronavirus was significant. At one point, he mentioned that he was

11    "going to be like Pac-Man and eat the virus."

12         7.    In May 2021, as in-person interaction started to increase following

13    the deployment of vaccines, I travelled with Mr. Rolovich to Seattle to meet with

14    several high-value WSU donors. On the plane, Mr. Rolovich and I sat together

15    and talked about the pandemic and COVID-19 restrictions. I asked Mr. Rolovich

16    if he was reading any books, and he responded that he had purchased a $6,000

17    book on eBay, which he claimed was so expensive because "the government

18    doesn't want us to see it." He claimed the book explained how we could eliminate

19    federal tax issues by taxing drug dealers.

20         8.    In Seattle, when Mr. Rolovich and I were in a lobby of a building

21    preparing for a donor dinner, we both received news that in Washington if you

22

DECLARATION OF MITCHELL STRAUB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    were vaccinated, you no longer had to wear a mask. I witnessed Mr. Rolovich

2    immediately removing his mask upon receiving this news. At the time, I did not

3    know for certain that Mr. Rolovich was unvaccinated, as he had to that point not

4    disclosed to me nor the donors we met with that he was unvaccinated. We met

5    with several large WSU donors on this trip, and Mr. Rolovich did not wear a

6    mask during our meetings.

7        9.    A true and correct copy of an email I wrote on May 17, 2021,

8    containing pictures of meal receipts from this trip, as well as the names of the

9    donors we met with and where, is attached hereto as **Exhibit A**.

10       10.    Once it became publicly known that Mr. Rolovich was unvaccinated

11    in July 2021, I received numerous communications from donors angry with

12    Mr. Rolovich. Many donors expressed concern that Mr. Rolovich was not only

13    endangering the students and people he worked with by refusing to take the

14    COVID-19 vaccine, but was also anti-science and anti-authority. Many also

15    questioned why Mr. Rolovich was refusing the vaccine, theorizing that it could

16    be because of anti-vaccination and anti-government theories found on social

17    media, such as through QAnon. Several explicitly threatened to withhold further

18    financial contributions to WSU, with many more expressing general displeasure

19    if Rolovich continued on as head football coach while unvaccinated. Other

20    donors refused to meet with me or discuss their contributions to WSU until

21    Mr. Rolovich was terminated. A few donors asked to close their CAF pledges

22

DECLARATION OF MITCHELL
STRAUB

4

**ER0317**

1  and be taken off our mailing list while Mr. Rolovich was still a head coach at

2  WSU.

3      11.   On August 25, 2021, I wrote an email to then-Deputy Athletic

4  Director Bryan Blair evidencing just a few notable examples of WSU donors

5  pulling their support because of Mr. Rolovich's vaccination status. A true and

6  correct copy of this email, with attachment, is attached as **Exhibit B**.

7      12.   As I referenced in my email, one large donor in particular,

8  Kurt Dammeier, was especially upset with Mr. Rolovich. Mr. Dammeier was one

9  of the donors Mr. Rolovich and I met while in Seattle in May 2021. Mr. Rolovich

10 did not wear a mask while meeting with Mr. Dammeier, who did not know at the

11 time Mr. Rolovich was unvaccinated. Mr. Dammeier later communicated to me

12 he was very upset with Mr. Rolovich's lack of disclosure during that dinner.

13 Moreover, Mr. Dammeier informed me that Mr. Rolovich had joined him for a

14 golf event in Pebble Beach that he believed had a requirement that all participants

15 submit proof of vaccination. Mr. Dammeier was angry and frustrated that

16 Mr. Rolovich was somehow able to play that event and interact face-to-face with

17 Mr. Dammeier maskless and unvaccinated without informing him.

18 Mr. Dammeier, at the time, was in a $250,000 pledge to WSU Athletics, but

19 expressed his family recommended withholding that donation because of

20 Mr. Rolovich's behavior.

21

22

DECLARATION OF MITCHELL        5
STRAUB

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

13.     Additionally, because of Mr. Rolovich's unvaccinated status, a number of previously arranged high-value donor events had to be cancelled. For instance, as referenced in my August 25, 2021 email, after Mr. Rolovich's vaccination status was publicly revealed, an in-person dinner (slated to take place July 22, 2021) with a multi-million dollar donor couple had to be cancelled. Moreover, as further indicated in my August 25, 2021 email, WSU had auctioned off a multi-family farm-to-table dinner with Mr. Rolovich at a local supporter's farm near Couer d'Alene with several other high-value donors. One donor (Dr. Manpreet Chahal) who purchased a dinner received word of Mr. Rolovich's vaccination status, and subsequently requested a refund. The dinner, purchased by high-value donors Jim and Lisa King, Tom and Linda Nihoul, and others took place with then-head men's basketball coach, Kyle Smith and current head women's basketball coach, Kamie Ethridge, taking the place of Mr. Rolovich. Finally, due to donor sentiment and health concerns, WSU was forced to remove Mr. Rolovich from several events, including the "Kickoff With the Cougs" event on August 26, 2021, and the CAF Coaches Luncheon on October 9, 2021. These kinds of in-person live donor events were important for WSU Athletics, as they offered prime opportunities to energize donors and procure additional high-value donations and gifts.

14.     I am also aware of communications, not initially directed to me, indicating that Mr. Rolovich's vaccination status threatened high-value donor

DECLARATION OF MITCHELL STRAUB                    6                    ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

ER0319

relations. For instance, the attachment to my August 25, 2021 email was another email that WSU received from a WSU Legacy Associate Donor, Gordon MacArthur, cancelling a $1 million scholarship bequest "[b]ecause of Rolovich's refusal to get vaccinated and the negative message it sends to so many who look up to the coaches."

15.    I continued receiving complaints from donors about Mr. Rolovich's vaccination status until he was terminated on October 18, 2021. In the week following Mr. Rolovich's termination, I received a number of calls from WSU Athletics' Top 50 donors. Out of the approximately 50 calls I had that week, I had one negative call. The other 49 were supportive of WSU and the decisions made.

16.    Within three days of Mr. Rolovich's termination, WSU Athletics received over $3.5 million in donations, including a large gift of $3 million. In the subsequent weeks, many more donations followed, with several donors who has suspended their donations since July restarting their giving. In the ten days following Mr. Rolovich's termination, WSU had one of its best fundraising quarters ever.

DECLARATION OF MITCHELL STRAUB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    I declare under penalty of perjury under the laws of the State of

2    Washington and the United States of America that the foregoing is true and

3    correct.

4    DATED this ___3ʳᵈ___ day of __Man__, at __Pullman__, Washington.

5

6    _____

7    MITCHELL STRAUB

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF MITCHELL                    8                    ATTORNEY GENERAL OF WASHINGTON
STRAUB                                                                       Complex Litigation Division
                                                                               800 Fifth Avenue, Suite 2000
                                                                               Seattle, WA 98104-3188
                                                                               (206) 464-7744

(282 of 293), Page 282 of 293
Case 2:22-cv-00319-TOR    ECF No. 109    filed 10/14/24    PageID.4282    Page 9
of 20
Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 282 of 293

**CERTIFICATE OF SERVICE**

On the 14th day of October, 2024, 1 caused to be served, via ECF

electronic service, a true copy of the foregoing document upon all counsel

registered for e-service.

DATED this 14th day of October, 2024.

_Erica J. Knerr_
Erica Knerr, Legal Assistant

DECLARATION OF MITCHELL
STRAUB

9

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**ER0322**

# EXHIBIT A

(284 of 293), Page 284 of 293          Case: 25-761, 06/12/2025, DktEntry: 26.3, Page 284 of 293
Case 2:23-cv-00767-TOR    ECF No. 100    filed 10/24/24    PageID.4260    Page 11
of 20

**From:** "Straub, Mitchell H" <mitch.straub@wsu.edu>
**To:** "Heston, Debbie" <djengle@wsu.edu>
**Subject:** FW: Seattle receipts
**Date:** Mon, 17 May 2021 15:14:47 -0000
**Importance:** Normal
**Inline-Images:** image001.jpg; image002.jpg; image003.jpg; image004.jpg; image005.jpg

---

5/13
Hangar Café – Donor Breakfast w/ Cris Nielsen, Emily Neighbors, Nick Rolovich and Mitch Straub
Wildfin (727 N 10th St on receipt) – Donor lunch w/ Jeff Davis, Nick Rolovich and Mitch Straub
Barrels LLC – Donor drinks w/ Ty and Kathy Bennett, Nick Rolovich and Mitch Straub
Dinner provided by donor (Kurt Dammeier)

5/14
Per Diem – Breakfast + Lunch

Assume tolls will come at a later date…

Thanks! -Mitch
**From:** Straub, Mitchell H <mitch.straub@wsu.edu>
**Sent:** Monday, May 17, 2021 8:09 AM
**To:** Straub, Mitchell H <mitch.straub@wsu.edu>
**Subject:** Seattle receipts

# ER0324

WSU_00034896



WSU_00034897



WSU_00034898



WSU_00034899



WSU_00034900

Case 2:23-cv-00781-TOR    ECF No. 100    filed 10/20/2024    PageID.2689    Page 16 of 60



Sent from my iPhone

WSU_00034901

# EXHIBIT B

|           |                                                             |
|-----------|-------------------------------------------------------------|
| **From:** | "Straub, Mitchell H" <mitch.straub@wsu.edu>                 |
| **To:**   | "Blair, Bryan Bernard" <bryan.b.blair@wsu.edu>              |
| **Subject:** | Update                                                   |
| **Date:** | Wed, 25 Aug 2021 22:37:42 +0000                             |
| **Importance:** | Normal                                                |
| **Embedded:** | FW:_Bequest_cancelled_Rolovich.                         |
| **Inline-Images:** | image001.png; image002.png                         |

---

Bryan,

See attached re: pulling their support from WSU.

He cancelled a 7/22 event with $7M IPF donor couple.
He cancelled a 7/23 dinner that was auctioned off as a private experience w/ NR. Had multiple requests for refunds.

We removed him from the Kickoff w/ the Cougs event on 8/26 and CAF Coaches Luncheon event (scheduled for 10/9).

Additionally, had an interesting donor accusation from the Pebble Beach – Coaches Classic. All guests were supposed to show proof of vaccine, including two donors. Somehow he participated in the event w/o telling the two donors he was unvaccinated (or showing proof of vaccine). One has mentioned pulling their $250k donation b/c of it.

-MS



**Mitch Straub**
Deputy Director of Athletics
Cougar Athletic Fund
Department of Intercollegiate Athletics
Washington State University
Office: 509-335-0236

*TOGETHER, WE WILL ACHIEVE WHAT WAS ONCE DEFINED AS IMPOSSIBLE*

WSU_00019337

**From:** "Ryan, Elizabeth" <lizryan@wsu.edu>
**To:** "King, Kaley R" <kaley.king@wsu.edu>, "Connell, Michael C" <connell@wsu.edu>, "Winfree, Nickole M" <nikki.winfree@wsu.edu>, "Miles, Victoria Mari" <vmmiles@wsu.edu>, "Holapa, Kimberly Atkinson" <holapa@wsu.edu>, "Neighbors, Emily Eileen" <emily.neighbors@wsu.edu>, "Straub, Mitchell H" <mitch.straub@wsu.edu>
**Cc:** "Boyer, Theresa Marlene" <theresa.boyer@wsu.edu>, "Shearer, Don" <hshearer@wsu.edu>
**Subject:** FW: Bequest cancelled Rolovich.
**Date:** Wed, 11 Aug 2021 21:49:54 +0000
**Importance:** High

---

All,

Please see this note from a disappointed Legacy Associate Donor, Gordon MacArthur. I forwarded you previous email that he sent me about 2 weeks ago. As a result of that initial email, I had a one hour phone call with him this morning that I think went well, but has not yet resulted in recovery of his bequest expectancy. However, I think with continued communication we may be able to make progress with him. He was very economically disadvantaged as a young person and even had to drop out of WSU before graduating. His persona story is very compelling, and I think he really believes like I do in the power of need-based scholarships at WSU which is what he had intended to support with his Million dollar bequest.

I'd like to see if we can craft a response from President Schulz and maybe VP Gonzales, whose own story and passion for helping students would be very moving to Gordon. I am copying Kim Holapa and Nikki to see if we could work together on this, since Gordon is looking for a response.

The other three people copied on this are Assistant Football Coaches since Gordon could not find an email for Coach Rolovich. (FYI, Emily Neighbors and Mitch Straub.)

I am about to go out of town until Monday 8/16. But I will work on getting the CR from this morning's call filed by early next week, and hopefully be involved in crafting a thoughtful reply from President Schulz and possibly VP Gonzales and/or others Let's discuss more next week.

Please alert the President's Office that we would love to help partner on the reply to Gordon, using insights from my call with Gordon this morning.

Thanks,

Liz

 WSU_00019338

**From:** Gordon MacArthur <macgl777@yahoo.com>
**Sent:** Wednesday, August 11, 2021 2:28 PM
**To:** WSU President's Office <presidentsoffice@wsu.edu>; Cvercko, Jason M <jason.cvercko@wsu.edu>; Dickert, Jacob H. <jacob.dickert@wsu.edu>; Smith, Brian M <brian.m.smith@wsu.edu>; Ryan, Elizabeth <lizryan@wsu.edu>
**Subject:** Bequest cancelled Rolovich.


This spring I had worked with Elizabeth Ryan to set up a bequest to WSU for scholarships.  It has a current value of about one million dollars.  Because of Rolovich's refusal to get vaccinated and the negative message it sends to so many who look up to the coaches I have cancelled it.  His decision will result in the death of some of those who listen to him or those with whom they  have contact.  This is not a personal decision that affects him alone.


Rolovich is the highest paid and most visible person on staff at WSU.  WSU is already in the bottom third of PAC12 schools for team vaccination rates.  Rolovich is the only PAC12 coach refusing to get vaccinated.  What he says and does on the subject of covid carries waeight with players, students, and others not just at WSU but throughout the PAC12 and nationally.  For students and staff at WSU he just showed them how to evade the vaccine requirement.  For everyone else, he sends the message the vaccine is not necessary.


I had a call with Elizabeth this morning to discuss, but have seen nothing that would change my mind.  At the very least, I would need to see Rolovich reverse his decision and very publicly and repeatedly encourage everyone to get vaccinated.  Alternatively, he could resign and be replaced by a coach who may not win as many games, but who would put health and safety of WSU students, faculty and staff first.


The university policies on covid should have no exclusion for "personal or religious reasons".  That gives everyone a cop out to make a decision that will result in the death of others.  Rolovitch just showed students and faculty alike how to avoid getting vaccinated.  He is displaying a total disregard for the safety and well being of the students and faculty of WSU.


Please let me know if this gets resolved and I will reinstate the bequest.  Thank you.


Sincerely,


Gordon MacArthur


ER0333

WSU_00019339