

T 206.245.1700
401 Union Street, Suite 1600
Seattle, WA 98101-2668
pacificalawgroup.com

Zachary J. Pekelis
zach.pekelis@pacificalawgroup.com

May 27, 2026

**VIA CM/ECF Electronic Filing System**

Molly C. Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re:  Appellee Washington State University's FRAP 28(j) letter
*Rolovich v. Washington State University, et al.*, Case No. 25-761
Oral argument: June 10, 2026 (Seattle)

Dear Ms. Dwyer:

Appellee Washington State University (WSU) respectfully calls the Court's attention to *Williams v. Legacy Health*, --- F.4th ----, No. 24-5977, 2026 WL 1239760 (9th Cir. May 6, 2026), which affirmed summary judgment on failure-to-accommodate-religion claims arising from a COVID-19 vaccination requirement. *Williams* supports affirmance.

First, *Williams* noted undue hardship is not "exclusively monetary" and "can extend to health and safety costs." *Id.* at *3 (cleaned up). As in *Williams*, WSU's "unrebutted epidemiological expert evidence showed that unvaccinated" individuals had a significantly higher "risk of infection," and "alternative safety

Clerk of Court
May 27, 2026
Page 2

protocols…were not sufficient replacement[s] for vaccination." *Id.* at *4; *see* Ans.Br. 26–28.

Second, "costs need not be realized"; "[a] risk of undue hardship will suffice." *Id.* (cleaned up). Allowing eight unvaccinated football coaches to continue their highly interactive jobs realistically risked an outbreak costing millions in forfeited games, since (1) three WSU games were cancelled following outbreaks the previous season; (2) COVID-19 cases were surging in fall 2021; and (3) WSU had the Pac-12's lowest team vaccination rate (80%) and an even lower rate among football staff (75%). 5-ER-947; Ans.Br. 41–43.

Third, courts "do not judge a given employer by the responses taken by other employers." *Williams*, 2026 WL 1239760, at *3 (cleaned up). Rolovich's argument that "other schools [did not] require a vaccine mandate to succeed" is irrelevant. Op.Br. 43.

*Williams* joins a judicial consensus finding undue hardship in health and safety risks posed by unvaccinated employees. *See* Ans.Br. 22; *see also Miller v. Charleston Area Med. Ctr., Inc.*, No. 24-2129, 2026 WL 35966, at *4 (4th Cir. Jan. 6, 2026). While Rolovich notes that many such employees were healthcare workers, Reply Br. 9–10, numerous others were not. *See, e.g., Bordeaux v. Lions Gate Entm't,*

Clerk of Court
May 27, 2026
Page 3

*Inc.*, No. 23-4340, 2025 WL 655065, at *1 n.3 (9th Cir. Feb. 28, 2025) (recognizing "increased health and safety risk for [unvaccinated actor's] coworkers" as "separate undue hardship"); *Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 94 (1st Cir. 2025) (photojournalist); *Young v. Haw. Airlines, Inc.*, No. CV 22-00532 HG-WRP, 2026 WL 1415280, at *23 (D. Haw. May 20, 2026) (airline employees).

*I certify that a copy of the foregoing was served on Appellants via counsel by filing the document on May 27, 2026 in the Court's PACER/ECF system, and that it contains 350 words.*

DATED this 27th day of May, 2026.

PACIFICA LAW GROUP LLP

By:  s/ Zachary J. Pekelis
    Zachary J. Pekelis, WSBA No. 44557
    Erica Coray, WSBA No. 61987
    W. Scott Ferron, WSBA No. 61154

401 Union Street, Suite 1600
Seattle, WA 98101
(206) 245-1700
Zach.Pekelis@pacificalawgroup.com
Erica.Coray@pacificalawgroup.com
Scott.Ferron@pacificalawgroup.com

Special Assistant Attorneys General
Attorneys for Appellee Washington
State University

2026 WL 1239760

Only the Westlaw citation is currently available.

United States Court of Appeals, Ninth Circuit.

Harold C. WILLIAMS, Jr.; Toby Higa; Daniela Marianu; Angela Loghry; Ivan Atanassov; Risa Brody; Aimee Sweet; Damaris Brici; Brianna Hall, Plaintiffs -Appellants,

v.

LEGACY HEALTH, a public benefit corporation; Northwest Acute Care Specialists, an Oregon professional corporation; Does 1-10, Defendants - Appellees.

No. 24-5977
|
Submitted November 20, 2025[*] Seattle, Washington
|
Filed May 6, 2026

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Appeal from the United States District Court for the Western District of Washington, Tiffany M. Cartwright, District Judge, Presiding, D.C. No. 3:22-cv-06004-TMC

**Attorneys and Law Firms**

Corey E. Parker, The Appellate Law Firm, Seattle, Washington; Tracy Tribbett, Pacific Justice Institute, Pasco, Washington; for Plaintiffs-Appellants.

Whitney A. Brown, Stoel Rives LLP, Anchorage, Alaska; Adam S. Belzberg and Aaron R. Doyer, Stoel Rives LLP, Seattle, Washington; Benjamin J. Stone, Kylene Slocum, and Kimberly A. Holdiman, Lewis Brisbois Bisgaard & Smith LLP, Seattle, Washington; for Defendants-Appellees.

Before: M. Margaret McKeown, Richard A. Paez, and Roopali H. Desai, Circuit Judges.

**OPINION**

McKEOWN, Circuit Judge:

This appeal involves yet another challenge to an employer's COVID-19 vaccine requirement. Legacy Health ("Legacy") adopted a vaccination policy for its eight Washington- and Oregon-area hospitals in August 2021, at the onset of the COVID-19 Delta variant. The plaintiffs in this action—all current or former Legacy employees ("Employees")—were denied religious exemptions from that policy.[1] Employees raise religious discrimination claims under Title VII of the Civil Rights Act and Washington state law. Relevant here, Title VII requires employers to make reasonable accommodations for their employees' religious beliefs unless doing so would cause "undue hardship" to the employer's business. 42 U.S.C. § 2000e(j). The district court granted summary judgment to Legacy on undue-hardship grounds, finding that Employees failed to dispute Legacy's evidentiary showing that their requested vaccine exemptions would impose a substantial burden on Legacy's business of providing quality healthcare.

[1] One plaintiff, Toby Higa, worked for Northwest Acute Care Specialists, which contracted him to work at one of Legacy's facilities. Northwest is also a party. All agree that Higa's claims rise and fall with the other Employees' claims, so we consider those claims together.

**\*2** While we have considered many similar challenges, we have had few opportunities to apply the test for Title VII "undue hardship" set out by the Supreme Court in *Groff v. DeJoy*, 600 U.S. 447, 143 S.Ct. 2279, 216 L.Ed.2d 1041 (2023). In *Groff*, the Court held that "showing 'more than a *de minimis* cost' " is insufficient "to establish 'undue hardship' under Title VII." *Id.* at 468, 143 S.Ct. 2279. Rather, " 'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Id.* Because Legacy made that showing, we affirm.

## Background

Legacy is a regional healthcare system that operates eight hospitals throughout the Willamette Valley. Employees all worked at Legacy's Salmon Creek medical center in Vancouver, Washington. While their particular jobs varied—from physician assistant, to respiratory therapist, to nurse, to technician—Employees' roles shared an important feature: They necessitated close contact with either patients or staff.

On August 5, 2021, shortly before Washington imposed its own, complementary requirement, Legacy announced a vaccination policy across its hospitals. Legacy had previously encouraged voluntary vaccination. But it changed course in summer 2021 with the onset of the Delta variant, which caused a surge of infections and hospitalizations, particularly among unvaccinated individuals. Legacy's vaccination policy required anyone who performed services at its hospitals to become fully vaccinated or receive an exemption by September 30, 2021. The policy created a process for requesting religious or medical exemptions and established a working group to review such requests.

Employees all submitted timely applications for religious exemptions, but Legacy denied those requests. Consistent with the vaccination policy, Legacy placed Employees on administrative leave and notified them that termination would follow. Higa received the vaccine shortly after going on leave and later returned to work. All other Employees were terminated.

Employees filed separate suits alleging religious discrimination under Title VII and Washington state law. The district court consolidated those suits in this action, the case proceeded to discovery, and the district court granted summary judgment for Legacy. The court assumed that Employees made out a prima facie case of religious discrimination based on Legacy's failure to accommodate Employees' religious beliefs. But it found that the vaccine exemption denials were justified because Legacy had established the affirmative defense of undue hardship, and Employees had failed to present relevant evidence disputing Legacy's showing. In the district court's view, uncontroverted evidence showed that accommodating Employees' beliefs would impose "outsize[d] risks" to Legacy's patients and staff, thereby "jeopardizing [Legacy's] ability to provide healthcare" in a safe and effective manner.

## Analysis

### I. Title VII Framework

Title VII forbids employers from discriminating against employees based on "religion," among other protected characteristics. 42 U.S.C. § 2000e-2(a). In practice, Title VII's antidiscrimination mandate requires an employer "to reasonably accommodate" an employee's "religious observance or practice" unless doing so would cause "undue hardship" to "the conduct of the employer's business." *Id.* § 2000e(j).[2]

[2] Washington courts "look to federal case law interpreting" Title VII's ban on discrimination based on "religion" to "guide [their] interpretation of the [Washington Law Against Discrimination's]" bar on discrimination based on "creed." *Kumar v. Gate Gourmet Inc.*, 180 Wash.2d 481, 325 P.3d 193, 197 (2014). So, we consider Employees' federal and state law claims together.

**\*3** Title VII religious discrimination claims follow a well-established burden-shifting framework. The employee must first make out a prima facie case of "a bona fide religious belief" that conflicted "with an employment duty." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993). The employer must have been "informed ... of the belief," and have threatened or taken discriminatory action. *Id.* The burden then shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)). As that language makes clear, the good-faith-effort and undue-hardship defenses are independent of each other. An employer need not make "an effort [to accommodate] if it can show that any accommodation would impose undue

hardship." *Heller*, 8 F.3d at 1440; *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988).

This appeal turns on the employer's burden to demonstrate undue hardship. Like the district court, we assume without deciding that Employees put forth a prima facie case of discrimination. *E.g., Crowe v. Wormuth*, 74 F.4th 1011, 1036 (9th Cir. 2023). Because Legacy does not argue that it attempted to accommodate Employees' objections to vaccination, the only question is whether an accommodation would have caused undue hardship to Legacy's business.

The Supreme Court clarified the standard for "undue hardship" in *Groff*. The Court swept aside its prior suggestion that anything "more than a *de minimis* cost" would suffice, *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), and held that Title VII requires a "burden [that] is substantial in the overall context of an employer's business." *Groff*, 600 U.S. at 468, 143 S.Ct. 2279. That inquiry is "fact-specific" and requires courts to "account [for] all relevant factors in the case at hand, including the particular accommodations at issue" and the accommodations' "practical impact" given the "nature, size, and operating costs" of the employer. *Id.* at 468, 470–71, 143 S.Ct. 2279 (citation modified). The Court declined to "elaborat[e]" much on that standard. *Id.* at 471, 143 S.Ct. 2279. But it did offer one example: Faced with the *Groff* plaintiff's exemption request for his Sunday Sabbath practice, an employer could not establish undue hardship simply by asserting that the exemption would cause other employees to work "overtime." *Id.* at 473, 143 S.Ct. 2279. The employer would have to spell out the proposed accommodation's "ramifications" for its business and consider mitigating "options." *Id.* at 472, 473, 143 S.Ct. 2279.

We recently applied the *Groff* test in *Petersen v. Snohomish Regional Fire & Rescue*—a case very similar to this one. 150 F.4th 1211 (9th Cir. 2025). In *Petersen*, a group of firefighters requested religious exemptions from a newly imposed COVID-19 vaccine requirement. *Id.* at 1213–14. Their employer denied the exemptions, however, because it could not find a reasonable accommodation "that would allow [the] firefighters to remain in their roles" without undue hardship. *Id.* at 1214. We held that the employer

adequately justified the denials under *Groff* based on various hardships, including the health risk to fellow firefighters and the public, the "operational cost" that would result if other firefighters were infected, and the "textbook economic hardship" of losing a "lucrative contract" to provide emergency medical services. *Id.* at 1220–21. That showing, combined with "unrebutted medical evidence" regarding the "inadequacy of [the firefighters'] proposed accommodation," cleared the substantial-burden bar. *Id.* at 1222.

Our decision in *Petersen* crystalized several aspects of the *Groff* test. To start, the "substantial additional costs" the Supreme Court referred to need not be exclusively monetary. *See Groff*, 600 U.S. at 469, 143 S.Ct. 2279. They can extend to "health and safety costs" and "operational burdens" as well as traditional "financial burdens." *Petersen*, 150 F.4th at 1218; *see also Groff*, 600 U.S. at 475, 143 S.Ct. 2279 (Sotomayor, J., concurring) (explaining that "undue hardship on the conduct of a business may include undue hardship on the business's employees"). Next, costs need not be realized prior to raising an undue-hardship defense. A "risk of undue hardship" will suffice—provided it is "realistic" and "not 'merely conceivable or hypothetical.' " *Petersen*, 150 F.4th at 1222 (quoting *Townley*, 859 F.2d at 615). Finally, we do not "judge [a given employer] by the responses taken by other [employers]." *Id.* The test boils down to undue hardship in the context of the "*particular* business" before us. *Groff*, 600 U.S. at 470, 143 S.Ct. 2279 (emphasis added).

**II. Legacy's Summary Judgment Showing**

**\*4** Legacy's undue-hardship showing readily satisfies the *Groff* standard. At the time it denied Employees' exemption requests, Legacy forecast an acute strain on its business of providing safe and effective medical care to the public. The COVID-19 Delta variant had just emerged, and Legacy predicted a surge of hospitalizations across its eight locations. In that context, Legacy reasonably sought to ensure that its employees were vaccinated. The statistical evidence available to Legacy revealed that high vaccination rates, while not a panacea, reduced overall transmission risk. Vaccination also proved highly effective at preventing infection in the healthcare setting, where other measures like social distancing were impractical or "impossible,"

as one expert explained. By contrast, Legacy's unrebutted epidemiological expert evidence showed that unvaccinated "frontline workers," like Employees, faced a unique risk of infection—and that any infections could contribute to "significant outbreaks among patients [and] colleagues."

Based on Legacy's showing, granting Employees' exemption requests posed three distinct risks. First, there was a risk that Employees would become ill and cause staffing issues from their absence. Second, much like the firefighters in *Petersen*, Employees' risk of infection posed concerns for other staff needed to treat patients. Finally, the transmission risk would also affect Legacy's patient population, many of whom had preexisting conditions—or comorbidities—which could cause an even greater strain on Legacy's services. At several points in the record, Legacy's expert examined alternative safety protocols—including masking, using other personal protective equipment, and regular testing—and concluded at each turn that those alternatives were not "sufficient replacement[s] for vaccination."

Taken together, Legacy's "realistic" concerns threatened a "substantial" burden on its business of providing quality healthcare. *See Petersen*, 150 F.4th at 1222. It is true, as Employees point out, that Legacy did not assert that vaccine exemptions would cause prohibitive financial hardship. But while that type of hardship may be sufficient, it is not necessary. "Health and safety costs" matter, too. *Id.* at 1218. And in the context of Legacy's particular business, they make all the difference.

Employees' attempts to poke holes in Legacy's hardship showing fall flat. Contrary to their suggestion, this is not a case where Legacy relied on "generalized assertions" of hardship. Employees are also wrong to argue that this case is controlled by our decisions regarding other types of businesses. As *Groff* explained, we must conduct the hardship inquiry "in light of the nature" of the employer. 600 U.S. at 470, 143 S.Ct. 2279. Similarly, it is not enough to point, as Employees do, to other hospitals that granted religious exemptions from vaccination. Those hospitals are "not before us," *Petersen*, 150 F.4th at 1222, and the evidence related to Legacy's "particular business" amply justified its hardship determination, *Groff,* 600

U.S. at 470, 143 S.Ct. 2279. Legacy's particularized determinations underscore that this is not a one-size-fits-all situation.

Employees also criticize Legacy's use of pre-vaccine data to assess the risk of COVID-19 transmission. Employees speculate that *post*-vaccine data may have demonstrated that "accommodating a small number of religious objectors" posed little risk. But in *Petersen*, we rejected that form of "hindsight" reasoning. 150 F.4th at 1222. Instead, we ask whether the employer "relied on the scientific evidence and COVID data then available." *Id.*; *see also Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 91 (1st Cir. 2025) (explaining that employer "acted reasonably" in relying "on the objective, scientific information available to [it]" when denying religious exemption from vaccination requirement (quoting *Bragdon v. Abbott*, 524 U.S. 624, 649, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998))). Employees point to no evidence in the record that contradicted Legacy's contemporary assessment, so their argument fails.

### III. Employees' Other Arguments

**\*5** Even assuming undue hardship to Legacy, Employees contend in the alternative that summary judgment was improper because a dispute remains about whether Legacy considered all alternative accommodations in good faith. We disagree.

Employees initially object that Legacy's "blanket denials" of their exemption requests preclude an undue-hardship defense. In Employees' view, Legacy had to afford "individualized consideration" to Employees' proposed accommodations. But we have squarely rejected the view "that an employer cannot bring up 'undue hardship' unless it first proves that it made good faith efforts to accommodate the employee's [religious] practice." *Townley*, 859 F.2d at 614. The rationale is a simple one: If no accommodation is possible without undue hardship, then consideration of a particular accommodation is an exercise in futility. *Id.* at 614–15; *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68–69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (explaining that undue hardship is at issue only where the employer cannot "offer *any* reasonable accommodation without such hardship" (emphasis added)). We have thus explained that "undue hardship" serves as a complete defense

to a Title VII claim even if there was "no attempt at accommodation" at all. *Townley,* 859 F.2d at 615 n.7 (collecting cases).

Employees also argue that Legacy failed to consider the full universe of reasonable accommodations in its hardship inquiry. They echo a portion of *Groff* where the Supreme Court explained that employers cannot selectively assess "a particular possible accommodation." 600 U.S. at 473, 143 S.Ct. 2279. The Court cited approvingly the Seventh Circuit's decision in *Adeyeye v. Heartland Sweeteners, LLC,* which explains that employers must show that "any and all [reasonable] accommodations would have imposed an undue hardship." 721 F.3d 444, 455 (7th Cir. 2013). But Legacy did not cherry-pick its accommodation analysis and it easily satisfies the hardship standard. The undisputed evidence demonstrates that any

method of accommodating Employees' objections to vaccination—while maintaining their conditions of employment—would have resulted in undue hardship to Legacy. Legacy's expert explained that there was "no effective alternative to vaccination" in the healthcare context, not to mention a setting where Employees must come into close personal contact with patients and staff. Employees offered nothing to rebut Legacy's categorical showing. On that record, no reasonable juror could conclude that a reasonable accommodation existed that remedied Legacy's legitimate concerns.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2026 WL 1239760

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.