# Exhibit 1

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 29 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PAUL AHMANN, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, an agency of the State of Washington; ROGER MILLAR, Secretary of Transportation, in his official capacity; JAY INSLEE, Governor of Washington, in his official capacity, <br><br> Defendants - Appellees. | No. 25-2335 <br><br> D.C. No. 2:23-cv-00140-TOR <br><br> MEMORANDUM<sup>*</sup> |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted May 15, 2026*
San Francisco, California

Before: McKEOWN, BEA, and BRESS, Circuit Judges.

Paul Ahmann sued his employer, the Washington State Department of

Transportation ("WSDOT"), for failing to accommodate his religious beliefs under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code. § 49.60 *et seq.*, after WSDOT terminated Ahmann's employment because he failed to take the COVID-19 vaccine.  The district court granted summary judgment to WSDOT on the ground that Ahmann had failed to give adequate "notice to WSDOT of how his sincerely held religious beliefs conflicted with the COVID-19 vaccine."  We review the district court's grant of summary judgment de novo.  *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).  We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

For religious discrimination claims under both Title VII and WLAD,[1] the employee must first "establish a prima facie case by proving that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements."  *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).  "Once a plaintiff makes out a prima facie failure-to-accommodate case, the burden then shifts to the employer to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or

---

[1] The WLAD standard "mirrors the federal one."  *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1216 n.3 (9th Cir. 2025).

that it could not reasonably accommodate the employee without undue hardship." *Snohomish Reg'l Fire & Rescue*, 150 F.4th at 1216 (citation modified).

The district court concluded that Ahmann established the first element of his prima facie case because he had a sincerely held religious objection to taking a vaccine derived from cell lines of aborted fetuses. To the extent that WSDOT challenges this determination on appeal, we find no error in this aspect of the district court's decision. We agree with the district court that WSDOT "has not raised a genuine issue of fact as to whether Plaintiff sincerely held a religious belief when he made the accommodation request." There is also no dispute that Ahmann has established the third element of the prima facie case, given his termination.

This case instead concerns the second element of the prima facie showing: whether the plaintiff provided adequate notice to his employer. As to that element, we have held that an employee need only provide "enough information about [his] religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller*, 8 F.3d at 1439. As we have explained, "[a]ny greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence." *Id.*

We conclude that Ahmann satisfied this second element of the prima facie showing, and that there is no genuine dispute of fact on that score. When filling out

3

the first exemption form, Ahmann was asked whether he had "a sincerely held religious belief or religious conviction that prevent[ed] [him] from receiving the COVID-19 vaccine." He answered yes. Then, in response to WSDOT's follow-up request asking him to explain "how a COVID-19 vaccine conflicts with your asserted strongly held religious beliefs," Ahmann responded:

> I will not have the blood of any baby on my hands. Any vaccine that was brought about by the use of baby parts in the research and development process or by using them in the ingredients will not be used on me with my knowledge. It is an evil selfish process, which devalues human life and puts a monetary value on Babies.

Ahmann further noted—in response to a different question on the second form asking whether he had "ever received a vaccination in the past"—that he had done so "when I was ignorant of the evil which has been taking place and how many babies are killed in this country." Ahmann advised that he would be willing to take the Novavax vaccine, which, in his view, was a "clean vaccine," meaning one that was not created using fetal cell research.

On this record, Ahmann's explanations, considered in context, were enough to put WSDOT on notice that Ahmann was raising an objection to the COVID-19 vaccine based on religious opposition to abortion and fetal cell line research. We have recognized that this type of abortion-based objection to vaccination is a "specific religious belief" sufficient to form the basis for a denial-of-accommodation claim. *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 896 n.2 (9th Cir. 2025),

25-2335

*reh'g en banc denied*, 172 F.4th 1072.  WSDOT contends that Ahmann could have further identified the particular faith underlying his religious beliefs.  But Amy Fermo, WSDOT's Assistant HR Director and the chair of its vaccination exemption committee, testified that WSDOT "didn't require employees to identify specifically the religion that they may be affiliated with."  Ahmann was thus not required to say more to notify WSDOT about the conflict between his religious beliefs and the COVID-19 vaccine.

The parties make further arguments as to whether accommodating Ahmann would have posed an undue hardship to WSDOT.  But the district court has yet to address that issue.  We therefore remand for the district court to consider the undue hardship question in the first instance.

**REVERSED AND REMANDED.**

25-2335