

**BECKET**

*Religious Liberty for All*

1919 Pennsylvania Ave. NW, Suite 400
Washington, D.C. 20006
202-955-0095 / 𝕏 *@becketfund*
www.becketfund.org

June 16, 2026

**VIA CM/ECF**

Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

**Re:** ***Rolovich v. Washington State University*, No. 25-761 (argued June 10, 2026, before Hawkins, W. Fletcher, and M. Smith, JJ.)**

Dear Ms. Dwyer:

We write to correct the record following material misrepresentations made by counsel for Defendants-Appellees Washington State University and Patrick Chun (WSU) at last week's oral argument.

At the argument, WSU's counsel repeatedly and categorically asserted that "not once" and "at no point the litigation" below did Rolovich invoke a Title VII claim for disparate treatment based on religion:

> In the motion to dismiss briefing, WSU said there is no disparate treatment claim here. We're only dealing with failure to accommodate. And ***not once***, not in oral argument on the motion to dismiss, not in his amended complaint, ... , ***at no point in the litigation***, did Rolovich say, oh, by the way, we're actually asserting a disparate treatment claim here.
>
> ...
>
> [T]here is no disparate treatment claim pleaded, and even if there was, plaintiff forfeited it by not correcting us at the motion to dismiss stage ***or at any point thereafter***.

1



1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006

Oral Argument at 26:08-28:24, https://www.youtube.com/watch?v=sNgLYkBcecY (emphases added).

These assertions are false—as WSU's counsel's own arguments below demonstrate.

**1.** In WSU's summary-judgment briefing below—signed by the same attorney who presented last week's oral argument—WSU correctly understood Rolovich to be asserting a disparate-treatment claim: "Rolovich briefly argues that undue hardship is not a complete defense to a *disparate treatment claim*. Resp. at 28–29." D. Ct. Dkt. 126 at 18; *see* D. Ct. Dkts. 117 & 124 at 28-29. WSU instead complained that Rolovich was "*asserting a disparate treatment theory* for the first time at summary judgment." D. Ct. Dkt. 126 at 18 (emphasis added).

In other words, WSU's counsel below faulted Rolovich for doing exactly what WSU's counsel then claimed on appeal that he "***not once***" and "***at no point***" did: asserting a disparate-treatment claim.

**2.** Nor was the summary-judgment briefing the first time that Rolovich said, "we're actually asserting a disparate treatment claim here." Oral Argument at 26:26-32.

During discovery, Rolovich sought "comparator" evidence relevant to WSU's anti-religious motives. WSU—again represented by the same attorney who presented last week's oral argument—resisted these discovery requests on the ground that this was only a "failure-to-accommodate case" in which Rolovich had "not pleaded a traditional disparate treatment claim." Ex. A at 5. Rolovich corrected this assertion emphatically, providing a 1,546-word memo explaining that his Title VII claim "encompasses both a 'traditional' disparate treatment theory and a failure-to-accommodate theory," and citing caselaw and the complaint to support this assertion in detail. *Id.* at 2 (emphasis original).

\* \* \*



1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006

WSU is of course free to argue that Rolovich should have asserted his disparate-treatment claim differently—that his operative complaint, which includes a cause of action for "Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*," 6-ER-1234-35 (capitalization omitted), should have given that theory a separate heading; or that he should have devoted more attention to it in response to WSU's motion to dismiss his prior complaint. That argument is meritless, as we have explained. Br. 48-49; Reply Br. 20-21; Oral Argument at 35:03-37:18.

But WSU's counsel's repeated and categorical statements at oral argument that Rolovich "not once" and "at no point the litigation" invoked a disparate-treatment claim go beyond zealous advocacy to simply false statements—and come at least perilously close to violating counsel's duty of candor. We wrote WSU and invited it to file a letter informing the Court of this error. It refused.

We would appreciate if you would bring this letter to the prompt attention of the panel.

Respectfully submitted,

/s/ *Joseph C. Davis*

| | |
|---|---|
| ERIC N. KNIFFIN | JOSEPH C. DAVIS |
| KNIFFIN LAW, PLLC |    *Counsel of Record* |
| 102 S. Tejon St., Suite 1100 | LUKE W. GOODRICH |
| Colorado Springs, CO 80903 | ANGELA WU HOWARD |
| ERIC J. SEESE | TIMOTHY KOWALCZYK |
| FROST BROWN TODD LLP | THE BECKET FUND |
| 1801 California St., Ste. 2700 |   FOR RELIGIOUS LIBERTY |
| Denver, CO 80202 | 1919 Pennsylvania Ave. NW, Suite 400 |
| | Washington, D.C. 20006 |
| | jdavis@becketfund.org |

*Counsel for Appellant Nicholas Rolovich*

cc: All counsel of record (by ECF notification)

# Exhibit A

 Outlook

---

## RE: Rolovich v. WSU - Plaintiff's 1st Rog & RFP Resps./Meet-and-Confer

---

**From:** Zach Pekelis <Zach.Pekelis@pacificalawgroup.com>
**Sent:** Monday, April 1, 2024 11:26 AM
**To:** Seese, Job <JSeese@lewisroca.com>
**Cc:** Brian Fahling <bfahling@fahlinglaw.com>; Eric Kniffin <eric@kniffin.law>; LeBlanc, Marnier <MLeBlanc@lewisroca.com>; Goodwin, Stacy-Ann <SGoodwin@lewisroca.com>; Spencer Coates <Spencer.coates@atg.wa.gov>; Scott Ferron <Scott.Ferron@pacificalawgroup.com>; Rebecca Garland <rebecca.garland@pacificalawgroup.com>; Erica Knerr <Erica.Knerr@pacificalawgroup.com>; Jessica Buswell <Jessica.Buswell@atg.wa.gov>; Jennah Williams <Jennah.williams@atg.wa.gov>; Valentina Barei <Valentina.Barei@pacificalawgroup.com>; Erica Coray <Erica.Coray@pacificalawgroup.com>; Collins, Wilson <WCollins@lewisroca.com>
**Subject:** RE: Rolovich v. WSU - Plaintiff's 1st Rog & RFP Resps./Meet-and-Confer

**CAUTION! [EXTERNAL to Lewis Roca]**

---

Job,

I think the parties may be at an impasse on this issue, but that it's worth one more discussion to see whether some compromise might still be possible. Please let us know your availability for a call.

Best,

Zach

**Zach Pekelis**

he/him

**Direct:** 206.602.1218

**Email:** Zach.Pekelis@PacificaLawGroup.com

---

**From:** Seese, Job <JSeese@lewisroca.com>
**Sent:** Sunday, March 31, 2024 9:35 PM
**To:** Zach Pekelis <Zach.Pekelis@pacificalawgroup.com>
**Cc:** Brian Fahling <bfahling@fahlinglaw.com>; Eric Kniffin <eric@kniffin.law>; LeBlanc, Marnier <MLeBlanc@lewisroca.com>; Goodwin, Stacy-Ann <SGoodwin@lewisroca.com>; Spencer Coates <Spencer.coates@atg.wa.gov>; Scott Ferron <Scott.Ferron@pacificalawgroup.com>; Rebecca Garland <rebecca.garland@pacificalawgroup.com>; Erica Knerr <Erica.Knerr@pacificalawgroup.com>; Jessica Buswell <Jessica.Buswell@atg.wa.gov>; Jennah Williams <Jennah.williams@atg.wa.gov>; Valentina Barei <Valentina.Barei@pacificalawgroup.com>; Erica Coray <Erica.Coray@pacificalawgroup.com>; Collins, Wilson

**1**

<WCollins@lewisroca.com>
**Subject:** RE: Rolovich v. WSU - Plaintiff's 1st Rog & RFP Resps./Meet-and-Confer

Zach,

Thank you for your reply.

Fundamentally, we fail to understand your distinction between failure-to-accommodate cases and disparate treatment cases. As you know, "disparate impact" and "disparate treatment" are "the only causes of action under Title VII[.]" *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). A failure-to-accommodate theory is one of two paths for a plaintiff to establish a disparate treatment claim under Title VII (the other being the "traditional" path you highlighted). *See Abercrombie & Fitch*, 575 U.S. at 773 ("[T]he rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward…."); *see also Mendoza v. The Roman Cath. Archbishop of Los Angeles*, 824 F.3d 1148, 1149 (9th Cir. 2016) ("In *Abercrombie & Fitch*, the Supreme Court held that, in a Title VII action **alleging disparate treatmen**t, the plaintiff need only show that the **need for a religious accommodation** was a factor motivating the employer's adverse decision." (Emphasis added)); *see also Hebrew v. Texas Dep't of Crim. Just.*, 80 F.4th 717, 724 (5th Cir. 2023) (analyzing disparate treatment under a failure-to-accommodate theory). In other words, there are multiple ways to prove a Title VII disparate treatment claim, including a theory based on failure-to-accommodate.

<u>Plaintiff has pled a Title VII claim, with encompasses both a "traditional" disparate treatment theory and a failure-to-accommodate theory.</u>

In any event, Plaintiff has alleged a general Title VII claim, not a specific type of Title VII claim. *See* Plaintiff's Second Amended Complaint, Count V: Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, at 28. As a result, Plaintiff is not limited to either a failure-to-accommodate theory or a "traditional" theory of disparate treatment. Plaintiff's pleadings are sufficient to pursue either a failure-to-accommodate theory or a disparate treatment "traditional" theory, and nothing in the Second Amended Complaint limits him to one or the other. Likewise, nothing in the May 30, 2023 Motion to Dismiss Order limits Plaintiff to a failure-to-accommodate theory. Although the Court ruled that he had adequately alleged a failure-to-accommodate claim, it also recognized that Plaintiff had alleged a general Title VII violation and directly quoted the "disparate treatment" provision, 42 U.S.C. § 2000e-2(a)(1). *See Rolovich v. WSU*, No. 2:22-CV-0319-TOR, 2023 WL 3733894, at *3 (E.D. Wash. May 30, 2023).

<u>Notice pleading doesn't require a plaintiff to allege all the specifics of how he will prove his disparate treatment claim.</u>

Under the notice pleading standard, Plaintiff was not required to allege whether he was pursuing a "traditional" disparate treatment theory or a failure-to-accommodate theory. Nor was Plaintiff required to allege each element of the *McDonnell Douglas* burden-shifting test to pursue a "traditional" disparate treatment theory under Title VII. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12 (2002) ("[U]nder a notice pleading system, **it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case**…. It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.") (emphasis added). *See also U.S. E.E.O.C. v. Univ. Coll. of Chapman Univ.*, No. C 11-04845 LB, 2012 WL 1831523, at *4 (N.D. Cal. May 18, 2012) ("Given Rule 8's notice pleading standard and *Swierkiewicz*'s holding that **facts establishing all of the prima facie elements do not necessarily have to be alleged**, the court finds that the factual allegations in the EEOC's First Amended Complaint are sufficient to survive a motion to dismiss.") (emphasis added).

<u>Plaintiff has pled WSU's motive, and it is a material issue in the case.</u>

**2**

In any event, Plaintiff has pleaded facts regarding Defendant's **motive** for Plaintiff's discharge. For example, under Count V (Violation of Title VII), Plaintiff specifically alleged that WSU had improper motives for its decision to deny Mr. Rolovich's accommodation request and terminate him:

> 126. Title VII of the Civil Rights Act of 1964 prohibits WSU from **discriminating** against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a).

> 133. WSU's disapproval of Mr. Rolovich's sincerely-held religious reasons for refusing to receive a COVID-19 vaccine was **one of the University's motives for its discriminatory treatment** of Mr. Rolovich.

> 135. WSU's **discriminatory actions** were intentional and/or reckless and in violation of Title VII.

Regardless, motive is also relevant to a failure-to-accommodate theory under Title VII because evidence of improper motive goes directly to "undue hardship":

> An employer who fails to provide an accommodation has a defense only if the hardship is "undue," and a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice **cannot be considered "undue."**

*Groff v. DeJoy*, 600 U.S. 447, 473 (2023) (emphasis added). *See also Bannister v. Bd. of Trustees*, No. CV 03-0094-E-BLW, 2005 WL 8165506, at *4 (D. Idaho Jan. 18, 2005) ("If the [defendant] makes this showing [that it could not reasonably accommodate the employee without undue hardship], **[the plaintiff] must respond with specific, substantial evidence of pretext**."); *see also Abercrombie & Fitch*, 575 U.S. at 773–74 (holding that if an "applicant actually requires an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a **motivating factor** in [its] decision, the employer violates Title VII.").

<u>Discovery into WSU's handling of other requests for religious and medical exemptions goes to the issue of WSU's motive.</u>

Evidence of how WSU treated other requests for medical and religious exemptions would have a tendency to make it more likely that WSU's denial of Plaintiff's accommodation request was based on improper motives—or at least to lead to the discovery of such evidence. For example, such information may constitute circumstantial evidence of an improper motive or pretext for an adverse employment action. *See, e.g., Bess v. Adams & Assocs., Inc.*, No. 217CV00173TLNKJN, 2018 WL 4801951, at *5 (E.D. Cal. Oct. 3, 2018) ("A plaintiff can demonstrate the employer acted with **a discriminatory motive by direct or circumstantial evidence**." … A plaintiff may show '**other similarly situated employees** outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.' *Id*. at 800.").

Such circumstantial evidence of how WSU handled other similarly-situated employees' requests for exemption is thus relevant under either a "traditional" disparate-treatment theory or a failure-to-accommodate theory. While we appreciate WSU's willingness to provide information related to the total numbers of exemption/accommodation requests and approvals or denials, this aggregate data alone does not provide any visibility into how other exemption requests were handled. Obviously, the question of admissibility will be determined at trial or shortly before, but the information is at least discoverable.

<u>The requested discovery is also relevant to Plaintiff's breach-of-contract claim.</u>

Additionally, the requested information is also relevant to Plaintiff's breach of contract claim and whether WSU had "just cause" for Plaintiff's discharge. If similarly situated individuals were treated differently or more favorably than Plaintiff, this information may be probative of whether WSU lacked good faith in its decision to discharge Plaintiff. As set forth in Count I (Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing), Plaintiff has alleged facts related to "just cause" and improper motive, including but not necessarily limited to:

**3**

102. WSU violated its own policies by allowing HRS to be **improperly and unlawfully influenced** by Mr. Chun….

105. By taking **punitive action** against Mr. Rolovich for raising a religious objection that the University's own process deemed sincere, WSU breached its employment agreement with Mr. Rolovich.

110. WSU's refusal to seek input from Mr. Rolovich on his religious accommodation, a duty imposed by law, was a breach of its employment agreement with Mr. Rolovich, as was Mr. Chun's **predetermination** before Governor Inslee's vaccine mandate that Mr. Rolovich would be fired with cause if he did not get vaccinated.

111. WSU's decision and actions in terminating Mr. Rolovich, and asserting that it had just cause to do so, also constituted a **breach of the implied warranty of good faith** and fair dealing.

Evidence of how similarly-situated individuals were treated would tend to prove these facts and is discoverable under Plaintiff's contract-related claims, as well.

Providing the requested information is not unduly burdensome.

WSU's cursory assertions of undue burden are unavailing. First, any evaluation of the burden imposed must be weighed against the above-explained relevance of the requested information. Second, WSU fails to demonstrate how the exercise of searching electronic employee exemption requests and related documentation would be unduly burdensome. As the Court has recently ruled, using keywords to search electronic records should not be considered unduly burdensome, even if the resulting document batch counts in the thousands. Given that the exemptions requests were submitted via an electronic form, retrieval of the requests themselves and WSU's processing of the same should be a relatively simple exercise. Additionally, please note that any student information would be protected as confidential subject to the Protective Order.

Please confirm whether or not we are at an impasse here, and if we are at such an impasse, we will proceed with scheduling a hearing in front of Judge Rice.

**Job Seese**

Partner

JSeese@lewisroca.com

D. 303.628.9558

C. 303.396.7798

**4**

**From:** Zach Pekelis <Zach.Pekelis@pacificalawgroup.com>
**Sent:** Monday, March 18, 2024 1:13 PM
**To:** Seese, Job <JSeese@lewisroca.com>
**Cc:** Brian Fahling <bfahling@fahlinglaw.com>; Eric Kniffin <eric@kniffin.law>; LeBlanc, Marnier <MLeBlanc@lewisroca.com>; Goodwin, Stacy-Ann <SGoodwin@lewisroca.com>; Spencer Coates <Spencer.coates@atg.wa.gov>; Scott Ferron <Scott.Ferron@pacificalawgroup.com>; Rebecca Garland <rebecca.garland@pacificalawgroup.com>; Erica Knerr <Erica.Knerr@pacificalawgroup.com>; Jessica Buswell <Jessica.Buswell@atg.wa.gov>; Jennah Williams <Jennah.williams@atg.wa.gov>; Valentina Barei <Valentina.Barei@pacificalawgroup.com>; Erica Coray <Erica.Coray@pacificalawgroup.com>; Collins, Wilson <WCollins@lewisroca.com>
**Subject:** RE: Rolovich v. WSU - Plaintiff's 1st Rog & RFP Resps./Meet-and-Confer

**CAUTION!** **[EXTERNAL to Lewis Roca]**

Hi Job,

With respect to your initial "global" comment, I don't believe I mentioned disparate *impact* cases. Instead, I was highlighting the distinction between traditional disparate *treatment* cases and failure-to-accommodate cases like this one. In a traditional disparate treatment case, the plaintiff must establish a prima facie case by demonstrating that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) *similarly situated individuals outside his protected class were treated more favorably*, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hittle v. City of Stockton*, 76 F.4th 877, 887 (9th Cir. 2023) (emphasis added). As you mentioned in our call (and I agree) it is routine in traditional disparate treatment cases for the plaintiff to seek discovery into similarly situated employees to gather evidence relevant to the fourth prima facie element.

However, a failure-to-accommodate case like this one involves a different legal standard. To plead a prima facie case, the failure-to-accommodate plaintiff must establish: "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements." *Rolovich v. WSU*, No. 2:22-CV-0319-TOR, 2023 WL 3733894, at *3 (E.D. Wash. May 30, 2023) (internal quotation marks and citation omitted). If the plaintiff succeeds, "the burden shifts to the defendant to demonstrate . . . that it could not reasonably accommodate the employee without undue hardship." *Id.* at *4 (internal quotation marks and citation omitted).

Because you have not pleaded a traditional disparate treatment claim, we fail to understand the relevance of "comparator" evidence here at all. That is, whether "similarly situated" employees "outside [Mr. Rolovich's] protected class" were "treated more favorably" goes neither to any element of the failure-to-accommodate prima facie case nor

**5**

to WSU's undue hardship defense. In responding to Interrogatory 11, however, we have nevertheless attempted to compromise by providing information regarding the Athletics Department employees who requested exemptions/accommodations with respect to the Proclamation. The only accommodation analyses that would even arguably involve job requirements and duties similar to Mr. Rolovich's would be those of certain other Athletics employees—specifically, other coaches—unlike, say, a physics professor or a clerical worker. In addition, only the accommodation requests made by Athletics Department employees were considered by the same decisionmakers as Mr. Rolovich's.

I hope that helps clarify our reasoning and our position.

With respect to Interrogatory 11 specifically, WSU offered the additional compromise of providing the total numbers of exemption/accommodation requests and approvals WSU received for *all employees*—including those outside the Athletics Department—as well as WSU's responses to public records requests seeking similar information. This would provide some of the information you are seeking while avoiding the burden of WSU's counsel having to review over 600 employee exemption requests and related documentation to provide the information sought in Interrogatory 11 for each one. We continue to take the position that discovery regarding *students* who sought exemptions from WSU's student COVID-19 vaccination requirement—which was independent of the Governor's Proclamation—would both be irrelevant and unduly burdensome (including because of the necessity of receiving individual consent from hundreds of current and former students to release FERPA-protected information). Again, WSU remains willing to compromise with respect to *employee* information: In addition to Athletics Department employees, if you can identify some smaller subset of WSU employees outside the Athletics Department whose positions make them similarly situated to Plaintiff, we would consider providing the requested information for them as well (although at this time we are unaware of any such employees).

With respect to RFPs 11 and 13, you are correct that I meant RFP 12, not RFP 13. Apologies for any confusion. We remain willing to engage in further conferral on this subject and, based on our initial review of potentially responsive documents, believe the parties can reach agreement.

Finally, with respect to the email duplicates issue, my colleague Rebecca Garland is our point person on e-discovery and is willing to discuss the email duplicates issue with your team at the nearest opportunity.

Best,

Zach

**Zach Pekelis**

he/him

**6**

**Direct:** 206.602.1218

**Email:** Zach.Pekelis@PacificaLawGroup.com

**7**